## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-2620-NYW-MEH

ZEPHERINE MILLER, an individual,

     Plaintiff,

v.

NATIONAL CREDIT SYSTEMS INC.,

    Defendant.

---

## FIRST AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiff Zepherine Miller, an individual ("**Plaintiff**"), files her First Amended Complaint and Jury Demand against National Credit Systems, Inc., a Georgia corporation (the "**Debt Collector**"), and states as follows.

I. **INTRODUCTION**

1. This is an action for damages resulting from the Debt Collector reporting false and misleading credit information about Plaintiff to the three national credit bureaus. Plaintiff had applied to rent an apartment in a complex located in Denver, Colorado. When she signed her lease, the lease did not include a security deposit. After signing the lease, the landlord unilaterally added a security deposit and refused to give Plaintiff the keys to the apartment until Plaintiff paid a deposit that she did not agree to. Plaintiff did not pay this unilateral and undisclosed charge, so the landlord claimed that she was in default and forwarded the balance of the lease to its collection agency, the Debt Collector. The Debt Collector did what it usually does and reported this invalid debt to the three major credit bureaus, harming Plaintiff's credit standing. Plaintiff duly notified the Debt Collector that the

information it was reporting was incorrect but the Debt Collector nevertheless continued to report this inaccurate information to the three major credit bureaus.

2.     Due to this injustice, Plaintiff sued the landlord and obtained a judicial declaration that the lease was void.  But that did not matter to the Debt Collector.  When Plaintiff disputed the debt again, and attached the judicial declaration that the lease was void to the dispute, the Debt Collector did not delete the debt from her credit file.  Instead, the Debt Collector verified the credit tradeline as accurate and continues to harm Plaintiff's credit and her wellbeing to this very day.

## II.     PARTIES, JURISDICTION, AND VENUE

3.     Plaintiff is an individual, natural person, and resides in Oklahoma County, Oklahoma.

4.     The Debt Collector is a Georgia corporation with a principal place of business located at 1775 The Exchange SE, Suite 300, Atlanta, Georgia 30339.

5.     The Debt Collector maintains a registered agent in the State of Colorado of Stokes & Wolf, P.C. at 1776 S. Jackson Street, Suite 900, Denver, Colorado 80210.

6.     The Debt Collector is a specialized debt collection agency.

7.     The Debt Collector serves the rental apartment industry, collecting debt arising under residential lease obligations.

8.     The Debt Collector attempts to collect consumer debts by contacting consumers through the mail and telephone.

9.     The Debt Collector attempts to collect consumer debts by reporting information concerning the debts to the CRAs, as hereinafter defined.

10.     The Debt Collector's principal purpose is the collection of debts.

11.     The Debt Collector's sole purpose is the collection of debts.

12.     All of the Debt Collector's revenue comes from debt collection.

13.     The Debt Collector has the resources to put procedures in place to reasonably ensure accuracy of disputed information.

14.     The Debt Collector's net worth exceeds $100,000.00.

15.     The Debt Collector's net worth exceeds $250,000.00

16.     The Debt Collector's net worth exceeds $500,000.00.

17.     The Debt Collector's net worth exceeds $750,000.000

18.     The Debt Collector's net worth exceeds $1,000,000.00.

19.     The Debt Collector's net worth exceeds $2,000,000.00.

20.     The Debt Collector's net worth exceeds $5,000,000.00.

21.     The Debt Collector's 2022 net worth was in excess of $100,000.00.

22.     The Debt Collector's 2022 net worth was in excess of $250,000.00.

23.     The Debt Collector's 2022 net worth was in excess of $500,000.00.

24.     The Debt Collector's 2022 net worth was in excess of $750,000.00.

25.     The Debt Collector's 2023 net worth was in excess of $1,000,000.00.

26.     The Debt Collector's 2022 net worth was in excess of $2,000,000.00.

27.     The Debt Collector's 2022 net worth was in excess of $5,000,000.00.

28.     The Debt Collector's profit projections for the calendar year 2023 exceed $10,000,000.00.

29.     The Debt Collector profits millions of dollars each year, including in 2022 and 2023.

30.     One or more people in India perform services on behalf of the Debt Collector.

31.     The Debt Collector has admitted to being a debt collector through other court cases.

32.     The Debt Collector is a "debt collector", as that term is defined by 15 U.S.C. § 1692a(6).

33.     Plaintiff brought this action in the District Court for the City and County of Denver, State of Colorado, and Defendant removed this action to federal court.

