IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| ZEPHERINE MILLER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 1:23-cv-02620-MEH |
| | § | |
| NATIONAL CREDIT SYSTEMS, INC., | § | |
| | § | |
| *Defendant*. | § | |

---

## DEFENDANT NATIONAL CREDIT SYSTEMS, INC.'S
## MOTION FOR SUMMARY JUDGMENT

---

National Credit Systems, Inc. ("Defendant" or "NCS"), pursuant to FED. R. CIV. P. 56 files this Motion for Summary Judgment (the "Motion") and would show the Court as follows:

### SUMMARY JUDGMENT EVIDENCE

Appended to this Motion are NCS's exhibits in support of the Motion, labeled "A," "A-1" through "A-16," "B," and "B-1" through "B-9." Said exhibits are incorporated herein by reference and provide the background facts for this Motion.

### ARGUMENT AND AUTHORITIES

**A. Plaintiff's Claims under the FCRA**

### 1. *Plaintiff's Allegations*

Plaintiff claims that NCS violated the following provisions of the FCRA, both negligently pursuant to FCRA § 1681o and willfully pursuant to § 1681n:

- § 1681s-2(b)(1)(A), by failing to conduct a reasonable investigation with respect to the disputed information;

- § 1681s-2(b)(1)(B) and (C), by failing to review all relevant information with respect to the disputed information and to report the results if the investigation to the CRAs;

- § 1681s-2(b)(1)(E), by failing to modify, delete, or block reporting of the allegedly inaccurate information.

### 2. *Applicable Law*

To ensure the accuracy and fairness of credit reporting, the FCRA "imposes [distinct] obligations on three types of entities: credit reporting agencies [CRAs], users of consumer reports[,] and furnishers of information to [CRAs]." *Grays v. Kittredge Co*, No. 1:20-cv-00208-WJM-SKC, 2021 U.S. Dist. LEXIS 50900, at *12 (D. Colo. 2021). In this case, NCS was a furnisher of information to the CRAs. Upon notice from a CRA that a consumer disputes the accuracy or completeness of information provided by a furnisher to the CRA, the furnisher must conduct an investigation regarding the disputed information, review all relevant information provided by the CRA regarding the dispute, and report the results of the investigation to the CRA. 15 U.S.C. § 1681s-2(b)(1). If the investigation reveals that the disputed information is incomplete, inaccurate, or cannot be verified after reinvestigation, the furnisher must either modify, delete, or permanently block reporting of that information. *Id*. For information determined to be inaccurate or incomplete, the furnisher must also report those results to all CRAs. *Id*. Because a furnisher's obligation under § 1681s-2(b)(1)(A) arises when it receives a notice of dispute from a CRA, the relevant inquiry is whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009)).

    a. <u>Inaccuracy</u>

        *(1) Inaccuracy is a threshold issue before determining whether a reasonable investigation was performed.*

Whether the information furnished by NCS regarding the Debt was inaccurate, incomplete, or materially misleading is a threshold issue. The Tenth Circuit follows the majority of the Circuits

in requiring Plaintiff to prove this threshold inquiry before determining whether a reasonable investigation was performed. *See Schueller v. Wells Fargo & Co.*, 559 F. App'x 733, 737 (10th Cir. 2014); *see also Grays*, 2023 U.S. Dist. LEXIS 62166, at *5.

(2) *A legal dispute of the debt is not an "inaccuracy" under the FCRA, and a data furnisher is not required to resolve such legal disputes.*

When the dispute necessarily requires a judicial resolution or legal interpretation, such as contract interpretation or a question of law regarding the debt's validity, the Tenth Circuit follows the majority view that the FCRA does not require the data furnisher to resolve that dispute, and the FCRA claim fails. *See Wright v. Experian Info. Solutions, Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015). An FCRA lawsuit is not properly suited to resolve the validity of the underlying debt. *See Daniels v. Nat'l Credit Sys., Inc.*, No. 1:22-cv-01048-DDD-JPO, 2024 U.S. Dist. LEXIS 100336, at *9 (D. Colo. 2024).

b.   Reasonable Investigation

A "reasonable" investigation "is one that a reasonably prudent person would undertake under the circumstances." *Maiteki v. Marten Transp. Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016). "[T]he reasonableness of the investigation is to be determined by an objective standard." *Id.* "An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." *Collins v. Diversified Consultants*, No. 15-cv-02115-RBJ-NYW, 2016 U.S. Dist. LEXIS 201318, at *11–12 (D. Colo. 2016). "But an investigation does not have to be exhaustive to be reasonable." *Maiteki* at 1276. "[T]he FCRA does not require perfection, only a reasonable response." *Stewart v Equifax Info Servs, LLC*, 320 F Supp 3d 1186, 1205 (D Kan., 2018).

