# EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

ZEPHERINE MILLER,                    §
                                     §
        *Plaintiff*,                 §
                                     §
v.                                   §        No. 1:23-cv-02620-MEH
                                     §
NATIONAL CREDIT SYSTEMS, INC.,       §
                                     §
        *Defendant*.                 §

---

**DECLARATION OF JOHN W. BOWDICH
ATTORNEY FOR DEFENDANT NCS**

---

1.      My name is John W. Bowdich.  Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I am fully competent to provide this Declaration and the foregoing statements are true and correct, and within my personal knowledge as an attorney representing Defendant National Credit Systems, Inc. ("NCS") in the above-referenced litigation.

2.      As the Court can take Judicial Notice of judicial proceedings and based on the documents produced by Plaintiff in the above-referenced litigation (all of which have a bates label "MILLERxxx"), on December 29, 2021, Zepherine Miller ("Plaintiff" or "Miller") filed a Class Action Complaint against The Connor Group, a Real Estate Investment Firm, LLC ("TCG") in the District Court for the City and County of Denver, State of Colorado styled Case No.: 2021CV34094, Division 275, *Zepherine Miller, an individual, on behalf of herself and all others similarly situated v. The*

DECLARATION OF JOHN W. BOWDICH                                    Page 1 of 4

*Connor Group, a Real Estate Investment Firm, LLC d/b/a The Connor Group* alleging violations of the Colorado Rental Application Fairness Act and seeking a declaratory judgment that Ms. Miller was not liable under a Lease with TCG for an apartment at Alas Over Lowry Apartments (the "State Court Lawsuit").

3.      After months of litigation, without admitting any liability and solely to prevent additional litigation costs, TCG, through its attorneys, Greenberg Traurig, LLP ("GT Law") made an Offer of Judgment to Ms. Miller and her attorney, Dan Vedra, to resolve the State Court Litigation.  Mr. Vedra communicated to GT Law that Ms. Miller accepted the Offer of Judgment on January 4, 2023.  A true and correct copy of the Offer of Judgment and Ms. Miller's acceptance are attached hereto as Exhibit "B-1."  As a result, TCG and Ms. Miller entered into an agreed Order of Judgment (the "Judgment"), a true and correct copy of which is attached hereto as Exhibit "B-2."

4.      Thereafter Dan Vedra communicated with TCG's attorneys, GT Law, regarding various aspects of the conclusion of State Court Litigation, including the following emails:

- Feb. 20, 2023:  Emails whereby Dan Vedra sought an extension of time for Mr. Vedra to file a motion for fees, a true and correct copy of which is attached as Exhibit "B-3."

- Mar. 23, 2023:  Emails whereby Dan Vedra agreed to extend the time for TCG's response brief to the motion for fees so long as TCG confirmed to pay the $1,781 damage award in the Judgment directly to Ms. Miller, a true and correct copy of which is attached as Exhibit "B-4."

- <u>Apr. 18, 2023</u>:  Emails whereby Dan Vedra sought an extension of time for Mr. Vedra to file a reply brief to the motion for fees, a true and correct copy of which is attached as Exhibit "B-5."

- <u>Jun. 12, 2023</u>:  Emails whereby Dan Vedra sought payment of the attorneys' fees and costs awarded to be made payable to his law firm rather than Ms. Miller, a true and correct copy of which is attached as Exhibit "B-6."

- <u>Jun. 27, 2023</u>:  Emails whereby Dan Vedra agreed to notarize and file the satisfaction of judgment, a true and correct copy of which is attached as Exhibit "B-7."

None of those emails from February, 2023 to June, 2023, nor in any documents produced by Plaintiff in the above-referenced litigation, did Ms. Miller's attorney, Mr. Vedra, indicate to GT Law that the debt extinguished by the Judgment was being collected by TCG or any collection agency on behalf of TCG.  In fact, quite the opposite, as Ms. Miller, by Mr. Vedra, filed a Satisfaction of Judgment.  A true and correct copy of the Satisfaction of Judgment filed July 7, 2023 is attached hereto as Exhibit "B-8."

5.     All of the Exhibits referenced herein were produced by Plaintiff in this litigation, responsive to various requests for production, including NCS's Requests for Production Nos. 2 and 3 which requested:

> 2.     All communications between your attorney and the attorneys representing The Original Creditors related to any Offer of Judgment or settlement of The Connor Group Litigation.

> 3.     All communications between your attorney and the attorneys representing the Original Creditor from January 1, 2023 to present.

6.     In addition, attached as Exhibit "B-9" are Plaintiff's responses to Requests for Admission whereby Plaintiff attempted to evade direct admissions that

<u>DECLARATION OF JOHN W. BOWDICH</u>                                    Page 3 of 4

Plaintiff and her attorney failed to inform TCG and GT Law regarding the issue whether NCS continued to collect on the underlying debt by furnishing information to the consumer reporting agencies regarding the debt.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Dallas, Texas on August 29, 2024.

By:___*s/ John W. Bowdich*_____
        John W. Bowdich
        Attorney for NCS

# EXHIBIT "B-1"

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br>1437 Bannock Street, Room 256<br>Denver, CO 80202<br>303-606-2300 | |
| ZEPHERINE MILLER, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE CONNOR GROUP, A REAL ESTATE INVESTMENT FIRM, LLC d/b/a THE CONNOR GROUP, an Ohio limited liability company,<br><br>Defendant. | ▲ COURT USE ONLY ▲<br>_____<br><br>Case Number: 2021CV34094<br><br>Division: 275 |
| *Attorneys for Defendant:*<br>Lindsay N. Aherne, #48391<br>Naomi Beer, #29144<br>Greenberg Traurig LLP<br>1144 15th Street, Suite 3300<br>Denver, Colorado 80202<br>Telephone: (303) 572-6500<br>Facsimile: (303) 572-6540<br>ahernel@gtlaw.com<br>beern@gtlaw.com<br><br>Gregory E. Ostfeld<br>Greenberg Traurig LLP<br>77 West Wacker Drive, Suite 3100<br>Chicago, IL 60601<br>Telephone: (312) 476-5056<br>Facsimile: (312) 899-0420<br>OstfeldG@gtlaw.com. | |

## DEFENDANT'S OFFER OF JUDGMENT

**TO:   Zepherine Miller**

Pursuant to C.R.S. § 13-17-202, Defendant The Connor Group, a Real Estate Investment Firm, LLC d/b/a The Connor Group ("Defendant") by and through its counsel, the law firm of Greenberg Traurig, LLP, hereby offers to have judgment entered in favor of Plaintiff Zepherine

MILLER02121

Miller ("Plaintiff") against Defendant, in the total amount of ONE THOUSAND SEVEN HUNDRED AND EIGHTY ONE DOLLARS and 00/100 ($1,781.00), which is inclusive of all damages (statutory and actual damages) sought by Plaintiff in the above captioned action. In addition to the foregoing damages, the judgment shall also include the amount of pre-offer interest and Plaintiff's reasonable costs and attorneys' fees (an amount to be determined by the Court upon acceptance of this offer) that are recoverable under C.R.S. § 13-17-202 (the statute governing offers of judgment), the Colorado Consumer Protection Act, C.R.S. § 6-1-101 et seq., and the Colorado Rental Application Fairness Act, C.R.S. § 38-12-901 et seq. The judgment would also declare that "Plaintiff is not obligated to Defendant under the subject lease agreement and the lease agreement is void."

If this offer is accepted, it becomes a settlement agreement that achieves a full and complete satisfaction of all issues and claims asserted against Defendant by Plaintiff.  This offer of judgment is made for the purposes specified in C.R.S. § 13-17-202 and is made only as a compromise.  Evidence of this offer is not admissible except in a proceeding to determine costs and attorney's fees, if appropriate, and is not to be construed as an admission of any kind. Defendant does not waive any claims or defenses by virtue of making this offer of judgment.

This offer shall remain open for fourteen (14) days from the date of service and shall be deemed rejected and withdrawn if not accepted by Plaintiff within that time.  If this offer of judgment is not accepted, Defendant will seek to enforce all of the rights and remedies arising out of such a failure to accept, as provided in C.R.S. § 13-17-202.

Respectfully submitted this 21st day of December, 2022.

GREENBERG TRAURIG LLP

s/   Lindsay N. Aherne
       Lindsay N. Aherne, #48391

*Attorneys for Defendant The Connor Group, a Real Estate Investment Firm, LLC d/b/a The Connor Group*

*(Original on file at offices of Greenberg Traurig LLP, pursuant to C.R.C.P. 121, § 1-26)*

2

MILLER02122

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2022, a true and accurate copy of the foregoing were served to the following individuals via email:

Daniel J. Vedra, Atty. Reg. #43596
Vedra Law LLC
1444 Blake Street
Denver, CO 80202
dan@vedralaw.com

Phillip Robinson, Md. Atty. Reg. #0006210356
Admitted Pro Hac Vice
Consumer Law Center LLC
10125 Colesville Road, Suite 378
Silver Spring, MD  20901
phillip@marylandconsumer.com

*Attorneys for Plaintiff*

<u>*s/ Lindsay N. Aherne*</u>
Lindsay N. Aherne

*(Original on file at offices of Greenberg Traurig LLP, pursuant to C.R.C.P. 121, § 1-26)*

MILLER02123

**From:** Daniel J. Vedra
**Sent:** 1/4/2023 10:35:54 AM
**To:** ahernel@gtlaw.com; phillip@marylandconsumer.com
**Cc:** OstfeldG@gtlaw.com; BeerN@gtlaw.com
**Subject:** RE: Offer of Judgment - Rule 408 communication - Miller v Connor Group

Lindsay,

Ms. Miller accepts the offer of judgment.  Please send a proposed judgment for our review.  I assume that we will brief the issue of fees 14 days after entry of the judgment against your client.

Dan



1444 Blake Street
Denver, CO 80202

Direct: (303) 937-6540
Fax:    (303) 937-6547

---

**From:** ahernel@gtlaw.com <ahernel@gtlaw.com>
**Sent:** Wednesday, December 21, 2022 7:07 PM
**To:** dan@vedralaw.com; phillip@marylandconsumer.com
**Cc:** OstfeldG@gtlaw.com; BeerN@gtlaw.com
**Subject:** Offer of Judgment - Rule 408 communication - Miller v Connor Group

Dan and Phillip,

I have attached a statutory offer of judgment from the Connor Group.

Please be sure to include my colleagues (CCd) on any response / future correspondence to me as I will soon be out on parental leave.

Thank you,

**Lindsay Aherne**
Associate

Greenberg Traurig, LLP
1144 15th Street, Suite 3300 | Denver, Colorado 80202
Office +1 303.572.6508 | Cell +1 303.847.5050 | Fax +1 720.904.7608
ahernel@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

MILLER02019

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

MILLER02020

# EXHIBIT "B-2"

| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br>1437 Bannock Street, Room 256<br>Denver, CO 80202<br>303-606-2300 | DATE FILED: January 30, 2023 6:16 PM<br>CASE NUMBER: 2021CV34094 |
|---|---|
| ZEPHERINE MILLER, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE CONNOR GROUP, A REAL ESTATE INVESTMENT FIRM, LLC d/b/a THE CONNOR GROUP, an Ohio limited liability company,<br><br>Defendant. | ▲ COURT USE ONLY ▲<br>_____<br>Case Number: 2021CV34094<br><br>Courtroom: 275 |

## ORDER OF JUDGMENT AGAINST DEFENDANT

On January 4, 2023, Plaintiff Zepherine Miller timely accepted an offer of judgment made by Defendant The Connor Group, A Real Estate Investment Firm, LLC d/b/a The Connor Group pursuant to C.R.S. § 13-17-202 to have judgment entered in favor Plaintiff.   Accordingly, **IT IS ORDERED THAT**:

1.      Judgment is entered in favor of Zepherine Miller and against The Connor Group, A Real Estate Investment Firm, LLC d/b/a The Connor Group in the amount of **One Thousand Seven Hundred and Eighty-One Dollars ($1,781.00)** together with pre-judgment interest in the amount of $308.20;

2.      In accordance with C.R.C.P. 121 § 1-22(2), within 21 days of entry of this Order, Zepherine Miller may submit a bill of costs, and a motion for reasonable attorneys' fees recoverable under C.R.S. § 13-17-202, the Colorado Consumer Protection Act, C.R.S. § 6-1-101 et seq., and the Colorado Rental Application Fairness Act, C.R.S. § 38-12-901 et seq.; and

3.      The Court declares that Plaintiff is not obligated to Defendant under the subject lease agreement and the lease agreement is void.

4.      All future dates in this case are hereby **VACATED**.

DATED AND ORDERED January 30, 2023.          BY THE COURT:

Kandace C. Gerdes
District Court Judge

MILLER01017

# EXHIBIT "B-3"

| | |
|---|---|
| **From:** | Elayna.Fiene@gtlaw.com |
| **Sent:** | 2/20/2023 10:28:54 AM |
| **To:** | dan@vedralaw.com; OstfeldG@gtlaw.com; BeerN@gtlaw.com |
| **Cc:** | phillip@marylandconsumer.com |
| **Subject:** | RE: Miller EOT on Fees |

Hi Dan,

We do not oppose, provided you are willing to include in your motion an indication that we will have the standard 21 days to respond to your motion once it is filed?

Thank you,
Elayna

**Elayna Fiene**
Of Counsel

Greenberg Traurig, LLP
1144 15th Street, Suite 3300 | Denver, Colorado 80202
T +1 303.572.6528
Elayna.Fiene@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** Daniel J. Vedra <dan@vedralaw.com>
**Sent:** Monday, February 20, 2023 9:03 AM
**To:** Fiene, Elayna (OfCnl-DEN-LT) <Elayna.Fiene@gtlaw.com>; Ostfeld, Gregory E. (Shld-Chi-LT) <OstfeldG@gtlaw.com>; Beer, Naomi (Shld-Den-LT-Labor-EmpLaw) <BeerN@gtlaw.com>
**Cc:** Phillip Robinson <phillip@marylandconsumer.com>
**Subject:** Miller EOT on Fees

**\*EXTERNAL TO GT\***

Counsel:

I had a couple of time sensitive matters pop up during the last two weeks that has delayed me in drafting the motion for fees and bill of costs.  Do you oppose a two week extension?

Thank you,

Dan


--

Vedra Law LLC
1444 Blake Street
Denver, CO 80202

MILLER02070

Direct:  (303) 937-6540
Fax:     (303) 937-6547

vedralaw.com

To ensure compliance with requirements imposed by the IRS, we inform you that any federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for purposes of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or tax-related matter addressed herein.

This transmission and any attachment is attorney privileged and confidential. Any dissemination or copying of this communication is prohibited. If you are not the intended recipient, please notify us immediately by replying and delete the message. Thank you.

---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

# EXHIBIT "B-4"

| | |
|---|---|
| **From:** | Elayna.Fiene@gtlaw.com |
| **Sent:** | 3/23/2023 9:02:53 PM |
| **To:** | dan@vedralaw.com; OstfeldG@gtlaw.com; BeerN@gtlaw.com |
| **Cc:** | phillip@marylandconsumer.com |
| **Subject:** | RE: Miller EOT on Fees |

Thank you. We've provided this address to our client and will let you know when payment has been sent.

