# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| ZEPHERINE MILLER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 1:23-cv-02620-MEH |
| | § | |
| NATIONAL CREDIT SYSTEMS, INC., | § | |
| | § | |
| *Defendant*. | § | |

## DEFENDANT NATIONAL CREDIT SYSTEMS, INC.'S AMENDED MOTION FOR SUMMARY JUDGMENT

National Credit Systems, Inc. ("Defendant" or "NCS"), pursuant to FED. R. CIV. P. 56, files this Amended Motion for Summary Judgment (the "MSJ") and would show the Court as follows:

### SUMMARY JUDGMENT EVIDENCE

Appended to this Motion are NCS's exhibits in support of the Motion, labeled "A," with exhibits "A-1" through "A-16" attached, and "B," with exhibits "B-1" through "B-9" attached. Said exhibits are incorporated herein by reference and provide the background facts for this MSJ.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

1.  <u>Miller-AOL Account</u>: The Original Creditor, The Connor Group ("TCG") manages and does business as Alas Over Lowry Apartments ("AOL"), where Plaintiff Zepherine Miller ("Plaintiff" or "Miller") applied for and signed a Lease Agreement for which she purportedly defaulted by not moving in or making any payments, resulting in a debt in the amount of $25,788 before landlord mitigation (the "Account"). *See* Exs A-7, A-8.

2.  <u>Placement of Account for Collection</u>. TCG, pursuant to a Services Agreement, placed the Account for collection with NCS on December 21, 2020. *See* Exs A-1, A-2, A-3.

3.	<u>NCS Policies to Verify Accounts as Accurate</u>. As detailed in the Declaration of Ron Sapp, NCS's VP of Operations, NCS utilizes a number of policies and requirements to prevent collection of inaccurate/invalid debts, including requiring the Original Creditor to (a) acknowledge the accuracy of the account and (b) indemnify NCS if incorrect, (c) provide documents to establish debtor responsibility and amount (Lease Application, Lease, Account Statement and/or Ledger), and (d) comply with a dispute verification procedure. *See* Ex A, ¶¶ 4-5.

4.	<u>NCS Dispute Investigation Procedures</u>. For direct disputes received from the consumer and indirect disputes received through automated consumer dispute verifications (ACDVs) from the consumer reporting agencies (CRAs), NCS has policies and procedures, including to review (a) any dispute codes, ACDV relevant information and documents in support of the dispute, (b) NCS's Account Notes, including communications with the consumer, the original creditor, and previous investigation efforts, (c) documents in NCS's batch file (Lease, Application, Acct Statement/Ledger, communications, disputes), and will (d) communicate the dispute to the Original Creditor for its review and verification of the account. *See* Ex A, ¶¶ 7-9.

5.	<u>NCS Collection of Account</u>. All activity taken to collect an account is included on NCS's Account Notes on its collection software, WinDebt, including the actions taken when performing dispute investigations. *See* Ex A, ¶ 11; Ex A-3. NCS followed its verification of accuracy procedures, including the Account Acknowledgement Report, Service Agreement with indemnity, and confirmation of documents to support the validity and accuracy of the Account. *See* Ex A, ¶ 12; Exs A-1, A-2, A-3, A-7, and A-8. On December 28, 2020, NCS began collection efforts by sending Plaintiff its FDCPA § 1692g compliant letter (the 1.3 Letter), attempting collection communications and thereafter furnishing information regarding the Account to the CRAs on March 2, 2021. *See* Ex A, ¶ 12; Ex A-3.

NCS' Investigation of Plaintiff's Disputes

6. <u>First Indirect Disputes from CRAs (May-June 2021)</u>. On May 23, 26 and June 10, 2021, NCS received ACDVs from each of the CRAs containing the same dispute letter from Plaintiff, dated May 8, 2021. *See* Ex A, ¶ 14; Ex A-4 at NCS-137; Ex A-5 (dispute letter). The dispute codes used were 112 (claims inaccurate information) or 1 (not his hers). *See* Ex A, ¶ 14; Ex A-4 at NCS-093. NCS followed its reasonable investigation protocol set out above in <u>SOF 4</u>, including a verification request with a description of Miller's dispute to TCG to verify the Account as valid. *See* Ex A, ¶ 14; Ex A-3 (client email 71 on 05/27/21); A-6 (letter with dispute description). TCG responded on June 3 and 9, 2021, providing the documents to support the validity of the Account (Lease, Appl, Acct Stmt). *See* Ex A, ¶ 14; Exs A-3 (at NCS-080), A-7, and A-8.

7. <u>Plaintiff's direct dispute to NCS</u>. On August 6, 2021, NCS processed a dispute letter from Plaintiff complaining about the same security deposit issue and attaching supporting documentation, which triggered NCS to email its form letter to TCG with a copy of Plaintiff's dispute letter and the supporting documentation. *See* Ex A, ¶ 15; Ex A-9. On August 11, 2021, TCG responded as follows:

| | |
|---|---|
| **From:** | Alas Over Lowry <alas@connorgroup.com> |
| **To:** | Legal <legal@nationalcreditsystems.com> |
| **Date:** | Wed, 11 Aug 2021 00:31:03 +0000 |
| **Attachments:** | 20210609123259765.pdf (18.02 kB); 20210603101424818.pdf (304.93 kB); 20210603100101356.pdf (240.41 kB); 450U6NG3.DOC (80.64 kB); 4510687-03.pdf (375.12 kB) |

Hello,

Zepherine was well aware of what the security deposit could be. She was also well aware that when signing the lease which was explained as a legally binding document that she would be responsible for the lease. Attached are copies of the lease, application acknowledgement form, application, ledger, and utilities addendum.