34.     This Court has jurisdiction over the claims brought hereunder pursuant to 15 U.S.C. § 1692k(d) and 15 U.S.C. § 1681p.

35.     This Court has jurisdiction over the non-resident Debt Collector pursuant to C.R.S. § 13-1-124.

36.     Venue is proper pursuant to C.R.C.P. 98(c)(5) because this is an action in tort and the tort was committed in the City and County of Denver, State of Colorado.

III.     **FACTUAL ALLEGATIONS**

*Background*

37.     Plaintiff was allegedly obligated to pay a debt (the "**Account**") arising out of a purported residential lease with The Connor Group, a Real Estate Investment Firm d/b/a The Connor Group d/b/a Alas Over Lowry (the "**Landlord**").

38.     The Account is an obligation that was allegedly incurred primarily for personal, family, or household purposes.

39.     The Account is a "debt", as that term is defined by 15 U.S.C. § 1692a(5).

40.     The Landlord claimed that Plaintiff owed the Account based upon her failure to fulfil the terms of a residential apartment lease.

41.     Plaintiff was not obligated to fulfil the terms of the lease because the Landlord had unilaterally added a security deposit to the lease after the lease was signed.

42.     The Landlord claimed that Plaintiff had failed to perform under the Lease by paying the security deposit that the Plaintiff did not agree to pay.

43.     The Landlord claimed that Plaintiff was liable for the entire balance of the Lease.

44.     Based on its mistaken understanding that Plaintiff was liable on the Account, the Landlord referred the Account to the Debt Collector for collection purposes.

45.     After the Landlord referred the Account to the Debt Collector, Plaintiff sued the Landlord in Denver District Court, Case No. 2021CV34094 (the "**Landlord Lawsuit**").

4

46.     In the Landlord Lawsuit, Plaintiff sought a declaration that Plaintiff was not obligated to the Landlord under the lease.

47.     On January 30, 2023, the Court entered judgment in the Landlord Lawsuit declaring that: "Plaintiff is not obligated to [the Landlord] under the subject lease agreement and the lease agreement is void."

48.     Plaintiff does not owe the Landlord any money.

49.     Plaintiff does not owe the Debt Collector any money.

*The Debt Collector's Continued Reporting of False, Inaccurate, and Misleading Credit Information about Plaintiff and Failure to Investigate her Dispute*

50.     Even after the Denver District Court declared that the lease was void and Plaintiff had no obligation under the lease to the Landlord, the Debt Collector continued to report the Account to Equifax Information Services LLC ("**Equifax**"), Experian Information Solutions, Inc. ("**Experian**") and Trans Union LLC ("**Trans Union**") (collectively, the "**CRAs**").

51.     The CRAs are each a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

52.     In March or April of 2023, Plaintiff disputed inaccurate credit reporting concerning the Account to each of the CRAs (the "**Dispute**").

53.     The Dispute included, among other things, a copy of the Landlord Lawsuit and the judgment declaring the subject lease void.

54.     The Dispute included, among other things, contact information for third-parties who could verify the accuracy of the facts stated in Plaintiff's Dispute.

55.     Equifax, Experian, and Trans Union notified the Debt Collector of Plaintiff's Dispute and the inaccurate information contained in her credit file.

56.     The Debt Collector received an Automated Credit Dispute Verification (ACDV) from Equifax, Experian and Trans Union related to the Account.