*3.  Argument*

a.   The information NCS reported to the CRAs was not inaccurate, because Plaintiff's dispute was a legal issue that NCS was not required to resolve.

The information NCS reported to the CRAs regarding the AOL-Miller Account was not inaccurate, because Plaintiff's dispute was a legal question regarding the effect of the Order of Judgment from Plaintiff's underlying State Court Lawsuit against the Original Creditor, The Connor Group ("TCG") doing business as Alas Over Lowry Apts ("AOL"). NCS, following its dispute investigation procedures set out in Exhibit "A at ¶9, sent TCG a verification request letter containing a description of Plaintiff's dispute, her dispute letter and all attachments, including the her Complaint in the State Court Lawsuit and Judgment against TCG, and requesting TCG to confirm whether the Account remained valid. SOF ¶¶ 14, 15, 21. Notably, the Complaint and Judgment do not provide any details about the Lease (lease date, etc.) nor does the Judgment name the apartment complex, AOL. In response to NCS's dispute verification request, TCG informed NCS that the AOL-Miller Account was still valid. SOF ¶ 22. To confirm, NCS followed up TCG's response by asking for a copy of the Tenant Ledger. SOF ¶ 23. TCG replied, providing a copy of the Tenant Ledger that still contained the amount due. SOF ¶ 23. When presented with conflicting interpretations of the Order of Judgment between Plaintiff and TCG, that was not a factual inaccuracy for NCS to resolve. It was a legal issue regarding the effect of other legal proceedings on Plaintiff's continued legal liability for the AOL-Miller Account—and a disagreement between Plaintiff and the Original Creditor as to that effect—which NCS was not equipped or required to resolve under the FCRA.

> b. NCS's investigation of the dispute was reasonable.

It is undisputed that NCS followed its policies and procedures, including the process to request verification from the Original Creditor. SOF ¶¶ 4–25. The policies and procedures were consistently applied by NCS to Plaintiff's disputes prior to the State Court Litigation and after the Order of Judgment in the State Court Litigation. SOF ¶¶ 13–25. For the ACDVs at issue processed

in April 2023, upon receiving the ACDVs from the CRAs, NCS followed its procedures, including having its administrative personnel contact the designated person at TCG using the correct email address for verification of disputes to determine if the AOL-Miller Account was still valid based on Plaintiff's dispute and the attachments to that dispute. SOF ¶ 21. It is likewise undisputed that, when responding to NCS's request for verification of the Debt, TCG affirmatively verified Plaintiff's liability for the full balance of the AOL-Miller Account, even providing a Tenant Ledger showing the balance due, despite TCG's knowledge of the Order of Judgment. SOF ¶¶ 22, 23. NCS had previously followed these procedures to validate a prior dispute by Plaintiff, to which it was informed that the balance of the account should be reduced from $25,788.00 to $9,670.50, due to the re-letting of the premises. SOF ¶¶ 14–17.

The dispute did not indicate that TCG failed to satisfy the terms of the Judgment or failed to cancel its account. SOF ¶ 20; Exhibit "A-13" at 1–2. The dispute requested that an investigation include the exact action taken by NCS—to contact TCG to determine if the AOL-Miller Account was still valid. Exhibit "A-13" at 2. Indeed, NCS contacted the TCG, at the required email address designated by TCG for resolving disputes-the same email address that resulted in the aforementioned adjustment of the account. SOF ¶ 23. It is also undisputed that, when responding to NCS's request for verification of the Debt, TCG affirmatively verified Plaintiff's liability for the full balance, even providing a Tenant Ledger showing the balance due, despite TCG's knowledge of the Order of Judgment. SOF ¶¶ 22, 23.

NCS's investigation was reasonable under the circumstances because it provided all the information to the Original Creditor (TCG-the defendant in that lawsuit), who was in a superior position than NCS to verify whether the Order of Judgment resolved Plaintiff's liability on the AOL-Miller Account. The fact that NCS's investigation failed to yield the correct result does not mean that the investigation was not reasonable, nor does the fact that NCS may not have done

everything possible.[1] As noted above, a reasonable investigation under the FCRA does not have to be perfect or exhaustive. Once the Original Creditor, when presented with the Order of Judgment, verified the Debt there was little or nothing else NCS was reasonably required to do.

For Plaintiff to prevail on her FCRA claim, it necessarily would require that data furnishers could no longer rely on the conclusions made by original creditors regarding the validity of their own debts. This contradicts the standard of a reasonable investigation, especially for third-party collection agencies.  Here specifically, to ignore the response of TCG, the original creditor and a party to the State Court Lawsuit in a superior position to know the effect of the Order of Judgment. Moreover, the dispute indicated that NCS should contact and rely on the position of the TCG.