**Elayna Fiene**
Of Counsel

Greenberg Traurig, LLP
1144 15th Street, Suite 3300 | Denver, Colorado 80202
T +1 303.572.6528
Elayna.Fiene@gtlaw.com | www.gtlaw.com | View GT Biography

 GreenbergTraurig

---

**From:** Daniel J. Vedra <dan@vedralaw.com>
**Sent:** Thursday, March 23, 2023 3:06 PM
**To:** Fiene, Elayna (OfCnl-DEN-LT) <Elayna.Fiene@gtlaw.com>; Ostfeld, Gregory E. (Shld-Chi-LT) <OstfeldG@gtlaw.com>; Beer, Naomi (Shld-Den-LT-Labor-EmpLaw) <BeerN@gtlaw.com>
**Cc:** phillip@marylandconsumer.com
**Subject:** RE: Miller EOT on Fees

Yes.  Please pay it directly to Ms. Miller at:

14078 NE 4th Street
Choctaw, OK 73020

**VEDRA LAW LLC**

1444 Blake Street
Denver, CO 80202

Direct: (303) 937-6540
Fax:    (303) 937-6547

---

**From:** Elayna.Fiene@gtlaw.com <Elayna.Fiene@gtlaw.com>
**Sent:** Thursday, March 23, 2023 3:02 PM
**To:** dan@vedralaw.com; OstfeldG@gtlaw.com; BeerN@gtlaw.com
**Cc:** phillip@marylandconsumer.com
**Subject:** RE: Miller EOT on Fees

Hi Dan,

I assume that your email below is requesting that our client pay the agreed-upon judgment amount of $1,781 in exchange for your agreement to our requested extension. If that is the case, we will agree. Please confirm, and also provide us with payment instructions. We will file an unopposed motion for the extension before the weekend.

Thank you,
Elayna

**Elayna Fiene**
Of Counsel

Greenberg Traurig, LLP
1144 15th Street, Suite 3300 | Denver, Colorado 80202
T +1 303.572.6528
Elayna.Fiene@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** Daniel J. Vedra <dan@vedralaw.com>
**Sent:** Thursday, March 23, 2023 1:32 PM
**To:** Fiene, Elayna (OfCnl-DEN-LT) <Elayna.Fiene@gtlaw.com>; Ostfeld, Gregory E. (Shld-Chi-LT) <OstfeldG@gtlaw.com>; Beer, Naomi (Shld-Den-LT-Labor-EmpLaw) <BeerN@gtlaw.com>
**Cc:** phillip@marylandconsumer.com
**Subject:** RE: Miller EOT on Fees

Is your client willing to pay the judgment against it to Ms. Miller without prejudice to our right to continue seeking fees?



1444 Blake Street
Denver, CO 80202

Direct: (303) 937-6540
Fax:    (303) 937-6547

---

**From:** Elayna.Fiene@gtlaw.com <Elayna.Fiene@gtlaw.com>
**Sent:** Thursday, March 23, 2023 10:14 AM
**To:** dan@vedralaw.com; OstfeldG@gtlaw.com; BeerN@gtlaw.com
**Cc:** phillip@marylandconsumer.com
**Subject:** RE: Miller EOT on Fees

Dan,

We have been a bit buried over here. Would you oppose an extension of two weeks for our client's responses to your motion for fees and bill of costs? I believe that the new deadline would be April 11, 2023.

Thank you,
Elayna

**Elayna Fiene**
Of Counsel

Greenberg Traurig, LLP
1144 15th Street, Suite 3300 | Denver, Colorado 80202
T +1 303.572.6528
Elayna.Fiene@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

**GT** GreenbergTraurig

---

**From:** Daniel J. Vedra <dan@vedralaw.com>
**Sent:** Monday, February 20, 2023 9:03 AM
**To:** Fiene, Elayna (OfCnl-DEN-LT) <Elayna.Fiene@gtlaw.com>; Ostfeld, Gregory E. (Shld-Chi-LT) <OstfeldG@gtlaw.com>; Beer, Naomi (Shld-Den-LT-Labor-EmpLaw) <BeerN@gtlaw.com>
**Cc:** Phillip Robinson <phillip@marylandconsumer.com>
**Subject:** Miller EOT on Fees

**\*EXTERNAL TO GT\***

Counsel:

I had a couple of time sensitive matters pop up during the last two weeks that has delayed me in drafting the motion for fees and bill of costs.  Do you oppose a two week extension?

Thank you,

Dan

--

Vedra Law LLC
1444 Blake Street
Denver, CO 80202

Direct:  (303) 937-6540
Fax:     (303) 937-6547

vedralaw.com

To ensure compliance with requirements imposed by the IRS, we inform you that any federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for purposes of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or tax-related matter addressed herein.

This transmission and any attachment is attorney privileged and confidential. Any dissemination or copying of this communication is prohibited. If you are not the intended recipient, please notify us immediately by replying and delete the message. Thank you.

---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

MILLER02088

# EXHIBIT "B-5"

**From:**          Elayna.Fiene@gtlaw.com
**Sent:**          4/18/2023 1:17:47 PM
**To:**            dan@vedralaw.com; OstfeldG@gtlaw.com; BeerN@gtlaw.com
**Cc:**            phillip@marylandconsumer.com
**Subject:**       RE: Miller EOT on Fees


Hi Dan,

My apologies, I was in a meeting all day yesterday and still haven't caught up on my emails. We do not object to your requested extension.

Elayna

**Elayna Fiene**
Of Counsel

Greenberg Traurig, LLP
1144 15th Street, Suite 3300 | Denver, Colorado 80202
T +1 303.572.6528
Elayna.Fiene@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

**GT** GreenbergTraurig

---

**From:** Daniel J. Vedra <dan@vedralaw.com>
**Sent:** Tuesday, April 18, 2023 1:16 PM
**To:** Fiene, Elayna (OfCnl-DEN-LT) <Elayna.Fiene@gtlaw.com>; Ostfeld, Gregory E. (Shld-Chi-LT) <OstfeldG@gtlaw.com>; Beer, Naomi (Shld-Den-LT-Labor-EmpLaw) <BeerN@gtlaw.com>
**Cc:** phillip@marylandconsumer.com
**Subject:** RE: Miller EOT on Fees


Following up on this.

 **VEDRA LAW LLC**

1444 Blake Street
Denver, CO 80202

Direct: (303) 937-6540
Fax:    (303) 937-6547

---

**From:** Daniel J. Vedra <dan@vedralaw.com>
**Sent:** Monday, April 17, 2023 3:21 PM
**To:** 'Elayna.Fiene@gtlaw.com' <Elayna.Fiene@gtlaw.com>; 'OstfeldG@gtlaw.com' <OstfeldG@gtlaw.com>; 'BeerN@gtlaw.com' <BeerN@gtlaw.com>

**Cc:** 'phillip@marylandconsumer.com' <phillip@marylandconsumer.com>
**Subject:** RE: Miller EOT on Fees

Elayna,

My wife had surgery last week and I will need a one week extension to file the reply.  Please let me know if this is agreeable.

DAn

 **VEDRA LAW LLC**

1444 Blake Street
Denver, CO 80202

Direct: (303) 937-6540
Fax:    (303) 937-6547

---

**From:** Elayna.Fiene@gtlaw.com <Elayna.Fiene@gtlaw.com>
**Sent:** Thursday, March 23, 2023 9:03 PM
**To:** dan@vedralaw.com; OstfeldG@gtlaw.com; BeerN@gtlaw.com
**Cc:** phillip@marylandconsumer.com
**Subject:** RE: Miller EOT on Fees

Thank you. We've provided this address to our client and will let you know when payment has been sent.

**Elayna Fiene**
Of Counsel

Greenberg Traurig, LLP
1144 15th Street, Suite 3300 | Denver, Colorado 80202
T +1 303.572.6528
Elayna.Fiene@gtlaw.com | www.gtlaw.com | View GT Biography

**GT** GreenbergTraurig

---

**From:** Daniel J. Vedra <dan@vedralaw.com>
**Sent:** Thursday, March 23, 2023 3:06 PM
**To:** Fiene, Elayna (OfCnl-DEN-LT) <Elayna.Fiene@gtlaw.com>; Ostfeld, Gregory E. (Shld-Chi-LT) <OstfeldG@gtlaw.com>; Beer, Naomi (Shld-Den-LT-Labor-EmpLaw) <BeerN@gtlaw.com>
**Cc:** phillip@marylandconsumer.com
**Subject:** RE: Miller EOT on Fees

Yes.  Please pay it directly to Ms. Miller at:

14078 NE 4th Street
Choctaw, OK 73020

 **VEDRA LAW LLC**

1444 Blake Street
Denver, CO 80202

Direct: (303) 937-6540
Fax:    (303) 937-6547

---

**From:** Elayna.Fiene@gtlaw.com <Elayna.Fiene@gtlaw.com>
**Sent:** Thursday, March 23, 2023 3:02 PM
**To:** dan@vedralaw.com; OstfeldG@gtlaw.com; BeerN@gtlaw.com
**Cc:** phillip@marylandconsumer.com
**Subject:** RE: Miller EOT on Fees

Hi Dan,

I assume that your email below is requesting that our client pay the agreed-upon judgment amount of $1,781 in exchange for your agreement to our requested extension. If that is the case, we will agree. Please confirm, and also provide us with payment instructions. We will file an unopposed motion for the extension before the weekend.

Thank you,
Elayna

**Elayna Fiene**
Of Counsel

Greenberg Traurig, LLP
1144 15th Street, Suite 3300 | Denver, Colorado 80202
T +1 303.572.6528
Elayna.Fiene@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** Daniel J. Vedra <dan@vedralaw.com>
**Sent:** Thursday, March 23, 2023 1:32 PM
**To:** Fiene, Elayna (OfCnl-DEN-LT) <Elayna.Fiene@gtlaw.com>; Ostfeld, Gregory E. (Shld-Chi-LT) <OstfeldG@gtlaw.com>; Beer, Naomi (Shld-Den-LT-Labor-EmpLaw) <BeerN@gtlaw.com>
**Cc:** phillip@marylandconsumer.com
**Subject:** RE: Miller EOT on Fees

Is your client willing to pay the judgment against it to Ms. Miller without prejudice to our right to continue seeking fees?



1444 Blake Street
Denver, CO 80202

Direct: (303) 937-6540
Fax:    (303) 937-6547

---

**From:** Elayna.Fiene@gtlaw.com <Elayna.Fiene@gtlaw.com>
**Sent:** Thursday, March 23, 2023 10:14 AM
**To:** dan@vedralaw.com; OstfeldG@gtlaw.com; BeerN@gtlaw.com
**Cc:** phillip@marylandconsumer.com
**Subject:** RE: Miller EOT on Fees

Dan,

We have been a bit buried over here. Would you oppose an extension of two weeks for our client's responses to your motion for fees and bill of costs? I believe that the new deadline would be April 11, 2023.

Thank you,
Elayna

**Elayna Fiene**
Of Counsel

Greenberg Traurig, LLP
1144 15th Street, Suite 3300 | Denver, Colorado 80202
T +1 303.572.6528
Elayna.Fiene@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** Daniel J. Vedra <dan@vedralaw.com>
**Sent:** Monday, February 20, 2023 9:03 AM
**To:** Fiene, Elayna (OfCnl-DEN-LT) <Elayna.Fiene@gtlaw.com>; Ostfeld, Gregory E. (Shld-Chi-LT) <OstfeldG@gtlaw.com>; Beer, Naomi (Shld-Den-LT-Labor-EmpLaw) <BeerN@gtlaw.com>
**Cc:** Phillip Robinson <phillip@marylandconsumer.com>
**Subject:** Miller EOT on Fees

**\*EXTERNAL TO GT\***

Counsel:

MILLER02101

I had a couple of time sensitive matters pop up during the last two weeks that has delayed me in drafting the motion for fees and bill of costs.  Do you oppose a two week extension?

Thank you,

Dan


--

Vedra Law LLC
1444 Blake Street
Denver, CO 80202

Direct:  (303) 937-6540
Fax:     (303) 937-6547

vedralaw.com

To ensure compliance with requirements imposed by the IRS, we inform you that any federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for purposes of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or tax-related matter addressed herein.


This transmission and any attachment is attorney privileged and confidential. Any dissemination or copying of this communication is prohibited. If you are not the intended recipient, please notify us immediately by replying and delete the message. Thank you.

---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

MILLER02102

# EXHIBIT "B-6"

**From:** Daniel J. Vedra
**Sent:** 6/12/2023 9:02:06 AM
**To:** 'OstfeldG@gtlaw.com'; 'dan@vedralaw.com'
**Cc:** 'ahernel@gtlaw.com'; 'BeerN@gtlaw.com'; 'phillip@marylandconsumer.com'
**Subject:** RE: Miller v. Connor Group Final Payment

Greg,

I was out of the office when the check arrived, so this morning was the first chance I've looked at it.  It was made out to Ms. Miller and should be payable to Vedra Law LLC.  Would you kindly ask your client to re-issue payment?  My client has relocated to Oklahoma and there is no easy or convenient way to get her endorsement.  Thank you.

Dan



1444 Blake Street
Denver, CO 80202

Direct: (303) 937-6540
Fax:    (303) 937-6547

---

**From:** OstfeldG@gtlaw.com <OstfeldG@gtlaw.com>
**Sent:** Tuesday, June 6, 2023 9:01 PM
**To:** dan@vedralaw.com
**Cc:** ahernel@gtlaw.com; BeerN@gtlaw.com; phillip@marylandconsumer.com
**Subject:** Miller v. Connor Group Final Payment

Good evening, Dan. Congratulations on the result of your fee petition. The Connor Group has overnighted a check for the bill of costs, fee award, and interest, and you should receive it by tomorrow (Wednesday, June 7). I would appreciate confirmation when you have received it. Please let me know if you have any questions.

Very truly yours,

**Greg Ostfeld**
Shareholder; Vice Chair, Pharmaceutical, Medical Device & Healthcare Litigation Practice Group

Greenberg Traurig, LLP
77 West Wacker Drive | Suite 3100 | Chicago, IL 60601
T +1 312.476.5056 | F +1 312.899.0420 | C +1 312.656.5461
OstfeldG@gtlaw.com | www.gtlaw.com | View GT Biography



MILLER02104

Albany. Amsterdam. Atlanta. Austin. Boston. Berlin*. Charlotte. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Las Vegas. London*. Long Island. Los Angeles. Mexico City*. Miami. Milan*. Minneapolis. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia. Phoenix. Portland. Sacramento. Salt Lake City. San Francisco. Seoul*. Shanghai. Silicon Valley. Tallahassee. Tampa. Tel Aviv*. Tokyo*. Warsaw*. Washington, D.C. West Palm Beach. Westchester County.

*Berlin: Greenberg Traurig's Berlin Office is operated by Greenberg Traurig Germany, an affiliate of Greenberg Traurig, P.A. and Greenberg Traurig, LLP.; London: Operates as a separate UK registered legal entity; Mexico City: Operates as Greenberg Traurig, S.C.; Milan: Greenberg Traurig's Milan office is operated by Greenberg Traurig Santa Maria, an affiliate of Greenberg Traurig, P.A. and Greenberg Traurig, LLP; Seoul: Operated by Greenberg Traurig LLP Foreign Legal Consultant Office; Tel Aviv: A branch of Greenberg Traurig, P.A., Florida, USA; Tokyo: Greenberg Traurig's Tokyo Office is operated by GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimubengoshi Jimusho, affiliates of Greenberg Traurig, P.A. and Greenberg Traurig, LLP; Warsaw: Operates as GREENBERG TRAURIG Nowakowska-Zimoch Wysokiński sp.k.

---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

MILLER02105

# EXHIBIT "B-7"

**From:**      Daniel J. Vedra
**Sent:**      6/27/2023 2:41:48 PM
**To:**        ahernel@gtlaw.com
**Cc:**        OstfeldG@gtlaw.com; BeerN@gtlaw.com; phillip@marylandconsumer.com
**Subject:**   Re: Miller v. Connor Group Final Payment

Yes but it has to be notarized and I have not been in the office.  Should be able to do it tomorrow.