Thank you,

**Ben Glover**
Alas Over Lowry
Operations Manager
82 N Uinta Way
Denver, CO 80230
720-452-9055

Ex. A, ¶ 15; Ex A-10.

8.     <u>NCS reduced balance on Account</u>. On August 14, 2021, TCG responded to NCS's inquiry whether the unit leased by Miller was re-rented; upon TCG's response on September 21 and 25, 2021, NCS reduced the Account for landlord mitigation. Ex A, ¶¶ 16-17; Exs A-11, A-12.

9.     <u>Effect of Notating Account as "Disputed."</u> As a result of Miller's disputes, on August 6, 2021, NCS included eOscar Compliance Code "XB" with the information furnished to the CRAs, as required by FDCPA § 1692e(2)(A) and e(8). *See* Ex A at ¶ 18; Ex A-3 (08/06/2021, 01:54:14 PM). Code "XB" indicates that the account is disputed by the consumer under FCRA which excludes the account from any credit scoring models such that the Account would not positively or negatively impact Miller's credit scores. *See* Ex A, ¶¶ 18, 19.

10.    <u>Second Indirect Disputes from CRAs (April 2023)</u>. On April 6 and 7, 2023, NCS received ACDVs from Experian and TransUnion containing the same dispute letter from Plaintiff, dated March 23, 2023, which included a Complaint from a State Court Lawsuit and Judgment against TCG using dispute codes 112 (claims inaccurate information) and 118 (disputes current balance). Ex A, ¶ 20; Ex A-4 (NCS-093, NCS-137); Ex A-13. The Complaint and the Judgment did not identify the Account or any specific lease. *See* Ex "A-13" (NCS-055 to 069). The dispute indicated that "the Apartment Complex agreed that the lease they turned over to the Debt Collector was void and of no force or effect" and requested verification of the dispute with TCG as follows:[1]

If you need to know anything about this lease, you can call or write the following people:

*Attorneys for Apartment Complex*
Greg Ostfeld
Greenberg Traurig
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
OstfeldG@gtlaw.com
312-476-5056

Lindsay Aherne
Greenberg Traurig
1144 15th Street, Suite 3300
Denver, CO 80202
ahernel@gtlaw.com
303-572-6500

*Apartment Complex Owner*
The Connor Group
10510 N Springboro Pike
Dayton, OH 45342
937-434-3095

*Apartment Complex Property Manager*
Alas Over Lowery
82 Unita Way
Denver, CO 80230
720-868-9157

---

[1] Notably, NCS would not have its investigators and contractors contact third parties regarding the debt to avoid any possible violations of FDCPA § 1692c(b).

Ex A-13 (NCS-051).

11. <u>Investigation at Issue</u>. NCS performed a reasonable investigation of Plaintiff's second set of indirect disputes by following NCS's policies and procedures set out in <u>SOF 4</u>, including review of (a) the Account Notes that show TCG had not recalled the Account, (b) the batch file confirmed the validity and accuracy of the Account, (c) the Dispute included legal documents that did not reference the Account or specific Lease but claimed the Judgment voided the Account; and, as requested by the Dispute, NCS contacted TCG, using its request for verification letter (Client email 71). *See* Ex A, ¶ 21; Ex A-3 (NCS-084 on 04/14/2023); Ex A-13. The verification request letter to TCG included a copy of Miller's Dispute (with Complaint and Judgment), was customized to explain Plaintiff's dispute, and was emailed to the correct TCG contact (alas@connorgroup.com) on April 14 and 19, 2023, providing:

> It is of critical importance that NCS pursue recovery on verifiably correct account balances from the parties who are legally responsible. As data furnishers to the credit bureaus, we are required by law to conduct an investigation into consumer, or former resident, account disputes
>
> Please understand that it is very important that the information below be reviewed and replied to as soon as possible and **no later than 05/04/2023.** Without this verification, NCS will have to close this account or remove the disputed item.
>
> **1. Issue in question:** THE FORMER RESIDENT IS DISPUTING THE DEBT. PLEASE REVIEW THE ATTACHED DISPUTE ALONG WITH YOUR RECORDS AND CONFIRM IF THE DEBTOR OWES THE BALANCE. ALSO, PLEASE VERIFY THE BALANCE AND CONFIRM IF THE CHARGES BEING ASSESSED ARE CORRECT OR IF THE BALANCE SHOULD BE REVISED.
>
> **2. See attachment(s) if applicable.**

*See* Ex A-3 (NCS-083); Ex A-14. On April 19, 2023, TCG responded to NCS's request for verification by reply email indicating that the AOL-Miller Account was valid and owing:

> From: Alas Over Lowry <alas@connorgroup.com>
> To: legal@nationalcreditsystems.com
> Date: Wed, 19 Apr 2023 18:49:38 +0000
>
> Hello,
>
> This amount is owed per our records.
>
> Thank you,
>
> Caiti Kopp
> Alas Over Lowry
> Property Manager