57.     The Debt Collector received, from Equifax, Plaintiff's Dispute letter with supporting documentation.

58.     The Debt Collector received, from Experian, Plaintiff's Dispute letter with supporting documentation.

59.     The Debt Collector received, from Trans Union, Plaintiff's Dispute letter with supporting documentation.

60.     At the time the Debt Collector received Plaintiff's Dispute, Plaintiff did not owe anything to the Debt Collector on the subject Account.

61.     At the time the Debt Collector received Plaintiff's Dispute, Plaintiff did not owe anything to the Landlord on the subject Account.

62.     The Debt Collector did not conduct a reasonable investigation with respect to the disputed information.

63.     The Debt Collector did not review the relevant information provided by Plaintiff.

64.     The Debt Collector did not contact any of the individuals who could verify the accuracy of Plaintiff's Dispute.

65.     The Debt Collector failed to report to the CRAs that the reporting was inaccurate or incomplete.

66.     The Debt Collector failed to modify, delete, or permanently block the reporting even though the inaccurate information could not be verified.

*The Debt Collector's Debt Collection and Credit Dispute Investigation Processes*

67.     One of the ways the Debt Collector attempts to collect debt is to use credit reporting.

68.     A 'tradeline' refers to data that a creditor or debt servicer reports about accounts to a consumer reporting agency.

69.     The Debt Collector furnishes tradeline information to CRAs.

70.     The Debt Collector does not use its own personnel to conduct reinvestigations of consumer disputes that it receives from the credit reporting agencies.

71.     The Debt Collector has outsourced its reinvestigations to a company with operations in India called Provana, LLC ("**Provana**").

72.     After the Debt Collector receives an ACDV, Provana is supposed to conduct investigations guided by dispute codes.

73.     Neither the Debt Collector nor Provana attempted to contact Plaintiff when conducting any investigation of Plaintiff's disputes.

74.     On information and belief, Provana never contacts consumers, like Plaintiff, when conducting an investigation.

75.     On information and belief, dispute operators for Provana are not allowed to pick up a phone and call a consumer making a dispute.

76.     On information and belief, dispute operators for Provana are not allowed e-mail a consumer making a dispute.

77.     Neither the Debt Collector nor Provana attempted to contact any of the persons or entities that Plaintiff identified in her Dispute.

78.     On information and belief, dispute operators for Provana never contact persons or entities identified in disputes, like Plaintiff's Dispute, when conducting an investigation.

79.     On information and belief, dispute operators for Provana are not allowed to contact persons or entities identified in disputes, like Plaintiff's Dispute, when conducting an investigation.

80.     On information and belief, dispute operators for Provana are not allowed to use information outside of the Debt Collector's system of record when conducting a dispute investigation.

81.     On information and belief, dispute operators for Provana are not permitted to do research when conducting a dispute investigation.

82.     On information and belief, dispute operators for Provana believe that when consumers like Plaintiff submit official documents, like court orders, in support of a dispute, the consumer has forged the document.

83.     On information and belief, the dispute operator for Provana who received Plaintiff's dispute believed that the court order that she submitted was forged.

*The Debt Collector's Knowledge*

84.     The Debt Collector knew that the subject reporting was inaccurate.

85.     All of the true facts were made available to the Debt Collector by Plaintiff's original dispute, the Dispute letter, or from the Landlord.

86.     To the extent that the Debt Collector needed additional information to investigate Plaintiff's dispute, the Debt Collector had the resources to investigate Plaintiff's dispute.

87.     The Debt Collector could have, and should have, conducted a reasonable investigation to determine the subject reporting was inaccurate.

88.     The false information should have been automatically trapped in the Debt Collector's system and prevented from being disseminated to the CRAs and harming Plaintiff's credit standing.