In *Maiteki*, the 10th Circuit reviewed a district court finding that its investigation of a dispute to a CRA was reasonable. Noting that an investigation does not have to be exhaustive, the Tenth Circuit found that it was not unreasonable for the furnisher to not contact third parties to verify the validity of the documents in the furnisher's records. *Maiteki* at 1276.  Here, NCS's investigation was just as reasonable in light of the nature of the dispute and the request that TCG be contacted. NCS did so, through the proper contacts, and the debt was validated.

Since this case is therefore not properly suited to resolve the validity of the underlying claim, what is left with is exactly what NCS reported—a debt that the creditor confirmed was valid but that the debtor disputed. Reporting that information, including Plaintiff's dispute when furnishing information to the CRAs, does not violate the FCRA or FDCPA. *See Daniels*, 2024 U.S. Dist. LEXIS 100336, at *9 (citing *Wright*, 805 F.3d at 1242 (addressing the FCRA)).

---

[1] For example, pursuant to FRE 201(b) the Court can take judicial notice that the records for Denver District Court are not publicly available without a subscription through vendors. *See* https://www.coloradojudicial.gov/courts-records-search. Even if the Denver District Court records were readily available online, that would not have resolved the issue that TCG informed NCS that the AOL-Miller Account was valid, even when presented with a copy of the Order of Judgment.

At a minimum, NCS's investigation was not willful or reckless in its investigation of Plaintiff's dispute. *See Llewellyn v. Allstate Home Loans, Inc*., 711 F.3d 1173, 1185 (10th Cir. 2013) (finding that the district court did not err in granting summary judgment to defendant where there was no evidence of willfulness or recklessness). A "willful" violation is either an intentional violation or a violation that is committed in reckless disregard of a defendant's duties under FCRA. *See Birmingham v. Experian Info. Solutions, Inc*., 633 F.3d 1006, 1009 (10th Cir. 2011). The evidence proves, and there is no evidence to the contrary, that NCS's conduct did not entail an unjustifiably high risk of harm that was known or obvious that it should have been known to NCS. *See Llewellyn*, 711 F.3d at 1183–84.

**B.  Plaintiff's Claims under the FDCPA**

> **1.  *Plaintiff's allegations***

Plaintiff claims that NCS violated the following provisions of the FDCPA:

- § 1692c(b), by communicating with someone other than Plaintiff in connection with the collection of the debt without Plaintiff's consent. Doc. 19 at 10–11. Plaintiff alleges that NCS "communicated with CRAs when such communication was illegal." Doc. 19 at 10;

- § 1692e, by making a "false representation of … the character, amount or legal status of" the debt and using "false representation or deceptive means to collect or attempt to collect" the debt… *Id*. at 11. Plaintiff alleges that NCS "made false, deceptive and misleading representations and deceptive means when the Debt Collector falsely represented Plaintiff owed money, communicated information to consumer reporting agencies that they knew to be false and incomplete, and falsely represented debt was owed to the Debt Collector." *Id*.;

- § 1692f, by using "unfair or unconscionable means to collect or attempt to collect" the debt. *Id*. Plaintiff alleges that NCS violated Section 1692f(1), which prohibits collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id*.

> **2.  *Applicable Law***

>> a.    FDCPA § 1692c(b)

Section 1692c(b) of the FDCPA provides that, "[e]xcept as provided in section 804 [15 USCS § 1692b], without the prior consent of the consumer given directly to the debt collector … a debt collector may not communicate, in connection with the collection of any debt, with any person *other than … a consumer reporting agency* if otherwise permitted by law…." 15 U.S.C. § 1692c(b) (emphasis added).

      b.   <u>FDCPA § 1692e</u>

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

*     *     *

(2)   The false representation of—
      (A) the character, amount, or legal status of any debt; or

*     *     *

(8)   Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

*     *     *

(10)  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

15 U.S.C. § 1692e.

For Plaintiff's FDCPA §§ 1692e claims to survive summary judgment, Plaintiff must establish that NCS intentionally and knowingly misrepresented the "character, amount, or legal status of a debt" or used a "false representation or deceptive means to collect or attempt to collect any debt." *See* FDCPA §§1692e(2)(A), (8) and (10). Under the FDCPA, NCS may reasonably rely on the information provided to it by the Original Creditor and has no further duty to make any determination whether the Original Creditor calculated the alleged amount due correctly pursuant to the Lease. Even if NCS did report inaccurate information, the violation must be knowing and intentional. *See Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1174 (9th Cir. 2006)

8

("Within reasonable limits, Capital and Hasson were entitled to rely on their client's statements to verify the debt.").

### c.  FDCPA § 1692f

"A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law…." 15 U.S.C. § 1692f(1).