On Tue, Jun 27, 2023 at 2:29 PM <ahernel@gtlaw.com> wrote:

> Dan – thank you for destroying the check. Are you still planning to file a satisfaction of judgment?

**Lindsay Aherne**
Of Counsel

Greenberg Traurig, LLP
1144 15th Street, Suite 3300 | Denver, Colorado 80202
Office +1 303.572.6508 | Cell +1 303.847.5050 | Fax +1 720.904.7608
ahernel@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** Daniel J. Vedra <dan@vedralaw.com>
**Sent:** Monday, June 12, 2023 3:54 PM
**To:** Ostfeld, Gregory E. (Shld-Chi-LT) <OstfeldG@gtlaw.com>
**Cc:** Aherne, Lindsay (OfCnl-DEN-LT) <ahernel@gtlaw.com>; Beer, Naomi (Shld-Den-LT-Labor-EmpLaw) <BeerN@gtlaw.com>; phillip@marylandconsumer.com
**Subject:** RE: Miller v. Connor Group Final Payment

Thank you, Greg.  I will destroy the check I received.



1444 Blake Street

Denver, CO 80202

Direct: (303) 937-6540

Fax:    (303) 937-6547

---

**From:** OstfeldG@gtlaw.com <OstfeldG@gtlaw.com>
**Sent:** Monday, June 12, 2023 2:10 PM
**To:** dan@vedralaw.com
**Cc:** ahernel@gtlaw.com; BeerN@gtlaw.com; phillip@marylandconsumer.com
**Subject:** RE: Miller v. Connor Group Final Payment


Hi Dan. I checked with The Connor Group, and they are going to reissue the check with payment to Vedra Law LLC.


**Very truly yours,**


**Greg Ostfeld**
Shareholder; Vice Chair, Pharmaceutical, Medical Device & Healthcare Litigation Practice Group

Greenberg Traurig, LLP
77 West Wacker Drive | Suite 3100 | Chicago, IL 60601
T +1 312.476.5056  |  F +1 312.899.0420  |  C +1 312.656.5461
OstfeldG@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

**GT** GreenbergTraurig

Albany. Amsterdam. Atlanta. Austin. Boston. Berlin*. Charlotte. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Las Vegas. London*. Long Island. Los Angeles. Mexico City*. Miami. Milan*. Minneapolis. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia. Phoenix. Portland. Sacramento. Salt Lake City. San Francisco. Seoul*. Shanghai. Silicon Valley. Tallahassee. Tampa. Tel Aviv*. Tokyo*. Warsaw*. Washington, D.C. West Palm Beach. Westchester County.

*Berlin: Greenberg Traurig's Berlin Office is operated by Greenberg Traurig Germany, an affiliate of Greenberg Traurig, P.A. and Greenberg Traurig, LLP.; London: Operates as a separate UK registered legal entity; Mexico City: Operates as Greenberg Traurig, S.C.; Milan: Greenberg Traurig's Milan office is operated by Greenberg Traurig Santa Maria, an affiliate of Greenberg Traurig, P.A. and Greenberg Traurig, LLP; Seoul: Operated by Greenberg Traurig LLP Foreign Legal Consultant Office; Tel Aviv: A branch of Greenberg Traurig, P.A., Florida, USA; Tokyo: Greenberg Traurig's Tokyo Office is operated by GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimubengoshi Jimusho, affiliates of Greenberg Traurig, P.A. and Greenberg Traurig, LLP; Warsaw: Operates as GREENBERG TRAURIG Nowakowska-Zimoch Wysokiński sp.k.

MILLER02110

**From:** Daniel J. Vedra <dan@vedralaw.com>
**Sent:** Monday, June 12, 2023 10:02 AM
**To:** Ostfeld, Gregory E. (Shld-Chi-LT) <OstfeldG@gtlaw.com>; dan@vedralaw.com
**Cc:** Aherne, Lindsay (OfCnl-DEN-LT) <ahernel@gtlaw.com>; Beer, Naomi (Shld-Den-LT-Labor-EmpLaw) <BeerN@gtlaw.com>; phillip@marylandconsumer.com
**Subject:** RE: Miller v. Connor Group Final Payment

**\*EXTERNAL TO GT\***

Greg,


I was out of the office when the check arrived, so this morning was the first chance I've looked at it.  It was made out to Ms. Miller and should be payable to Vedra Law LLC.  Would you kindly ask your client to re-issue payment?  My client has relocated to Oklahoma and there is no easy or convenient way to get her endorsement.  Thank you.


Dan




1444 Blake Street

Denver, CO 80202


Direct: (303) 937-6540

Fax:   (303) 937-6547


**From:** OstfeldG@gtlaw.com <OstfeldG@gtlaw.com>
**Sent:** Tuesday, June 6, 2023 9:01 PM
**To:** dan@vedralaw.com

**Cc:** ahernel@gtlaw.com; BeerN@gtlaw.com; phillip@marylandconsumer.com
**Subject:** Miller v. Connor Group Final Payment

Good evening, Dan. Congratulations on the result of your fee petition. The Connor Group has overnighted a check for the bill of costs, fee award, and interest, and you should receive it by tomorrow (Wednesday, June 7). I would appreciate confirmation when you have received it. Please let me know if you have any questions.

**Very truly yours,**

**Greg Ostfeld**
**Shareholder; Vice Chair, Pharmaceutical, Medical Device & Healthcare Litigation Practice Group**

Greenberg Traurig, LLP
77 West Wacker Drive | Suite 3100 | Chicago, IL 60601
T +1 312.476.5056  |  F +1 312.899.0420  |  C +1 312.656.5461
OstfeldG@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

**GT** GreenbergTraurig

Albany. Amsterdam. Atlanta. Austin. Boston. Berlin*. Charlotte. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Las Vegas. London*. Long Island. Los Angeles. Mexico City*. Miami. Milan*. Minneapolis. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia. Phoenix. Portland. Sacramento. Salt Lake City. San Francisco. Seoul*. Shanghai. Silicon Valley. Tallahassee. Tampa. Tel Aviv*. Tokyo*. Warsaw*. Washington, D.C. West Palm Beach. Westchester County.

*Berlin: Greenberg Traurig's Berlin Office is operated by Greenberg Traurig Germany, an affiliate of Greenberg Traurig, P.A. and Greenberg Traurig, LLP.; London: Operates as a separate UK registered legal entity; Mexico City: Operates as Greenberg Traurig, S.C.; Milan: Greenberg Traurig's Milan office is operated by Greenberg Traurig Santa Maria, an affiliate of Greenberg Traurig, P.A. and Greenberg Traurig, LLP; Seoul: Operated by Greenberg Traurig LLP Foreign Legal Consultant Office; Tel Aviv: A branch of Greenberg Traurig, P.A., Florida, USA; Tokyo: Greenberg Traurig's Tokyo Office is operated by GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimubengoshi Jimusho, affiliates of Greenberg Traurig, P.A. and Greenberg Traurig, LLP; Warsaw: Operates as GREENBERG TRAURIG Nowakowska-Zimoch Wysokiński sp.k.

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

--

Vedra Law LLC
1444 Blake Street
Denver, CO 80202

Direct:  (303) 937-6540
Fax:    (303) 937-6547

vedralaw.com

To ensure compliance with requirements imposed by the IRS, we inform you that any federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for purposes of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or tax-related matter addressed herein.

This transmission and any attachment is attorney privileged and confidential. Any dissemination or copying of this communication is prohibited. If you are not the intended recipient, please notify us immediately by replying and delete the message. Thank you.

MILLER02113

# EXHIBIT "B-8"

| ☐ County Court ☒ District Court<br>Denver County, Colorado<br>Court Address: 1437 Bannock Street, Denver, CO 80202 | |
|---|---|
| | DATE FILED: July 5, 2023 10:12 AM<br>FILING ID: 5F507C05B5415<br>CASE NUMBER: 2021CV34094 |
| Plaintiff(s)/Petitioner(s): Zepherine Miller<br><br>v.<br><br>Defendant(s)/Respondent(s): The Connor Group, A Real Estate Investment Firm, LLC d/b/a The Connor Group, an Ohio limited liability company | ▲   **COURT USE ONLY**   ▲ |
| Attorney or Party Without Attorney (Name and Address):<br>Daniel J. Vedra<br>1444 Blake Street, Denver, CO 80202<br><br>Phone Number: 303-937-6540  E-mail: dan@vedralaw.com<br>FAX Number:   303-937-6547  Atty. Reg. #: 43596 | Case Number: 21CV34094<br><br><br>Division  275        Courtroom |
| **SATISFACTION OF JUDGMENT ☐ PARTIAL ☒ FULL** | |

In consideration of my receipt of $26,457.20 paid to me by The Connor Group, A Real Estate Investment Firm, LLC d/b/a The Connor Group, on June 12, 2023, and $2,089.20 previously paid ☐ partial ☒ full satisfaction is acknowledged by me toward payment of the judgment amount entered on January 30, 2023 in the amount of $ 2,089.20; May 25, 2023 in the amount of $766.00, and June 5, 2023 in the amount of $25,677.75 in my favor in the above-captioned action.

I hereby authorize the Clerk of Court to enter of record ☐ partial ☒ full satisfaction of judgment in the above-captioned action.

☐ By checking this box, I am acknowledging I am filling in the blanks and not changing anything else on the form.

☒ By checking this box, I am acknowledging that I have made a change to the original content of this form.

---

## VERIFICATION AND ACKNOWLEDGEMENT

**I swear/affirm under oath that I have read the foregoing Satisfaction of Judgment and that the statements set forth therein are true and correct to the best of my knowledge.**

_Daniel Vedra_
Printed name of Judgment Creditor/Attorney

_[signature]_
Signature of Judgment Creditor / Attorney

Petitioner(s)/Plaintiff(s)

---

Subscribed and affirmed, or sworn to before me in the County of _Denver_, State of _Colorado_, this _5_ day of _July_, 20 _23_.

My Commission Expires: _08-24-2024_

_[signature]_
Notary Public/Deputy Clerk

JDF 111    R3-18   SATISFACTION OF JUDGMENT PARTIAL OR FULL

**ALIVIA HARAM**<br>**NOTARY PUBLIC**<br>**STATE OF COLORADO**<br>NOTARY ID 20204029491<br>MY COMMISSION EXPIRES AUGUST 24TH 2024

MILLER01046

# EXHIBIT "B-9"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-2620-NYW-MEH

ZEPHERINE MILLER, an individual,

    Plaintiff,

v.

NATIONAL CREDIT SYSTEMS INC.,

    Defendant.

---

**PLAINTIFF'S FIRST SUPPLEMENTAL RESPONSES TO DEFENDANT NATIONAL CREDIT SYSTEMS, INC'S FIRST SET OF DISCOVERY TO PLAINTIFF**

---

Plaintiff Zepherine Miller ("Plaintiff" or "Ms. Miller"), by and through her attorney of record, Daniel J. Vedra, hereby responds to Defendant National Credit Systems, Inc.'s (the "Defendant" or the "Debt Collector") First Set of Discovery to Plaintiff.

**REQUEST FOR CONFERENCE**

In Defendant's First Set of Discovery to Plaintiff, Defendant states: "Pursuant to Federal Rules of Civil Procedure, and any and all applicable Local Rules(s), it is requested that you contact counsel for the requesting party in an effort to resolve by agreement any objections or other disputes which might exist prior to requesting intervention of the Court."

Counsel for Ms. Miller has requested that counsel for Defendant engage in such on conference. Counsel for Ms. Miller provided March 19th and March 21st as dates to speak, by telephone, concerning the discovery requests. Counsel for Defendant did not accept either of those dates, and then proposed that counsel confer after a deposition scheduled for March 18th. This time did not work for the undersigned. Rather than discuss this during the remotely conducted deposition, or schedule a date and time for conferral, counsel for

Defendant left the deposition while it was occurring and up on returning to the deposition, left before providing the court reporter with his contact information. Consequently, undersigned counsel was unable to discuss alternative meeting times with counsel for Defendant.

To date, counsel for Defendant has not contacted undersigned counsel to complete the request for conference as requested in Defendant's discovery requests. This violates not only the requirements that Defendant purported to impose in its discovery requests, but also violated Rule 1: the Federal Rules of Civil Procedure should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." By refusing to hold a telephonic conference to discuss the issues created by Defendant's discovery requests, Defendant has caused Plaintiff's counsel to expend unnecessary time in objecting to excessive discovery requests, harassed Plaintiff by seeking facially privileged information and information that is not in proportion to the needs of this case, and will likely result in the use of the Court's discovery dispute resolution procedures.

Undersigned counsel is available for a conferral call on Tuesday, April 16, 2024 between 10:00 a.m. and 2:00 p.m.; April 18, 2024 between 9:30 a.m. and 2:00 p.m.; and April 19, 2024 between 10:00 a.m. and 2:15 p.m.

## DEFINITIONS

As used in these requests for production of documents, the terms listed below are defined as follows:

(a) The terms "**requesting party**," "**Defendant**," "**National Credit Systems, Inc.,**" and "**NCS**" as used herein, shall mean, unless otherwise directed, **National Credit Systems, Inc.**, its successors or predecessors in interest, parent(s), subsidiaries, affiliates, brother-sister companies or related entities, their officers, directors, attorneys, accountants, agents, servants, employees and all other persons or entities acting or purporting to act on their behalf with respect to Plaintiff or the Account.

Objection:  Plaintiff objects to this definition to the extent that it purports to broadly define the Defendant beyond the commonly accepted meaning and beyond what is proportional or relevant to the needs of this case.  This definition would broadly define the Defendant to include persons or entities that Plaintiff does not even know of.  For example, Plaintiff does not know what is meant by "brother-sister companies" or who these "brother-sister companies" are.  Accordingly, Plaintiff will respond to these discovery requests by interpreting this defined term as just the entity who is the defendant in this lawsuit unless Defendant has specifically identified the other person or entity.

(b)      The terms "**Plaintiff**," "**you**," "**your**," "**Zepherine Miller**," and "**Miller**," as used herein, shall mean, unless otherwise directed, **Zepherine Miller**, the Plaintiff in the above-captioned lawsuit, (i) individually; (ii) in all capacities in which she asserted claims against The Connor Group in the The Connor Group Litigation; and (iii) her current and former spouse(s), accountants, attorneys, partners, joint venturers, employees, employers, agents, servants, representatives, and all other persons or entities acting or purporting to act on her behalf with respect to The Connor Group Litigation, or this Litigation or Account, whether authorized or not.

Objection:  Plaintiff objects to this definition to the extent that it purports to broadly define the Plaintiff beyond the commonly accepted meaning and beyond what is proportional or relevant to the needs of this case.  This definition would broadly define the Plaintiff to include persons or entities that are not relevant to this action; include Plaintiff's attorney; and unknown persons or entities who may not even be authorized on behalf of Plaintiff.  Accordingly, Plaintiff will respond to these discovery requests by interpreting Plaintiff to mean the one person who is the Plaintiff in this case, Zepherine Miller, unless the specific discovery request otherwise requires and is not otherwise objectionable.

(c)      The term "**Account Statement**" or "**Account**," as used herein, shall mean the account for which NCS contacted Plaintiff or attempted to collect from Plaintiff that is allegedly owed to the Original Creditor.  The Account is also identified by NCS as Account No.

4510687.

Objection:   Plaintiff objects to this request because it states that the account is "allegedly owed to the Original Creditor".  A court has already conclusively determined that the Account is not owed to anyone.

(d)      The term "**Original Creditor**," as used herein, shall mean Alas Over Lowery Apartments managed by The Connor Group.