Ex A, ¶ 22; Ex A-15. NCS fulfilled its policies and procedures and fulfilled Miller's request by contacting TCG to verify the validity of the Account, and NCS also followed up with TCG to verify the balance on April 20, 2023, whereby TCG again verified the Account and balance owed, providing a copy of the Tenant Ledger. *See* Ex A, ¶ 23; Ex A-3 (NCS-084); Ex A-16. As a result, NCS verified the Account in response to the ACDVs. *See* Ex A-4 (NCS-132, response code "23" for verification). Unfortunately, although TCG resolved the Account in the State Court Lawsuit,[2] it failed to update its Tenant Ledger or otherwise inform the property manager designated to respond to dispute investigations who verified the Account to NCS as accurate. *See* Ex A, ¶ 23.[3] Had TCG properly recalled the Account or responded that the Account was settled, NCS would have submitted a deletion request of the tradeline to the CRAs, which is what happened when served with this lawsuit on September 29, 2023. *See* Ex A, ¶ 25.

12.   <u>Evidence Supporting Bona Fide Error</u>. NCS had no intention of violating the FDCPA as shown by the fact that it followed the policies and procedures NCS maintains to prevent violations of FDCPA §§ 1692e(2)(A) and 1692e(8) as set out in <u>SOF 3</u>. *See* Ex A, ¶ 6. The account documents (Lease Application, Lease, and Final Account Statement) were all provided by TCG; a Service Agreement with TCG contains the required indemnity provision; and the account acknowledgement form was sent to TCG. *See* Exs A-1, A-2, A-7, and A-8. TCG provided a contact

---

[2] <u>Issue of Legal Disputes</u>. For the situation presented in this litigation, NCS does not, and is not required under the framework of the FCRA, to train its investigators to attempt to resolve legal or contractual disputes that are not objectively and readily verifiable. *See* Ex A, ¶ 10. For instance, the initial disputes involved contract interpretation issues that required the State Court Lawsuit to resolve, and following resolution of that litigation, Plaintiff's dispute involved the applicability of a Judgment against TCG to the Account. As the Judgment could be subject to later proceedings and did not specifically reference the Account or AOL, it is more reasonable for NCS to rely on TCG to verify the Dispute than NCS determine that legal question. *Id.*

[3] NCS received another set of ACDVs in May 2023, however, no dispute letter or any supporting documentation was included, only a dispute code. *See* Ex A, ¶ 24. Without any new information to investigate, NCS relied on its previous investigations as provided in the Account Notes and batch file. *Id.*; Ex A-3 (NCS-084 at 05/29/2024).

email to receive communications, provide documents and information regarding its accounts, and assist in resolving disputes (alas@connorgroup.com). *See* Exs A-6 through A-12, and A-14 through A-16. *See* Ex A, ¶ 6. TCG was active in providing documentation and information to ensure account accuracy. *Id.* In addition, on three different occasions involving three different disputes by Miller, NCS followed its dispute investigation procedures by forwarding its customized verification letter to TCG with copies of Miller's disputes and by obtaining responses from TCG. *Id.*

13.     <u>Affirmative Defenses of Failure to Mitigate / Comparative Negligence</u>. Plaintiff's attorney Dan Vedra ("Vedra") communicated with TCG's attorneys, Greenberg Traurig, LLP ("GT Law") regarding aspects of the conclusion of State Court Litigation, including the following emails—all of which were during the same time frame of Plaintiff's disputes to the CRAs about NCS's continued collection of the Account—and none of which mention the collection issue:

- <u>Feb. 20, 2023</u>: Emails whereby Vedra sought an extension of time for Mr. Vedra to file a motion for fees. Ex B-3.

- <u>Mar. 23, 2023</u>: Emails whereby Vedra agreed to extend the time for TCG's response brief to the motion for fees so long as TCG confirmed to pay the $1,781 damage award in the Judgment directly to Ms. Miller. Ex B-4.

- <u>Apr. 18, 2023</u>: Emails whereby Vedra sought an extension of time for Vedra to file a reply brief to the motion for fees. Ex B-5.

- <u>Jun. 12, 2023</u>: Emails whereby Vedra sought payment of the attorneys' fees and costs awarded to be made payable to his law firm rather than Ms. Miller. Ex B-6.

- <u>Jun. 27, 2023</u>: Emails whereby Vedra agreed to notarize and file the satisfaction of judgment. Ex B-7.

None of those emails, nor in any documents produced by Plaintiff in this litigation, did Vedra, indicate to GT Law that the Account extinguished by the Judgment was being collected by TCG or NCS. Quite the opposite, as Vedra filed a Satisfaction of Judgment on July 7, 2023. Ex B-8.

## ARGUMENT AND AUTHORITIES

### A.  Plaintiff's Claims under the FCRA

#### 1.  *Plaintiff's Allegations.*

Plaintiff claims that NCS violated the following provisions of the FCRA, both negligently

pursuant to FCRA § 1681o and willfully pursuant to § 1681n:

- § 1681s-2(b)(1)(A), by failing to conduct a reasonable investigation with respect to the disputed information;

- § 1681s-2(b)(1)(B) and (C), by failing to review all relevant information with respect to the disputed information and to report the results if the investigation to the CRAs;

- § 1681s-2(b)(1)(E), by failing to modify, delete, or block reporting of the allegedly inaccurate information.