89.     The Debt Collector's procedures include reviewing and considering all relevant information provided by the CRAs.

90.     The Debt Collector failed to review and consider all of the information provided to it by the CRAs.

91.     Alternatively, the Debt Collector's procedures include investigating disputes by searching for information reasonably available and accessible to the Debt Collector.

92.     The Debt Collector failed to search for information reasonably available and accessible to the Debt Collector.

93.     Alternatively, the Debt Collector has no procedures in generating the inaccurate reporting.

8

94.     The Debt Collector did not seek out any evidence before reporting the disputed information as verified.

95.     The Debt Collector does not know the identity of any individual who conducted any of the reinvestigations related to Plaintiff's Dispute.

96.     The Debt Collector does not know the identity of any individual who conducted any of the reinvestigations related to Plaintiff's Dispute in the year 2023.

97.     The Debt Collector was aware of regulatory findings, opinions, court rulings and jury verdicts that the type of "investigation" the Debt Collector conducted was insufficient to constitute a reasonable investigation.

98.     Over 2,000 debt collection complaints have been made about the Debt Collector with the Consumer Financial Protection Bureau over the last 3 years.

99.     Nearly 1,000 credit reporting complaints have been made about the Debt Collector with the Consumer Financial Protection Bureau over the last 3 years.

100.    Plaintiff notified the Debt Collector of the inaccurate reporting.

101.    The subject reporting is inconsistent with established industry standards.

102.    The Debt Collector falsely represented the legal status of the debt and attempted to collect an amount of money from Plaintiff that is not permitted by law.

103.    The Debt Collector acted with reckless disregard for its statutory duties.

104.    The Debt Collector knowingly and intentionally committed the acts described herein in conscious disregard for the rights of others.

105.    All conditions precedent necessary for this lawsuit have occurred or been performed by Plaintiff.

106.    Furnishers, including the Debt Collector, must comply with the requirements stated in https://www.ftc.gov/tips-advice/business-center/guidance/consumer-reports-what-information-furnishers-need-know.

107.    The Debt Collector failed to provide information that is accurate and complete.

108.    The Debt Collector's conduct was unfair, along with the Debt Collector's omissions.

109.    The Debt Collector communicated with CRAs when such communication was illegal.

110.    The Debt Collector's failure to investigate Plaintiff's disputes and the Debt Collector's initial and continuing false reporting to credit reporting agencies concerning an account allegedly owed to the Debt Collector, despite the Debt Collector's knowledge of the falsity of its reporting, are willful and reckless.

111.    The Debt Collector uses credit reporting as part of a plan to mislead consumers, including Plaintiff, and to get them to pay money.

112.    The Debt Collector made false, deceptive and misleading representations and deceptive means when the Debt Collector falsely represented Plaintiff owed money, communicated information to consumer reporting agencies that they knew to be false and incomplete, and falsely represented debt was owed to the Debt Collector.

113.    The alleged debt the Debt Collector attempted to collect was not authorized by any agreement or permitted by law.

## COUNT I
### (Violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*)

114.    Plaintiff incorporates by reference all of the foregoing allegations as though fully set forth herein.

115.    At all times material hereto, Plaintiff was a "consumer", as that term is defined under 15 U.S.C. § 1692a(3).

116.    At all times material hereto, the Debt the Debt Collector was attempting to collect was a "debt", as that term is defined under 15 U.S.C. § 1692a(5).

117.    At all times material hereto, the Debt Collector was a "debt collector", as that term is defined under 15 U.S.C. § 1692a(6).

118.    "Except as provided in section 1692b of [title 15, U.S.C.], without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."  15 U.S.C. § 1692c(b).

119.    The Debt Collector has violated 15 U.S.C. § 1692c(b)

120.    The FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.  These prohibitions include, but are not limited to, making a "false representation of . . . the character, amount or legal status of any debt" and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt . . . ."  15 U.S.C. § 1692e(2)(A), (10),

121.    The Debt Collector has violated 15 U.S.C. § 1692e, including 1692e, 1692e(2)(A), 1692e(8), and 1692e(10).

122.    "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  This prohibition includes collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).