### 3.  Argument

### a.  FDCPA § 1692c(b)

The only person(s) other than Plaintiff about which Plaintiff alleges NCS improperly communicated in violation of FDCPA Section 1692c(b) were the CRAs. Plaintiff claims that NCS "communicated with CRAs when such communication was illegal." Doc. 19 at 10. But Section 1692c(b) explicitly allows communication with CRAs where it states that "a debt collector may not communicate, in connection with the collection of any debt, with any person *other than* … a consumer reporting agency if otherwise permitted by law …." *See* 15 U.S.C. 1692c(b) (emphasis added). Plaintiff makes no allegations as to why NCS's reporting of the Debt to the CRAs was "illegal" or not "otherwise permitted by law." "A debt collector does not violate the FDCPA by reporting a debt to a credit reporting agency." *Phillips v. NCO Fin. Sys.*, No. 12-cv-15482, 2014 U.S. Dist. LEXIS 50089, 2014 WL 1405217, at *7 (E.D. Mich. Apr. 11, 2014).

### b.  FDCPA § 1692e

Plaintiff's claim for the alleged violation of FDCPA §§ 1692e(2)(A), 1692e(8), and 1692e(10) relates to NCS's efforts to collect the debt and, as with her FCRA claim, similarly hinges on her contention that she does not owe the Debt because of the Order of Judgment. *See* Doc. 19

at 11. Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Among other things, this section prohibits the "false representation of the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A), and the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692e(10).

As with Plaintiff's FCRA claim, Plaintiff's dispute of the debt was unrelated to any factual inaccuracy regarding the AOL-Miller Account. Rather, her dispute was based solely on her legal defense against the Account, a subsequent litigation yielding a Judgment purporting to adjudicate the enforcement of the valid Account. *See* Exhibit "A-13." These claims fail because the summary judgment evidence conclusively proves that NCS did not use any misrepresentations or deceptive means to collect the debt. "[T]he FDCPA is concerned with unlawful debt collection practices, not mere disputes over the legality of the underlying debts." *Daniels* at *9 (D. Colo. 2024) (quoting *Chambers v. Habitat Co.*, 68 F. App'x 711, 715 (7th Cir. 2003), *cert. denied*, 540 U.S. 1119, 124 S. Ct. 1064, 157 L. Ed. 2d 913 (2004)). Even if the Court considered an argument that Plaintiff presented a legal question as to the effect and application of the Order of Judgment to determine whether she is liable under the Lease, there would not be a violation of the FDCPA. *Solomon v. Baer & Timberlake, P.C.*, 504 F. App'x 702, 705 (10th Cir. 2012) (affirming district court's conclusion that the debt collector "could not be held liable for any alleged misrepresentations about the amount of the debt because it reasonably relied upon information from its client, which it is permitted to do.").

Plaintiff's claims are based on NCS attempting to collect on the Account after she disputed Account based on the Order of Judgment. But her complaint makes clear that the real issue is whether she is liable for the Debt, not whether the NCS engaged in unlawful collection practices.

Plaintiff does not allege any conduct on the part of NCS intended to harass or oppress her, such as using obscene language or repeatedly calling her on the telephone. *See* 15 U.S.C. § 1692d. She also does not allege that NCS used "any false, deceptive, or misleading representation or means" to collect the fees, such as misrepresenting the value of the services rendered. *See* 15 U.S.C. § 1692e. Because the FDCPA is concerned with unlawful debt collection practices, not mere disputes over the legality of the underlying debts, NCS is entitled to summary judgment under the FDCPA. *See Chambers*, 68 F. App'x at 715.

        c.    <u>1692f</u>

Plaintiff further claims NCS violated 15 U.S.C. § 1692f. To establish a violation under § 1692f, Plaintiff "must show that the debt collector used unfair or unconscionable means 'in order to collect or to attempt to collect any debt.'" *Huffman v. BC Servs., Inc*., No. 16-cv-02431-KLM, 2017 U.S. Dist. LEXIS 89363, 2017 WL 2537106, at *4 n.4 (D. Colo. June 9, 2017) (quoting 15 U.S.C. § 1692f). Section 1692f "serves a backstop function, catching those 'unfair practices' which somehow manage to slip by" other provisions of 15 U.S.C. § 1692. *Georgopulous v. PPM Capital, Inc*., No. 19-cv-00347-DDD-STV, 2019 U.S. Dist. LEXIS 198583, at *15–16 (D. Colo. 2019). In light of this purpose, many courts have "dismissed claims under 15 U.S.C. § 1692f where such claims are based on facts that are also the basis for another more specific FDCPA claim." *Id*.