Objection: Plaintiff objects to this definition because Alas Over Lowery is spelled incorrectly and is also merely a trade name for The Connor Group, A Real Estate Investment Firm, LLC.  Plaintiff will apply this definition as though Defendant had correctly named the original creditor against whom she obtained a court order that Plaintiff did not owe any obligation and for whom Defendant continued to attempt to collect an invalid consumer obligation.

(e)      The term "**Litigation**," "**Lawsuit**," or "**suit**" as used herein shall mean this Civil Action No.

1:23-cv-02620-MEH; *Zepherine Miller v. National Credit Systems, Inc.*; In the United States District Court for the District of Colorado.

Objection:   Plaintiff objects to this definition because it incorrectly identifies the above captioned case.

(f)      The term "**The Connor Group Litigation**" as used herein shall mean Case  No. 2021CV34094; *Zepherine Miller, an individual on behalf of herself and other similarly situated v. The Connor Group, a Real Estate Investment Firm, LLC d/b/a The Connor Group, an Ohio limited liability company*; In the District Court, County of Denver, Colorado.

(g)      The term "**consumer credit reporting agency**," "**credit reporting agency**," or "**CRA**" shall mean, as used herein, Experian, Equifax, and TransUnion.

(h)      The terms "**document**," and "**documents**" and "**tangible things**" as used herein, shall be given the broadest meaning possible as provided by Federal Rules of Civil Procedure and shall include without limitation, all writings of every kind, including, without

limitation, letters, telegrams, memoranda, reports, studies, electronic mail, calendar and diary entries, maps, pamphlets, notes, charts, tabulations, analyses, statistical or information accumulations, audits and associated work papers, any kind of records of meetings or conversations, film impressions, magnetic tape, sound or mechanical reproductions, all stored compilations of information of any kind which may be retrievable (such as, but without limitation, the contents of computer memory or information storage facilities, and computer programs, and any instructions or interpretive materials associated with them), and copies of documents which are not identical duplicates of the originals (e.g., because handwritten or "blind" notes appear thereon or are attached hereto) whether or not the originals are in your possession, custody or control.   The term "document" specifically includes, without limitation, all drafts and preliminary versions of documents. Any copy of a document containing or having attached thereto alterations, notes, comments, or other material not included in the original or another copy of the document shall be deemed to be a separate document.   **Specifically the terms "document" and "documents" shall include all ESI as defined herein.**

Objection:  Plaintiff objects to this definition on the grounds that is expands discovery beyond what is proportional to the needs of this case, including the production of ESI. Plaintiff will not produce any documents in their "native format".

(i)   The terms "**ESI**" and "**electronically stored information**" as used herein, shall mean any and all information that is created, stored, or retrieved and processed in electronic, magnetic, or digital form.  ESI includes, but is not limited to, the following:

(i.)   (1) databases, (2) data files, (3) program files, (4) image files, (9) system-history files, (10) deleted files, programs, or e-mails, (11) backup files and archival tapes, (12) website files, (13) website information stored in textual, graphical, or audio format, (14) cache files, (15) cookies, and any form contemplated by FED. R. CIV. P. 34.

Sources of ESI include, but are not limited to:

(ii.)   (1) mainframe computers, (2) network servers, (3) Internet ("web" or

"cloud") servers, (4) desktop and laptop computers, (5) hard drives, (6) flash drives, "thumb" drives, secure digital cards, and other flash memory cards, (7) e-mail servers, (8) handheld devices like personal digital assistants (PDAs) and personal media players (PMPs), (9) cell phones and smart phones, (10) event recorders in cars, trucks and trains, (11) medical devices, and (12) global positioning system (GPS) devices.

ESI shall be produced as it is normally maintained—its native file format.  Should such native file format require an image file (such as .pdf or .tif), searchable text file and/or metadata load file to access, view, search, or use the ESI as the responding party can such files shall be included in the production.

Objection:  Plaintiff objects to this definition on the grounds that is expands discovery beyond what is proportional to the needs of this case, including the production of ESI.  Plaintiff will not produce any documents in their "native format".

(j)      The terms "**communicate**" or "**communication**" as used herein includes, without limitation of its generality, statements, discussions, conversations, meetings, remarks, questions, and answers, whether written, oral or electronic.  The term includes, but is not limited to, every manner or means of disclosure, transfer or exchange, whether face to face and those which are transmitted by any type of service or media, including without limitation, mail, courier, intercoms, telephones, intranet, internet and e-mail.

(k)      The term "**agreement**" as used herein, shall mean any contract, agreement, promise, note, arrangement, including all amendments, supplements and additions thereto.

(l)      The term "**third party**" and "**third parties**" as used herein, unless otherwise indicated, shall mean any natural persons, firms, partnerships, associations, organizations, joint ventures, corporations and any other entities.

(m)      The term "**any**" or "**all**" as used herein, shall mean "**any or all**."

(n)      The terms "**relating to**," "**pertaining to**" or "**concerning**" as used herein, shall  mean referring to, reflecting or related in any manner logically, factually, directly or indirectly to the matter discussed.

(o)     The word "**person(s)**" as used herein, shall be deemed to include all natural persons, firms, partnerships, associations, organizations, joint ventures, corporations and any other entities.

(p)     The terms "**provide**" or "**provided**" as used herein, shall mean to give, send, make available, deliver, supply, or furnish in any manner.

(q)     Whenever the terms "**and**" or "**or**" are used herein, they are to be interpreted  both disjunctively and conjunctively.

(r)      The term "**including**," as used herein, shall mean "**including, but not limited to**."

Objection: Plaintiff objects to this definition because it expands the scope of discovery beyond what is proportional to this case.  Accordingly, Plaintiff will apply this definition as those the phrase "including" means just those items listed immediately after the word including.

(s)     The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa.  Regardless of the tense employed, all verbs shall be read as applying to the past, present and future as is necessary to make any paragraph more, rather than less, inclusive.

(t)      Words used in the singular herein are also to be interpreted in the plural, and vice versa; words of any gender, include all other genders.

## **INSTRUCTIONS**

(1)     <u>PRODUCTION</u>:  Pursuant to Federal Rule of Civil Procedure 34(b), all documents produced shall be produced as they are kept in the usual course of business or shall organize [sic] and label them to correspond with the categories in the Requests for Production.

(2)     <u>OBJECTIONS</u>:

(a) <u>Interrogatories</u>.  Pursuant to Federal Rule of Civil Procedure 33(b), all grounds for an objection to an interrogatory shall be stated with specificity or it is waived.

To the extent an objection is made, the objecting party shall state the reasons for the objection and shall answer to the extent the interrogatory is not objectionable.

(b) <u>Requests for Production</u>. Pursuant to Federal Rule of Civil Procedure 34(b), all grounds for an objection to a request for production shall be stated with specificity or it is waived. To the extent an objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts. Plaintiff shall designate in Plaintiff's response any documents withheld due to, or relying on, any objection asserted.

(c) <u>Requests for Admission</u>. Pursuant to Federal Rule of Civil Procedure 36(a)(4) and (5), in the event you assert any form of objection or privilege as a ground for not answering a request for admission or any part thereof, you are required to set forth the legal grounds and facts upon which the objection or privilege is based. If the objection relates to only part of the request for admission, the balance of the request for admission should be answered in full.

(3) <u>CLAIMS OF PRIVILEGE</u>: With respect to any document or information which you assert is immune from discovery because of any privilege or work product doctrine, please provide the withholding statement required by Federal Rule of Civil Procedure 26(b)(5), that provides the following:

"[M]ake the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties assess the applicability of the privilege or protection."

(4) <u>POSSESSION, CUSTODY & CONTROL</u>: You are required to produce all documents and tangible things that are within your possession, custody or control, which means that you either have physical possession of the item or have a right to possession of that item that is equal to or superior to the person who has physical possession of

the item.

(5)     <u>EXTENSIONS OF TIME</u>:   Any agreement for extension of time to respond to these Requests for Production must be in writing.  No extensions of time for making objections to these discovery requests should be presumed unless such agreement is specifically set out in writing.

(6)     <u>LOST OR DESTROYED DOCUMENTS</u>:  If any document herein requested was previously in your possession, custody, or control and has been lost or destroyed, you are requested to submit, in lieu of each document, a written statement, which:

    1.     Reasonably describes in detail the nature of the document and its content;

    2.   Identifies the person who prepared or authorized the document, and, if applicable, the person to whom the document was sent;

    3.     Specifies the date on which the document was prepared or transmitted or both; and

    4.   Specifies, if possible, the date on which the document was lost or destroyed, and, if destroyed, the conditions of or reasons for, such destruction and the persons requesting and performing the destruction.

Objection:  Plaintiff objects to this instruction on the grounds that it purports to impose requirements not contemplated by the Federal Rules of Civil Procedure.  Specifically, this instruction purports to require Plaintiff to answer the equivalent of an interrogatory for any document that was lost or destroyed.  Plaintiff will not follow this instruction.

(7)     <u>IDENTIFY</u>:  In those instances where the word "identify," is used in these requests for discovery, it should be interpreted as requiring with respect to <u>individuals</u>, the person's name, last known address and telephone number.   With respect to <u>documents or things</u>, it should be interpreted requiring sufficient information regarding the item so that the party seeking discovery can locate and identify the object as readily as the party from whom it is being sought (including such information as the type of document (e.g., letter memorandum, telegram, chart,

computer input or printout, e-mail, photograph, sound reproduction, etc.), date of the document, author of the document, where the document is located or the last known custodian of the document and whether the document is in existence, lost or destroyed).  With respect to <u>entities</u>, it should be interpreted to require, the name of the entity, the entities' last known address and telephone number, and the name, address and telephone of any known officers or related entities of the entity.

(8)    <u>REFERENCE TO DOCUMENTS</u>:  In those instances where the responding party chooses to answer a request for information by referring to a specific document or record, it is requested that such specification be in such sufficient detail to permit the requesting party to locate and identify the records and/or documents from which the answer is to be ascertained, as readily as can the party served with the request.

(9)    <u>COMPUTER BASED INFORMATION</u>:  In those instances where requested information is stored only on software or other data compilations, the responding party should either produce the raw data along with all codes and programs for translating it into usable form or produce the information in a finished usable form, which would include all necessary glossaries, keys and indices for interpretation of the material.

(10)    <u>DOCUMENT DESTRUCTION</u>:   It is requested that all documents and/or other data compilations which might impact on the subject matter of this litigation be preserved and that any ongoing process of document destruction involving such documents cease.

(11)    <u>LIMITATION AS TO TIME</u>:   Unless otherwise indicated, these requests cover any document or information prepared, received, distributed, or in effect during the time period of January 1, 2018 to the date of trial. (Also referred to herein as the "Relevant Time Period.")

**REQUESTS FOR PRODUCTION**

1.    All communications with the Original Creditor regarding the Account, including any complaints or disputes regarding the debt allegedly owed to the Original Creditor.

Objection:  Plaintiff objects to this request on the grounds that it does not describe what is sought with reasonable particularity to enable Plaintiff to respond with relevant documents. By way of example, Plaintiff's counsel conferred with the Original Creditor's attorneys regarding extensions of time.  On its face, this request would require Plaintiff to provide all communications with the Original Creditor's attorneys to request to extend time to respond to a motion to dismiss, which is plainly not relevant to this case or proportional to the needs of this case.  Accordingly, Plaintiff will respond with all documents relevant to the claims and defenses in this case.

Response:  Plaintiff has provided all relevant documents with its initial disclosures except those that are called for in the more particularized but duplicative requests below.

2.      All communications between your attorney and the attorneys representing The Original Creditors related to any Offer of Judgment or settlement of The Connor Group Litigation.

Response:  Plaintiff will provide all documents responsive to this request.

3.      All communications between your attorney and the attorneys representing the Original Creditor from January 1, 2023 to present.

Objection:  Cumulative.  This request seeks all communications with the Original Creditor's attorneys, which plainly duplicates the request above it.

Objection: Relevance and proportionality.  This request seeks information that is not relevant to this dispute.  By way of example, the Original Creditor consented to a judgment against it for illegally harvesting application fees and violating the Colorado Consumer Protection Act.  That is not relevant to whether the Debt Collector, NCS, failed to comply with the Fair Credit Reporting Act or Fair Debt Collection Practices Act.

Response:  Subject to the foregoing objections, Plaintiff will provide all relevant documents responsive to this request.

4.      All documents identified in your answers to, or that you consulted or used to answer, any Interrogatories or Initial Disclosures in this Litigation.

11

Objection:   Objection as to form and scope.   The request as propounded sweeps all documents concerning this action or the subject matter of this action, and/or the substance of those facts. In addition to being otherwise overbroad, the request would include all allegations of the complaint and documents 'relating to' those facts. By way of example, Plaintiff alleged that over 2,000 debt collection complaints have been made about NCS with the CFPB over the last 3 years.

Accordingly, Plaintiff would have to produce all such complaints, of which Defendant already has and certainly has better access to than Plaintiff. The complaint also alleges illegality, meaning the overbroad request would call for Plaintiff's work-product and privileged communications. Defendant thus asks Plaintiff to undertake an ill-defined and potentially endless search concerning every document possibly embracing any matter addressed in this action and everything relating to those alleged facts. This is not a proper use of discovery.

Objection: Objection as to legal conclusion / work product. Defendant specifically asks for facts that form the basis of a legal conclusion. This request should be deferred to a pretrial conference.

Objection:   Supernumerary interrogatories.   As explained below, Defendant has greatly exceeded the Court-ordered numerical limitation on interrogatories.

Response:  Documents are being withheld on the basis of these objections to the requests.

5.      All documents which relate to, refer to, or support your claims and damages set forth in Plaintiff's Original Complaint, including any amendments thereto.

Objection:  The request does describe any reasonable particularity as required by Fed. R. Civ. P. 34.

Objection:   Objection as to form and scope.   The request as propounded sweeps all documents concerning this action or the subject matter of this action, and/or the substance of those facts. In addition to being otherwise overbroad, the request would include all allegations of the complaint and documents 'relating to' those facts. By way of example,

Plaintiff alleged that over 2,000 debt collection complaints have been made about NCS with the CFPB over the last 3 years.

Accordingly, Plaintiff would have to produce all such complaints, of which Defendant already has and certainly has better access to than Plaintiff. The complaint also alleges illegality, meaning the overbroad request would call for Plaintiff's work-product and privileged communications. Defendant thus asks Plaintiff to undertake an ill-defined and potentially endless search concerning every document possibly embracing any matter addressed in this action and everything relating to those alleged facts. This is not a proper use of discovery.

Objection: Objection as to legal conclusion / work product. Defendant's broad request encompasses documents created for purposes of litigation including documents that form the basis of a legal conclusion. This request should be deferred to a pretrial conference.

Response:  Documents are being withheld on the basis of these objections to the requests.

6.      A copy of all documents received from (whether by subpoena or otherwise), or provided to, any party to this Litigation or any third party, that is related to this Litigation, The Connor Group Litigation, the Account, or NCS, including but not limited to, all deposition transcripts and exhibits, correspondence, or documents. This request specifically includes documents to/from co-defendants, fact witnesses, expert witnesses, the CRAs, credit repair organizations, and credit monitoring services.

Objection:  The request does describe any reasonable particularity as required by Fed. R. Civ. P. 34.

Objection:   Objection as to form and scope.  The request as propounded sweeps all documents concerning this action or the subject matter of this action, and/or the substance of those facts. In addition to being otherwise overbroad, the request would include all allegations of the complaint and documents 'relating to' those facts. By way of example, Plaintiff alleged that over 2,000 debt collection complaints have been made about NCS with the CFPB over the last 3 years.