#### 2.  *Applicable Law*

    a.  <u>Inaccuracy</u>

        (1)  *Inaccuracy is a threshold issue before determining whether a reasonable investigation was performed.*

Whether the information furnished by NCS regarding the Account was inaccurate,

incomplete, or materially misleading is a threshold issue that must be satisfied before determining

whether a reasonable investigation was performed. *See Schueller v. Wells Fargo & Co*., 559 F.

App'x 733, 737 (10th Cir. 2014); *see also Grays Navient Sols, LLC*, 2023 U.S. Dist. LEXIS 62166,

at *5 (D. Co Feb. 8, 2023).

        (2)  *A legal dispute of the debt is not an "inaccuracy" under the FCRA, and a data furnisher is not required to resolve such legal disputes.*

When the dispute necessarily requires a judicial resolution or legal interpretation, such as

contract interpretation or a question of law regarding the debt's validity, the Tenth Circuit follows

the majority view that the FCRA does not require the data furnisher to resolve that dispute, and

the FCRA claim fails. *See Wright v. Experian Info. Solutions, Inc.*, 805 F.3d 1232, 1242 (10th Cir.

2015). An FCRA lawsuit is not properly suited to resolve the validity of the underlying debt. *See Daniels v. Nat'l Credit Sys., Inc.*, 2024 U.S. Dist. LEXIS 100336, at *9 (D. Colo. 2024).

> b.   Reasonable Investigation

A "reasonable" investigation "is one that a reasonably prudent person would undertake under the circumstances." *Maiteki v. Marten Transp. Ltd*., 828 F.3d 1272, 1275 (10th Cir. 2016). "[T]he reasonableness of the investigation is to be determined by an objective standard." *Id.* "An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." *Collins v. Diversified Consultants*, 2016 U.S. Dist. LEXIS 201318, at *11–12 (D. Colo. 2016). "But an investigation does not have to be exhaustive to be reasonable." *Maiteki* at 1276. "[T]he FCRA does not require perfection, only a reasonable response." *Stewart v Equifax Info Servs, LLC*, 320 F Supp 3d 1186, 1205 (D Kan., 2018).

> *3.   Argument*

> a.   The information NCS reported to the CRAs was not inaccurate, because Plaintiff's dispute was a legal issue that NCS was not required to resolve.

The information NCS reported to the CRAs regarding the Account was not inaccurate, because Plaintiff's dispute was a legal question regarding the effect of the Order of Judgment from Plaintiff's underlying State Court Lawsuit against the TCG. NCS, following its dispute investigation procedures set out in SOF 4, as shown in SOF 10 and 11, sent TCG a verification request letter containing a description of Plaintiff's dispute, attaching her dispute letter with attachments (Complaint and Judgment against TCG), and requesting TCG to confirm whether the Account remained valid. SOF 11. Notably, the Complaint and Judgment do not provide any details about the Lease (lease date, etc.) nor does the Judgment name the apartment complex, AOL. In response to NCS's dispute verification request, TCG informed NCS that the AOL-Miller Account was still valid and confirmed the validity by providing a current Tenant Ledger. SOF 11. When

presented with conflicting interpretations of the Order of Judgment between Plaintiff and TCG, that was not a factual inaccuracy for NCS to resolve. It was a legal issue regarding the effect of other legal proceedings on Plaintiff's continued legal liability for the Account—and a disagreement between Plaintiff and the Original Creditor as to that effect—which NCS was not equipped or required to resolve under the FCRA.

      b.  <u>NCS's investigation of the dispute was reasonable.</u>

It is undisputed that NCS consistently followed its policies and procedures, including the process to request dispute verification from the Original Creditor on the operative and earlier disputes resulting in a reduction of the Account. <u>SOF 4-6, 8, 10-11</u>. For the ACDVs processed in April 2023, upon receiving the ACDVs from the CRAs, NCS followed its procedures, including having its administrative personnel contact the designated person at TCG using the correct email address for verification of disputes to determine if the AOL-Miller Account was still valid based on Plaintiff's dispute and the attachments to that dispute. <u>SOF 11</u>. It is likewise undisputed that, when responding to NCS's request for verification of the Account, TCG affirmatively verified Plaintiff's liability for the full balance of the Account, even providing a Tenant Ledger showing the balance due, despite TCG's knowledge of the Order of Judgment. <u>SOF 11.</u> Notably, this is the precise action requested by Plaintiff to investigate her dispute. <u>SOF 10</u> (Ex A-13).

NCS's investigation was reasonable under the circumstances because it provided all the information to the Original Creditor (TCG-the defendant in the State Court Lawsuit), who was in a superior position than NCS to verify whether the Order of Judgment resolved Plaintiff's liability on the Account. The fact that NCS's investigation failed to yield the correct result does not mean that the investigation was not reasonable, even if NCS may not have done everything possible.[4]

---

[4] For example, pursuant to FRE 201(b) the Court can take judicial notice that the records for Denver District Court are not publicly available without a subscription through vendors. *See* *https://www.coloradojudicial.gov/courts-records-search.* Even if the records were readily

As noted above, a reasonable investigation under the FCRA does not have to be perfect or exhaustive. Once the Original Creditor, when presented with the Order of Judgment, verified the Debt there was little or nothing else NCS was reasonably required to do.