123.    The Debt Collector has violated 15 U.S.C. § 1692f, including 1692f and 1692f(1)

124.    The foregoing acts of the Debt Collector constitute violations of the FDCPA.

125.    Plaintiff is entitled to actual and statutory damages in an amount to be determined at trial.

**COUNT II**
**(Violations of the FCRA, 15 U.S.C. § 1681 *et seq.*)**

126. Plaintiff incorporates by reference all of the foregoing allegations as though fully set forth herein.

127. Plaintiff is a "consumer", as that term is defined by 15 U.S.C. § 1681a(c).

128. The Debt Collector is a "person", as that term is defined by 15 U.S.C. § 1681a(b).

129. Following the receipt of a notice of dispute from the CRAs concerning the accuracy of information provided by the Debt Collector to the CRAs about Plaintiff, the Debt Collector failed to conduct a reasonable investigation with respect to the disputed information in violation of 15 U.S.C. § 1681s-2(b)(1)(A).

130. Following the receipt of a notice of dispute from the CRAs concerning the accuracy of information provided by the Debt Collector to the CRAs about Plaintiff, the Debt Collector failed to review all relevant information with respect to the disputed information and to report the results of the investigation to the consumer reporting agencies in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and (C)..

131. Following the receipt of a notice of dispute from the CRAs concerning the accuracy of information provided by the Debt Collector to the CRAs about Plaintiff, the Debt Collector failed to modify, delete, or block reporting of the inaccurate information in violation of 15 U.S.C. § 1681s-2(b)(1)(E).

132. As a direct and proximate result of the Debt Collector's conduct, Plaintiff suffered actual damages including damage to credit reputation, reduction of credit score, expenses and time lost connected with the effort to correct the credit record, denial of credit, anxiety, embarrassment, frustration, and emotional distress.

133. Plaintiff is entitled to damages a prayed for in this complaint in an amount to be determined at trial.

134. The Debt Collector's actions were negligent.

135. The Debt Collector's actions were willful.

136. Plaintiff is entitled to punitive damages under 15 U.S.C. § 1681n(a)(2).

137.    Plaintiff is entitled to her reasonable attorney fees and costs under 15 U.S.C. §§ 1681n(a)(3) 1681o(a)(2).

138.    Defendant has call recordings of conversations with Plaintiff and as of the date of this amended complaint, has not provided them to Plaintiff or her counsel.

139.    Defendant has previously reported inaccurate information following a consumer disputing an account with a court order or judgment stating that the consumer did not owe the account.

**JURY DEMAND**

Plaintiff is entitled to and hereby demands a trial by jury.

WHEREFORE, Plaintiff Zepherine Miller, an individual, prays for judgment against Defendant National Credit Systems, Inc. a Georgia corporation,  as follows:

1.      Awarding Plaintiff actual damages in an amount to be proven at trial;

2.      Awarding Plaintiff statutory damages in an amount to be proven at trial;

3.      Awarding Plaintiff punitive damages in an amount to be proven at trial;

4.      Awarding Plaintiff pre-judgment and post-judgment interest as may be allowed under the law;

5.      Awarding Plaintiff her reasonable attorney fees;

6.      Awarding Plaintiff's costs; and

7.      Awarding such other and further relief as the Court may deem just and proper.


Dated: November 22, 2023

**Vedra Law LLC**

By:     /s/ Daniel J. Vedra
        Daniel J. Vedra
        1444 Blake Street
        Denver, Colorado 80202
        303-937-6540
        dan@vedralaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the date first written above the foregoing was served by CM/ECF on:

John W. Bowdich
BOWDICH & ASSOCIATES, PLLC
8150 N. Central Expy., Suite 500
Dallas, Texas 75206
jbowdich@bowdichlaw.com

/s/ Daniel J. Vedra
Daniel J. Vedra