Plaintiff does not have a claim for violation of Section 1692f. The wrongful conduct listed in Section 1692f, although not exhaustive, is not of the same kind as the conduct Plaintiff has alleged. Section 1692f(1) prohibits the collection of a debt unless that amount is authorized by agreement. Here, it is undisputed that the Account NCS attempted to collect was pursuant to an agreement, the Lease, as per TCG. But Plaintiff alleges that NCS tried to collect on a Account that she claims she did not owe due to the Order of Judgment that resulted from litigation against TCG, which is the basis for Plaintiff's Section 1692e claim. Plaintiff does not allege that any

unauthorized charges were made, an illegal use of a postdated check or payment, or concealment using collect calls. *See Shibata v. Accredited Mgmt. Sols., LLC*, No. 20-cv-01156-PAB-KLM, 2021 U.S. Dist. LEXIS 179463, at *10-11 (D. Colo. 2021). Plaintiff alleges no conduct in violation of Section 1692f that is substantively different from the conduct she claims violated Section 1692e. *See* Doc. 19 at 10–11.

### C.  NCS's FDCPA Affirmative Defense of Bona Fide Error

#### 1.  *Applicable Law*

The bona fide error defense is an affirmative defense that insulates debt collectors from liability even when they have violated the FDCPA. An FDCPA defendant seeking the protection of the bona fide error defense carries the burden of proving that the violation was (1) unintentional, (2) a bona fide error, and (3) made despite the maintenance of procedures reasonably adapted to avoid the error. *Johnson v. Riddle*, 443 F.3d 723, 727–28 (10th Cir. 2006); 15 U.S.C. § 1692k(c). A debt collector must show that the violation was unintentional, not that the underlying act itself was unintentional. *Id.* at 728. In other words, a violation is unintentional for purposes of the FDCPA's bona fide error defense if the debt collector can establish the lack of specific intent to violate the Act. *Id.*

To be entitled to the bona fide error defense, a debt collector's error must be bona fide and it must have maintained procedures reasonably adapted to avoid error. *Id*. at 729 (citing 15 U.S.C. § 1692k(c)). Whereas the intent prong of the bona fide error defense is a subjective test, the bona fide and the procedures prongs are necessarily objective tests. *Id*. The bona fide component serves to impose an objective standard of reasonableness upon the asserted unintentional violation. *Id*. (citations omitted). And the procedures prong, by the express language of the statute, must be "reasonably adapted to avoid" the error that occurred. *Id*. (quoting 15 U.S.C. § 1692k(c)). The procedures component of the bona fide error defense involves a two-step inquiry: (1) whether the

debt collector "maintained"—*i.e.*, actually employed or implemented—procedures to avoid errors; and (2) whether the procedures were "reasonably adapted" to avoid the specific error at issue. *Id.* (citing 15 U.S.C. § 1692k(c)).

### 2. Argument

#### a. Unintentional

It is undisputed that NCS had no subjective intent to violate the FCRA. NCS's correspondence to TCG, the Original Creditor, when investigating Plaintiff's disputes shows that it simply wanted TCG to verify, one way or the other, whether the Account was owed in light of the Order of Judgment, and NCS provided TCG with all the documents provided by Plaintiff with her dispute, showing NCS's subjective desire to discover the correct answer regarding the dispute. NCS simply relied on TCG's verification of the Account, which as TCG was Defendant in such State Court Lawsuit, was in a superior position to NCS to make such a determination.

#### b. Bona Fide Error

The Order of Judgment indicating the Lease with AOL was null and void was signed by the Colorado State District Court Judge on January 30, 2023. Exhibit "A-13" at 20. Plaintiff disputed the Account with the CRAs by letter dated March 23, 2023. SOF ¶ 20; Exhibit "A-13" at 1–2. Plaintiff included a copy of the Order of Judgment with her dispute. SOF ¶ 20; Exhibit "A-13" at 20. In response to the dispute and in compliance with its policies and procedures, NCS contacted TCG, providing it with a description of Plaintiff's dispute, Plaintiff's dispute letter and attachments, including the Order of Judgment against TCG. NCS asked TCG to review Plaintiff's dispute and confirm if Plaintiff owed the balance. SOF ¶ 22; Exhibit "B-22." TCG responded that "This amount is owed per our records" thus creating the error. SOF ¶ 22; Exhibit "A-15."  While incorrect, it was reasonable for NCS to rely on TCG's response, considering that TCG was a party to the Lawsuit and NCS provided all documents necessary for TCG to evaluate the dispute.  NCS's

error in continuing to report the Debt was in good faith reliance on the verification it received from

TCG. It is undisputed that NCS's continued collection of the Account was due to its good faith

reliance on the information provided by TCG, creating a bona fide error.

          c.    <u>Maintenance of procedures reasonably adapted to avoid the error</u>

NCS employed and implemented procedures to avoid errors such as the one committed

here. Its general procedures include the following:

- NCS requires the original creditor to provide a signed lease and lease application with the responsible parties' contact and personal information to help identify and verify the responsible parties and a final account statement or tenant ledger that describes the charges due under the lease that comprises the alleged debt.