Accordingly, Plaintiff would have to produce all such complaints, of which Defendant already has and certainly has better access to than Plaintiff. The complaint also alleges illegality, meaning the overbroad request would call for Plaintiff's work-product and privileged communications. Defendant thus asks Plaintiff to undertake an ill-defined and potentially endless search concerning every document possibly embracing any matter addressed in this action and everything relating to those alleged facts. This is not a proper use of discovery.

Objection:   Plaintiff objects to this request on the grounds that third-party subpoena recipients have already produced all such documents to the Debt Collector and the Debt Collector is attempting to harass Plaintiff into doing duplicative and unnecessary work that has already resulted in Defendant receiving the requested documents.  Accordingly, Plaintiff will not re-produce documents that should already be in Defendant's possession, custody, or control until Defendant identifies which document productions it has not received from any subpoena recipient.  By way of example, and not of limitation, Defendant should have already received document productions from the Consumer Reporting Agencies.

Objection: Objection as to legal conclusion / work product. Defendant's broad request encompasses documents created for purposes of litigation including documents that form the basis of a legal conclusion. This request should be deferred to a pretrial conference.

Response:       Documents are being withheld on the basis of these objections to the requests.

7.      A copy of all documents in your possession related to other litigation where NCS is a party.

Objection:  The request does describe any reasonable particularity as required by Fed. R. Civ. P. 34.

Objection:  Overly broad and harassment.  NCS has been sued hundreds, if not thousands, of times.  These documents are plainly in the possession, custody, and control of NCS, the defendant in each of these lawsuits.  Defendant is attempting to make Plaintiff's counsel organize and produce those documents to Defendant when Defendant, the defendant in

these lawsuits, already has them.  Moreover, Defendant is the subject of thousands of complaints to the CFPB, and those documents may "relate to" litigation against NCS because NCS has a practice of denying all claims against it.  This would require Plaintiff to scour the CFPB database and organize documents relevant to litigation that was also filed against Defendant.

Objection: Objection as to legal conclusion / work product. Defendant's broad request encompasses documents created for purposes of litigation including documents that form the basis of a legal conclusion. This request should be deferred to a pretrial conference.

Objection: Proportionality.  This request would encompass all documents publicly available concerning the hundreds, if not thousands, of lawsuits filed against the Debt Collector because one of the elements of statutory damages under the FDCPA is the Debt Collector's "frequency and persistence of noncompliance" among other relevant factors.  15 U.S.C. § 1692k(b)

Response:      Documents are being withheld on the basis of these objections to the requests.

8.      Any exhibits which you may offer into evidence upon trial of this case.

Objection:  Premature.  There is no trial date set in this case.  Plaintiff will provide these documents when required by the rules.

Objection: Objection as to legal conclusion / work product. Defendant's broad request encompasses documents created for purposes of litigation including documents that form the basis of a legal conclusion. This request should be deferred to a pretrial conference.

Response:      Documents are being withheld on the basis of these objections to the requests.

9.      A copy of all communications between your attorney and any other attorney related to NCS.

Objection:  Cumulative.  This is at least the third time that NCS has requested the same thing.

Objection:  The request does describe any reasonable particularity as required by Fed. R. Civ. P. 34.

Objection:  Vague.  It is not clear what is meant by "any other attorney related to NCS."  It

15

could mean that the attorney is related to NCS.  Or it could mean that the communications are related to NCS.

Objection: Relevance.  This request seeks information that is not relevant to this dispute.  By way of example, the Original Creditor consented to a judgment against it for illegally harvesting application fees and violating the Colorado Consumer Protection Act.  That is not relevant to whether the Debt Collector, NCS, failed to comply with the Fair Credit Reporting Act or Fair Debt Collection Practices Act.

Objection:  Work product/privilege.  Any communication with another attorney concerning NCS that was between Plaintiff's attorney and any other attorney would reflect Plaintiff's attorney's work product and mental impressions.

Response:   Documents are being withheld on the basis of these objections to the requests.

10.    All documents that specifically reference the Account, NCS, or the Original Creditor (which necessarily includes any documents sent to, or received from NCS, the Original Creditor, any CRA, the BBB, and any governmental or administrative agency).

Objection:  The request does describe any reasonable particularity as required by Fed. R. Civ. P. 34.

Objection:  Overly broad and harassment.  NCS has been sued hundreds, if not thousands, of times.  These documents are plainly in the possession, custody, and control of NCS, the defendant in each of these lawsuits.  Defendant is attempting to make Plaintiff's counsel organize and produce those documents to Defendant when Defendant, the defendant in these lawsuits, already has them.  Moreover, Defendant is the subject of thousands of complaints to the CFPB.  It would not be proportionate to the needs of the case for Plaintiff to produce every singly document referencing the legion of complaints against NCS.  Moreover, this request seeks all documents that reference the Original Creditor.  This would require Plaintiff to perform an endless search of documents that relate to a multi-state real estate investment company, for whom NCS is the debt collector.

Response: Documents are being withheld on the basis of these objections to the requests.

16

11.      All documents that refer or relate to communications between you and NCS or the Original Creditor, specifically including, but not limited to, your notes, calendars, and diaries.

Objection:  The request does describe any reasonable particularity as required by Fed. R. Civ. P. 34.

Objection:   Objection as to form and scope.   The request as propounded sweeps all documents concerning this action or the subject matter of this action, and/or the substance of those facts. In addition to being otherwise overbroad, the request would include all allegations of the complaint and documents 'relating to' those facts. By way of example, Plaintiff alleged that over 2,000 debt collection complaints have been made about NCS with the CFPB over the last 3 years.

Accordingly, Plaintiff would have to produce all such complaints, of which Defendant already has and certainly has better access to than Plaintiff. The complaint also alleges illegality, meaning the overbroad request would call for Plaintiff's work-product and privileged communications. Defendant thus asks Plaintiff to undertake an ill-defined and potentially endless search concerning every document possibly embracing any matter addressed in this action and everything relating to those alleged facts. This is not a proper use of discovery.

Response: Documents are being withheld on the basis of these objections to the requests.

12.      All documents you sent to, or received from the Original Creditor.

Objection:  The request does describe any reasonable particularity as required by Fed. R. Civ. P. 34.

Objection: Cumulative.  This is at least the fourth time that NCS has requested the same thing.

Response: Documents are being withheld on the basis of these objections to the requests.

13.      All documents you sent to, or received from, NCS.

Objection:  The request does describe any reasonable particularity as required by Fed. R. Civ. P. 34.

Objection: Improper burden shifting.  Defendant is attempting to make Plaintiff produce all

documents that NCS sent or received.  NCS should have those.

Response:  Subject to the foregoing objections, Plaintiff has produced all documents relevant to this request.

14.     All documents you received from, or provided to, any credit repair organization or other third party related to the Account, the Original Creditor and/or NCS.

Objection:   Attorney client privilege and work product.   This request includes all communications between Plaintiff and her counsel.  The purpose of this request is to harass Plaintiff and cause her attorneys to produce a privilege log of every single communication over a multi-year period.

Response:  Subject to the above objection(s), no such documents exist.

15.     Copies of all communications, complaints or disputes that you, or anyone on your behalf, sent to any CRA regarding the Original Creditor, or the Account, including any documents attached to such complaints or disputes.

Response:  All such documents have already been produced or received by NCS.

16.     A copy of any letter, adverse action notice, or other document that notified you that you were denied for any loans and/or credit at any time from 2018 to present, and/or offered any credit or loan at less favorable terms or interest rate(s).

Response: All such documents have already been produced or will be produced.

17.     A copy of all documents related to any application for credit or loan from 2018 to present, specifically including but not limited to the application, any documents attached or supplemented, correspondence between you and any third party or professional assisting you with the process, and any correspondence between you and the possible credit grantor.

Response: All such documents have already been produced or will be produced.

18.     All credit reports, credit summaries, credit files or letters, and/or any other documents specifying your credit history or credit score that you obtained or received from 2018 to present.

Response: All such documents have already been produced or will be produced.

18

19.     A copy of all emails or electronic communications from you to any other person or third party, other than your attorneys in this Litigation, concerning your credit score, your credit file with any consumer reporting agency, the Original Creditor, the Account, and/or NCS.

Objection:  The request does describe any reasonable particularity as required by Fed. R. Civ. P. 34.

Response: All such documents have already been produced or will be produced.

20.     All medical records which are related to NCS's alleged actions or conduct and treatment by any health care provider for injuries which you claim are related to the incidents giving rise to this litigation or NCS's alleged actions or conduct, including but not limited to all bills, invoices, and all treatment records and summaries.

Objection:  Objection, physician-patient privilege / HIPAA.  To the extent Defendant is seeking medical or treatment records, those are protected by HIPAA and the physician-patient privilege. Plaintiff does not intend to produce medical records or doctors to support her claims.

21.     All documents reflecting or relating to any element of damage you have claimed in your Complaint or Disclosure Responses (including any amendments to either), including, but not limited to:

(a) Economic damages, including, without limitation, any actual damages resulting from loss of credit, increased interest charges, denial of credit, increased credit scores, etc.;

(b)     Loss of earnings or earnings capacity;

(c)     Medical expenses in the past (and expected in the future);

(d)     Mental Anguish; and

(e)     Any other loss or damage of any type or nature.

Objection:  The request does describe any reasonable particularity as required by FRCP 34. By way of example, the claims pled give rise to theories permitting statutory and punitive damages, for which most documents demonstrating availability/evidence would be those

maintained and created by Defendant.

Objection:  Objection as to work product / attorney-client privilege. Defendant's broad request encompasses documents created for purposes of litigation including documents that reference the Account. Given that every piece of attorney-created document for this case concerns the account, the creation of a privilege log alone makes the request, with no exceptions, unduly burdensome.

Objection: Vague.  Plaintiff does not know what is meant by "Disclosure Responses".

Response:  Documents are being withheld on the basis of these objections to the requests. But see all documents produced.

22.     All attorney fee agreement(s), engagement letter(s), invoices, website materials, advertisements or marketing materials for Vedra Law, LLC related to this Litigation and The Connor Group Litigation and this litigation.

Objection:  The fee agreement/engagement letter between Plaintiff and her counsel is not proportional to the needs of establishing liability in this case.

Objection: Premature.

Objection: Vague.  It is unclear what is meant by "website materials".

Objection:  This discovery request is intended to harass Plaintiff and her counsel.  There is no need to provide "website materials" that are publicly available from the internet.

Objection:   This discovery request is intended to harass Plaintiff and her counsel. Advertisements and marketing materials are not relevant or proportional to the needs of this case.

Objection:  The amount of attorney fees, if not agreed to between the parties, is an issue to be decided by the Court based upon a lodestar.

Response:  Documents are being withheld on the basis of these objections to the requests.

23.     Any and all correspondence between you and any person who may be called as an expert witness or fact witness.

Objection:  This request plainly violates Fed. R. Civ. P. 26(b)(4).

Response:  Plaintiff is withholding information relevant to this request.  All communications between Plaintiff's counsel and her experts are protected as trial preparation materials and no communications are excepted pursuant to Fed. R. Civ. P. 26(b)(4)(C) except as will be disclosed with the expert reports.

24.     Curriculum vitae and bibliographies for all of your expert witnesses.

Objection:  This discovery request is premature.

Response: Plaintiff will produce this information with expert reports.

25.     All models, exhibits and/or other visual aids that any expert witness may utilize at the time of trial.

Objection:  This discovery request is premature.

Response: Plaintiff will produce this information when required by the rules.

26.     All published treatises, periodicals, books and/or pamphlets, on any subject matter related to this case, that you claim to be reliable authority which may be used at the time of the trial.

Objection:  This discovery request is premature.

Objection:  This discovery request seeks the mental impressions of counsel and is privileged from discovery under Fed. R. Civ. P. 26(b)(3).

Objection:  This discovery request is intended to harass Plaintiff's counsel into producing a privilege log of all legal research he has conducted on the Fair Credit Reporting Act and Fair Debt Collection Practices Act over the past eleven years.

Response:  Plaintiff is withholding information based on this request.

## INTERROGATORIES

Plaintiff has attempted to confer with Defendant regarding the number of interrogatories that Defendant has served.  Specifically, the Defendant has exceeded the number of interrogatories that were permitted to be served under the scheduling order. "[W]here a single interrogatory requests disclosure of all information which forms the basis for denying requests for admission, each denied request for admission will be considered a

separate interrogatory and count against a numerical limit." *Hertz v. Luzenac Am., Inc.*, Civil Action No. 04-cv-1961-LTB-CBS, 2006 U.S. Dist. LEXIS 25945, at *34 (D. Colo. Apr. 13, 2006) (citing *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998); *also Wildearth Guardians v. Pub. Serv. Co.*, Civil Action No. 09-cv-01862-ZLW-MEH, 2010 U.S. Dist. LEXIS 138972, at *9 (D. Colo. Dec. 29, 2010).

Interrogatory No. 7 states: "If you have denied any portion (or admitted with a qualification) any of Defendant's Requests for Admission propounded to you, please state all facts and identify all documents that support each denial."   As outlined above, this interrogatory creates a distinct subpart for each request for admission that is admitted.  In total, Defendant has served twenty-seven (27) requests for admission.  Of those twenty-seven (27) requests for admission, including responses to compound requests, Plaintiff has denied portions of twenty-eight (28) requests for admission.  Consequently, Interrogatory No. 7 consists of twenty-eight (28) interrogatories.  Together with the ten (10) other interrogatories, this exceeds the numerical limitation agreed to by the parties and imposed by the Court in the scheduling order.

Consequently, Plaintiff objects to answering any interrogatory on the grounds that objecting and answering each interrogatory would be an undue burden on Plaintiff, drive up the costs of litigation, and cause Plaintiff's counsel to have to object to more interrogatories than are permitted by the Court's scheduling order.  As such, Plaintiff objects to answering or objecting to all interrogatories until Defendant agrees to limit the total number of interrogatories to the limit imposed by the scheduling order: twenty-five.

ADDITIONAL RESPONSE:  After conferral with Defendant's counsel, the Defendant has agree to withdraw the offending interrogatory that caused Defendant to exceed the numerical limitation that would have caused Plaintiff and her counsel to object and respond to more interrogatories that is permitted by Court order.

INTERROGATORIES

INTERROGATORY NO. 1: Itemize all damages [i.e. statutory, economic/actual, consequential, special, exemplary, attorneys' fees and/or costs] that you contend you have sustained as a result of the allegations in the Complaint separated for each Defendant in the Litigation and provide (a) the specific injury or category of damages and dollar amount of damages claimed; (b) the basis or method used to calculate such amounts; (c) a description of any documentation that you contend supports such damages; and (d) the names of all persons, whether lay or expert, who will provide testimony supporting each such category of damages.

OBJECTION:  Plaintiff objects to this discovery request on the grounds that it is unduly burdensome.  This interrogatory effectively calls for Plaintiff to depose herself by providing a narrative response itemizing seven different categories of damages and for each category of damages to include both the basis of the category of damages, a calculation of the damages, the method by which the calculation was made, a narrative description of contentions supporting the damages, list of documentation that Plaintiff contends supports the damages, and a list of witness who will support the damages.  "Indiscriminate use of blockbuster interrogatories, such as these, do not comport with the just, speedy, and inexpensive determination of the action. To require answers for them would more likely cause delay and unreasonable expense of time, energy, and perhaps money." *Bat v. A.G. Edwards & Sons, Inc.*, Civil Action No. 04-cv-02225-REB-BNB, 2005 U.S. Dist. LEXIS 47995, at *7 (D. Colo. Nov. 18, 2005) (quoting *Hilt v. SFC, Inc.*, 170 F.R.D. 182 (D. Kan. 1997).