For Plaintiff to prevail on her FCRA claim, it necessarily would require that data furnishers could no longer rely on the conclusions made by original creditors regarding the validity of their own debts. This contradicts the standard of a reasonable investigation, especially for third-party collection agencies. Here specifically, to ignore the response of TCG, the original creditor and a party to the State Court Lawsuit in a superior position to know the effect of the Order of Judgment. Moreover, the dispute indicated that NCS should contact and rely on the position of TCG. SOF 10; Ex A-13 (NCS-051).

In *Maiteki*, the 10th Circuit reviewed a district court finding that its investigation of a dispute to a CRA was reasonable. Noting that an investigation does not have to be exhaustive, the Tenth Circuit found that it was not unreasonable for the furnisher to not contact third parties to verify the validity of the documents in the furnisher's records. *Maiteki* at 1276. Here, NCS's investigation was just as reasonable in light of the nature of the dispute and the request that TCG be contacted. NCS did so, through the proper contacts, and the debt was validated, with NCS continuing to mitigate any damages by furnishing information that Plaintiff's disputes the Account SOF 11, 9. Reporting that information, including Plaintiff's dispute when furnishing information to the CRAs, does not violate the FCRA or FDCPA. *See Daniels*, 2024 U.S. Dist. LEXIS 100336, at *9 (citing *Wright*, 805 F.3d at 1242 (addressing the FCRA)).

At a minimum, NCS's investigation was not willful or reckless in its investigation of Plaintiff's dispute. *See Llewellyn v. Allstate Home Loans, Inc*., 711 F.3d 1173, 1185 (10th Cir.

---

available online, that would not have resolved the issue that TCG informed NCS that the Account was valid, even when presented with a copy of the Order of Judgment.

2013) (finding that the district court did not err in granting summary judgment to defendant where there was no evidence of willfulness or recklessness). A "willful" violation is either an intentional violation or a violation that is committed in reckless disregard of a defendant's duties under FCRA. *See Birmingham v. Experian Info. Solutions, Inc*., 633 F.3d 1006, 1009 (10th Cir. 2011). The evidence proves, with no evidence to the contrary, that NCS's conduct did not entail an unjustifiably high risk of harm that was known or obvious that it should have been known to NCS. *See Llewellyn*, 711 F.3d at 1183–84.

## B. Plaintiff's Claims under the FDCPA

### 1. *Plaintiff's allegations*

Plaintiff claims that NCS violated the following provisions of the FDCPA:

- § 1692c(b), by communicating with someone other than Plaintiff in connection with the collection of the debt without Plaintiff's consent. Doc. 19 at 10–11. Plaintiff alleges that NCS "communicated with CRAs when such communication was illegal." Doc. 19 at 10;

- § 1692e, by making a "false representation of … the character, amount or legal status of" the debt and using "false representation or deceptive means to collect or attempt to collect" the debt… *Id*. at 11. Plaintiff alleges that NCS "made false, deceptive and misleading representations and deceptive means when the Debt Collector falsely represented Plaintiff owed money, communicated information to consumer reporting agencies that they knew to be false and incomplete, and falsely represented debt was owed to the Debt Collector." *Id*.;

- § 1692f, by using "unfair or unconscionable means to collect or attempt to collect" the debt. *Id*. Plaintiff alleges that NCS violated Section 1692f(1), which prohibits collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id*.

### 2. *Applicable Law*

a. <u>FDCPA § 1692c(b)</u>

Section 1692c(b) of the FDCPA provides that, "[e]xcept as provided in section 804 [15 USCS § 1692b], without the prior consent of the consumer given directly to the debt collector … a debt collector may not communicate, in connection with the collection of any debt, with any

person *other than ... a consumer reporting agency* if otherwise permitted by law….” 15 U.S.C. §

1692c(b) (emphasis added).

>    b.   FDCPA § 1692e

“A debt collector may not use any false, deceptive, or misleading representation or means

in connection with the collection of any debt. Without limiting the general application of the

foregoing, the following conduct is a violation of this section:

>                                  *        *        *
>
> (2)   The false representation of—
>        (A) the character, amount, or legal status of any debt; or
>                                  *        *        *
> (8)   Communicating or threatening to communicate to any person credit information
>        which is known or which should be known to be false, including the failure to
>        communicate that a disputed debt is disputed.
>                                  *        *        *
> (10)  The use of any false representation or deceptive means to collect or attempt to collect
>        any debt or to obtain information concerning a consumer.”

15 U.S.C. § 1692e.

For Plaintiff’s FDCPA §§ 1692e claims to survive summary judgment, Plaintiff must

establish that NCS misrepresented the “character, amount, or legal status of a debt” or used a “false

representation or deceptive means to collect or attempt to collect any debt.” *See* FDCPA

§§1692e(2)(A), (8) and (10). Under the FDCPA, NCS may reasonably rely on the information

provided to it by the Original Creditor and has no further duty to make any determination whether

the Original Creditor calculated the alleged amount due correctly pursuant to the Lease. Even if

NCS did report inaccurate information, the violation must be knowing and intentional. *See Clark*

*v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1174 (9th Cir. 2006) (“Within reasonable

limits, Capital and Hasson were entitled to rely on their client’s statements to verify the debt.”).

>    c.   FDCPA § 1692f

“A debt collector may not use unfair or unconscionable means to collect or attempt to

collect any debt. Without limiting the general application of the foregoing, the following conduct

is a violation of this section: (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law….” 15 U.S.C. § 1692f(1).