- NCS utilizes service agreements that require the original creditor to represent that the debts provided to NCS for collection are accurate and to provide indemnity to NCS for collection that is not accurate and any resulting damages.

- NCS sends an account acknowledgment communication requiring the original creditor to review the relevant account information and inform NCS of any inaccuracies then or in the future before NCS begins collection action.

- Upon receipt of a direct or indirect dispute that includes documents supporting such dispute and calling into question the validity or accuracy of the subject debt, NCS emails the original creditor a form letter to alert the original creditor of the alleged debtor's dispute, explains the basis of the dispute including a copy of the dispute and supporting documentation, and requires a response from the original creditor regarding the dispute. The form letter informs the original creditor that a response is required to prevent NCS from ceasing collection and submitting a deletion request to the CRAs.

- Pursuant to its written policies and procedures to conduct a reasonable investigation of these indirect disputes received through ACDVs, NCS's administrative personnel and contractors that conduct the investigations, will review the following:

  o The Dispute Code provided by the CRA, which guides the investigation, NCS's Account Notes for the debt, including notes on the investigation of any previous disputes and communications with the debtor and original creditor, the documents in NCS's "batch file" for the debt such as the lease, including any final account/move-out statement, lease application, supporting documents, tenant ledger, and communications with the debtor and original creditor, any reasons for the dispute or relevant information as supplied by the ACDV, and any documents provided by the debtor included with the ACDV and previous documents supplied by the debtor to NCS, which are all kept in NCS's batch file for the debt; and

  o If warranted by the previous items, contact the original creditor, providing it with a form letter describing the nature of the debtor's dispute and requirements to perform an investigation of the dispute and return the results to the CRAs, including a summary of the debtor's dispute and copy of any documents supplied with the ACDV in support of the dispute. The form letter requires the original creditor to review the dispute and verify or otherwise update NCS regarding any issues with the validity or accuracy of the alleged debt.

SOF ¶¶ 4–9. Based on NCS's thirty years of experience investigating leasing debt disputes, this process has proven to be a reasonable investigation process. SOF ¶ 9.

   Whether the Order of Judgment resolved the issue of Plaintiff's liability for the AOL-Miller Account is a specific issue. NCS's specific procedures designed to avoid the error in this case include all procedures set out in NCS's policies and procedures set out in SOF ¶¶ 4 and 9. Importantly here, those policies include the practice of contacting the original creditor to request verification of the debt in light of the dispute. NCS sends a form letter customized to provide a description of the nature of the debtor's dispute, attach the dispute and supporting documentation and explains the requirements to perform an investigation of the dispute, and requires the original creditor to return the results to NCS. SOF ¶¶ 4–9.

   Moreover, the summary judgment evidence conclusively shows that NCS's procedures were reasonably adapted to avoid the specific error at issue and were actually employed and followed. Plaintiff's dispute, and all documents provided with it, including the state court Complaint and Order of Judgment were provided to TCG, so that it could provide NCS with an accurate response regarding the validity of the Account in light of the dispute. SOF ¶ 21. Unfortunately, TCG failed to provide NCS with the correct information regarding the effect of the Order of Judgment on the Account. SOF ¶¶ 22, 23.

   There was nothing more that NCS could reasonably have done, aside from conducting its own independent legal investigation into the underlying lawsuit, the property manager's authority to bind AOL, and TCG's reasons for verifying the Account, and then drawing its own legal

conclusions regarding Plaintiff's liability for the Account. But debt collectors are not required under the FCRA to conduct "an independent investigation of the debt referred for collection." *Philhower v. Express Recovery Servs*., No. 2:12-cv-01193-DN, 2014 U.S. Dist. LEXIS 22671, at *19 (D. Utah 2014) (quoting *Smith v. Transworld Sys., Inc*., 953 F.2d 1025, 1032 (6th Cir. 1992)). Instead, a debt collector who "reasonably relies on the debt reported by the creditor . . . will not be liable for any errors." *Id*; *Solomon*, 504 F. App'x at 705. Other courts have explicitly rejected the contention that a third-party collector must independently verify the status of a debt prior to initiating collection efforts on behalf of a creditor client in order to avail itself of the bona fide error defense, for example:

> [T]he FDCPA does not require collectors to independently verify the validity of the debt to qualify for the bona fide error defense. . . . Although [defendant] could have done more to assure that bankruptcy proceedings had not been initiated, [section] 1692k(c) only requires collectors to adopt reasonable procedures, and as the district court found, it would not be reasonable to require [defendant] to independently confirm that the accounts forwarded by the bank were not in bankruptcy, where the bank, in the first instance, limited the accounts forwarded to those not in bankruptcy.