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it seeks the mental impressions of Plaintiff's counsel.  Whether Plaintiff contends that documentary evidence or testimonial witness support a category of damages will necessarily reveal the mental impressions of Plaintiff's counsel.

OBJECTION: Plaintiff objects to this discovery request on the grounds that it is overly broad. Plaintiff seeks punitive damages in this case, and evidence that Defendant has engaged in the same pattern and practice is admissible to prove willfulness in this case.  This interrogatory, as written, would require Plaintiff to itemize each and every document demonstrating that

23

Defendant has a pattern of illegally reporting debts to consumer reporting agencies based on thousands of complaints that are publicly available.

ANSWER:  Subject to the objections above, I wrote to the three national consumer reporting agencies to dispute information contained in my credit file.  I disputed information furnished by National Credit Systems, Inc, (the "Debt Collector") as collection agency for The Connor Group, A Real Estate Investment Firm, LLC d/b/a The Connor Group d/b/a Alas Over Lowery [sic] Apartments (the "Apartment Complex").  The information provided to the consumer reporting agencies by the Debt Collector was incorrect and misleading.

I went to lease an apartment from the Apartment Complex.  I filled out an application, paid an application fee, was approved, and signed a lease.  After I signed the lease, the Apartment Complex added a deposit to the lease that I never agreed to.  I told her that was not doable and that is when Vikki (now Office Manager) became rude and told me that I have to take the apartment, due to signing the lease without the security deposit being disclosed on it.  I refused to pay this deposit that was added after I had already signed the lease.

After the Apartment Complex was unwilling to honor the lease that I actually signed, they turned over the lease with the deposit to the Debt Collector.  I never agreed to the lease with the deposit. The Debt Collector then reported to credit that I owed money on this lease.  I didn't.  The only agreement I ever signed was for an apartment with no deposit.  I have never owed any money to the Apartment Complex or the Debt Collector because the Apartment Complex refused to lease the apartment to me based on the lease I agreed to.

After the Debt Collector would not remove this inaccurate information from my credit report and stop reporting it to the credit bureaus, I had to hire an attorney to fight the Apartment Complex in court. I tried to do it as a class action to help other people; I wasn't able to help others in court then, but I'm hoped my dispute would inform the credit bureaus removal of other National Credit Systems reporting. While I couldn't help others because the judge said that my dispute letter was not enough to put the Apartment Complex on notice that I was going to sue on behalf of others. Ultimately, the Apartment Complex agreed that the lease they turned over to the Debt Collector

was void and of no force or effect.  The Court entered a judgment declaring that the lease was void and of no force or effect.  In other words, I didn't owe any money to the Apartment Complex and I didn't owe any money to the Debt Collector.

Even though the Apartment Complex had no right to collect any money from me, and the Debt Collector had no right to collect any money from me, this was still showing up on my credit report.  It should not have.

I attached a copy of the lease, a copy of my complaint against the Apartment Complex, and a copy of the Court's order declaring the lease void. The Debt Collector is an unreliable source, as the company has been sued 181 times since January 1, 2020, for violations of consumer protection laws, as shown by PACER. They have 6,878 complaints made against them with the CFPB. 1,949 of these complaints are for attempting to collect debt that is not owed, and 690 of these complaints are about incorrect information on a credit report.  They couldn't even get the name of the creditor correct on my report.  They even misspelled the name of the Apartment Complex.  They rely on the same bad source of information if they even look. The Debt Collector gets paid for collecting money so they have little incentive to do what is right: stop reporting this unfair and improper information.  This whole ordeal has caused me emotional distress and I think a jury should decide how much that is worth.  Despite their inaccuracy, I was unable to utilize my credit as I wanted to, and I was made to look like someone who owed money that I didn't owe.  National Credit Systems doesn't care about court orders and just ignores what courts say about whether people owe money.

I even gave the name and phone numbers of everyone who knew something about the lease being void, but nothing happened.  The Debt Collector should pay statutory damages in the maximum amount allowed by statute, punitive and exemplary damages in an amount awarded by the jury in an amount consistent with a debt collector who repeatedly refuses to acknowledge the validity of court orders and ruins people's credit by reporting debts that have be declared void by a court, damages for emotional distress in an amount to be determined by the jury, and any other relief a court can order even if the defendant refuses to acknowledge the validity of a court order.

I didn't know how to deal with this reporting so I contacted my attorney, who helped me write the dispute letter.  Even with a well drafted letter that specifically told the debt collector why the debt being reported was declared void, the Debt Collector ignored what a court said about my alleged debt and continued to report an invalid account.

I wish there was a scientific formula to itemize my damages like you are asking for.  I will just accept to what the jury has to say.

INTERROGATORY NO. 2: Please identify all complaints and disputes you made to any person or entity related to the Account including the following information: (a) date of each communication, (b) recipients of each communication, (c) the substance of such communication, including any documents attached to each communication.

OBJECTION:  Attorney client privilege.  This interrogatory seeks to invade the attorney client privilege by asking Plaintiff to identify each time she complained to *any person or entity* concerning the Account.  This would encompass each and every communication over a nearly four year period between Plaintiff and her attorneys.

OBJECTION:  Plaintiff objects to this interrogatory on the grounds that it is burdensome and intended to harass Plaintiff.  Itemizing every single complaint and dispute over a nearly four year period would take significant time and resources, particularly where the terms "complaints" and "disputes" are not defined.

OBJECTION:  Plaintiff objects to this request on the grounds that it is vague.  Specifically, the Debt Collector does not define what is meant by "complaints" or "disputes".  For the purposes of responding to this interrogatory, Plaintiff will interpret those terms to mean legal complaints and disputes under the Fair Credit Reporting Act.  Plaintiff will not attempt to identify every time she complained to a friend or family member about this Account.

OBJECTION:  Plaintiff objects to this request on the grounds that it seeks information that is not proportionate to the needs of the case.  Plaintiff's complaints about the Account also encompasses information concerning the illegal manner in which the Debt Collector's assignor caused Plaintiff to attempt to engage in a lease agreement, a complaint that has been already

26

decided by Denver District Court.  While the voidness of the subject lease is an issue in this case, because a Court declared the lease void, the fact that Defendant's assignor engaged in illegal fee-harvesting is not.

OBJECTION:  Plaintiff objects to this discovery request on the grounds that it is unduly burdensome.  This interrogatory effectively calls for Plaintiff to depose herself by providing a narrative response identifying each and every complaint she made about the illegal credit reporting and the Debt Collector's failure to conduct a reasonable investigation of the inaccurate and misleading reporting of the Account.

ANSWER:  Subject to the objections above, I wrote to the three national consumer reporting agencies in March of 2023 and to dispute information contained in my credit file.  I disputed information furnished by National Credit Systems, Inc, (the "Debt Collector") as collection agency for The Connor Group, A Real Estate Investment Firm, LLC d/b/a The Connor Group d/b/a Alas Over Lowery [sic] Apartments (the "Apartment Complex").  The information provided to the consumer reporting agencies by the Debt Collector was incorrect and misleading. I went to lease an apartment from the Apartment Complex.  I filled out an application, paid an application fee, was approved, and signed a lease.  After I signed the lease, the Apartment Complex added a deposit to the lease that I never agreed to.  I told her that was not doable and that is when Vikki (now Office Manager) became rude and told me that I have to take the apartment, due to signing the lease without the security deposit being disclosed on it.  I refused to pay this deposit that was added after I had already signed the lease.

After the Apartment Complex was unwilling to honor the lease that I actually signed, they turned over the lease with the deposit to the Debt Collector.  I never agreed to the lease with the deposit. The Debt Collector then reported to credit that I owed money on this lease.  I didn't.  The only agreement I ever signed was for an apartment with no deposit.  I have never owed any money to the Apartment Complex or the Debt Collector because the Apartment Complex refused to lease the apartment to me based on the lease I agreed to.

After the Debt Collector would not remove this inaccurate information from my credit report and stop reporting it to the credit bureaus, I had to hire an attorney to fight the Apartment Complex in court. I tried to do it as a class action to help other people; I wasn't able to help others in court then, but I'm hoped my dispute would inform the credit bureaus removal of other National Credit Systems reporting. While I couldn't help others because the judge said that my dispute letter was not enough to put the Apartment Complex on notice that I was going to sue on behalf of others. Ultimately, the Apartment Complex agreed that the lease they turned over to the Debt Collector was void and of no force or effect.  The Court entered a judgment declaring that the lease was void and of no force or effect.  In other words, I didn't owe any money to the Apartment Complex and I didn't owe any money to the Debt Collector.

Even though the Apartment Complex had no right to collect any money from me, and the Debt Collector had no right to collect any money from me, this was still showing up on my credit report.  It should not have.

I attached a copy of the lease, a copy of my complaint against the Apartment Complex, and a copy of the Court's order declaring the lease void. The Debt Collector is an unreliable source, as the company has been sued 181 times since January 1, 2020, for violations of consumer protection laws, as shown by PACER. They have 6,878 complaints made against them with the CFPB. 1,949 of these complaints are for attempting to collect debt that is not owed, and 690 of these complaints are about incorrect information on a credit report.  They couldn't even get the name of the creditor correct on my report.  They even misspelled the name of the Apartment Complex.  They rely on the same bad source of information if they even look. The Debt Collector gets paid for collecting money so they have little incentive to do what is right: stop reporting this unfair and improper information.  This whole ordeal has caused me emotional distress and I think a jury should decide how much that is worth.  Despite their inaccuracy, I was unable to utilize my credit as I wanted to, and I was made to look like someone who owed money that I didn't owe.  National Credit Systems doesn't care about court orders and just ignores what courts say about whether people owe money.

I even gave the name and phone numbers of everyone who knew something about the lease being void, but nothing happened.

I didn't know how to deal with this reporting so I contacted my attorney, who helped me write the dispute letter.

I wrote in March and May of 2021 to Equifax, Experian, and Trans Union stating that National Credit Systems was reporting the Account for the apartment lease and that the deposit was not delivered to me and enclosing the lease and e-mails supporting my dispute that I did not owe any money to National Credit Systems. Like the six thousand or so people who have complained to the CFPB about National Credit Systems, National Credit Systems just ignored the substance of the dispute and verified that I owed money that I didn't owe.

I wrote to the three credit bureaus in August of 2023 but did not send the letter until September. I once again explained that the Court in Denver had declared that I didn't owe the money. By this time, I had already sued National Credit Systems in Denver County Court and after removing this case from state court in Denver to federal court, National Credit Systems deleted the account from my credit file.

On May 23, 2023, I called Equifax and Trans Union explaining that I did not owe this debt and that a court had declared that this debt was void, which was forwarded to National Credit Systems to verify and the National Credit Systems again confirmed that I owed a debt that a Court had declared void.

I sued National Credit Systems in Denver District Court because I was concerned that if this case was removed to federal court, then the jury would be from all over the State of Colorado and would have to travel great distances to be here when National Credit Systems should have done the right thing and just removed this information from my credit file every time that I complained about it through Fair Credit Reporting Act process for removing inaccurate and misleading information from a credit file.

INTERROGATORY NO. 3: Please state all facts and identify all documents, recordings or other evidence that supports your contention that NCS violated 15 U.S.C. § 1681, et seq. (the

29

"FCRA") as alleged in the Complaint including an explanation why you contend NCS did not perform a reasonable investigation for each of your disputes to the CRAs.

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it seeks the mental impressions of Plaintiff's counsel.  Whether Plaintiff contends that documentary evidence or testimonial witness support an element of liability will reveal the mental impressions of Plaintiff's counsel.

OBJECTION:  Plaintiff objects to this discovery request on the grounds that it is unduly burdensome.  This interrogatory effectively calls for Plaintiff to every single fact and document that supports Plaintiff's claims that NCS violated the FCRA.  "Indiscriminate use of blockbuster interrogatories, such as these, do not comport with the just, speedy, and inexpensive determination of the action. To require answers for them would more likely cause delay and unreasonable expense of time, energy, and perhaps money." *Bat v. A.G. Edwards & Sons, Inc.*, Civil Action No. 04-cv-02225-REB-BNB, 2005 U.S. Dist. LEXIS 47995, at *7 (D. Colo. Nov. 18, 2005) (quoting *Hilt v. SFC, Inc.*, 170 F.R.D. 182 (D. Kan. 1997).

ANSWER:  Subject to the objections above, National Credit Systems has been sued 181 times since January 1, 2020, for violations of consumer protection laws, as shown by PACER. They have 6,878 complaints made against them with the CFPB. 1,949 of these complaints are for attempting to collect debt that is not owed, and 690 of these complaints are about incorrect information on a credit report.  National Credit Systems received a detailed dispute letter from me that included a **court order** that stated that **I did not owe the obligation that National Credit Systems was reporting** on my credit.  But that Court order didn't matter to National Credit Systems and they just ignored what a Court said about whether I owed money.  Rather than reading the Order with a Judge's signature on it, stating that the subject lease was void, National Credit Systems didn't remove the inaccurate credit information from my credit report.  My understanding from speaking with the credit bureaus and other sources like the internet is that the disputes I made and described in my responses to these interrogatories is that the disputes were sent to the Debt Collector who is supposed to review the dispute and investigate it.

I gave the Debt Collector all the information it needed to confirm that the Denver District Court had declared my lease void and of no force and effect.  Just reading the documents and my letter would let anyone know that reporting the account from the lease was inaccurate and reporting it the way the Debt Collector reported it was misleading.  I told the Debt Collector who to call and provided proof that I did not owe the account.  All the information was there, and the Debt Collector just needed to read it.

INTERROGATORY NO. 4:  Please list each and every time you have been denied any loan or credit, or received less favorable credit or loan terms from January 1, 2019 to present. For each such adverse action, provide the date of denial, name of person or company with whom you applied for such credit/loan, the amount and purpose of the credit/loan sought, and whether you claim such adverse action occurred in whole or in part because of NCS furnish information regarding the Account to the CRAs.

OBJECTION:  Plaintiff objects to this interrogatory on the grounds that it is premature as discovery is ongoing in this case and has not been completed.

OBJECTION:  Plaintiff objects to this interrogatory on the grounds that it seeks information not in the possession, custody, or control of Plaintiff.

ANSWER:  Subject to the objections above, I don't remember the exact times and dates that I was applying for credit.  I think my credit reports show when people were accessing my credit, and I don't remember all the details at this point.  After my first dispute to NCS, before I had obtained a Court order stating that I did not owe any money to National Credit System's client, National Credit Systems continued to report to the three major credit bureaus that I owed money that I did not owe.  Just like I don't need to touch a hot stove to know that it's going to burn me, I was chilled from applying for credit to buy a home for myself and my adult disabled child.  By the time I got a court order stating that I did not owe the money that National Credit Systems was trying to collect, I had moved back to Oklahoma despite wanting to stay in Denver to have access to better services for my child.  I was trying to obtain credit to consolidate some bills and for a car.  I shopped around online and looked at various advertised rates for loans.  These

lenders are sophisticated tech companies and rather than doing a hard pull of my credit that, they did soft pulls that then resulted in me not being able to get loans at all or loans at the rates advertised because National Credit Systems was still showing on my credit file.  And since these were all soft pulls, these lenders act like I was not shopping for credit and never made an application and discouraged me from applying by either not offering me anything or not offering me things on the terms provided.  Then I applied for a mortgage at the time that National Credit Systems was still reporting that I owed money to an apartment complex after a judge had said that I don't.  I didn't get the mortgage because National Credit Systems did not care enough about what a judge said to delete this from my credit file.  GreatPlains Finance, LLC d/b/a Cash Advance Now, a tribal payday lender who will give a loan to practically anyone, also denied my application for a loan.  WebBank by and through Avant denied my application for a loan even at exorbitant rates.  I also had to get a car loan and the terms I received were consistent with what someone would get if a debt collector who was operating illegally like National Credit Systems would get when they have a debt that they don't owe on their credit report event after a judge says the debt is void.  The same is true of the loan I got from Prosper.  I had to get credit, or no credit at all, because National Credit Systems did not care what a judge said when the judge said my lease was void.