### 3. Argument

#### a. FDCPA § 1692c(b)

Plaintiff claims that NCS “communicated with CRAs when such communication was illegal.” Doc. 19 at 10. But Section 1692c(b) explicitly allows communication with CRAs where it states that “a debt collector may not communicate, in connection with the collection of any debt, with any person *other than* … a consumer reporting agency if otherwise permitted by law ….” *See* 15 U.S.C. 1692c(b) (emphasis added). Plaintiff makes no allegations as to why NCS furnishing information to the CRAs was “illegal” or not “otherwise permitted by law.” “A debt collector does not violate the FDCPA by reporting a debt to a [CRA].” *Phillips v. NCO Fin. Sys.*, No. 12-cv-15482, 2014 U.S. Dist. LEXIS 50089, 2014 WL 1405217, at *7 (E.D. Mich. Apr. 11, 2014).

#### b. FDCPA § 1692e

Plaintiff’s claim for the alleged violation of FDCPA §§ 1692e(2)(A), e(8), and e(10) relates to NCS’s efforts to collect the Account and, as with her FCRA claim, similarly hinges on her contention that she does not owe the Account because of the Order of Judgment. *See* Doc. 19 at 11. Section 1692e of the FDCPA prohibits debt collectors from using “any false, deceptive, or misleading representation or means in connection with the collection of any debt.” 15 U.S.C. § 1692e. Among other things, this section prohibits the “false representation of the character, amount, or legal status of any debt,” 15 U.S.C. § 1692e(2)(A), and the “use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer,” 15 U.S.C. § 1692e(10).

As with Plaintiff’s FCRA claim, Plaintiff’s dispute of the debt was unrelated to any factual

14

inaccuracy regarding the Account. Rather, her dispute was based solely on her legal defense against the Account, a subsequent litigation yielding a Judgment purporting to adjudicate the enforcement of the Account. *See* Ex A-13. These claims fail because the summary judgment evidence conclusively proves that NCS did not use any misrepresentations or deceptive means to collect the debt. "[T]he FDCPA is concerned with unlawful debt collection practices, not mere disputes over the legality of the underlying debts." *Daniels* at *9 (D. Colo. 2024) (quoting *Chambers v. Habitat Co.*, 68 F. App'x 711, 715 (7th Cir. 2003), *cert. denied*, 540 U.S. 1119, 124 S. Ct. 1064, 157 L. Ed. 2d 913 (2004)). Even if the Court considered an argument that Plaintiff presented a legal question as to the effect of the Order of Judgment to determine whether she is liable, there would not be a violation of the FDCPA. *Solomon v. Baer & Timberlake, P.C.*, 504 F. App'x 702, 705 (10th Cir. 2012) (affirming district court's conclusion that the debt collector "could not be held liable for any alleged misrepresentations about the amount of the debt because it reasonably relied upon information from its client, which it is permitted to do.").

Likewise, Plaintiff's claims are clear that the real issue is whether she is liable for the Debt, not whether the NCS engaged in unlawful collection practices. Plaintiff does not allege any conduct on the part of NCS intended to harass or oppress her, such as using obscene language or repeatedly calling her on the telephone. *See* 15 U.S.C. § 1692d. She also does not allege that NCS used "any false, deceptive, or misleading representation or means" to collect the Account. *See* 15 U.S.C. § 1692e. Because the FDCPA is concerned with unlawful debt collection practices, not mere disputes over the legality of the underlying debts, NCS is entitled to summary judgment under the FDCPA. *See Chambers*, 68 F. App'x at 715.

      c.   <u>1692f</u>

Plaintiff further claims NCS violated 15 U.S.C. § 1692f. To establish a violation under § 1692f, Plaintiff "must show that the debt collector used unfair or unconscionable means 'in order

to collect or to attempt to collect any debt.'" *Huffman v. BC Servs., Inc*., No. 16-cv-02431-KLM, 2017 U.S. Dist. LEXIS 89363, 2017 WL 2537106, at *4 n.4 (D. Colo. June 9, 2017) (quoting 15 U.S.C. § 1692f). Section 1692f "serves a backstop function, catching those 'unfair practices' which somehow manage to slip by" other provisions of 15 U.S.C. § 1692. *Georgopulous v. PPM Capital, Inc*., No. 19-cv-00347-DDD-STV, 2019 U.S. Dist. LEXIS 198583, at *15–16 (D. Colo. 2019). In light of this purpose, many courts have "dismissed claims under 15 U.S.C. § 1692f where such claims are based on facts that are also the basis for another more specific FDCPA claim." *Id*.

The wrongful conduct listed in Section 1692f, although not exhaustive, is not of the same kind as the conduct Plaintiff has alleged. Section 1692f(1) prohibits the collection of a debt unless that amount is authorized by agreement. Here, it is undisputed that the Account NCS attempted to collect was pursuant to a Lease, albeit one at issue from the effect of Order of Judgment that resulted from litigation against TCG, which is the basis for Plaintiff's Section 1692e claim. Plaintiff does not allege that any unauthorized charges were made, an illegal use of a postdated check or payment, or concealment using collect calls. *See Shibata v. Accredited Mgmt. Sols., LLC*, No. 20-cv-01156-PAB-KLM, 2021 U.S. Dist. LEXIS 179463, at *10-11 (D. Colo. 2021). Plaintiff alleges no conduct in violation of 1692f that is substantively different from the conduct she claims violated 1692e. *See* Doc. 19 at 10–11.