*Bynum v. Cavalry Portfolio Servs., L.L.C*., No. 04-CV-0515-CVE-PJC, 2005 U.S. Dist. LEXIS 48776, at *22–23 (N.D. Okla. 2005) (quoting *Hyman v. Tate*, 362 F.3d 965, 958 (7th Cir. 2004)).

**D. Plaintiff's claims are barred by her contributory negligence and/or failure to mitigate her damages.**

    *1. Applicable Law*

        a. <u>Contributory Negligence is a defense in FDCPA and FCRA cases.</u>

Contributory negligence is a recognized affirmative defense in FDCPA and FCRA cases. *See, Bell v. Nat'l Credit Sys*., No. 2:19-cv-01727-RAJ-BAT, 2020 U.S. Dist. LEXIS 53514, at *7–8 (W.D. Wash. 2020) (FCRA case); *O'Hanlon v. J.P. Morgan Chase Bank, N.A*., No. CV 15-06640 DDP (PJWx), 2016 U.S. Dist. LEXIS 23986, at *12–13 (C.D. Cal. 2016) (FCRA and FDCPA).

        b.    <u>Failure to Mitigate Damages is a defense in FCRA and FDCPA cases.</u>

A plaintiff's failure to mitigate her damages is a recognized affirmative defense in FCRA and FDCPA case; therefore, Plaintiff had a duty to mitigate her damages. *See, e.g. O'Hanlon*, 2016 U.S. Dist. LEXIS 23986, at *12 (FCRA and FDCPA); *Collins v. Milliman, Inc*., No. 2:22-cv-00061-RAJ, 2023 U.S. Dist. LEXIS 126237, at *3 (W.D. Wash. 2023) (FCRA case); *James v. Equifax Info. Servs., LLC*, No. 6:05-cv-1428-Orl-22JGG, 2007 U.S. Dist. LEXIS 86427, at *12 (M.D. Fla. 2007) (FCRA case).

       *2.   Argument*

On December 29, 2021, Plaintiff filed the State Court Lawsuit against TCG in the District Court for the City and County of Denver, State of Colorado seeking a declaratory judgment that Plaintiff was not liable under a Lease with TCG for an apartment at AOL. SOF ¶¶ 26-27. After months of litigation, TCG made an Offer of Judgment to Plaintiff and her attorney, Dan Vedra, to resolve the State Court Litigation, which Plaintiff accepted on January 4, 2023. Exhibit "B-1." TCG and Plaintiff entered into an agreed Order of Judgment, which was signed by the state court on January 30, 2023. Exhibit "B-2."

On April 6 and 7, 2023, NCS received ACDVs from Experian and TransUnion containing a dispute letter from Plaintiff dated March 23, 2023, disputing the continued reporting of the Debt and stating that "the Apartment Complex [AOL] agreed that the lease they turned over to the Debt Collector was void and of no force or effect." SOF ¶ 20; *see* Exhibit "A-4" at NCS-093, NCS-137. Plaintiff's dispute letter also requested that the CRAs verify the dispute with TCG as follows:[2]

---

[2] Notably, NCS would not have its investigators and contractors contact third parties regarding the debt to avoid any possible violations of FDCPA § 1692c(b).

If you need to know anything about this lease, you can call or write the following people:

*Attorneys for Apartment Complex*
Greg Ostfeld
Greenberg Traurig
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
OstfeldG@gtlaw.com
312-476-5056

Lindsay Aherne
Greenberg Traurig
1144 15th Street, Suite 3300
Denver, CO 80202
ahernel@gtlaw.com
303-572-6500

*Apartment Complex Owner*
The Connor Group
10510 N Springboro Pike
Dayton, OH 45342
937-434-3095

*Apartment Complex Property Manager*
Alas Over Lowery
82 Unita Way
Denver, CO 80230
720-868-9157

SOF ¶ 20; Exhibit "A-13" at 2.  On April 19, 2023, TCG responded to NCS's request for verification by reply email indicating that the Debt was valid and owing. SOF ¶ 22; Exhibit "A-15."

On April 20, 2023, NCS followed up on its verification request to TCG by sending another email to the designated email address to seek a copy of the tenant ledger to confirm the account balance, for which TCG responded and provided a copy of the Tenant Ledger still showing the balanced owed by Plaintiff. SOF ¶ 23. On or about the same day, NCS responded to the second set of ACDVs by verifying the AOL-Miller Account. SOF ¶ 24. Before, during, and after this time, Plaintiff's counsel, Dan Vedra, communicated with TCG's attorneys at GT Law regarding various aspects of the conclusion of State Court Litigation, including the following emails:

- <u>Feb. 20, 2023</u>: Emails whereby Dan Vedra sought an extension of time for Mr. Vedra to file a motion for fees. SOF ¶ 26; Exhibit "B-3."