INTERROGATORY NO. 5:  If you contend that NCS acted willfully to violate any laws in this Litigation, and/or willfully harmed you, please explain the factual bases for such contention and identify all documents that support such contention.

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it seeks the mental impressions of Plaintiff's counsel.  Whether Plaintiff contends that documentary evidence or testimonial witness support an element of liability will reveal the mental impressions of Plaintiff's counsel.

OBJECTION: Plaintiff objects to this discovery request on the grounds that it is overly broad. Plaintiff seeks punitive damages in this case, and evidence that Defendant has engaged in the same pattern and practice is admissible to prove willfulness in this case.  This interrogatory, as

written, would require Plaintiff to itemize each and every document demonstrating that Defendant has a pattern of illegally reporting debts to consumer reporting agencies based on thousands of complaints that are publicly available and then failing to complete a reasonable investigation of those complaints allowing inaccurate or misleading credit information to remain (and continue to be reported) on consumer credit reports.

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it seeks the mental impressions of Plaintiff's counsel.  Whether Plaintiff contends that documentary evidence or testimonial witness support an element of liability will reveal the mental impressions of Plaintiff's counsel.

OBJECTION:  Plaintiff objects to this discovery request on the grounds that it is unduly burdensome.  This interrogatory effectively calls for Plaintiff to every single fact and document that supports Plaintiff's claims that NCS violated the FCRA.  "Indiscriminate use of blockbuster interrogatories, such as these, do not comport with the just, speedy, and inexpensive determination of the action. To require answers for them would more likely cause delay and unreasonable expense of time, energy, and perhaps money." *Bat v. A.G. Edwards & Sons, Inc.*, Civil Action No. 04-cv-02225-REB-BNB, 2005 U.S. Dist. LEXIS 47995, at *7 (D. Colo. Nov. 18, 2005) (quoting *Hilt v. SFC, Inc.*, 170 F.R.D. 182 (D. Kan. 1997).

ANSWER:  Subject to the objections above, National Credit Systems has been sued 181 times since January 1, 2020, for violations of consumer protection laws, as shown by PACER. They have 6,878 complaints made against them with the CFPB. 1,949 of these complaints are for attempting to collect debt that is not owed, and 690 of these complaints are about incorrect information on a credit report.  National Credit Systems received a detailed dispute letter from me that included a **COURT ORDER** that stated that I did not owe the obligation that National Credit Systems was reporting on my credit.  But that Court order didn't matter to National Credit Systems and they just ignored what a Court said about whether I owed money.  Rather than reading the Order with a Judge's signature on it, stating that the subject lease was void, National Credit Systems didn't remove the inaccurate credit information from my credit report.  Court

orders matter.  This debt collector decided that the court order didn't matter since it continued to report a debt that a Court said was void.

I should not have even had to have gotten a court order in the first place.  I sent letters to the credit bureaus before I got the court order that explained that I didn't owe this debt and National Credit Systems just kept reporting it anyways because all they care about is the balance and not the substance of the dispute.

INTERROGATORY NO. 6: Identify the names of all persons that you intend to call at trial of this matter and provide the current (and/or last known) address and phone number(s) for such persons and the scope of their anticipated testimony in this matter.

OBJECTION: Objection as to legal conclusion / work product. Defendant's request seeks to have Plaintiff list her witnesses before discovery is completed and before the time that trial witnesses are required to be disclosed. This request should be deferred to a pretrial conference.

ANSWER: Subject to the objections above, I may call the persons listed in my disclosures; people who have sued the Debt Collector for the same or similar things; the people listed in the Debt Collector's disclosures; the people who have been deposed or noticed for a deposition; anyone who accessed my credit file; anyone who provides a business records certification; and anyone who can testify that National Credit Systems has done the same thing to them.

INTERROGATORY NO. 7: If you have denied any portion (or admitted with a qualification) any of Defendant's Requests for Admission propounded to you, please state all facts and identify all documents that support each denial.

ANSWER:  Defendant has withdrawn this interrogatory.

INTERROGATORY NO. 8: Describe with specificity all communications, written or oral, that you have ever had with NCS or any consumer credit reporting agency regarding the Account, including in your response the (a) date and time of the communication, (b) manner of all such communications (in person, phone, email, text, otherwise), (c) the complete substance of such communications, (d) the identity of the persons who participated in, were recipients of, or witnessed such communications, and (e) an identification of all documents that constitute, or

refer or relate to, such communications (such as notes, calendar, entries, phone or service provider statements, call logs, screen shots, etc.).

OBJECTION:  Plaintiff objects to this interrogatory on the grounds that it is cumulative and asks essentially the same information that was asked previously.

OBJECTION:  Attorney client privilege.  This interrogatory seeks to invade the attorney client privilege by asking Plaintiff to identify each time she complained to *any person or entity* concerning the Account.  This would encompass each and every communication over a nearly four year period between Plaintiff and her attorneys.

OBJECTION:  Plaintiff objects to this discovery request on the grounds that it is unduly burdensome.  This interrogatory effectively calls for Plaintiff to depose herself by providing a narrative response identifying each and every complaint she made about the illegal credit reporting and the Debt Collector's failure to conduct a reasonable investigation of the inaccurate and misleading reporting of the Account.

ANSWER:  Subject to the objections above, I wrote to the three national consumer reporting agencies in March of 2023 and to dispute information contained in my credit file.  I disputed information furnished by National Credit Systems, Inc, (the "Debt Collector") as collection agency for The Connor Group, A Real Estate Investment Firm, LLC d/b/a The Connor Group d/b/a Alas Over Lowery [sic] Apartments (the "Apartment Complex").  The information provided to the consumer reporting agencies by the Debt Collector was incorrect and misleading. I went to lease an apartment from the Apartment Complex.  I filled out an application, paid an application fee, was approved, and signed a lease.  After I signed the lease, the Apartment Complex added a deposit to the lease that I never agreed to.  I told her that was not doable and that is when Vikki (now Office Manager) became rude and told me that I have to take the apartment, due to signing the lease without the security deposit being disclosed on it.  I refused to pay this deposit that was added after I had already signed the lease.

After the Apartment Complex was unwilling to honor the lease that I actually signed, they turned over the lease with the deposit to the Debt Collector.  I never agreed to the lease with the deposit.

35

The Debt Collector then reported to credit that I owed money on this lease. I didn't. The only agreement I ever signed was for an apartment with no deposit. I have never owed any money to the Apartment Complex or the Debt Collector because the Apartment Complex refused to lease the apartment to me based on the lease I agreed to.

After the Debt Collector would not remove this inaccurate information from my credit report and stop reporting it to the credit bureaus, I had to hire an attorney to fight the Apartment Complex in court. I tried to do it as a class action to help other people; I wasn't able to help others in court then, but I'm hoped my dispute would inform the credit bureaus removal of other National Credit Systems reporting. While I couldn't help others because the judge said that my dispute letter was not enough to put the Apartment Complex on notice that I was going to sue on behalf of others. Ultimately, the Apartment Complex agreed that the lease they turned over to the Debt Collector was void and of no force or effect. The Court entered a judgment declaring that the lease was void and of no force or effect. In other words, I didn't owe any money to the Apartment Complex and I didn't owe any money to the Debt Collector.

Even though the Apartment Complex had no right to collect any money from me, and the Debt Collector had no right to collect any money from me, this was still showing up on my credit report. It should not have.

I attached a copy of the lease, a copy of my complaint against the Apartment Complex, and a copy of the Court's order declaring the lease void. The Debt Collector is an unreliable source, as the company has been sued 181 times since January 1, 2020, for violations of consumer protection laws, as shown by PACER. They have 6,878 complaints made against them with the CFPB. 1,949 of these complaints are for attempting to collect debt that is not owed, and 690 of these complaints are about incorrect information on a credit report. They couldn't even get the name of the creditor correct on my report. They even misspelled the name of the Apartment Complex. They rely on the same bad source of information if they even look. The Debt Collector gets paid for collecting money so they have little incentive to do what is right: stop reporting this unfair and improper information. This whole ordeal has caused me emotional

distress and I think a jury should decide how much that is worth.  Despite their inaccuracy, I was unable to utilize my credit as I wanted to, and I was made to look like someone who owed money that I didn't owe.  National Credit Systems doesn't care about court orders and just ignores what courts say about whether people owe money.

I even gave the name and phone numbers of everyone who knew something about the lease being void, but nothing happened.

I didn't know how to deal with this reporting so I contacted my attorney, who helped me write the dispute letter.

I wrote in March and May of 2021 to Equifax, Eperian, and Trans Union stating that National Credit Systems was reporting the Account for the apartment lease and that the deposit was not delivered to me and enclosing the lease and e-mails supporting my dispute that I did not owe any money to National Credit Systems.  Like the six thousand or so people who have complained to the CFPB about National Credit Systems, National Credit Systems just ignored the substance of the dispute and verified that I owed money that I didn't owe.

I wrote to the three credit bureaus in August of 2023 but did not send the letter until September. I once again explained that the Court in Denver had declared that I didn't owe the money.  By this time, I had already sued National Credit Systems in Denver County Court and after removing this case from state court in Denver to federal court, National Credit Systems deleted the account from my credit file.

On May 23, 2023, I called Equifax and Trans Union explaining that I did not owe this debt and that a court had declared that this debt was void, which was forwarded to National Credit Systems to verify and then National Credit Systems again confirmed that I owed a debt that a Court had declared void.

INTERROGATORY NO. 9: To the extent you intend to offer any expert opinion or lay opinion pursuant to FED. R. EVID. 701, please identify the witness, the substance of the opinion and the information relied upon to support the opinion.

37

OBJECTION: Objection as to legal conclusion / work product. Defendant's request seeks to have Plaintiff list her witnesses before discovery is completed and before the time that trial witnesses are required to be disclosed. This request should be deferred to a pretrial conference.

OBJECTION:  Plaintiff objects to this request to the extent that it is cumulative and not the proper subject of an interrogatory to a party.  Instead, the proper disclosure of expert witnesses is governed by Fed. R. Civ. P. 26.

ANSWER: I may call the people that I have listed in my disclosures.

INTERROGATORY NO. 10: If you are claiming any mental anguish or emotional distress was caused by NCS's conduct, identify any and all persons from whom you sought or received any examination or treatment.

ANSWER:  Subject to the objections above, When NCS ignored a court order and kept reporting false credit information on my credit report, I did not seek or receive any treatment even though a Court had said that I don't owe any money on the lease that NCS continued to report.

INTERROGATORY NO. 11: Identify any and all medications that you have taken since January 1, 2021 (including the dosage and reasons for such medication) regardless of whether such mediation [sic]is prescription or over the counter.

OBJECTION:  Plaintiff objects to this interrogatory on the grounds that it is asking for all medications that Plaintiff takes regardless of whether it is related to a claim in this case, and is therefore, irrelevant and disproportionate to the needs of this case.

ANSWER:  Subject to the objections above, I don't remember exactly when it started, but I take Tylenol PM, every night, two tablets.  I need it to sleep because I know that Court Orders don't matter to companies like National Credit Systems, who just ignore them and go right on destroying people's credit like what a Court says doesn't matter.

## **REQUESTS FOR ADMISSIONS**

Plaintiff objects and responds to Defendant's requests for admission as follows:

1.       Admit that you did not complain directly to The Connor Group about NCS

furnishing information about the Account to the CRAs after January 30, 2023.

Objection:  Ms. Miller objects to this request for admission on the grounds that it is not relevant to any issue in this case.  Neither the Fair Credit Reporting Act nor the Fair Debt Collection Practices Act requires or contemplates that a consumer with inaccurate information on her credit report must notify the original creditor when the debt being collected is being reported to the consumer reporting agencies by a third-party debt collector like NCS.  Moreover, neither the Fair Credit Reporting Act nor the Fair Debt Collection Practices Act addresses "complaints" as that term is used by this discovery request.  Both deal with "disputes".

Response:   Admit that Ms. Miller sent a dispute letter to NCS using the proper procedure required by the Fair Credit Reporting Act, and NCS sent that letter to The Connor Group as would be expected of a third-party debt collector such as NCS.  Specifically, Ms. Miller disputed the completeness or accuracy of the information that NCS was reporting to Equifax, Experian, and Trans Union by sending a detailed letter to each of these three credit bureaus in accordance with 15 U.S.C. § 1681i(a)(1)(A).  This dispute letter contained not only a detailed account of the dispute, but also a copy of the judgment declaring the Account void and providing that Ms. Miller did not owe any amount on the subject lease.  It also contained a complaint describing the basis upon which Ms. Miller did not owe the Account. As required by 15 U.S.C. § 1681i(a)(2)(A), Experian and Trans Union provided notice of that dispute, together with the dispute letter containing the contact information for the Original Creditor, the Original Creditor's attorneys Greg Ostfeld and Lindsay Aherne, and the Apartment Complex Property Manager.  Similarly, Ms. Miller disputed the debt by telephone, and those disputes were sent from the relevant consumer reporting agency directly to NCS.  Denied to all respects not admitted above.

2.      After January 30, 2023, you did not inform Greg Ostfeld at Greenberg Traurig that NCS continued to furnish information about the Account to the CRAs.

Objection:  Ms. Miller objects to this request for admission on the grounds that it is

not relevant to any issue in this case.  Neither the Fair Credit Reporting Act nor the Fair Debt Collection Practices Act requires or contemplates that a consumer with inaccurate information on her credit report must notify the original creditor when the debt being collected is being reported to the consumer reporting agencies by a third-party debt collector like NCS.  Moreover, neither the Fair Credit Reporting Act nor the Fair Debt Collection Practices Act addresses "informing" the original, non-reporting, non-creditor's attorney, as that term is used by this discovery request.  Both deal with "disputes".

Response:  Admit that Ms. Miller sent a dispute letter to NCS using the proper procedure required by the Fair Credit Reporting Act, and NCS sent that letter to The Connor Group as would be expected of a third-party debt collector such as NCS.  Specifically, Ms. Miller disputed the completeness or accuracy of the information that NCS was reporting to Equifax, Experian, and Trans Union by sending a detailed letter to each of these three credit bureaus in accordance with 15 U.S.C. § 1681i(a)(1)(A).  This dispute letter contained not only a detailed account of the dispute, but also a copy of the judgment declaring the Account void and providing that Ms. Miller did not owe any amount on the subject lease.  It also contained a complaint describing the basis upon which Ms. Miller did not owe the Account.  As required by 15 U.S.C. § 1681i(a)(2)(A), Experian and Trans Union provided notice of that dispute, together with the dispute letter containing the contact information for the Original Creditor, the Original Creditor's attorneys Greg Ostfeld and Lindsay Aherne, and the Apartment Complex Property Manager.  Similarly, Ms. Miller disputed the debt by telephone, and those disputes were sent from the relevant consumer reporting agency directly to NCS.  Denied to all respects not admitted above.

3.     After January 30, 2023, you did not inform Lindsay Aherne at Greenberg Traurig that NCS continued to furnish information about the Account to the CRAs.

Objection:  Ms. Miller objects to this request for admission on the grounds that it is not relevant to any issue in this case.  Neither the Fair Credit Reporting Act nor the Fair Debt Collection Practices Act requires or contemplates that a consumer with inaccurate

information on her credit report must notify the original creditor when the debt being collected is being reported to the consumer reporting agencies by a third-party debt collector like NCS.  Moreover, neither the Fair Credit Reporting Act nor the Fair Debt Collection Practices Act addresses "informing" the original, non-reporting, non-creditor's attorney, as that term is used by this discovery request.  Both deal with "disputes".