## C.  NCS's FDCPA Affirmative Defense of Bona Fide Error

### 1.  *Applicable Law*

The bona fide error defense is an affirmative defense that insulates debt collectors from liability even when they have violated the FDCPA. An FDCPA defendant seeking the protection of the bona fide error defense carries the burden of proving that the violation was (1) unintentional, (2) a bona fide error, and (3) made despite the maintenance of procedures reasonably adapted to avoid the error. *Johnson v. Riddle*, 443 F.3d 723, 727–28 (10th Cir. 2006); 15 U.S.C. § 1692k(c).

A debt collector must show that the violation was unintentional, not that the underlying act itself was unintentional. *Id.* at 728. In other words, a violation is unintentional for purposes of the FDCPA's bona fide error defense if the debt collector can establish the lack of specific intent to violate the Act. *Id.*

To be entitled to the bona fide error defense, a debt collector's error must be bona fide and it must have maintained procedures reasonably adapted to avoid error. *Id.* at 729 (citing 15 U.S.C. § 1692k(c)). Whereas the intent prong of the bona fide error defense is a subjective test, the bona fide and the procedures prongs are necessarily objective tests. *Id.* The bona fide component serves to impose an objective standard of reasonableness upon the asserted unintentional violation. *Id.* (citations omitted). And the procedures prong, by the express language of the statute, must be "reasonably adapted to avoid" the error that occurred. *Id.* (quoting 15 U.S.C. § 1692k(c)). The procedures component of the bona fide error defense involves a two-step inquiry: (1) whether the debt collector "maintained"—*i.e.*, actually employed or implemented—procedures to avoid errors; and (2) whether the procedures were "reasonably adapted" to avoid the specific error at issue. *Id.* (citing 15 U.S.C. § 1692k(c)).

### 2. *Argument*

#### a. Unintentional

It is undisputed that NCS had no subjective intent to violate the FCRA. NCS's correspondence to TCG, when investigating Plaintiff's disputes shows that it simply wanted TCG to verify, one way or the other, whether the Account was owed in light of the Order of Judgment, and NCS provided TCG with all the documents provided by Plaintiff with her dispute, showing NCS's subjective desire to discover the correct answer regarding the dispute. NCS simply relied on TCG's verification of the Account, which as TCG was Defendant in such State Court Lawsuit, was in a superior position to NCS to make such a determination.

17

   b.   <u>Bona Fide Error</u>

As detailed herein by <u>SOF 10-12</u>; and Ex A-13, and A-14 thru A-16; NCS followed all of its procedures set out in <u>SOF 3 and 4</u> to prevent the collection of invalid/inaccurate debts, including requesting TCG to review Plaintiff's dispute and confirm if Plaintiff owed the balance, for which TCG wrongfully verified. TCG responded that "This amount is owed per our records" thus creating the error, even following up to provide a Tenant Ledger with the balance. *Id.* While incorrect, it was reasonable for NCS to rely on TCG's response, considering that TCG was a party to the Lawsuit and NCS provided all documents necessary for TCG to evaluate Plaintiff's dispute. NCS's error in continuing to furnish information on the Account to the CRAs was in good faith reliance on the verification it received from TCG, creating a bona fide error.

   c.   <u>Maintenance of procedures reasonably adapted to avoid the error</u>

NCS has policies and procedures in place to avoid errors such as the one committed here, and maintained those procedures by following them with respect to collection of, and furnishing information regarding, the Account. <u>SOF 3, 4, 11, and 12</u>. Based on NCS's thirty years of experience investigating leasing debt disputes, this process has proven to be a reasonable investigation process. <u>SOF 3-4</u>; Ex A, ¶¶ 3-6.

T summary judgment evidence conclusively shows that NCS's procedures were reasonably adapted to avoid the specific error at issue and were actually employed and followed. Whether the Order of Judgment resolved the issue of Plaintiff's liability for the Account is a specific issue that NCS's procedures were designed to avoid any error by contacting the original creditor to request verification of the debt in light of the dispute. NCS sends a letter customized to provide a description of the nature of the debtor's dispute, attach the dispute and supporting documentation and explains the requirements to perform an investigation of the dispute, and requires the original

creditor to return the results to NCS. SOF 4 and 11. Unfortunately, TCG failed to provide NCS with the correct information regarding the effect of the Order of Judgment. SOF 11-12.