- <u>Mar. 23, 2023</u>: Emails whereby Dan Vedra agreed to extend the time for TCG's response brief to the motion for fees so long as TCG confirmed to pay the $1,781 damage award in the Judgment directly to Ms. Miller. SOF ¶ 26; Exhibit "B-4."

- <u>Apr. 18, 2023</u>: Emails whereby Dan Vedra sought an extension of time for Mr. Vedra to file a reply brief to the motion for fees. SOF ¶ 26; Exhibit "B-5."

- <u>Jun. 12, 2023</u>: Emails whereby Dan Vedra sought payment of the attorneys' fees and costs awarded to be made payable to his law firm rather than Ms. Miller. SOF ¶ 26; Exhibit "B-6."

- <u>Jun. 27, 2023</u>: Emails whereby Dan Vedra agreed to notarize and file the satisfaction of judgment.  SOF ¶ 26; Exhibit "B-7."

At no point in those emails from February 2023 to June 2023, or any other communication, did Plaintiff's attorney, Mr. Vedra, indicate to GT Law that the debt extinguished by the Judgment was being collected by TCG or any collection agency on behalf of TCG. SOF ¶ 27. In fact, quite the opposite, as Plaintiff, by Mr. Vedra, filed a Satisfaction of Judgment. SOF ¶ 27; Exh. "B-8."

Plaintiff's dispute letter to the CRAs, dated March 23, 2023, was written by or with the assistance of Plaintiff's attorney. Exhibit "A-13" at 2. During the entire process of Plaintiff's disputes process, Plaintiff's counsel was communicating with TCG's attorneys about the Order of Judgment and related issues in the State Court Litigation. But Plaintiff's counsel, conveniently and strategically, never informed TCG's attorneys that, despite the Order of Judgment, the Account was still being reported to the CRAs and collected by NCS. Being in communication with TCG's attorneys, had Plaintiff's counsel informed TCG of the collection issue, all of Plaintiff's damages could have been prevented as TCG's attorneys would have insured the Account was recalled.

But—if Plaintiff's attorney had done so—Plaintiff would not have the potential to profit from FCRA and FDCPA claims against NCS and the CRAs. Plaintiff's attorney had the ability, with a simple email, to avoid the damage of which she complains in this litigation. That failure to do so was contributory negligence and a failure to mitigate her damages to such a degree that it should bar Plaintiff's recovery from NCS. At a minimum, NCS is entitled to a finding that Plaintiff breached her duty to mitigate her actual damages. As Plaintiff's counsel was in communication with TCG's counsel, Plaintiff held the key to prevent her damages and elected not to do so. Plaintiff's counsel, who wrote Plaintiff's dispute letter that requested the CRAs to contact TCG's attorneys to verify that the Order of Judgment nullified the Account, is an admission that communication with TCG's attorneys would result in deletion of the TCG tradeline. So Plaintiff's

counsel was aware of and participated in this decision to forgo being forthright about her alleged concerns about the continued reporting of the Account and instead laid behind the log to create the claims she asserts in this litigation. *United States v. Miles*, 327 F. App'x 797, 806 n.14 (10th Cir. 2009) (A plaintiff "ought not be permitted to lie behind the log hoping to exploit a problem capable of being resolved" earlier.)).

WHEREFORE, National Credit Systems, Inc. respectfully requests that the Court grant this summary judgment and deny all of Plaintiff's claims, or at a minimum, deny Plaintiff's FDCPA claims based on the bona fide error, deny Plaintiff's claim for intentional violation of the FCRA, and deny Plaintiff's claim for actual damages based on her contributory negligence and failure to mitigate.  NCS requests such other and further relief consistent with motion.

Respectfully submitted,


By:     *s/John W. Bowdich*
        JOHN W. BOWDICH
        State Bar No. 00796233

BOWDICH & ASSOCIATES, PLLC
8150 N. Central Expy., Suite 500
Dallas, Texas 75206
(214) 307-9500 – Telephone
(214) 307-5137 – Telecopy
jbowdich@bowdichlaw.com

ATTORNEY FOR DEFENDANT
NATIONAL CREDIT SYSTEMS, INC.

<u>CERTIFICATE OF SERVICE</u>

On August 30, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, District of Colorado using the electronic case filing system of the court, thereby providing service to all parties.

Daniel J. Vedra, Esq.                                    <u>Via ECF</u>: <u>dan@vedralaw.com</u>
Vedra Law LLC
1444 Blake Street
Denver, CO 80202

Duran Keller, Esq.                                       <u>Via ECF</u>: <u>duran@keller.law</u>
8 N Third Street, Suite 403
Lafayette, IN 47901-1264
     *Attorneys for Plaintiff*

                                   By:     *s/John W. Bowdich*
                                           John W. Bowdich