Response:   Admit that Ms. Miller sent a dispute letter to NCS using the proper procedure required by the Fair Credit Reporting Act, and NCS sent that letter to The Connor Group as would be expected of a third-party debt collector such as NCS.  Specifically, Ms. Miller disputed the completeness or accuracy of the information that NCS was reporting to Equifax, Experian, and Trans Union by sending a detailed letter to each of these three credit bureaus in accordance with 15 U.S.C. § 1681i(a)(1)(A).  This dispute letter contained not only a detailed account of the dispute, but also a copy of the judgment declaring the Account void and providing that Ms. Miller did not owe any amount on the subject lease.  It also contained a complaint describing the basis upon which Ms. Miller did not owe the Account. As required by 15 U.S.C. § 1681i(a)(2)(A), Experian and Trans Union provided notice of that dispute, together with the dispute letter containing the contact information for the Original Creditor, the Original Creditor's attorneys Greg Ostfeld and Lindsay Aherne, and the Apartment Complex Property Manager.  Similarly, Ms. Miller disputed the debt by telephone, and those disputes were sent from the relevant consumer reporting agency directly to NCS.  Denied to all respects not admitted above.

4.      After January 30, 2023, you did not inform The Connor Group that NCS continued to furnish information about the Account to the CRAs.

Objection:  Ms. Miller objects to this request for admission on the grounds that it is not relevant to any issue in this case.  Neither the Fair Credit Reporting Act nor the Fair Debt Collection Practices Act requires or contemplates that a consumer with inaccurate information on her credit report must notify the original creditor when the debt being collected is being reported to the consumer reporting agencies by a third-party debt

collector like NCS.  Moreover, neither the Fair Credit Reporting Act nor the Fair Debt Collection Practices Act addresses "informing" the original, non-reporting, non-creditor, as that term is used by this discovery request.  Both deal with "disputes".

Response:   Admit that Ms. Miller sent a dispute letter to NCS using the proper procedure required by the Fair Credit Reporting Act, and NCS sent that letter to The Connor Group as would be expected of a third-party debt collector such as NCS.  Specifically, Ms. Miller disputed the completeness or accuracy of the information that NCS was reporting to Equifax, Experian, and Trans Union by sending a detailed letter to each of these three credit bureaus in accordance with 15 U.S.C. § 1681i(a)(1)(A).  This dispute letter contained not only a detailed account of the dispute, but also a copy of the judgment declaring the Account void and providing that Ms. Miller did not owe any amount on the subject lease.  It also contained a complaint describing the basis upon which Ms. Miller did not owe the Account. As required by 15 U.S.C. § 1681i(a)(2)(A), Experian and Trans Union provided notice of that dispute, together with the dispute letter containing the contact information for the Original Creditor, the Original Creditor's attorneys Greg Ostfeld and Lindsay Aherne, and the Apartment Complex Property Manager.  Similarly, Ms. Miller disputed the debt by telephone, and those disputes were sent from the relevant consumer reporting agency directly to NCS.  Denied to all respects not admitted above.

5.      After January 30, 2023, you did not inform Alas Over Lowery [sic] that NCS continued to furnish information about the Account to the CRAs.

Objection:  Ms. Miller objects to this request for admission on the grounds that it is not relevant to any issue in this case.  Neither the Fair Credit Reporting Act nor the Fair Debt Collection Practices Act requires or contemplates that a consumer with inaccurate information on her credit report must notify the original creditor when the debt being collected is being reported to the consumer reporting agencies by a third-party debt collector like NCS.  Moreover, neither the Fair Credit Reporting Act nor the Fair Debt Collection Practices Act addresses "informing" the original, non-reporting, non-creditor, as

that term is used by this discovery request.  Both deal with "disputes".

Response:  Admit that Ms. Miller sent a dispute letter to NCS using the proper procedure required by the Fair Credit Reporting Act, and NCS sent that letter to The Connor Group as would be expected of a third-party debt collector such as NCS.  Specifically, Ms. Miller disputed the completeness or accuracy of the information that NCS was reporting to Equifax, Experian, and Trans Union by sending a detailed letter to each of these three credit bureaus in accordance with 15 U.S.C. § 1681i(a)(1)(A).  This dispute letter contained not only a detailed account of the dispute, but also a copy of the judgment declaring the Account void and providing that Ms. Miller did not owe any amount on the subject lease.  It also contained a complaint describing the basis upon which Ms. Miller did not owe the Account.  As required by 15 U.S.C. § 1681i(a)(2)(A), Experian and Trans Union provided notice of that dispute, together with the dispute letter containing the contact information for the Original Creditor, the Original Creditor's attorneys Greg Ostfeld and Lindsay Aherne, and the Apartment Complex Property Manager.  Similarly, Ms. Miller disputed the debt by telephone, and those disputes were sent from the relevant consumer reporting agency directly to NCS.  Denied to all respects not admitted above.

6.    After January 30, 2023, your attorney did not inform the attorneys representing The Connor Group in the Connor Group Litigation that NCS continued to furnish information about the Account to the CRAs.

Objection:  Ms. Miller objects to this request for admission on the grounds that it is not relevant to any issue in this case.  Neither the Fair Credit Reporting Act nor the Fair Debt Collection Practices Act requires or contemplates that a consumer with inaccurate information on her credit report must notify the original creditor when the debt being collected is being reported to the consumer reporting agencies by a third-party debt collector like NCS.  Moreover, neither the Fair Credit Reporting Act nor the Fair Debt Collection Practices Act addresses "informing" the original, non-reporting, non-creditor's attorney, as that term is used by this discovery request.  Both deal with "disputes".

43

Response:   Admit that Ms. Miller sent a dispute letter to NCS using the proper procedure required by the Fair Credit Reporting Act, and NCS sent that letter to The Connor Group as would be expected of a third-party debt collector such as NCS.   Specifically, Ms. Miller disputed the completeness or accuracy of the information that NCS was reporting to Equifax, Experian, and Trans Union by sending a detailed letter to each of these three credit bureaus in accordance with 15 U.S.C. § 1681i(a)(1)(A).   This dispute letter contained not only a detailed account of the dispute, but also a copy of the judgment declaring the Account void and providing that Ms. Miller did not owe any amount on the subject lease.   It also contained a complaint describing the basis upon which Ms. Miller did not owe the Account. As required by 15 U.S.C. § 1681i(a)(2)(A), Experian and Trans Union provided notice of that dispute, together with the dispute letter containing the contact information for the Original Creditor, the Original Creditor's attorneys Greg Ostfeld and Lindsay Aherne, and the Apartment Complex Property Manager.   Similarly, Ms. Miller disputed the debt by telephone, and those disputes were sent from the relevant consumer reporting agency directly to NCS.   Denied to all respects not admitted above.

7.      On March 23, 2023, you knew that the Court in the Connor Group Litigation declared that You did not owe any money to The Connor Group.

Response:  Admit.

8.      Your attorney prepared your March 23, 2023 dispute letter to Trans Union.

Objection:   Plaintiff objects to this discovery request on the grounds that it seeks to invade the attorney-client privilege.

Response: Admit only that Ms. Miller "didn't know how to deal with this reporting so I contacted my attorney, who helped me write this letter. But the dispute is coming directly from me. If you need any additional information, or if anything in this letter is unclear, please contact me at ladyinnursing@yahoo.com or 405-590-6390.   Please send the results of the dispute, and a copy of my file, to me at the address listed above."   Plaintiff therefore admits that she didn't know how to deal with this reporting so she contacted her attorney, who

44

helped her write the dispute letter.  Ms. Miller denies any request for admission inconsistent with the statement she made in the letter she sent to the three national consumer reporting agencies, which attached a copy of the judgment stating that Ms. Miller did not owe any money on the lease that NCS, the Defendant, was trying to collect.

9.      Your attorney decided what documents to attach to your March 23, 2023 dispute letter to Trans Union.

Objection:  Plaintiff objects to this discovery request on the grounds that it seeks to invade the attorney-client privilege.

Response: Admit only that Ms. Miller "didn't know how to deal with this reporting so I contacted my attorney, who helped me write this letter. But the dispute is coming directly from me. If you need any additional information, or if anything in this letter is unclear, please contact me at ladyinnursing@yahoo.com or 405-590-6390.  Please send the results of the dispute, and a copy of my file, to me at the address listed above."  Plaintiff therefore admits that she didn't know how to deal with this reporting so she contacted her attorney, who helped her write the dispute letter.  Ms. Miller denies any request for admission inconsistent with the statement she made in the letter she sent to the three national consumer reporting agencies, which attached a copy of the judgment stating that Ms. Miller did not owe any money on the lease that NCS, the Defendant, was trying to collect.

10.      Your attorney prepared your March 23, 2023 dispute letter to Experian.

Objection:  Plaintiff objects to this discovery request on the grounds that it seeks to invade the attorney-client privilege.

Response: Admit only that Ms. Miller "didn't know how to deal with this reporting so I contacted my attorney, who helped me write this letter. But the dispute is coming directly from me. If you need any additional information, or if anything in this letter is unclear, please contact me at ladyinnursing@yahoo.com or 405-590-6390.  Please send the results of the dispute, and a copy of my file, to me at the address listed above."  Plaintiff therefore admits that she didn't know how to deal with this reporting so she contacted her attorney, who

45

helped her write the dispute letter.  Ms. Miller denies any request for admission inconsistent with the statement she made in the letter she sent to the three national consumer reporting agencies, which attached a copy of the judgment stating that Ms. Miller did not owe any money on the lease that NCS, the Defendant, was trying to collect.

11.     Your attorney decided what documents to attach to your March 23, 2023 dispute letter to Experian.

Objection:  Plaintiff objects to this discovery request on the grounds that it seeks to invade the attorney-client privilege.

Response: Admit only that Ms. Miller "didn't know how to deal with this reporting so I contacted my attorney, who helped me write this letter. But the dispute is coming directly from me. If you need any additional information, or if anything in this letter is unclear, please contact me at ladyinnursing@yahoo.com or 405-590-6390.  Please send the results of the dispute, and a copy of my file, to me at the address listed above."  Plaintiff therefore admits that she didn't know how to deal with this reporting so she contacted her attorney, who helped her write the dispute letter.  Ms. Miller denies any request for admission inconsistent with the statement she made in the letter she sent to the three national consumer reporting agencies, which attached a copy of the judgment stating that Ms. Miller did not owe any money on the lease that NCS, the Defendant, was trying to collect.

12.     Admit that you have not sustained and are not seeking any out-of-pocket financial damages in this case.

Response: Denied.

13.     Admit that you have not lost any money as a result of the conduct of NCS alleged in your Complaint.

Response: Denied.

14.     Admit that you have not sustained and are not seeking damages for any physical harm or symptoms in this case.

Objection:  Ms. Miller is unable to respond to this request because it is not clear what

is meant by "physical harm or symptoms in this case." It is not clear what Defendant means by this, and Defendant has been unwilling to schedule a time to discuss this on the phone. Additionally, the prepositional phrase "in this case" modifies the preceding nouns "physical harm or symptoms", and Plaintiff is not claiming from damages "in this case" and instead, is seeking damages for Defendant's failure to comply with the Fair Debt Collection Practices Act and the Fair Credit Reporting Act.

Response: If Defendant intended the prepositional phrase to be a distant modifier of the word "seeking" (which would have been cleared up by a phone call that Defendant's counsel has not been willing to have), then Plaintiff would state that she is, in fact, seeking damages for the physical manifestations of the emotional distress that she suffered when NCS continued to harm her credit even **after a judge said she did not owe any money** and violated federal law.

15.    Admit that you have not received any medical treatment as a result of the conduct of NCS alleged in your Complaint.

Objection: The phrase, "medical treatment", is vague and undefined as used in this request for admission. Because Defendant's counsel has refused to have a meet and confer to discuss the meaning of medical treatment, including whether that involves non-physician directed treatment. Accordingly, Plaintiff will apply the broadest possible definition of medical treatment in responding to this request, including self-help medical treatment.

Response: NCS, the Defendant, failed to comply with federal law and harmed Ms. Miller's credit standing and caused her emotional distress, for which she obtained medical treatment.

16.    Admit that you have not sustained [sic] are not claiming any damage to your reputation in this case as a result of the conduct of NCS alleged in your Complaint.

Objection: Plaintiff objects to this request for admission on the grounds that it is compound. Specifically, it asks whether Plaintiff (1) sustained damages and (2) whether she is claiming damages. Consequently, this request for admission constitutes two separate

requests for admission.

Response:  Denied.

17.     Admit that you have not sustained and are not claiming any damages for emotional distress in this case as a result of the conduct of NCS alleged in your Complaint.

Objection:  Plaintiff objects to this request for admission on the grounds that it is compound.  Specifically, it asks whether Plaintiff (1) sustained damages and (2) whether she is claiming damages.  Consequently, this request for admission constitutes two separate requests for admission.

Response:  Denied.

18.     Admit that you have not sustained and are not claiming any damages for mental anguish in this case as a result of the conduct of NCS alleged in your Complaint.

Objection:  Plaintiff objects to this request for admission on the grounds that it is compound.  Specifically, it asks whether Plaintiff (1) sustained damages and (2) whether she is claiming damages.  Consequently, this request for admission constitutes two separate requests for admission.

Response:  Denied.

19.     Admit that you have not taken nor been prescribed any medications as a result of the conduct of NCS alleged in your Complaint.

Objection:  Plaintiff objects to this request for admission on the grounds that it is compound.  Specifically, it asks whether Plaintiff (1) has taken medications and (2) whether she was prescribed medications.  Consequently, this request for admission constitutes two separate requests for admission.

Response: Denied as to taken, admitted as to prescribed.

20.     Admit that you have not taken any over-the-counter medications as a result of the conduct of NCS alleged in your Complaint.

Response: Denied.

21.     Admit that NCS did not violate the Fair Credit Reporting Act or any other laws

48

in its handling of your Account.

Response: Denied.

22.     Admit that NCS did not act to willfully violate the Fair Credit Reporting Act or any other laws in its handling of your Account.

Response: Denied.

23.     Admit that you do not have any documents evidencing that you have suffered any emotional and/or mental anguish damages.

Response: Denied.

24.     Admit that, excluding attorney's fees, costs and interest, admit that you are seeking only statutory damages in this case.

Response: Denied.

25.     Admit that you have suffered no out-of-pocket expenses as a result of any action by NCS.

Response: Denied.

26.     Admit that you have paid no attorney's fees in relation to this Litigation.

Objection: Plaintiff objects to this request as irrelevant.

Response: Plaintiff will not respond to this irrelevant request.

27.     Admit that you have paid no costs in relation to this Litigation.

Response: Denied.

Dated: May 3, 2024

Respectfully submitted,

As to Objections:

Vedra Law LLC

/s/ Daniel J. Vedra
Daniel J. Vedra
Vedra Law LLC
1444 Blake Street
Denver, CO 80202

303-937-6540
303-937-6547 (f)
dan@vedralaw.com
**Attorneys for Plaintiff**

As to Answers to Interrogatories:

_____

Zepherine Miller

**CERTIFICATE OF SERVICE**

       I hereby certify that on the date first written above the foregoing was served by e-mail by agreement of the parties on:

John W. Bowdich
BOWDICH & ASSOCIATES, PLLC
8150 N. Central Expy., Suite 500
Dallas, Texas 75206
jbowdich@bowdichlaw.com

                                     /s/ Daniel J. Vedra
                                     Daniel J. Vedra

          -79)