There was nothing more that NCS could reasonably have done, aside from ignoring TCG, a party to the Order of Judgment, and drawing its own legal conclusions. But debt collectors are not required to conduct "an independent investigation of the debt referred for collection." *Philhower v. Express Recovery Servs*., No. 2:12-cv-01193-DN, 2014 U.S. Dist. LEXIS 22671, at *19 (D. Utah 2014) (quoting *Smith v. Transworld Sys., Inc*., 953 F.2d 1025, 1032 (6th Cir. 1992)). Instead, a debt collector who "reasonably relies on the debt reported by the creditor . . . will not be liable for any errors." *Id*; *Solomon*, 504 F. App'x at 705; *see also*, *Bynum v. Cavalry Portfolio Servs., L.L.C*., No. 04-CV-0515-CVE-PJC, 2005 U.S. Dist. LEXIS 48776, at *22–23 (N.D. Okla. 2005) (quoting *Hyman v. Tate*, 362 F.3d 965, 958 (7th Cir. 2004):

> [T]he FDCPA does not require collectors to independently verify the validity of the debt to qualify for the bona fide error defense. . . . Although [defendant] could have done more to assure that bankruptcy proceedings had not been initiated, [section] 1692k(c) only requires collectors to adopt reasonable procedures, and as the district court found, it would not be reasonable to require [defendant] to independently confirm that the accounts forwarded by the bank were not in bankruptcy, where the bank, in the first instance, limited the accounts forwarded to those not in bankruptcy.

**D. Plaintiff's claims are barred by her contributory negligence and/or failure to mitigate her damages.**

   *1. Applicable Law*

   a.   Contributory Negligence is a defense in FDCPA and FCRA cases.

Contributory negligence is a recognized affirmative defense in FDCPA and FCRA cases. *See, Bell v. Nat'l Credit Sys*., No. 2:19-cv-01727-RAJ-BAT, 2020 U.S. Dist. LEXIS 53514, at *7–8 (W.D. Wash. 2020) (FCRA case); *O'Hanlon v. J.P. Morgan Chase Bank, N.A*., No. CV 15-06640 DDP (PJWx), 2016 U.S. Dist. LEXIS 23986, at *12–13 (C.D. Cal. 2016) (FCRA and FDCPA).

b.   <u>Failure to Mitigate Damages is a defense in FCRA and FDCPA cases.</u>

A plaintiff's failure to mitigate her damages is a recognized affirmative defense in FCRA and FDCPA case; therefore, Plaintiff had a duty to mitigate her damages. *See, e.g. O'Hanlon*, 2016 U.S. Dist. LEXIS 23986, at *12 (FCRA and FDCPA); *Collins v. Milliman, Inc.*, No. 2:22-cv-00061-RAJ, 2023 U.S. Dist. LEXIS 126237, at *3 (W.D. Wash. 2023) (FCRA case); *James v. Equifax Info. Servs., LLC*, No. 6:05-cv-1428-Orl-22JGG, 2007 U.S. Dist. LEXIS 86427, at *12 (M.D. Fla. 2007) (FCRA case).

### 2.   *Argument*

On December 29, 2021, Dan Vedra filed the State Court Lawsuit on behalf of Plaintiff against TCG seeking a declaratory judgment that Plaintiff was not liable under a Lease with TCG for an apartment at AOL. Ex A-13 (Complaint attached). Eventually, TCG made an Offer of Judgment that Plaintiff accepted, leading to the agreed Order of Judgment, which was signed by the state court on January 30, 2023. Ex B-2.

On April 6 and 7, 2023, NCS received ACDVs from Experian and TransUnion containing a dispute letter from Plaintiff dated March 23, 2023 (which admits assistance from her attorney in preparing), disputing the continued reporting of the Account, asking the CRAs to contact TCG, including its attorneys, GT Law. <u>SOF 10</u>; Ex A-13.  During the same time period, Vedra repeatedly communicated with GT Law without making the same dispute to GT Law on behalf of Plaintiff. <u>SOF 13</u>. In fact, quite the opposite, Vedra filed a Satisfaction of Judgment. <u>SOF 13</u>; Ex B-8. Being in communication with TCG's attorneys, had Vedra informed TCG of the collection issue, all of Plaintiff's damages could have been prevented as TCG's attorneys would have insured the Account was recalled or risk contempt of the Order of Judgment. *See e.g., United States v. Miles*, 327 F. App'x 797, 806 n.14 (10th Cir. 2009) (A plaintiff "ought not be permitted to lie behind the log hoping to exploit a problem capable of being resolved" earlier.)).

WHEREFORE, National Credit Systems, Inc. respectfully requests that the Court grant this summary judgment and deny all of Plaintiff's claims, or at a minimum, deny Plaintiff's FDCPA claims based on the bona fide error, deny Plaintiff's claim for intentional violation of the FCRA, and deny Plaintiff's claim for actual damages based on her contributory negligence and failure to mitigate. NCS requests such other and further relief consistent with motion.

Respectfully submitted,

By:   *s/John W. Bowdich*
JOHN W. BOWDICH
State Bar No. 00796233

BOWDICH & ASSOCIATES, PLLC
8150 N. Central Expy., Suite 500
Dallas, Texas 75206
(214) 307-9500 – Telephone
(214) 307-5137 – Telecopy
jbowdich@bowdichlaw.com

ATTORNEY FOR DEFENDANT
NATIONAL CREDIT SYSTEMS, INC.

CERTIFICATE OF SERVICE

On September 24, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, District of Colorado using the electronic case filing system of the court, thereby providing service to all parties.

| | |
|---|---|
| Daniel J. Vedra, Esq.<br>Vedra Law LLC<br>1444 Blake Street<br>Denver, CO 80202 | Via ECF: dan@vedralaw.com |
| Duran Keller, Esq.<br>8 N Third Street, Suite 403<br>Lafayette, IN 47901-1264<br>  *Attorneys for Plaintiff* | Via ECF: duran@keller.law |

By:   *s/John W. Bowdich*
John W. Bowdich