CONFIDENTIAL

# NCS Procedures for Account Accuracy - Summary

It is the policy and strong desire of our company to only pursue collection of correct, accurate, verifiable, and legally owed debts from only those responsible for these obligations.  Our procedure for implementing this policy include the following:

- Check 1: Client Agreement - All entities using NCS to collect debts on their behalf sign a service agreement.  Among other things, the agreement specifically states, "Client agrees to only submit for collection verifiably owed amounts, which may be substantiated by applicable law and the underlying agreement/lease governing the transaction. Additionally, Client will clearly identify the parties actually responsible for the debt."  It further states, "Client warrants and represents that all accounts so placed with NCS are bona fide accounts due and owing from Debtor to Client, and that Client has all necessary legal authority to place said accounts for collection with NCS.  Client agrees that it shall not forward to NCS accounts that are subject to a pending bankruptcy case and/or have been discharged in bankruptcy.  Client agrees to promptly provide NCS with notice of bankruptcies on any and all accounts that have been placed with NCS upon Client's receipt of said notice.  Client also warrants and represents that all accounts it places with NCS for collection are not currently being pursued by another third party agency, attorney, or other service provider.  Given the parties' mutual desire to collect Client's accounts, Client agrees to cooperate and lend assistance in this effort by sharing with NCS relevant debtor and account information, and by responding in a timely manner to account settlement offers, disputes, or other reasonable requests from NCS."

- Check 2: New Accounts Acknowledgement - Each time a creditor places an account with NCS, they are sent an account acknowledgment. This acknowledgement clearly and boldly states, "Please review the information below and confirm the accuracy of the amounts being submitted for collection. It is of critical importance that we pursue recovery on verifiably correct account balances. We request that you contact our office immediately if any adjustments are necessary."

- Check 3: Internal Data Entry Procedure - Prior to entering accounts into our collection system, charges are reviewed, itemized, and totaled.  All anomalies, inaccuracies, or discrepancies are flagged for further review. (See Account Review Data Entry Memo.)

CONFIDENTIAL

- Check 4: Internal Collector Account Review Procedure - Internal checks are performed to ensure that the amounts entered in our collection system match the amounts owed by consumers in the creditor-supplied supporting documentation. Additionally, internal comparisons are made to ensure that the parties responsible for debts entered in our collection system match the parties responsible for the debt in the creditor-supplied supporting documentation. (See Account Review Collection Staff Memo.)

- Check 5: Client Services Dispute Review – Internal checks are performed when the original creditor modifies an account. All modifications must be done in accordance with the law and have verifiably correct account balances. (See Account review Client Services Memo.)

- Check 6: Initial Notice to Consumer - Consumers are mailed notices regarding their debts giving them the legally required amount of time to report any disputes or inconsistencies to NCS for further investigation.

**NCS-141**

CONFIDENTIAL



**National Credit Systems, Inc.**

P R I D E

## Professionalism - Results - Integrity - Determination - Excellence

VALIDATE CONSUMER DISPUTE LETTERS POLICY AND PROCEDURE

Consumer disputes that come in via mail have to be reviewed and determination if validation is required. The account also has to be in a dispute status and any restrictions required by the consumer are applied to the account to be in compliance.

These letters are scanned into the system and retained on file. The hard copies are given to a compliance specialist to sort thru and complete an investigation. Below are the procedures for performing this task and are to be followed by every employee.

When the letters are received:

A.   Check to see if account is already in a dispute status (acir, acid), if not you will have to change it.
B.   Review if letter advises any type of cease and desist.
C.   Review if validation was already sent, if address is valid or if consumer provided new address.
      a.   If validation was already sent (within the last 6 months) and address is still good – do not send again. Notate account "VOD previously sent, same address, no further action".
      b.   If there is no FAS on file and have to request – notate account "FAS needed, emailed request"

D.   If there is no FAS on file, have to request, either from client or Client services if an NCS account.
E.   If need information, pull up the account and follow the steps below:
    1.   Review if a Sure Deposit account 1st. This would be two accounts, same name of client, should be consecutive account numbers:



2.
3.   If it is a Sure Deposit, check both accounts for docs, usually on the Sure Deposit account.
4.   Check to see if the CBR has been changed to dispute status:

**NCS-142**

CONFIDENTIAL







5.
6. If date is there, it is being reported as disputed.
7. If date is not there:
    a. Workflow – Account Maintenance – CBR Actions – Mark for CBR Dispute



    b.

8. If FAS is there, do not need to request from client, only need to verify if not mailed out yet to the consumer.
9. If not mailed out to consumer, put in the request to have VOD sent out by emailing thru the account:
    a. Click on the email icon at top of account, new window opens up.
    b. Click on the "Attach" button



    c.

    d. Then "To" is  "BAM"



    e.

    f. Hit Ok and put "Send FAS" in the body of the email, then click "Send"
    g. Notate account "Emailed BAM"

10. On the account if there is no FAS on file:
    a. "W", "Z" "N – Send Client email – Status Change"

**NCS-143**

CONFIDENTIAL



Professionalism - Results - Integrity - Determination - Excellence



    i.
    ii.   Next window opens up
    iii.  Letter request 71



    iv.
    v.   Email options – always choose the 1st email (unless specified otherwise)



    vi.
    vii.  Next window opens "Issue in question?"
    viii. Input the canned response request here:
    ix.  "Please provide FAS for dispute"

    x.   Once you click ok, an email will open up. Add your signature, mark as high
           importance and in the body of the email type "Please see attached"



b.

c.  Also attach the dispute from the debtor to the email. Located in the images folder: Z:\
d.  Then send the email. Next window that opens up:



e.

f.  Change status to: ACIR (active) OR ACID (cease and desist)
11. If consumer requests complete cease and desist (no calls or letters):
    a.  Work flow - Mark Cease and Desist

CONFIDENTIAL





b.

c.  Account will be notated: "Received CAD  Data changed on Account Id 4210070 Folder
changed from F139 to F900 Strategy Code changed from PH1 to PH9"
   i.   Change status code: Workflow – Account Maintenance – Change Account Info –
       Change Status Code - ACND

**NCS-145**

CONFIDENTIAL



**P R I D E**

Professionalism - Results - Integrity - Determination - Excellence

# Direct and Indirect Disputes and Identity Theft Policies and Procedures

**(1)** **Investigating and responding to disputes sent directly by consumers concerning the accuracy of information contained in consumer reports.**

**(2)** **Investigating and responding to disputes sent indirectly by consumers concerning the accuracy of information contained in consumer reports.**

**(3)** **Investigating and responding to claims of identity theft by consumers concerning the accuracy of information contained in consumer reports.**

**NCS-146**

CONFIDENTIAL

**Policy and Procedure**: **Investigating and Responding to Disputes Sent Directly by Consumers Concerning the Accuracy of Information Contained in Consumer Reports**

**Section 1:        Purpose**
To establish and implement reasonable written policies and procedures regarding the investigation of a dispute received directly from a consumer concerning the accuracy of information furnished by National Credit Systems, Inc. about the consumer to consumer reporting agencies in compliance with 16 C.F.R. Part 660.3 and Appendix E of Regulation V, 12 C.F.R. Part 1022.

**Section 2:        Scope**
These policies and procedures apply to all National Credit Systems, Inc. employees, contractors, consultants, temporary workers, service providers, and any third parties who participate in the investigation of direct disputes.

**Section 3:        Definitions**
     A.    **Direct dispute** means a dispute submitted directly to National Credit Systems, Inc. by a consumer concerning the accuracy of any information contained in a consumer report.

**Section 4:        Receipt of Direct Dispute**
National Credit Systems, Inc. will conduct a reasonable investigation of a direct dispute only if the consumer submits the dispute to National Credit Systems, Inc. at:

     A.    National Credit Systems, Inc.  address provided and set forth on a consumer report relating to the consumer:
     B.    National Credit Systems, Inc. address provided to the consumer in writing or electronically (if the consumer agrees to electronic delivery of this information)
     C.    Any business address for National Credit Systems, Inc.  .

**Section 5:        Contents of Direct Dispute**
National Credit Systems, Inc. will verify if a direct dispute received by National Credit Systems, Inc. from a consumer contains the required information for National Credit Systems, Inc. to conduct a reasonable investigation of the direct dispute. A direct dispute notice from the consumer must include:

     A.    Sufficient information to identify the account that is in dispute, such as an account number and the name, address, and telephone number of the consumer;
     B.    Specific information the consumer is disputing and an explanation of the basis for the dispute; and
     C.    All supporting documentation or other information National Credit Systems, Inc. reasonably required to substantiate the basis of the dispute. Examples of this documentation include:
         i.    Copy of relevant portion of consumer report containing the allegedly inaccurate information;
         ii.    A police report;
         iii.    A fraud or identity theft affidavit;
         iv.    A court order;

pg 9 of 181

CONFIDENTIAL

      v.      Account statements;
      vi.     A cancelled check evidencing payment; or
      vii.    A receipt evidencing payment.

**Section 6:**     **Determining Whether to Investigate Direct Dispute**

1. National Credit Systems, Inc. will conduct a reasonable investigation of a direct dispute if the dispute relates to:

    A.    The consumer's liability for a credit account or other debt or account being collected by National Credit Systems, Inc. including whether the consumer is a victim of identity theft (please refer to identity theft prevention program), whether the consumer is individually or jointly liable on an account, or whether the consumer was an authorized user of the credit account;

    B.    The terms of the debt or account, including but not limited to, the principal balance, interest and fees added to the principal balance, and scheduled payment amount on the account;

    C.    The consumer's performance concerning the account, including but not limited to, the current payment status, high balance, the date payment was made, the amount of a payment made, or the date an account was opened or closed; or

    D.    Any information regarding an account that bears on the consumer's creditworthiness, credit standing, character, general reputation, personal characteristics, or mode of living, if that information was reported by National Credit Systems, Inc.

2. National Credit Systems, Inc. will not conduct an investigation of a direct dispute if the dispute relates to:

    A.    The consumer's identifying information such as name(s), date of birth, Social Security number, telephone number(s), or address(s) **unless** the information relates to the consumer's liability for an account reported by National Credit Systems, Inc.;

    B.    The identity of past or present employers;

    C.    Inquiries or requests for a consumer report;

    D.    Information National Credit Systems, Inc. obtains from public records, such as judgments, bankruptcies, liens, and other legal matters **unless** National Credit Systems, Inc. furnishes such information to consumer reporting agencies;

    E.    Information related to fraud alerts or active duty alerts the consumer has placed with consumer reporting agencies; or

    F.    Information provided to a consumer reporting agency by another furnisher.

3. National Credit Systems, Inc. will not conduct an investigation of a direct dispute if National Credit Systems, Inc. has a reasonable belief the direct dispute has been submitted by, is prepared on behalf of the consumer by, or is submitted on a form supplied to the consumer by a credit repair organization, as defined under 15 U.S.C. § 1679a(3) or an entity that would be a credit repair organization, but for 15 U.S.C. § 1679a(3)(B)(i). Questions concerning whether an entity is a credit repair organization should be directed to National Credit Systems, Inc. management staff.

CONFIDENTIAL

**Section 7:       Frivolous or Irrelevant Disputes**

1. National Credit Systems, Inc. will not conduct an investigation of a direct dispute if National
   Credit Systems, Inc. has reasonably determined the dispute is frivolous or irrelevant. A direct
   dispute is frivolous or irrelevant if:

   A.     The consumer did not provide sufficient information to investigate the disputed
          information as required under **Section 5**;
   B.     The direct dispute is substantially the same as a dispute previously submitted by
          or on behalf of the consumer (either to National Credit Systems, Inc. directly or
          through a consumer reporting agency) and National Credit Systems, Inc. has
          already responded to the dispute; or
          i.     A direct dispute is **not** frivolous or irrelevant if the dispute includes
                 information under **Section 5** that had not previously been provided to
                 National Credit Systems, Inc.
   C.     The direct dispute relates to information included under **Section 6(2)**.

2. If National Credit Systems, Inc. determines a direct dispute is frivolous or irrelevant;
   National Credit Systems, Inc. will notify the consumer of the determination within five (5)
   business days after making the determination. Notification of the determination shall be sent
   by mail or other means if authorized by the consumer. The notice shall include:

   A.     The reasons for the determination the direct dispute is frivolous or irrelevant; and
   B.     Identify any information required to investigate the disputed information.

**Section 8:       Investigation of Direct Disputes**

If National Credit Systems, Inc. receives a direct dispute notice from the consumer, the notice
complies with **Section 5** and **Sections 6(2)** and **7** do not apply, National Credit Systems, Inc.
shall:

   A.     Conduct a reasonable investigation with respect to the disputed information;
   B.     Review all relevant information provided by the consumer with the dispute
          notice;
   C.     Complete its investigation of the dispute;
   D.     Report the results of the investigation to the consumer within thirty (30) days of
          receiving the direct dispute notice;
   E.     If the investigation finds the information reported was inaccurate, promptly notify
          each consumer reporting agency to which National Credit Systems, Inc. furnished
          the information of the determination and provide to the consumer reporting
          agency any correction necessary to make the information accurate.

CONFIDENTIAL

**Policy and Procedure: Investigating and Responding to Disputes Sent Indirectly by Agencies or Entities Representing the Consumers Concerning the Accuracy of Information Contained in Consumer Reports**

**Section 1:    Purpose**

To establish and implement reasonable written policies and procedures regarding the investigation of a dispute received indirectly from an agency or entity representing the consumer concerning the accuracy of information furnished by National Credit Systems, Inc. about the consumer to consumer reporting agencies in compliance with 16 C.F.R. Part 660.3 and Appendix E of Regulation V, 12 C.F.R. Part 1022.

**Section 2:    Scope**

These policies and procedures apply to all National Credit Systems, Inc. employees, contractors, consultants, temporary workers, service providers, and any third parties who participate in the investigation of indirect disputes.

**Section 3:    Definitions**

    A. **Indirect dispute** means a dispute submitted indirectly to National Credit Systems, Inc. for a consumer concerning the accuracy of any information contained in a consumer report. The dispute can come from several sources, including the E-Oscar portal, CFPB, BBB, Attorney General Office of the state they reside, an attorney representing the consumer and any other regulatory agencies.

**Section 4:    Receipt of an Indirect Dispute**

National Credit Systems, Inc. will conduct a reasonable investigation of an indirect dispute only if the agency or entity representing the consumer submits the dispute to National Credit Systems, Inc. at:

    A. National Credit Systems, Inc. address provided and set forth on a consumer report relating to the consumer.

    B. National Credit Systems, Inc. address provided to the consumer in writing or electronically (if the consumer agrees to electronic delivery of this information)

    C. Any business address for National Credit Systems, Inc.

**Section 5:    Contents of Indirect Dispute**

National Credit Systems, Inc. will verify if an indirect dispute received by National Credit Systems, Inc. from an agency or entity representing the consumer contains the required information for National Credit Systems, Inc. to conduct a reasonable investigation of the indirect dispute. An indirect dispute notice from the agency or entity representing the consumer must include:

    A. Sufficient information to identify the account that is in dispute, such as an account number and the name, address, and telephone number of the consumer;

    B. Specific information the consumer is disputing and an explanation of the basis for the dispute; and

    C. All supporting documentation or other information National Credit Systems, Inc. reasonably required substantiating the basis of the dispute. Examples of this documentation include:

CONFIDENTIAL

    i.   Copy of relevant portion of consumer report containing the allegedly inaccurate information;
    ii.  A police report;
    iii. A fraud or identity theft affidavit;
    iv. A court order;
    v.  Account statements;
    vi. A cancelled check evidencing payment; or
    vii. A receipt evidencing payment.

**Section 6:    Determining Whether to Investigate Indirect Dispute**

1.  National Credit Systems, Inc. will conduct a reasonable investigation of an indirect dispute if the dispute relates to:

    A.  The consumer's liability for a credit account or other debt or account being collected by National Credit Systems, Inc. including whether the consumer is a victim of identity theft (please refer to identity theft prevention program), whether the consumer is individually or jointly liable on an account, or whether the consumer was an authorized user of the credit account;

    B.  The terms of the debt or account, including but not limited to, the principal balance, interest and fees added to the principal balance, and scheduled payment amount on the account;

    C.  The consumer's performance concerning the account, including but not limited to, the current payment status, high balance, the date payment was made, the amount of a payment made, or the date an account was opened or closed; or

    D.  Any information regarding an account that bears on the consumer's creditworthiness, credit standing, character, general reputation, personal characteristics, or mode of living, if that information was reported by National Credit Systems, Inc.

2.  National Credit Systems, Inc. will not conduct an investigation of an indirect dispute if the dispute relates to:

    A.  The consumer's identifying information such as name(s), date of birth, Social Security number, telephone number(s), or address(s) **unless** the information relates to the consumer's liability for an account reported by National Credit Systems, Inc.;

    B.  The identity of past or present employers;

    C.  Inquiries or requests for a consumer report;

    D.  Information National Credit Systems, Inc. obtains from public records, such as judgments, bankruptcies, liens, and other legal matters **unless** National Credit Systems, Inc. furnishes such information to consumer reporting agencies;

    E.  Information related to fraud alerts or active duty alerts the consumer has placed with consumer reporting agencies; or

    F.  Information provided to a consumer reporting agency by another furnisher.

3.  National Credit Systems, Inc. will not conduct an investigation of an indirect dispute if National Credit Systems, Inc. has a reasonable belief the indirect dispute has been submitted by, is prepared on behalf of the consumer by, or is submitted on a form supplied to the consumer by a credit repair organization, as defined under 15 U.S.C. § 1679a(3) or an entity that would be a credit repair organization, but for 15 U.S.C. § 1679a(3)(B)(i). Questions

CONFIDENTIAL

concerning whether an entity is a credit repair organization should be directed to National Credit Systems, Inc. management staff.

### Section 7:      Frivolous or Irrelevant Disputes

1. National Credit Systems, Inc. will not conduct an investigation of an indirect dispute if National Credit Systems, Inc. has reasonably determined the dispute is frivolous or irrelevant. An indirect dispute is frivolous or irrelevant if:

   A. The agency or entity representing the consumer did not provide sufficient information to investigate the disputed information as required under **Section 5**;
   B. The indirect dispute is substantially the same as a dispute previously submitted by or on behalf of the consumer (either to National Credit Systems, Inc. directly or through a consumer reporting agency) and National Credit Systems, Inc. has already responded to the dispute; or
      i. An indirect dispute is **not** frivolous or irrelevant if the dispute includes information under **Section 5** that had not previously been provided to National Credit Systems, Inc.
   C. The indirect dispute relates to information included under **Section 6(2)**.

2. If National Credit Systems, Inc. determines an indirect dispute is frivolous or irrelevant; National Credit Systems, Inc. will notify the agency or entity representing the consumer of the determination within five (5) business days after making the determination. Notification of the determination shall be sent by mail or other means if authorized by the consumer. The notice shall include:

   A. The reasons for the determination the indirect dispute is frivolous or irrelevant; and
   B. Identify any information required to investigate the disputed information.

### Section 8:      Investigation of Indirect Disputes

If National Credit Systems, Inc. receives an indirect dispute notice from the agency or entity representing the consumer, the notice complies with **Section 5** and **Sections 6(2)** and **7** do not apply, National Credit Systems, Inc. shall:

   A. Conduct a reasonable investigation with respect to the disputed information;
   B. Review all relevant information provided by the consumer with the dispute notice;
   C. Complete its investigation of the dispute;
   D. Report the results of the investigation to the agency or entity representing the consumer within thirty (30) days of receiving the indirect dispute notice;
   E. If the investigation finds the information reported was inaccurate, promptly notify each consumer reporting agency to which National Credit Systems, Inc. furnished the information of the determination and provide to the agency or entity representing the consumer reporting agency any correction necessary to make the information accurate.

CONFIDENTIAL

**<u>Policy and Procedure:</u> Investigation of Identity Theft**

**Section 1:      Purpose**

To establish and implement reasonable written policies and procedures regarding the investigation of a claim of identity theft received from a consumer, either direct or indirectly, to National Credit Systems, Inc. concerning the information provided about the consumer to consumer reporting agencies in compliance with 16 C.F.R. Part 660.3 and Appendix E of Regulation V, 12 C.F.R. Part 1022.

**Section 2:      Scope**

These policies and procedures apply to all National Credit Systems, Inc. employees, contractors, consultants, temporary workers, service providers and any third parties who participate in the investigation of direct disputes.

**Section 3:      Definition**

    A. **Identity Theft** means the fraudulent acquisition and use of a person's private identifying information, usually for financial gain.

**Section 4:      Receipt of Identity Theft Claim**

National Credit Systems, Inc. will conduct a reasonable investigation of a claim of identity theft upon receipt from the consumer by National Credit Systems, Inc. at:

    A. National Credit Systems, Inc. address provided and set forth on a consumer report relating to the consumer.
    B. National Credit Systems, Inc. address provided to the consumer in writing or electronically (if the consumer agrees to electronic delivery of this information)
    C. Any business address for National Credit Systems, Inc.

**Section 5:      Contents of Identity Theft**

National Credit Systems, Inc. will verify if a claim of identity theft received by National Credit Systems, Inc. from a consumer contains the required information to conduct a reasonable investigation of the claim. A claim of identity theft from a consumer must include:

    A. Sufficient information to identify the account that the claim is for, such as an account number and the name, address and telephone number of the consumer.
    B. All supporting documentation or other information National Credit Systems, Inc. reasonably requires substantiating the basis of the claim. Examples of this documentation include:
        a. Police Report
        b. Fraud or Identity Theft Packet
        c. Driver's License and/or Social Security card
        d. Comments under the "FCRA Relevant Information" section thru E-Oscar.
        e. Supporting information from reliable sources, including materials not mentioned above.

CONFIDENTIAL

**Section 6:        Frivolous or Irrelevant Claims of Identity Theft**

1.  National Credit Systems, Inc. will not conduct an investigation of a claim of identity theft if
    National Credit Systems, Inc. has reasonably determined the claim is frivolous or irrelevant.
    A claim of identity theft is frivolous or irrelevant if:
    A.  The agency or entity representing the consumer did not provide sufficient information
        to investigate the disputed information as required under **Section 5**;
    B.  The claim of identity theft is substantially the same as a claim previously submitted
        by or on behalf of the consumer (either to National Credit Systems, Inc. directly or
        through a consumer reporting agency) and National Credit Systems, Inc. has already
        responded to the claim; or
        ii.  A claim of identity theft is **not** frivolous or irrelevant if the claim includes
             information under **Section 5** that had not previously been provided to National
             Credit Systems, Inc.

2.  If National Credit Systems, Inc. determines the claim of identity theft is frivolous or
    irrelevant; National Credit Systems, Inc. will notify the agency or entity representing the
    consumer of the determination within five (5) business days after making the determination.
    Notification of the determination shall be sent by mail or other means if authorized by the
    consumer. The notice shall include:

    A.  The reasons for the determination the claim of identity theft is frivolous or irrelevant;
        and
    B.  Identify any information required to investigate the disputed information.

**Section 7:        Investigation of Identity Theft**
If National Credit Systems, Inc. receives a claim of identity theft from the consumer, the notice
complies with **Section 5 and Section 6** does not apply, National Credit Systems, Inc. shall:

    A.  Conduct a reasonable investigation with respect to all information provided. At times
        and in many instances the information is not complete or falsified and National Credit
        Systems, Inc. has to make the appropriate decision based on the information provided
        by the consumer. The investigation will include the following, but not limited to,
        procedure:
        a.  Documentation/information provided is to be compared to
            documentation/information on file provided by the client.
        b.  If there is no documentation on file from the client, it is to be requested along
            with providing the client all documentation/information supplied by the
            consumer for review.
        c.  Comparison of the following information:
            i.   Name
            ii.  Race, age, gender
            iii. Address, including dates of residency if applicable
            iv.  Signatures
        d.  Review of the identity theft packet and/or police report. Careful review to see
            if a suspect was already identified and account notated properly.
        e.  Any discrepancies found during the investigation should be properly
            documented and the client advised.

CONFIDENTIAL

f.  Account documentation of all received information, steps during investigation and if client was supplied with information.

g.  While client review is preferred, there are instances that it is clear that it is a case of identity theft and the account should be closed. Examples are police reports with suspect information and evidence of different person (driver's license), although it is not limited to these examples.

h.  If the information does match an account, forward to the client for review. In most cases, when information does match, validation should be sent to the consumer and a request to provide any additional information to substantiate their claims. The credit report will be updated to show as a dispute by the consumer.

i.  Client review of information sent back is to also be reviewed by National Credit Systems, Inc. and the final determination of such is assessed to National Credit Systems, Inc.

j.  If the information does not match what is on file, after review by both National Credit Systems, Inc. and the client, it will be requested to be removed from the credit report and the account closed.

CONFIDENTIAL



# Direct and Indirect Disputes and Identity Theft Policies and Procedures

**(1) Investigating and responding to disputes sent directly by consumers concerning the accuracy of information contained in consumer reports.**

**(2) Investigating and responding to disputes sent indirectly by consumers concerning the accuracy of information contained in consumer reports.**

**(3) Investigating and responding to claims of identity theft by consumers concerning the accuracy of information contained in consumer reports.**

CONFIDENTIAL

**03/27/2023**

**Policy and Procedure**: **Investigating and Responding to Disputes Sent Directly by Consumers Concerning the Accuracy of Information Contained in Consumer Reports**

**Section 1:      Purpose**

To establish and implement reasonable written policies and procedures regarding the investigation of a dispute received directly from a consumer concerning the accuracy of information furnished by National Credit Systems, Inc. about the consumer to consumer reporting agencies in compliance with 16 C.F.R. Part 660.3 and Appendix E of Regulation V, 12 C.F.R. Part 1022.

**Section 2:      Scope**

These policies and procedures apply to all National Credit Systems, Inc. employees, contractors, consultants, temporary workers, service providers, and any third parties who participate in the investigation of direct disputes.

**Section 3:      Definitions**

A.    **Direct dispute** means a dispute submitted directly to National Credit Systems, Inc. by a consumer concerning the accuracy of any information contained in a consumer report.

**Section 4:      Receipt of Direct Dispute**

National Credit Systems, Inc. will conduct a reasonable investigation of a direct dispute only if the consumer submits the dispute to National Credit Systems, Inc. at:

A.    National Credit Systems, Inc.  address provided and set forth on a consumer report relating to the consumer:

B.    National Credit Systems, Inc. address provided to the consumer in writing or electronically (if the consumer agrees to electronic delivery of this information); or

C.    Any business address for National Credit Systems, Inc.

**Section 5:      Contents of Direct Dispute**

National Credit Systems, Inc. will verify if a direct dispute received by National Credit Systems, Inc. from a consumer contains the required information for National Credit Systems, Inc. to conduct a reasonable investigation of the direct dispute. A direct dispute notice from the consumer should include:

CONFIDENTIAL

A.    Sufficient information to identify the account that is in dispute, such as an account number and the name, address, and telephone number of the consumer;

B.    Specific information the consumer is disputing and an explanation of the basis for the dispute; and

C.    All supporting documentation or other information National Credit Systems, Inc. reasonably required to substantiate the basis of the dispute. Examples of this documentation include:

    i.    Copy of relevant portion of consumer report containing the allegedly inaccurate information;

    ii.    A police report;

    iii.    A fraud or identity theft affidavit;

    iv.    A court order;

    v.    Account statements;

    vi.    A cancelled check evidencing payment; or

    vii.    A receipt evidencing payment.

**Section 6:    Determining Whether to Investigate Direct Dispute**

1.  National Credit Systems, Inc. will conduct a reasonable investigation of a direct dispute if the dispute relates to:

A.    The consumer's liability for a credit account or other debt or account being collected by National Credit Systems, Inc. including whether the consumer is a victim of identity theft (please refer to identity theft prevention program), whether the consumer is individually or jointly liable on an account, or whether the consumer was an authorized user of the credit account;

B.    The terms of the debt or account, including but not limited to, the principal balance, interest and fees added to the principal balance, and scheduled payment amount on the account;

C.    The consumer's performance concerning the account, including but not limited to, the current payment status, high balance, the date payment was made, the amount of a payment made, or the date an account was opened or closed; or

D.    Any information regarding an account that bears on the consumer's creditworthiness, credit standing, character, general reputation, personal characteristics, or mode of living, if that information was reported by National Credit Systems, Inc.

2.  National Credit Systems, Inc. will not conduct an investigation of a direct dispute if the dispute relates to:

CONFIDENTIAL

A.   The consumer's identifying information such as name(s), date of birth, Social Security number, telephone number(s), or address(s) **unless** the information relates to the consumer's liability for an account reported by National Credit Systems, Inc.;

B.   The identity of past or present employers;

C.   Inquiries or requests for a consumer report;

D.   Information National Credit Systems, Inc. obtains from public records, such as judgments, bankruptcies, liens, and other legal matters **unless** National Credit Systems, Inc. furnishes such information to consumer reporting agencies;

E.   Information related to fraud alerts or active duty alerts the consumer has placed with consumer reporting agencies; or

F.   Information provided to a consumer reporting agency by another furnisher.

3.   National Credit Systems, Inc. will not conduct an investigation of a direct dispute if National Credit Systems, Inc. has a reasonable belief the direct dispute has been submitted by, is prepared on behalf of the consumer by, or is submitted on a form supplied to the consumer by a credit repair organization, as defined under 15 U.S.C. § 1679a(3) or an entity that would be a credit repair organization, but for 15 U.S.C. § 1679a(3)(B)(i). Questions concerning whether an entity is a credit repair organization should be directed to National Credit Systems, Inc. management staff.

## Section 7:    Investigation of Direct Disputes

If National Credit Systems, Inc. receives a direct dispute notice from the consumer, the notice complies with **Section 5**, and **Sections 6(2)** and **6(3)** do not apply; National Credit Systems, Inc. shall:

A.   Conduct a reasonable investigation with respect to the disputed information;

B.   Review all relevant information provided by the consumer with the dispute notice;

C.   Complete its investigation of the dispute;

D.   Report the results of the investigation to the consumer within thirty (30) days of receiving the direct dispute notice;

E.   If the investigation finds the information reported was inaccurate, promptly notify each consumer reporting agency to which National Credit Systems, Inc. furnished the information of the determination and provide to the consumer reporting agency any correction necessary to make the information accurate.

CONFIDENTIAL

<u>**Policy and Procedure**</u>**: Investigating and Responding to Disputes Sent Indirectly by Agencies or Entities Representing the Consumers Concerning the Accuracy of Information Contained in Consumer Reports**

**Section 1:     Purpose**

To establish and implement reasonable written policies and procedures regarding the investigation of a dispute received indirectly from an agency or entity representing the consumer concerning the accuracy of information furnished by National Credit Systems, Inc. about the consumer to consumer reporting agencies in compliance with 16 C.F.R. Part 660.3 and Appendix E of Regulation V, 12 C.F.R. Part 1022.

**Section 2:     Scope**

These policies and procedures apply to all National Credit Systems, Inc. employees, contractors, consultants, temporary workers, service providers, and any third parties who participate in the investigation of indirect disputes.

**Section 3:     Definitions**

    **A. Indirect dispute** means a dispute submitted indirectly to National Credit Systems, Inc. for a consumer concerning the accuracy of any information contained in a consumer report. The dispute can come from several sources, including the E-Oscar portal, CFPB, BBB, Attorney General Office of the state they reside, an attorney representing the consumer and any other regulatory agencies.

**Section 4:     Receipt of an Indirect Dispute**

National Credit Systems, Inc. will conduct a reasonable investigation of an indirect dispute only if the consumer reporting agency, as defined by 15 U.S.C. § 1681a(f), representing the consumer submits the dispute to National Credit Systems, Inc. at:

    A.  National Credit Systems, Inc. address provided and set forth on a consumer report relating to the consumer;

    B.  National Credit Systems, Inc. address provided to the consumer in writing or electronically (if the consumer agrees to electronic delivery of this information);

    C.  Any business address for National Credit Systems, Inc.; or

**NCS-160**

CONFIDENTIAL

D.  Submitted to National Credit Systems, Inc. through the e-OSCAR system or comparable system for handling and responding to disputes that National Credit Systems, Inc. utilizes.

**Section 5:     Contents of Indirect Dispute**

National Credit Systems, Inc. will verify if an indirect dispute received by National Credit Systems, Inc. from an agency or entity representing the consumer contains the required information for National Credit Systems, Inc. to conduct a reasonable investigation of the indirect dispute. An indirect dispute notice from the agency or entity representing the consumer should include:

A.  Sufficient information to identify the account that is in dispute, such as an account number and the name, address, and telephone number of the consumer;

B.  Specific information the consumer is disputing and an explanation of the basis for the dispute; and

C.  All supporting documentation or other information National Credit Systems, Inc. reasonably required substantiating the basis of the dispute. Examples of this documentation include:

   i.   Copy of relevant portion of consumer report containing the allegedly inaccurate information;
   ii.  A police report;
   iii. A fraud or identity theft affidavit;
   iv.  A court order;
   v.   Account statements; vi.
   vi.  A cancelled check evidencing payment; or
   vii. vii. A receipt evidencing payment.

**Section 6:     Determining Whether to Investigate Indirect Dispute**

1.  National Credit Systems, Inc. will conduct a reasonable investigation of an indirect dispute if the dispute relates to:

A.  The consumer's liability for a credit account or other debt or account being collected by National Credit Systems, Inc. including whether the consumer is a victim of identity theft (please refer to identity theft prevention program), whether the consumer is individually or jointly liable on an account, or whether the consumer was an authorized user of the credit account;

B.  The terms of the debt or account, including but not limited to, the principal balance, interest and fees added to the principal balance, and scheduled payment amount on the account;

CONFIDENTIAL

    C. The consumer's performance concerning the account, including but not limited to, the current payment status, high balance, the date payment was made, the amount of a payment made, or the date an account was opened or closed; or

    D. Any information regarding an account that bears on the consumer's creditworthiness, credit standing, character, general reputation, personal characteristics, or mode of living, if that information was reported by National Credit Systems, Inc.

2. National Credit Systems, Inc. will not conduct an investigation of an indirect dispute if the dispute relates to:

    A. The consumer's identifying information such as name(s), date of birth, Social Security number, telephone number(s), or address(s) **unless** the information relates to the consumer's liability for an account reported by National Credit Systems, Inc.;

    B. The identity of past or present employers;

    C. Inquiries or requests for a consumer report;

    D. Information National Credit Systems, Inc. obtains from public records, such as judgments, bankruptcies, liens, and other legal matters **unless** National Credit Systems, Inc. furnishes such information to consumer reporting agencies;

    E. Information related to fraud alerts or active duty alerts the consumer has placed with consumer reporting agencies; or

    F. Information provided to a consumer reporting agency by another furnisher.

**Section 7:       Investigation of Indirect Disputes**

If National Credit Systems, Inc. receives an indirect dispute notice from the agency or entity representing the consumer, the notice complies with **Section 5** and **Section 6(2)** does not apply, National Credit Systems, Inc. shall:

    A. Conduct a reasonable investigation with respect to the disputed information;

    B. Review all relevant information provided by the consumer with the dispute notice;

    C. Complete its investigation of the dispute;

    D. Report the results of the investigation to the agency or entity representing the consumer within thirty (30) days of receiving the indirect dispute notice;

    E. If the investigation finds the information reported was inaccurate, promptly notify each consumer reporting agency to which National Credit Systems, Inc. furnished the information of the determination and provide to the agency or entity representing the consumer reporting agency any correction necessary to make the information accurate.

**NCS-162**

CONFIDENTIAL

**<u>Policy and Procedure:</u>** **Investigation of Identity Theft**

**Section 1:      Purpose**
To establish and implement reasonable written policies and procedures regarding the investigation of a claim of identity theft received from a consumer, either direct or indirectly, to National Credit Systems, Inc. concerning the information provided about the consumer to consumer reporting agencies in compliance with 16 C.F.R. Part 660.3 and Appendix E of Regulation V, 12 C.F.R. Part 1022.

**Section 2:      Scope**
These policies and procedures apply to all National Credit Systems, Inc. employees, contractors, consultants, temporary workers, service providers and any third parties who participate in the investigation of direct disputes.

**Section 3:      Definition**
    A. **Identity Theft** means the fraudulent acquisition and use of a person's private
       identifying information, usually for financial gain.

**Section 4:      Receipt of Identity Theft Claim**
National Credit Systems, Inc. will conduct a reasonable investigation of a claim of identity theft upon receipt from the consumer by National Credit Systems, Inc. at:

    A.  National Credit Systems, Inc. address provided and set forth on a consumer report relating to the consumer.
    B.  National Credit Systems, Inc. address provided to the consumer in writing or electronically (if the consumer agrees to electronic delivery of this information)
    C.  Any business address for National Credit Systems, Inc.
    D.  Submitted to National Credit Systems, Inc. through the e-OSCAR system or otherwise submitted to NCS by a consumer reporting agency, as defined by 15 U.S.C. § 1681a(f)

**Section 5:      Contents of Identity Theft**
National Credit Systems, Inc. will verify if a claim of identity theft received by National Credit Systems, Inc. from a consumer contains the required information to conduct a reasonable investigation of the claim. A claim of identity theft from a consumer should include:

CONFIDENTIAL

A.  Sufficient information to identify the account that the claim is for, such as an account number and the name, address and telephone number of the consumer.
B.  All supporting documentation or other information National Credit Systems, Inc. reasonably requires substantiating the basis of the claim. Examples of this documentation include:

a.  Police Report;

b.  Fraud or Identity Theft Packet;

c.  Driver's License and/or Social Security card;

d.  Comments under the "FCRA Relevant Information" section thru E-Oscar

e.  Proof of residency during the time the disputed charges occurred (for example, a copy of a rental/lease agreement in your name, a utility bill, or an insurance bill).

f.  Supporting information from reliable sources, including materials not mentioned above.

If the consumer does not provide all of the information contained in Section 5(B) but claims identity theft, correspondence will be sent, by mail or other means if authorized by the consumer, requesting that they download and complete an affidavit of identity theft and soliciting additional documentation.

## Section 6:        Investigation of Identity Theft

If National Credit Systems, Inc. receives a claim of identity theft from the consumer, the notice complies with **Section 5**, National Credit Systems, Inc. shall:

A.  Conduct a reasonable investigation with respect to all information provided. At times and in many instances the information is not complete or falsified and National Credit Systems, Inc. has to make the appropriate decision based on the information provided by the consumer. The investigation will include the following, but not limited to, procedure:

a.  If the documentation is incomplete or contains an identity theft affidavit that lacks a "wet signature", correspondence shall be sent to consumer, by mail or other means if authorized by the consumer, soliciting additional documentation that includes a link to an identity theft affidavit with a wet signature.

b.  National Credit Systems, Inc will close any an account in the system that only owes for an application fee, administrative fee, or both and the dispute is ID theft. This will be for accounts where they never moved in.  We do not need to email the client regarding these accounts;

c.  National Credit Systems, Inc will delete the credit reporting from any account in the system in which the social security number was obtained through TLO

CONFIDENTIAL

search and did not originate from the client. We do not need to email the client regarding these accounts

d. If there is no documentation or incomplete documentation on file from the client, it is to be requested along with providing the client all documentation/information supplied by the consumer for review.

e. National Credit Systems, Inc will investigate allegations of identity theft by reviewing the above documents and by comparing SSN and DOB provide by the consumer to what we have on file. We will compare email addresses, city and state to what we have and look at previous disputes to see if there is any consistency or have other disputes been files claiming other things, such as balance not correct or similar. Comparison of information should include a combination of the following:

i. Name;

ii. Race, age, gender;

iii. Address, including dates of residency if applicable;

iv. Signatures;

v. Email addresses;

vi. Phone numbers;

vii. Photo identification will be compared if provided and on file; and

viii. Presence of ID theft claims in system notes from previous contact.

f. Review of the identity theft packet and/or police report. Careful review to see if a suspect was already identified and account notated properly.

g. Any discrepancies found during the investigation should be properly documented and the client advised.

h. Account documentation of all received information, steps taken during investigation and if client was supplied with information.

i. While client review is preferred, there are instances that it is clear that it is a case of identity theft and the account should be closed. Examples are police reports with suspect information and evidence of different person (driver's license), although it is not limited to these examples.

j. If the information does match an account, forward to the client for review. In most cases, when information does match, validation should be sent to the consumer and a request to provide any additional information to substantiate their claims. The credit report will be updated to show as a dispute by the consumer.

k. Client review of information sent back is to also be reviewed by National Credit Systems, Inc. and the final determination of such is assessed to National Credit Systems, Inc.

CONFIDENTIAL

l.  If the information does not substantially match what is on file, after review by both National Credit Systems, Inc. and the client, the account will be requested to be removed from the credit report and the account closed.

m.  If there is documentation on the account but no photo id, this does not mean an automatic closure of the account. Comparison of information, including signatures, will be completed. If necessary, escalate to Dispute Resolution Manager if unsure for further review.

n.  If there is no lease or application on file from the client and the consumer has provided an identity theft affidavit and/or police report, the account will be requested to be removed from the credit report and the account closed.  Valid documentation is required from all clients and there are instances where they will not have any to provide.

o.  If the investigation finds the information reported was accurate, promptly notify the consumer and request any additional documents relating to the identification theft.

p.  If the investigation finds the information reported was inaccurate, promptly take the required steps outlined in Section 7 (d) and (e) of the Indirect Dispute Policy or Section 7 (d) and (e) of the Direct Dispute Policy

<span style="color:red">CONFIDENTIAL</span>

## ***Dispute Process***

**The explanation below is for a general dispute - such as doc request or balance verification**

**There are many types of disputes everything below will be the steps for all disputes, however depending on what the dispute is, you will send different documents to validate the accounts.**

**I will type something up like this for all the disptues I can think of when I have more time**

- I will send you an ACIR email –
- You will pull up the account in Windebt with the <u>account number in the subject line</u>
- Read the debtors dispute
- ****COPY AND PASTE THE CLIENTS EMAIL IN WINDEBT (Work action –> Received email from client–>check person–> put in clients name–> click Ok–>Per client–>Special instructions)
- Read the clients response and see if it answers the debtors dispute.
- If it does answer the dispute then you will make sure you have all docs
- **If you are missing something, request it from the client **
- ***Look at the FAS in -01 make sure the balance matches what is on file (check name too)
- ***Check the lease in -02, make sure the name matches the account–> make sure its signed
- You will need to notate what the client said and if they sent docs you will need to append them (we will go over that when you get access to the appends folder) Use work action–>free hand note->(Ex: client verified balance, received docs, fwding to appends)
- If everything is correct with the FAS and lease you will then validate the debt
- Always notate when you request validation through through FD, and what you are requesting them to send. Work action –> free hand note (Ex: emailing fd to send 11,fas and lease)
- Once validation has been requested or sent ALWAYS flip the account back to the status it was in before it was placed in ACIR
- Always email the client after you finish the dispute, letting them know it was received or requesting more information if needed

**For now, we are going to have you email FD to send validation. Once you are comfortable, then you can email it if there is an email address on file.**

So, you will be sending all validation requests to FD until further notice.

-You will still email Brett for all GEMA accounts –><u>brett@bborlandlaw.com</u>

-You will still email Katie for AALR & ALEG accounts –><u>kmarch@nationalcreditsystems.com</u>

-Eoscar accounts, you don't have to email anyone to validate (Justwork the account as usual, make clear notes and append any documents received and flip the account back to the previous status)

**NCS-167**

CONFIDENTIAL

**__Validation Letters__**

These can be state specific -reference the other word document you have for more information on how to determine.

(See folder named validation letters)


- A letter 11 is for a disputed account
- A letter 10 is for a non-disputed account
- A letter 16 is for a client recall (client chooses to close the account)
- A letter 17 is an NCS recall letter (NCS chooses to close the account)
- A letter 12 is for when the account balance is changed (ALWAYS REQUEST 12/FAS)
- A letter 18 is for an individual release (1 person is removed and others are remaining)-CLOSE AS IRCL THEN MARK FOR CBR REMOVAL

===============================================

GEMA / APLG:    accounts you will email Brett Brett@bborlandlaw.com

AALR:              accounts will go to Katie Kmarch@nationalcreditsystems.com

E-Oscar Accounts – you do not have to email anyone – just work account as usual and notate on the account clearly. If, docs are not available make sure to request client to send documents.

===============================================

For the AATT/AAIR accounts that aren't assigned to the supervisor already, this is how you know who to send them to;

Account #s ending in 0-2 go to Mcook (Mike Cook)

Account #s ending in 3-5 go to Rpritchett (Ricardo Pritchett)

Account #s ending in 6-9 go to Vfowler (Vincent Fowler)

===============================================

➢ While validating, if soda shows high value of rent owed, verify client for any accelerated rent being charged.


➢ Email Amanda For E-Oscar Fraud Docs

**NCS-168**

<span style="color:red">CONFIDENTIAL</span>

➢ Before Closing Any GEMA Account, Email Brett to confirm if we want to close the account.(DO NOT CLOSE ANY GEMA ACCOUNT)

---

**\*\* DO NOT CLOSE ANY ACCOUNT\*\*\* WITHOUT CHECKING THE BELOW\*\*\*\***

**Type of account closures:**

**IRCL: CLIENT RE-CALL**

**ICNR: NCS RECALL**

**IRCL CLOSURES:**

<u>BEFORE CLOSING THE ACCOUNT AS PAID</u>: CHECK DATE OF PLACEMENT AND PAYMENT DATE

- We need to request a payment ledger/ ledger showing a $0 balance
- If payment is made before the placement date, close the account
- If payment is made after the placement date, we need to ask client if payment was made by any housing assistance or paid by the debtor.
- If payment is done after the placement, we need to fill up a "Payment Direct" form and send to Velda.

**ICNR CLOSURES:**

- When client has no information on debtor: Check for documents

---

**CASE-A- CLIENT RECALL (IRCL)**

   1.    <u>WE SEND REQUEST TO VERIFY DATE AND AMOUNT OF PAYMENT IN CASES AS BELOW</u>:

➢ PAYMENTS ARE MADE BY DEBTOR TO <u>CLOSE THE ACCOUNT</u>:

a) If payments are made before placement, we close the account
b) If payments are made after placement, we ask for date and amount of payment <mark>**BEFORE**</mark> closing the account.(if not given)

**NCS-169**

CONFIDENTIAL

2.      DO WE FOLLOW THE ABOVE STEPS IN CASE A <mark>PART PAYMENT</mark> IS MADE:

➢ If payments are made before placement, we adjust the account
➢ If payments are made after placement, we ask for date and amount of payment <mark>**BEFORE**</mark> adjusting the balance on  the account. (if not given)

**CASE-B- NCS RECALL (ICNR)**

1.      If a client has no information on the debtor (as attached case)-Based on this information I closed the case yesterday i.e. 4024772

2.      If the property is sold, the new management has no information on the debtor (we did not cover this point in our training)

3.      If account has two debtors listed and client has no information on the account, we only close the debtor as ICNR the one disputing and let the other open.

4.      Under what case, do we close the account as ICNR with more than one person listed?

5.      Any other case/scenarios (please specify and advise)

**NCS-170**

CONFIDENTIAL

# DISPUTES

1. **Cancel the email reminder in WinDebt (work action- W,Z,O) -** *This step is very important. If the email reminder is not cancelled, the client will continue to receive information request for the same dispute which can lead to frustration and confusion for the client if they've already responded.*

2. **Before you do anything else, paste the clients email in WinDebt. -** *It's best to copy the very top of the email so we can see the sender, down to the sender's credentials. Please do not include phone numbers or email addresses- we don't want the collectors to give that to former residents. An example would be:*

**From:** Client name [mailto:client@clientmanagement.com]  *(Sender information and full email visible)*
**Sent**: Wednesday, October 21, 2020 5:01 PM  *(date sent and received)*
 **To:** legal@nationalcreditsystems.com
 **Subject:** Fwd: FCRA Info Request|1234567|Property name / MANAGEMENT COMPANY|FORMER RESIDENT |UNIT|


see attached.


***Barbara Barbee*** *(sender information and credentials)*

 Accounting Department

Management Company

CONFIDENTIAL

3. **Append all docs received from client –** *unless docs received are already on file*

4. **Read dispute-** *Go up in the notes to where the account status was changed. You may even read the collector notes for a little more context if it was a verbal dispute that was launched.*

5. **Document what you received from the client and your steps-** please be very explicit in your notes- for ex. *"client sent final account statement, lease, and application. The final account statement received states balance is $143 but the account was placed for $500- emailed client to confirm balance- also emailed client to verify the "door fee"* is better than *"emailed client to verify balance" especially when you did more than verify the balance.*

6. **If after you have everything you need to close the investigation- email the correct party to send validation –** *A list is below these instructions on who to email*

7. **If applicable, email collector to see notes**

8. **Respond to client**

If you still need other documents from the client, flag the email so that you can remember to follow up with the client in the case that they don't email you back.

Who to email when closing an investigation:

Verbal Dispute launched by SLR- NCS ACCT- Email Front Desk to send the appropriate letter (see list of letters below) with the necessary documents

CDV Launched by C700 or MAM- email C700 or MAM (forward client response and advise to see notes)

**NCS-172**

CONFIDENTIAL

**Written Dispute Launched by SLR- GEMA DISPUTE- Forward client response to Richard Chin and advise to see notes**

**Legal Docs request- Launched by SLR or KLM- Forward client response to Katie March**

**ATTY Dispute- Launched By SLR or a collection manager- Forward client response to collection manager (can be determined by the folder ID on the account in WinDebt)**

**Written Dispute Launched by ARH- Email Front Desk to send the appropriate letter (see list of letters below) with the necessary documents**

**Certified written dispute Launched by ARH- Email Front Desk to send the appropriate letter (see list of letters below) with the necessary documents**

**CFPB dispute launched by ARH or MAM- email front desk to mail validation and email ARH or MAM to respond to CFPB**

**ATTY GENERAL dispute Launched by ARH- email front desk to mail validation and email ARH to respond to ATTY General**

**Collector Request- Append docs and email the collector to review the notes in WinDebt**

**<u>DISPUTE RESPONSE LETTERS</u>**

Letter 11- Dispute Investigated (insufficient evidence from former resident)

Letter 10- No dispute- request for validation

Letter 12- Dispute Adjusted (dispute was review and adjustment was done in response to it) - do not mail this letter when there has not been a dispute

**NCS-173**

CONFIDENTIAL

Letter 16- Client has recalled the account

Letter 17- NCS Recall

Letter 18- An individual has been released from the account

CONFIDENTIAL

# Revisions

*For adjusting a debtor's balance in Win Debt*

1. Open the accounting window in WinDebt.
2. Select "New Accouting" on the top options pane
3. Enter the account number
4. Once the account that you want to adjust is uploaded in the window go down to transaction field and **select "Adjustment" OR hit 5 on your keyboard**
5. Go to the first line of transactions under "principal amount" and click on the balance

In order to decrease the balance, enter the positive difference
Ex. To adjust the balance from $1500 to $1000, enter500.

In order to increase the balance, enter the negative difference
Ex. To adjust the balance up from $1000 to $1500, enter -500

**Do not change the fee rate

6. Select ok. Confirm that your transaction is correct and select "save" at the top of the accounting window

7. Go back into the debtor's account in the Desktop Window and now you can change the amount placed.

   The work action to change the amount placed is:

   W- Work
   Z- Account Maintenance
   K- Change account info
   M- Change amount placed

CONFIDENTIAL

# Direct payments

*Direct payments are payments accepted from the client for a former resident that they've already placed in our office for collections. Because we make revenue on a contingency basis, we have to bill the client for our agency fee. This is also listed in the client's service agreement*

If the client calls
- Notate the full name and their position with the company they are calling with.
- Make sure to confirm the date and amount of the payment. If the payment is for more than the amount placed, check to see if that was for the full final amount. If so, then you need to adjust the balance. See "Revisions" instructions. If the payment was for less than the amount placed, it could either be for a settlement or the final amount is less than the balance placed. Make sure to verify that with the client.
- If the payment is over $500, offer to send a FREE FedEx pickup to client for the payment
- If the payment is under $500 or has already been deposited, complete a direct payment form and bring it to Velda or email it to her (there is also a direct payment form in the "Client Services" folder in Dell6 that can be filled electronically using Adobe Reader)
- Notate that you completed the direct payment form and gave it to Velda


If you receive an email

- Copy and paste the client's email into the notes section of the accounts desktop window
- Confirm the date and amount of payment. If the payment is for more than the amount placed, check to see if that was for the full final amount. If so, then you need to adjust the balance. See "Revisions" instructions. If the payment was for less than the amount placed, it could either be for a settlement or the final amount is less than the balance placed. Make sure to verify that with the client.
- If the payment is above $500 and has not been posted, offer a FREE FedEx pickup
- If the payment is below $500 or has already been posted, complete a direct payment form
- complete a direct payment form and bring it to Velda or email it to her (there is also a direct payment form in the "Client Services" folder in Dell6 that can be filled electronically using Adobe Reader)
- Notate in win debt that you completed the direct payment from and gave it to Velda
- Respond to the client


If you are unsure about whether you should write a direct, ask your supervisor or a team member.

CONFIDENTIAL

## When completing the direct pay form

When filling out the account number at the top of the form, make sure to write -03 at the end. Ex. Account: 4153284-03

You have the option to select whether that payment was for a payment arrangement (PPA), settlement (SIF), or total balance pay off (PIF).

You will have to confirm who gets credit for the payment.

the collector
- The collector must have spoken to them within 30 days of the payment being made and 30 days prior to the notification. Ex. If the payment was made 4.12.2020 and the collector spoke with them on 4.11.2020 but didn't speak with them again and today is 9.4.2020, the collector would not get credit.
- The collector also wouldn't be able to get credit if there is not enough money in the client pool. You will need to look in the "Trust Statement Images" excel file and look to see if we've made enough money for client, if not, the collector does not get credit.
- If the collector does get credit, it goes to whoever's folder it's in. You can find the folder by looking at the account details right above the notes section

House
- If the account is in the F900 folder, it goes to House.
- If the collector does not qualify to get credit, it goes to house.

Make sure the direct pay form is initialed by you

If the property reports a direct payment for a  Sure Deposit, Deposit IQ or LeaseTerm account, you have to change the client id to the property client id, then submit the direct.

CONFIDENTIAL

## Closing Accounts:

We always need to know the reason the account needs to be closed.

If they paid, we need the date paid and the amount paid.

If we have already started working the account (letter sent or collector called) and there was an error, we need to know what the error was.

 "Sent in error" is not a reason we would close an account.

Were they charged in error, were the charges reversed, is the balance incorrect?

If the file was sent too early, or if they decided to work with the former resident there, that is not a reason we would close an account.  We are still due our fee per our contract.  See below verbiage to use and send them a copy of their contract if needed.

Unfortunately, the contract between your company and NCS only allows us to cease our collection activities in the event a debt is being nullified.  Prior payment schedules, reestablishment of prior payment arrangements and settlement negotiations are all specifically outlined in our contract as reasons a debt can't be cancelled.

We can offer to put the account on hold, honor the arrangements they have set up and prevent it from reporting to credit, or remove it from credit.

If we put the account on hold, an alarm needs to be set up to follow-up with the client every month regarding the payments.

CONFIDENTIAL



**P.O. Box 312125 Atlanta, GA 31131   (800) 459-1539   (404) 629-2728**

01/09/2022

Cortland Farmers Market Apts
855 S Good Latimer Expy ofc
Dallas,TX 75526

Re: Former Resident Charles Emley
Client Account Number: 522 / 55745:10162
NCS Account Number: 4657038
Balance:   $375.00
Move-out Date: 07/31/2021

# Fair Credit Reporting Act Information Confirmation

Dear Resident Manager,

It is of critical importance that NCS pursue recovery on verifiably correct account balances from the parties who are legally responsible.   As data furnishers to the credit bureaus, we are required by law to conduct an investigation into consumer, or former resident, account disputes

Please understand that it is very important that the information below be reviewed and replied to as soon as possible. Without this verification, NCS will have to close this account or remove the disputed item.

**1. Issue in question**:   THE FORMER RESIDENT IS CLAIMING FRAUD AND/OR IDENTITY THEFT. PLEASE PROVIDE ANY INFORMATION OR DOCUMENTATION THAT MAY BE OF ASSISTANCE TO US IN INVESTIGATING THIS CLAIM. HELPFUL INFORMATION MAY INCLUDE, BUT IS NOT LIMITED TO: DRIVER'S LICENSE, OTHER PICTURE ID(S), DOCUMENT(S) BEARING FORMER RESIDENT'S SIGNATURE, SOCIAL SECURITY CARD, OR SPECIFIC RECOLLECTION OF THE FORMER RESIDENT.

**2. See attachment(s) if applicable.**

**3. Please review your records and respond accordingly via email, phone, or fax. (See contact information below)**

In your reply to this request, it is important that you include a copy of this letter if responding via email or fax.   This will allow for proper handling and a more timely resolution to this issue.

Thank you in advance for your assistance in this matter.


Sincerely,

Client Services Department
404-629-9595 or   800-367-1050 ext. 802
legal@nationalcreditsystems.com


**NCS-179**

CONFIDENTIAL

**From:**            acknowledgments@nationalcreditsystems.com
**Sent:**            Tuesday, April 18, 2023 6:16 AM
**To:**              ████████████████████
**Subject:**         Placement Acknowledgment From National Credit Systems (████)
**Attachments:**     NewBiz Acknowledgment Client ██████████████

Dear Valued Client,

Please find the attached Account Acknowledgement Report.

This report contains a list of the collection accounts recently placed with our agency. It is of critical importance that NCS
pursues recovery on verifiably correct account balances only from the parties who are legally responsible. It is important
that you review this report to confirm the accuracy of the information in our system and retain for future reference. If
any of the information contained in this report does not look to be accurate, please contact our office as soon as
possible so we may update our records.

No reply to this email is needed if all the information appears to be correct.

We appreciate your business and look forward to serving your future collection needs.

Sincerely,

Your collection team at National Credit Systems, Inc.

404-629-9595 or 800-367-1050

**NCS-180**

CONFIDENTIAL



**Professionalism - Results - Integrity - Determination - Excellence**

# Memo

**To:**   All Staff Members

**From:**   Management

**Date:**   01/05/2007

**Re:**   Quality Assurance Program

---

Ladies and Gentlemen:

As you know, at National Credit Systems, quality, compliance, and professionalism are of the utmost importance.

The above-described attributes have become a must in the collection industry. Consumers, clients, attorneys, and others all expect that we, as collection professionals, exhibit these characteristics in all that we do.

The repercussions of non-compliance and sloppy workmanship are costly, ineffective, and problematic; therefore, we have implemented a new quality assurance program. The intent of this program is to improve the quality of the service we provide, as well as to prevent losses due to our mistakes or violations of federal and state collection laws.

The first part of this program, call monitoring and recording, is already under way. However, until now we have not implemented the reward and penalty phase of this program. Effective 01/08/07 this phase will be implemented as described below:

- Employees may be rewarded for exemplary work and professionalism when observed. These Rewards may be monetary or other at the company's discretion. We are hopeful that more employees will be rewarded than penalized.

- Employees found to be in violation of company policies will be fined a fee dollar amount appropriate for the violation. This will be subtracted from the first bonus check earned after the violation is discovered and the employee is informed. If the employee has not earned a bonus check because they are carrying a deficit, the fine will carry over until the money can be subtracted from bonus earned.

1

**NCS-181**

CONFIDENTIAL

Examples of this type of violation can include but are not limited too:

- o Unnecessary and excessive rudeness, poor collection techniques, lying, poor follow up, failure to correct previously addressed problems, personal calls on company time and anything deemed unacceptable and not in keeping with company guidelines or philosophies.

- More severe or repeat violations of company policy, the FDCPA, the FCRA, or any state collection laws may result in higher fee dollar fines.. This will be subtracted from the first bonus check earned after the violation is discovered and the employee is informed. If the employee has not earned a bonus check because they are carrying a deficit, the fine will carry over until the money can be subtracted from bonus earned. Example of this type of violation can include but not limited to:

- o Third party disclosure, abusive collection techniques, failure to provide verification on disputed debts, failure to mark accounts as disputed, making false and misleading statements, stating an account will be removed from the credit report if paid, refusing a debtor the right to speak with a supervisor, hanging up on a debtor, harassment and repeated telephone calls within a short period of time.

These penalties are an alternative to more severe consequences such as suspension and/or termination; however, they do not exclude these options.  These options also may be used, interpreted, and determined at the managers' discretion.

The standard must be raised and the bar lifted high when promoting lawful and professional behavior in our industry. Everyone should know what constitutes lawful and professional behavior; it is just a matter of practicing it.

We are hopeful that this program will contribute to each person's success here at NCS.


Thank You,

Ron Sapp

**NCS-182**

CONFIDENTIAL



1

**NCS-183**

CONFIDENTIAL

# Memo

**To:**      Client Services Department

**From:**    Management

**Date:**    August 3, 2009

**Re:**      Account Review

---

It is the policy and strong desire of our company to only pursue collection of correct, accurate, verifiable, and legally owed debts from only those responsible for these obligations. To help in this effort, it is important that you pay close attention to charges assessed by our clients, as well as other account accuracy aspects.

While we depend on our clients to provide necessary and correct information to us, we need to go a step further in reviewing what is being provided to us and speak up when you find problem areas or unsupported charges.

If a client confirms, adjusts, or closes an account, and the modification appears to be wrong, illegal, or against company policy, you are to report the matter to the Vice President of Operations for further review.

CONFIDENTIAL



1

**NCS-185**

CONFIDENTIAL

# Memo

**To:**        Data Entry

**From:**    Management

**Date:**    August 29, 2009

**Re:**        Account Review

---

In our ongoing effort to pursue collection of accurate and verifiably owed debts from legally responsible parties, the below should be strictly followed:

During the data entry process, all charges are to be reviewed, itemized, and totaled.  Charges assessed should be supportable by the agreement or other documentation provided by our clients. All responsible parties entered should be listed as such on the underlying agreement creating the debt (the lease in most cases) or an appropriate addendum (co-signer or guarantor) to the contract. All account information entered needs to be compared and matched to any client-provided supporting documentation.

It is important that you are careful in this process and pay close attention to promote accuracy.  While we depend on our clients to provide necessary and correct information to us, we need to go a step further in reviewing what is being provided to us and speak up when you find problem areas or unsupported charges.

Any discrepancies or concerns are to be reported to Candace Teal.

CONFIDENTIAL



1

**NCS-187**

CONFIDENTIAL

# Memo

**To:**       Collection Department
**From:**    Management
**Date:**    March 14, 2010
**Re:**       Account Review

---

It is the policy and strong desire of our company to only pursue collection of correct, accurate, verifiable, and legally owed debts from only those responsible for these obligations. To help in this effort, it is important that you pay close attention to charges assessed by our clients, as well as other account accuracy aspects.

During your initial evaluation of an account after assignment, you should thoroughly review all aspects of the debt. Charges assessed should be supportable by the agreement or other documentation provided by our clients. All responsible parties entered should be listed as such on the underlying agreement creating the debt (the lease in most cases) or an appropriate addendum (co-signer or guarantor) to the contract. All account information entered needs to be compared and matched to any client-provided supporting documentation.

It is important that you are careful in this process and pay close attention to promote accuracy. As stated above, we only want to attempt collection on true, correct, and verifiably owed debts. While we depend on our clients to provide necessary and correct information to us, we need to go a step further in reviewing what is being provided and speak up when you find problem areas or unsupported charges.

Any discrepancies should be immediately reported to your manager for further review, adjustment, and/or client contact.

CONFIDENTIAL



**Professionalism - Results - Integrity - Determination - Excellence**

# Memo

**To:**      All Employees
**From:**    Management
**Date:**    December 27, 2017
**Re:**      Emailing Debt Verification

---

Team,

We now have the ability to email a Debt Verification letter (letter 10) or a Debt Investigated letter (letter 11) ,along with supporting documentation, directly to a consumer through a work action in Windebt.

Collectors may email a <u>Debt Verification letter</u> themselves.  If a consumer is <u>not</u> disputing their debt and only wants to review the charges assessed by our clients, you may email the Charges '-01', or the Lease '-02' to a consumer using the appropriate work action in Windebt..

If the consumer <u>is disputing</u> the debt, then an investigation needs to occur. You will first need to obtain the consumers email address.  You should then email the appropriate clerical or client services person to review and either email a Debt Investigated letter or contact the client to obtain additional information.. After the investigation is completed, the consumer will be emailed the outcome of the investigation as would normally occur via regular mail.

This should be a fantastic new tool, and we encourage everyone to take advantage of the benefits it should provide.

Please see your manager with any questions.

**NCS-189**

CONFIDENTIAL



# <u>Verbal Dispute Procedures</u>

All verbal disputes will be **noted and marked with a work action that updates the debt as disputed by the consumer**. The individual who is notified of the initial dispute is responsible for performing this work action.

When speaking with a consumer, NCS representatives should ask the consumer to provide NCS with any supporting documentation that would help resolve or explain the basis for the dispute. Below you will see the requirements the FCRA requires of consumers wishing to dispute a debt directly with a data furnisher.

Under the amended FCRA, a consumer who wishes to dispute an item of information directly with a data furnisher must adhere to the following four steps:

- The consumer must provide notice of a dispute directly to a data furnisher at the mailing address provided to receive such disputes;
- The consumer must identify the specific item of information that is in dispute;
- The consumer must explain the basis for the dispute; and
- The consumer must include all supporting documentation required to substantiate the basis for the dispute.

 Although consumers who verbally dispute a debt may not adhere to above steps, any dispute, including all relevant information, should be reviewed thoroughly, and a decision should be made regarding the course of action needed to properly respond to the dispute. See the below instructions for responding to a verbal dispute:

<u>Claim of Identity Theft</u>: If the consumer contends he or she is the victim of identity theft, then the following procedures must be completed:

- An email must be sent to the consumer  attaching an  ID Theft Affidavit. Once the completed ID Theft Affidavit is returned to us, a compliance representative  will review the completed affidavit to review the validity of the consumer's claim. If the debt appears to be the result of identity theft, the item will be closed and any derogatory information submitted by NCS to any CRA's will be removed. A NCS

CONFIDENTIAL

Recall Letter (Letter 17) will then be sent to the consumer. If the review of the affidavit does not confirm identity theft, then the account will be placed in a FLR status and a compliance representative will email a clerical representative to mail validation of the debt to the consumer using a Debt Investigated Letter (letter 11).

**Disputed but Frivolous, Unspecific or Vague**: If the person disputing the debt does not specify the items being disputed or explain the basis of the dispute, then the following procedures must be completed our agent:

- Notate Windebt with summary of the dispute and the actions taken in our review.
- Send an email to a clerical representative to mail a Debt Investigated Letter (letter 11) along with all documentation supporting the debt.

**Disputed and Action Needed:** Some disputes will require additional action and/or communication with the original creditor. The below are some examples:

- o Disputes that identify inconsistencies or inaccuracies in any charges assessed.
- o Disputes that include either claims of payment or documented proof of payment.
- o Disputes that give specific details of conversations with the original creditor that would place the debt or the amount in doubt.
- o Disputes involving accelerated rent.
- o Disputes requesting documentation not originally supplied by the client.
- o Any other disputes that are not deemed to be frivolous, unspecific, or vague.

- Notate Windebt with summary of the dispute and the actions need to investigate the claim.
- Send an email to a client services representative to initiate the investigation process. The request should include the consumer's account number and detailed explanation of what is needed to resolve the dispute. a client services representative will then send a Client Info Request Letter (letter 71) and enclose any supporting documentation to the original creditor. The client services representative will place the disputed debt in an Active-Clt Info Requested (ACIR) status. If the original creditor does not respond to our request for validation, two additional emails are automatically sent to the creditor at various intervals requesting a response to the dispute. Responses from original creditors are received by client services.
- If the dispute remains unresolved after the above, client services will use a query report to identify any accounts that have remained in an Active-Clt Info Requested (ACIR) status for more than eleven days. This report will be exported to an excel spreadsheet and emailed to our client services representatives each Monday and placed in the client services directory.
- *Client Services* will attempt additional contact with the original creditor attempting to validate the debt upon receipt on this spreadsheet. If the original creditor fails to respond to our fourth attempt to validate the debt, Client Services will adjust the disputed portion or recall (IRCL) the entire debt as appropriate. An email will be sent

CONFIDENTIAL

to a clerical representative *or Front Desk* to mail a Debt-adjusted Letter (letter 12) or NCS Recall Letter (letter 17).

- *Client Services* will process all incoming correspondence and calls from original creditors regarding disputed debt. They will make notations in Windebt regarding responses and relevant information. Appropriate adjustments to the debt will be made while appending any documentation received from the original creditor to the debtor's image file. Once a debt has been adjusted or verified by the original creditor, Client Services will change the account status from Active-Clt Info Request (ACIR) to a Floor (AFLR) status. After completing the investigation, a Debt Investigated Letter (letter 11), Debt-adjusted Letter (letter 12), or NCS Recall Letter (letter 17) will be sent to the consumer, or their representative, as appropriate. If the investigation results in a balance adjustment and/or we have new documentation supporting the adjustment, Client Services will print the state-appropriate Debt Adjusted Letter (letter 12) and mail to the consumer along with any new documentation.

_____          _____
      Employee Signature                                    Date

CONFIDENTIAL



# Written Dispute Procedures

This document describes National Credit Systems, Inc. (NCS) policies and procedures when investigating and responding to disputes sent directly to NCS by the consumer.

**All disputes received by NCS will be noted and marked with a work action that updates the debt as disputed by the consumer. The individual who is in receipt of the initial dispute is responsible for performing this work action**. This directive applies to disputes received by means other than direct mail, which includes emails, faxes, correspondence from a consumer's attorney, and disputes received from the Better Business Bureau.

When speaking with a consumer, NCS representatives should ask the consumer to provide NCS with any supporting documentation that would help resolve or explain the basis for the dispute.

See the below required procedures for responding to a dispute:

**<u>Claim of Identity Theft</u>**: If the consumer contends he or she is the victim of identity theft, then the following procedures must be completed:

- An email must be sent to *<u>Front Desk</u>* with instructions to send the consumer an ID Theft Affidavit. Once the completed ID Theft Affidavit is returned to NCS, a compliance representative will review the completed documentation to ascertain the validity of the consumer's claim. If the debt appears to be the result of identity theft, the item will be closed and any derogatory information submitted by NCS to any CRA's will be removed. An NCS Recall Letter (letter 17) will then be sent to the consumer. If the review of the affidavit does not confirm identity theft, then a compliance representative will email a clerical representative to mail validation of the debt to the consumer using a Debt Investigated Letter (letter 11).

**<u>Disputed but Frivolous, Unspecific or Vague</u>**: If the person disputing the debt does not specify the items being disputed or explain the basis of the dispute, then the following procedures must be completed by NCS:
- Conduct a reasonable investigation with respect to the disputed information.

CONFIDENTIAL

- Review all relevant information provided by the consumer with the dispute notice.
- If the investigation finds the information reported was inaccurate, promptly notify each consumer reporting agency to which National Credit Systems, Inc. furnished the information of the determination and provide to the consumer reporting agency any correction necessary to make the information accurate.
- Notate Windebt with summary of the dispute and the actions taken in our review.
- Send an email to a clerical representative to mail a Debt Investigated Letter (letter 11) along with all documentation supporting the debt. This procedure will comply with our requirements to report the results of the investigation to the consumer within thirty (30) days of receiving the direct dispute notice.

**Disputed and Action Needed:** Some disputes will require additional action and/or communication with the original creditor. The below are some examples:

o Disputes that identify inconsistencies or inaccuracies in any charges assessed.
o Disputes that include either claims of payment or documented proof of payment.
o Disputes that give specific details of conversations with the original creditor that would place the debt or the amount owed in doubt.
o Disputes involving accelerated rent.
o Disputes requesting documentation not originally supplied by the client.
o Any other disputes that are not deemed to be frivolous, unspecific, or vague.

Some level of judgment must be used in determining legitimacy of a consumer's dispute; however, if in doubt, error to the benefit of the consumer in further investigation a claim or dispute.

Once the determination is made that contact with the original creditor is needed, the following procedures should be followed:

- Review all relevant information provided by the consumer with the dispute notice.
- Notate Windebt with a summary of the dispute and the actions need to investigate the claim.
- A compliance representative will initiate the investigation process. If an agent other than a compliance representative receives the dispute, it is that agent's responsibility to send a compliance representative an email and include the consumer's account number and all relevant information regarding the dispute. a compliance representative will then send a Client Info Request Letter (letter 71) to the original creditor. They will enclose any supporting documentation needed to help resolve the dispute. A compliance representative will then place the disputed debt in an Active-Clt Info Requested (ACIR) status or (ACID) status. If the original creditor does not respond to our request for validation, two additional emails are automatically sent to the creditor at various intervals requesting a response to the dispute. Our Client Services department will process all responses to disputes from creditors. If the dispute remains unresolved after the third email is sent, client services will use reports to identify any accounts that have remained in an Active-Clt Info Requested (ACIR) or other dispute status codes for more than eleven days. These accounts will

CONFIDENTIAL

then receive telephone calls to the creditor as an attempt to complete the investigation.

**Disputed and Containing a Cease and Desist**: a compliance representative will change the disputed debt status code to ACND. The following procedures will then be followed:

- Conduct a reasonable investigation with respect to the disputed information.
- Review all relevant information provided by the consumer with the dispute notice.
- If the investigation finds the information reported was inaccurate, promptly notify each consumer reporting agency to which National Credit Systems, Inc. furnished the information of the determination and provide to the consumer reporting agency any correction necessary to make the information accurate.
- Notate Windebt with summary of the dispute and the actions taken in our review.
- Send an email to a clerical representative to mail a Debt Investigated Letter (letter 11) along with all documentation supporting the debt. This procedure will comply with our requirements to report the results of the investigation to the consumer within thirty- days of receiving the direct dispute notice.  Even though a cease and desist has been requested by the consumer, it is the opinion of the FTC that the above action is appropriate.

After investigating the debt, if contact with the original creditor is required a compliance representative will then send a Client Info Request Letter (letter 71) to the original creditor and enclose any supporting documentation needed to help resolve the dispute. A follow-up alarm will be set in ACT eleven days in the future of our receipt of the dispute. This will notify a Client Services representative to call the original creditor if no response is received from the initial request for validation and the two additional follow-up emails that are automatically sent. The account is to remain in an ACND status even after the investigation is completed.


**Client Services Responsibilities:**

In addition to any duties described above, the following should be following by Client Services personnel for each section above.

- *Client Services* will attempt one additional contact via telephone with the original creditor, which will constitute a fourth effort at contact.  If the original creditor fails to respond to our fourth attempt to validate the debt (calls off of spreadsheet or from ACT), Client Services will adjust either the disputed portion of the debt or recall (IRCL) the entire debt as appropriate.  An email will be sent to *Front Desk* to mail a Debt-adjusted Letter (letter 12) or the NCS Recall Letter (letter 17) to the consumer as appropriate.
- *Client Services* will process all incoming correspondence and calls from original creditors regarding disputed debts. They will make notations in Windebt regarding responses and relevant information. Appropriate adjustments to the debt will be made while appending any documentation received from the original creditor to the

CONFIDENTIAL

debtor's image file. Once a debt has been adjusted or verified by the original creditor and if the account status is Active-Clt Info Request (ACIR), Client Services will change the account status to an Active-Floor (AFLR) status. After completing the investigation, a Debt Investigated Letter (letter 11), Debt-adjusted Letter (letter 12), or NCS Recall Letter (letter 17) will be sent to the consumer, or their representative, as appropriate. If the investigation results in a balance adjustment and/or we have new documentation supporting the adjustment, Client Services will print the state-appropriate Debt- adjusted Letter (letter 12) and mail to the consumer along with any new documentation.

_____        _____
Employee Signature                            Date

<span style="color:red">CONFIDENTIAL</span>

## National Credit Systems, Inc.
## New Business Acknowledgment Report

Date: 04/18/2023
Time: 06:16:15 AM
Page: 1

████████████████

█████████████████

Client No: 
Rate: ██████

Please review the information below and confirm the accuracy of the amounts being submitted for collection.
It is of critical importance that NCS pursues recovery on verifiably correct account balances only from the parties
who are legally responsible. NCS must be informed immediately if a former resident is represented by an attorney,
has filed bankruptcy, or if any adjustments to the account are necessary.

** Indicates the account cannot be reported to credit bureaus, as it is missing the consumer's social security number AND date of birth.

| Name | Your Acct # | Amount Placed | Remarks | Our ID # |
|---|---|---|---|---|
| ████████████ | ██████ | $ ██████ | | ██████ |
| ██████████████ | ██████ | $ ██████ | | ██████ |
| Totals: | 2 | $19,880.37 | | |

CONFIDENTIAL

## National Credit Systems, Inc.
## New Business Acknowledgment Report

Date: 04/18/2023
Time: 06:16:15 AM
Page: 1

████████████████

████████████████

Client No:  ██████
Rate:  ██████

Please review the information below and confirm the accuracy of the amounts being submitted for collection.
It is of critical importance that NCS pursues recovery on verifiably correct account balances only from the parties
who are legally responsible. NCS must be informed immediately if a former resident is represented by an attorney,
has filed bankruptcy, or if any adjustments to the account are necessary.

** Indicates the account cannot be reported to credit bureaus, as it is missing the consumer's social security number AND date of birth.

| Name | Your Acct # | Amount Placed | Remarks | Our ID # |
|------|-------------|---------------|---------|----------|
| ████████████ | ████ | $████ | | ████ |
| ████████████ | ████ | $████ | | ████ |
| Totals: | 2 | $19,880.37 | | |

**NCS-197**

CONFIDENTIAL



# Memo

**To:**  All Staff Members

**From:**  Management

**Date:**  11-17-2023

**Re:**  Concerns-Website

---

We have implemented new functionality to our website allowing consumers to submit disputes or concerns online.

The purpose of this memo is to provide clear guidelines on when and how to direct consumers in using this tool. This new process will be our preferred method of receiving consumer disputes and should replace previous procedures, such as guiding a consumer to info@nationalcreditsystems.com or using the ID Theft letter.

We have a new letter titled, Concerns-Website CWS, that should be used for these situations. This letter will guide consumers to our website to address concerns they have regarding their debt. The consumer will need to login using their Account Number and Website Password after selecting the green Resolve My Debt button. Once they have accessed the website, they will navigate to the Concern Regarding Account card. Please see the attached letter that the consumer will receive.

While this letter should be sent to consumers legitimately disputing their account, it should not be used as a substitute for answering questions, explaining why the debt is owed, or performing normally expected collection efforts. A consumer simply stating that they are not going to pay or needing explanation regarding a correctly charged component of their bill is not a dispute, and this letter should not be sent in these instances.

Please use this new tool in appropriate situations.

1

NCS-198

CONFIDENTIAL



**P.O. Box 672288 Marietta, GA 30006   (800) 459-1539   (404) 629-2728**
**Monday - Thursday 8:00 a.m. - 7:00 p.m., Friday 8:00 a.m. - 5:00 p.m.**

_____

11/17/2023


Damion Stinson
3208 SUMMERLAKE DR
Atlanta GA 30350


Current Creditor: SSC 909 Broad Apartments LLC
Client Account Number: NO SHOW
NCS Account Number: 4000000
NCS Default Password (for website): 95085C37
Balance: $422.00

We are prepared to assist you with your account-related matters or concerns. Please know that our company's intention is to only pursue recovery on valid and accurate debts from the parties who are legally responsible.

It is critical that you provide all relevant details and evidence supporting your position.  Having a clear and thorough understanding of your concern is vital to a successful investigation.  It is also important that you do not provide any false, misleading, or inaccurate information, as this may diminish the credibility of your claim.

To aid you in explaining your concern, we have established an online platform to facilitate this process. To submit a concern for investigation by our company, taking the following actions:

1. Navigate to our website, www.nationalcreditsystems.com <http://www.nationalcreditsystems.com>
2. Click the green 'Resolve My Debt' button located in the upper right corner of the homepage
3. Login using the information items provided in this letter (Account Number and NCS Default Password)
4. Select the "Concern Regarding Account" option
5. Select the appropriate option matching your situation and fully complete the online form

Based on the information and documents provided, our team will investigate your issues and, if warranted, update our records and any information furnished to the consumer reporting agencies in accordance with applicable law and regulations. While NCS is works for the creditor in this matter, we are committed to ensuring a fair and transparent collection process of only legally owed debts.


Sincerely,


Collection Representative

CWS


**This is an attempt to collect a debt and any information obtained will be
used for that purpose. This communication is from a debt collector.**

**NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**


**NCS-199**

CONFIDENTIAL

**APRIL 2021**

# Debt Collection Rule

Small Entity Compliance Guide


Consumer Financial
Protection Bureau

**NCS-200**

CONFIDENTIAL

# Version Log

The Bureau updates this Guide on a periodic basis to reflect finalized clarifications to the Rule which impacts guide content, as well as administrative updates. Below is a version log noting the history of this document and its updates:

| Date | Version | Changes |
|------|---------|---------|
| **April 2021** | 2.0 | Updates to reflect the amendments in the December 2020 Debt Collection Rule as follows: |
| | | ▪ Revised introduction and overview to include discussion of December 2020 Final Rule (Sections 1.1 and 2); |
| | | ▪ Created a new section to discuss the prohibition against legal action and threats of legal action to collect of time-barred debt (Section 10.5); |
| | | ▪ Created a new section to discuss the prohibition on passive collection (Section 10.6); |
| | | ▪ Revised the discussion of validation information to incorporate requirements and provide guidance on providing validation information (Section 12); |
| | | ▪ Updated the discussion of the prohibition against overshadowing consumer rights to incorporate reference to the safe harbor (Section 12.4); |
| | | ▪ Updated the discussion of requests for original-creditor information to include reference to the requirements applicable when the current creditor and the original creditor are the same (Section 12.5); and |
| | | ▪ Added an annotated version of the model validation notice in Appendix B of the December 2020 Rule (Appendix A). |
| | | Miscellaneous administrative changes throughout. |
| **January 2021** | 1.0 | Original Document |

**NCS-201**

CONFIDENTIAL

# Table of contents

**Version Log**................................................................................................................ 1

**Table of contents** ........................................................................................................ 2

**1.   Introduction** ......................................................................................................... 6

1.1   Scope of this guide .............................................................................7

1.2   Use of examples in the guide.............................................................7

1.3   Additional resources ..........................................................................8

**2.   Overview of clarifications and interpretations**........................................................ 9

2.1   Effective date................................................................................... 9

2.2   Coverage ......................................................................................... 9

2.3   Communicating with consumers at inconvenient or unusual times or
places ............................................................................................ 10

2.4   Cease communication requests and refusals to pay.............................. 10

2.5   Electronic communication opt-out notice............................................. 11

2.6   Definition of consumer and collection of decedent debt......................... 11

2.7   Third-party communications ...............................................................12

2.8   Telephone call frequencies.................................................................12

2.9   Additional specific prohibitions...........................................................12

2.10  Additional clarifications related to newer technologies ...........................13

2.11  Sale, transfer, or placement of certain debts........................................13

2.12  Duplicative disputes..........................................................................14

2.13  Validation information .......................................................................14

2.14  General disclosure requirements.........................................................14

2.15  Record retention...............................................................................14

**NCS-202**

**3. Coverage** ...................................................................................................**15**

   3.1   Debt collector .......................................................................................15

   3.2   Debt ......................................................................................................17

   3.3   Communications, attempts to communicate, and limited-content messages .............................................................................................. 18

**4. Prohibitions on certain communications and attempts to communicate with a consumer** ..............................................................**24**

   4.1   Unusual or inconvenient times or places ........................................ 25

   4.2   Consumer represented by an attorney ........................................... 28

   4.3   At a consumer's place of employment ............................................ 29

   4.4   Exceptions .......................................................................................... 30

   4.5   After a refusal to pay or a cease communication notice .............. 31

**5. Opt-out notice for electronic communications or attempts to communicate with a consumer** ....................................................**33**

   5.1   Clear and conspicuous notice ........................................................ 34

   5.2   Reasonable and simple method to opt out .................................... 34

   5.3   Payment of fees to opt out .............................................................. 35

   5.4   Ceasing communications or attempts to communicate after receipt of an opt-out request ...................................................................... 35

**6. Prohibition on communications with third parties** .................**37**

   6.1   Exceptions .......................................................................................... 38

   6.2   Reasonable procedures for email and text message communications .................................................................................. 40

**7. Prohibitions on harassing, oppressive, or abusive conduct** ...........................**50**

   7.1   Repeated or continuous telephone calls or telephone conversations .............................................................................. 52

   7.2   Prohibited communication media ................................................... 61

**NCS-203**

CONFIDENTIAL

7.3  Other prohibited harassing, oppressive, or abusive conduct ................. 63

**8.  False, deceptive, or misleading representations or means ............................. 65**

8.1  False, deceptive, or misleading representations ...................................... 65

8.2  False, deceptive, or misleading collection means .................................... 66

8.3  False representations or deceptive means and disclosure of identity in certain social media requests ........................................................ 67

8.4  Assumed names .......................................................................... 67

**9.  Unfair or unconscionable means ........................................................ 69**

9.1  Collection of unauthorized amounts ......................................... 69

9.2  Postdated payment instruments ............................................... 69

9.3  Charges resulting from concealment of purpose ...................................... 70

9.4  Nonjudicial action regarding property ....................................... 70

9.5  Post cards and content on envelopes .......................................... 70

9.6  Email address provided by the consumer's employer ............................. 71

9.7  Social media messages viewable by the public or the consumer's contacts ................................................................................ 72

**10. Other requirements and prohibited practices related to debts ........................ 73**

10.1  Prohibition on the sale, transfer for consideration, or placement for collection of paid, settled, or discharged debts .......................................... 73

10.2  Application of payment to multiple debts .................................. 74

10.3  Legal actions by debt collectors ............................................... 75

10.4  Prohibition on furnishing certain deceptive forms ................................... 75

10.5  Prohibition on certain actions related to time-barred debt .................... 75

10.6  Restrictions on reporting information to a consumer reporting agency .............................................................. 76

**11. Disclosures in initial or subsequent communications ........................................ 79**

11.1  Initial communications ......................................................... 79

**NCS-204**

CONFIDENTIAL

11.2   Subsequent communications ......................................................................80

**12.  Validation information, disputes, and requests for verification
and original-creditor information ................................................................81**

12.1   Validation information .........................................................................82

12.2   Delivery method and timing requirements ...............................................98

12.3   Validation period..............................................................................102

12.4   Overshadowing of rights to dispute or request original-creditor
information .................................................................................... 105

12.5   Requests for original-creditor information ........................................... 105

12.6   Responses to disputes......................................................................106

12.7   Responses to duplicative disputes ......................................................107

**13.  Sending required disclosures ...................................................................109**

**14.  Record retention ....................................................................................111**

14.1   Scope of records to be retained ........................................................ 111

14.2   Retention period..............................................................................112

14.3   Form of records ..............................................................................113

**Appendix A: ...................................................................................................114**

Annotated model validation notice with regulatory citations........................114

**NCS-205**

CONFIDENTIAL

# 1.  Introduction

In 1977, Congress passed the Fair Debt Collection Practices Act (FDCPA) to eliminate debt collectors' abusive debt collection practices, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent action to protect consumers against debt collection abuses.

In 2010, the Dodd-Frank Act made the Consumer Financial Protection Bureau (Bureau) the first federal agency with authority under the FDCPA to prescribe substantive rules with respect to debt collectors' collection of debts.  In December 2011, the Bureau re-issued the Federal Trade Commission's procedures implementing the FDCPA's provision that permits a state to apply for an exemption from certain FDCPA requirements.[1]  These procedures were codified in Regulation F.  In 2019, the Bureau issued a notice of proposed rulemaking to amend Regulation F and implement the FDCPA's substantive requirements and prohibitions regarding debt collection.  In 2020, the Bureau issued a supplemental notice of proposed rulemaking addressing time-barred debt disclosures.

On October 30, 2020, the Bureau issued a final rule (October 2020 Final Rule) amending Regulation F to implement most of the FDCPA's substantive provisions.[2]  The October 2020 Final Rule addresses, among other things, communications in connection with debt collection, prohibitions on harassment or abuse, false or misleading representations, and unfair practices in debt collection.  The October 2020 Final Rule is effective November 30, 2021.

On December 18, 2020, the Bureau issued a final rule (December 2020 Final Rule) addressing and clarifying consumer disclosure requirements, required actions prior to furnishing, and prohibitions regarding the collection of time-barred debt.[3]  The December 2020 Final Rule is also effective November 30, 2021.

This guide uses the term "Debt Collection Rule" or "Rule" to collectively refer to the October 2020 Final Rule and the December 2020 Final Rule.

This guide meets the requirements of section 212 of the Small Business Regulatory Enforcement Fairness Act of 1996 with regard to the Debt Collection Rule and is a Compliance Aid issued by the Consumer Financial Protection Bureau.  The Bureau published a Policy Statement on

---

[1]  76 Fed. Reg. 78121 (Dec. 16, 2011).

[2]  85 Fed. Reg. 76734 (Nov. 30, 2020).

[3]  86 Fed. Reg. 5766 (Jan. 19, 2021).

**NCS-206**

CONFIDENTIAL

Compliance Aids, available at www.consumerfinance.gov/policy-compliance/rulemaking/final-rules/policy-statement-compliance-aids/, that explains the Bureau's approach to Compliance Aids.

# 1.1    Scope of this guide

This guide focuses on the Debt Collection Rule. Except when specifically needed to explain the Debt Collection Rule, this guide does not discuss other laws, regulations, or regulatory guidance that may apply.  The content of this guide does not include any rules, bulletins, guidance, or other interpretations issued or released after the date on the guide's cover page.

The guide includes a detailed summary of the Debt Collection Rule's substantive prohibitions and

> 🗩 The Debt Collection Rule implements federal law and does not interpret state law. Similarly, this guide does not discuss state laws that may apply to debt collectors.

> 🗩 The Debt Collection Rule does not affect a person's responsibility to comply with state laws that are consistent with or provide greater protection to consumers than the FDCPA or the Rule.  *See* 12 CFR 1006.104.

requirements, including those that generally restate the FDCPA's prohibitions and requirements.  Section 2 provides a summary that highlights the Debt Collection Rule's key interpretations and clarifications of the FDCPA.

Users of this guide should review the October 2020 Final Rule and the December 2020 Final Rule as well as this guide.  These final rules are available on the Bureau's website at www.consumerfinance.gov/rules-policy/final-rules/debt-collection-practices-regulation-f-compilation/.

# 1.2    Use of examples in the guide

This guide has examples to illustrate some portions of the Debt Collection Rule.  The examples do not include all possible factual situations that could illustrate a particular provision, trigger a particular obligation, or satisfy a particular requirement.  The examples provided assume that the entity illustrating the action is considered a debt collector under the Rule, as discussed in Section 3.1, unless otherwise noted in the example.  Further, unless otherwise stated, each example is independent of the other examples and the examples do not represent a chain of events.

NCS-207

# 1.3    Additional resources

## 1.3.1    Website resources, email notifications, and regulatory inquiries

Additional resources to help industry understand and comply with the Debt Collection Rule are available on the Bureau's website at www.consumerfinance.gov/policy-compliance/guidance/other-applicable-requirements/debt-collection/. You may also sign up on this website for an email distribution list that the Bureau will use to announce additional resources as they become available.

If you have a specific regulatory interpretation question about the Debt Collection Rule after reviewing these resources, you can submit the question to the Bureau on its website at reginquiries.consumerfinance.gov. You may also leave your question in a voicemail at 202-435-7700. Bureau staff provides only informal responses to regulatory inquiries, and the responses do not constitute official interpretations or legal advice. Bureau staff is not able to respond to specific inquiries within a particular requested timeframe. Actual response times will vary based on the number of questions Bureau staff is handling and the amount of research needed to respond to a specific question.

## 1.3.2    Advisory opinions

A request for an advisory opinion regarding the Debt Collection Rule may be submitted in accordance with the Bureau's Advisory Opinions Policy. The Bureau will review requests for advisory opinions in accordance with the Advisory Opinions Policy, and any resulting advisory opinions will be published in the Federal Register and will be posted on the Bureau's website. Additional information about the Advisory Opinions Policy is available at www.consumerfinance.gov/policy-compliance/guidance/advisory-opinion-program.

**NCS-208**

CONFIDENTIAL

# 2.  Overview of clarifications and interpretations

The Debt Collection Rule restates the FDCPA's substantive provisions and, in many cases, further interprets or clarifies how those provisions apply, especially to newer communication technologies.  This section provides an overview of the Rule's interpretations and clarifications. The remainder of this guide provides a detailed discussion of the Rule's substantive provisions, including those that generally restate the FDCPA's corresponding provisions.

## 2.1   Effective date

The Debt Collection Rule is effective November 30, 2021.  The Rule applies to attempts to communicate, communications, and other conduct by debt collectors occurring on or after that date, regardless of when the underlying debt was incurred.

Nothing in the Debt Collection Rule prevents a debt collector from complying with the Rule's requirements and prohibitions before the effective date.  However, to the extent the Rule establishes a bona fide error defense, safe harbor, or a presumption that certain conduct complies with or violates the Rule, those defenses, safe harbors, and presumptions are not effective until November 30, 2021.

## 2.2   Coverage

The Debt Collection Rule covers debt collectors and debts, as those terms are defined in the FDCPA.  Thus, the Rule does not alter which debt collectors and debts are covered under the FDCPA.  For example, the Rule does not expand coverage to first-party debt collectors that are not debt collectors under the FDCPA.

Additionally, many of the FDCPA's requirements and prohibitions apply to "communications." The Debt Collection Rule clarifies that communications and attempts to communicate can occur through newer technologies, such as calls and texts to mobile telephones, email messages, and messages conveyed through social media.  The Rule also clarifies that "attempts to communicate" are subject to certain requirements and prohibitions as set forth in the Rule.

CONFIDENTIAL

The Rule adds the term "limited-content message" and excludes such messages from the Rule's definition of communication. However, limited-content messages are attempts to communicate pursuant to the Rule.

The terms debt collector, debt, communication, attempt to communicate, and limited-content message are discussed in Section 3.

# 2.3    Communicating with consumers at inconvenient or unusual times or places

The Debt Collection Rule clarifies how the prohibition on communicating or attempting to communicate with consumers at inconvenient or unusual times or places applies to electronic communication media. With respect to all communication media, the Rule clarifies that the consumer does not need to use the word "inconvenient" to designate a time or place as inconvenient. Additionally, if a consumer initiates a communication with a debt collector at a time or place that the consumer previously designated as inconvenient, the debt collector may respond once during that time or at that place through the same medium of communication that the consumer used regardless of the fact that the consumer previously designated the time or place as inconvenient. The prohibition on communicating or attempting to communicate with a consumer at unusual or inconvenient times and places is discussed in Section 4.1.

# 2.4    Cease communication requests and refusals to pay

The Debt Collection Rule clarifies that a consumer submitting a cease communication request or refusal to pay notice may satisfy the requirement to submit the request or notice "in writing" by submitting the request or notice using an electronic medium of communication through which a debt collector accepts electronic communications from consumers, such as by email or through a website portal. The prohibition on communicating with a consumer after the consumer requests that the debt collector cease communication or refuses to pay is discussed in Section 4.5.

The Debt Collection Rule also clarifies that any person may request that a debt collector not use or cease using a particular medium of communication (e.g., email messages, email messages to a specific address, telephone calls, telephone calls to a specific number) to communicate with that person. Subject to certain exceptions, once a person has made such a request, the debt collector

**NCS-210**

may not communicate with the person through that medium. This prohibition is discussed in Section 7.2.

## 2.5    Electronic communication opt-out notice

The Debt Collection Rule requires a debt collector who communicates or attempts to communicate with a consumer electronically in connection with the collection of a debt to include a clear and conspicuous statement notifying the consumer of a reasonable and simple method that the consumer may use to opt out of receiving further electronic communications and electronic attempts to communicate to the particular email address, telephone number, or other electronic-medium address. The opt-out notice requirement is discussed in Section 5.

## 2.6    Definition of consumer and collection of decedent debt

Pursuant to the FDCPA, the Debt Collection Rule clarifies that, for the purpose of certain provisions of the Rule, the definition of "consumer" means not only the natural person obligated or allegedly obligated on the debt but also that person's spouse, parent (if the person is a minor), legal guardian, and confirmed successor in interest. Additionally, if the natural person obligated or allegedly obligated on the debt is deceased, the term includes the deceased person's surviving spouse, parent (if the deceased person was a minor), an executor or administrator of the deceased person's estate (including the personal representative of the person's estate), and a confirmed successor in interest.

The FDCPA's expanded definition of consumer applies for purposes of 12 CFR 1006.6. Among other things, this provision of the Debt Collection Rule prohibits certain communications and attempts to communicate with a consumer about a debt and addresses third-party communications in connection with debt collection. Thus, the expanded definition of consumer generally allows a debt collector to discuss a debt with the persons included in that expanded definition.

The Rule also clarifies how a debt collector may locate a person authorized to act on behalf of a deceased consumer.

The requirements and prohibitions contained in 12 CFR 1006.6 are discussed in Sections 4, 5, and 6.

CONFIDENTIAL

# 2.7    Third-party communications

The Debt Collection Rule identifies procedures that, when followed, provide a bona fide error defense to civil liability for unintentional violations of the prohibition against third-party communications sent by text or email message. The Rule also permits a debt collector to leave a limited-content message (i.e., a voicemail message for a consumer that includes only certain content described in the Rule) without violating the prohibition on communicating with third parties. The prohibition on communicating with third parties and the procedures for obtaining a bona fide error defense are discussed in Section 6.

# 2.8    Telephone call frequencies

The Debt Collection Rule clarifies the FDCPA's prohibition on repeated or continuous telephone calls or telephone conversations. Subject to certain exceptions, a debt collector is presumed to violate this prohibition if the debt collector places telephone calls to a person in connection with the collection of a particular debt more than seven times within a seven-day period or places a telephone call within seven days after engaging in a telephone conversation with the person about the particular debt. Conversely, a debt collector is presumed to comply with the prohibition if the debt collector places calls to a person in connection with the collection of a particular debt that are not in excess of either of these telephone call frequencies. The Rule provides a non-exhaustive list of factors that may be used to rebut the presumption of compliance or the presumption of violation. The prohibition on repeated or continuous telephone calls or telephone conversations, the presumptions of compliance and violation, and the factors that may be used to rebut the presumptions are discussed in Section 7.1.

# 2.9    Additional specific prohibitions

The Debt Collection Rule clarifies two additional prohibitions. First, the Rule prohibits debt collectors from bringing or threatening to bring a legal action against a consumer to collect a time-barred debt. Second, the Rule prohibits "passive collection," the practice of furnishing collection information about a debt to a consumer reporting agency without first taking an action to notify the consumer about the debt. The prohibitions on certain actions related to time-barred debt and on passive collections are discussed in Section 10.

CONFIDENTIAL

## 2.10  Additional clarifications related to newer technologies

To clarify the application of the FDCPA to newer technologies, the Debt Collection Rule:

- Provides examples showing how a debt collector's use of newer technologies such as email and text messages could violate the FDCPA's general prohibition against harassing, oppressive, or abusive conduct.  This prohibition and the examples are discussed in Section 7.

- Clarifies that a debt collector violates the FDCPA's general prohibition against deception if a debt collector sends private messages using social media without identifying himself or herself as a debt collector.  This prohibition and the clarification are discussed in Section 8.3.

- Clarifies that debt collectors generally may not communicate with a consumer using an email address that the debt collector knows is provided by the consumer's employer, unless the debt collector received the consumer's direct prior consent and the consumer has not withdrawn that consent, or the consumer used the email address to contact the debt collector and has not since opted out of communications to that email address.  The prohibition on using an employer-provided email address is discussed in Section 9.6.

- Clarifies that a debt collector is prohibited from contacting persons through a social media platform if the communication or attempt to communicate is viewable by the general public or the person's social media contacts.  This prohibition is discussed in Section 9.7.

## 2.11  Sale, transfer, or placement of certain debts

The Debt Collection Rule prohibits debt collectors from selling, transferring for consideration, or placing for collection a debt if the debt collector knows or should know that the debt was paid, was settled, or was discharged in bankruptcy, subject to certain exceptions.  This transfer ban and the related exceptions are discussed in Section 10.1.

CONFIDENTIAL

# 2.12  Duplicative disputes

If a consumer disputes a debt or any portion of a debt in writing within a certain period, the FDCPA generally requires a debt collector to cease collecting the debt or any disputed portion of the debt until the debt collector sends verification of the debt to the consumer. The Debt Collection Rule addresses how these requirements apply if the consumer sends a duplicative dispute as defined in the Rule. The requirement to cease collecting disputed debts and the Rule's provisions related to duplicative disputes are discussed in Section 12.

# 2.13  Validation information

The FDCPA requires a debt collector to provide the consumer with certain information when the debt collector first communicates with the consumer to collect the debt or shortly thereafter. The Debt Collection Rule implements the FDCPA's validation information requirement and addresses how to provide the specific information required. The Rule clarifies how the debt collector may provide the validation information, and also provides a safe harbor for use of the model validation notice in Appendix B of the Rule. The validation information requirements are discussed in Sections 12.1 and 12.2.

# 2.14  General disclosure requirements

The Debt Collection Rule clarifies the general standards a debt collector must meet when sending required disclosures in writing or electronically. The Rule also clarifies that certain disclosures must be provided in a foreign language if the disclosures are included in a communication that uses that foreign language. The translation of the disclosures must be complete and accurate. These disclosure standards and language requirements are discussed in Section 13.

# 2.15  Record retention

The Debt Collection Rule adds specific record retention requirements. Generally, debt collectors must retain evidence of compliance or noncompliance with the FDCPA and the Rule starting on the date that the debt collector begins collection activity on a debt until three years after the debt collector's last collection activity on the debt. If a debt collector records a telephone call, the debt collector must retain the recording until three years after the date of the telephone call. Section 14 discusses record retention.

CONFIDENTIAL

# 3.   Coverage

## 3.1   Debt collector

The Debt Collection Rule applies to debt collectors.  12 CFR 1006.1(c).  Unless an exemption or exclusion in the Rule applies, a person (i.e., natural person, corporation, company, association, firm, partnership, society, or joint stock company) is a "debt collector" for purposes of the Rule if that person does one or both of the following:

- ▪ Uses any instrumentality of interstate commerce or mail in any business the principal purpose of which is the collection of debts.  This prong of the definition of debt collector is sometimes called the "principal purpose" prong.

- ▪ Regularly collects or attempts to collect (directly or indirectly) debts owed or due to another person or asserted to be owed or due to another person.  This prong of the definition of debt collector is sometimes called the "regularly collects" prong.

12 CFR 1006.2(i)(1).

Even if a person satisfies the principal purpose prong or the regularly collects prong (or both), the person is not a debt collector for purposes of the Debt Collection Rule if that person also satisfies one or more of the exclusions discussed in Section 3.1.1.

💬 However, the term debt collector includes any creditor that, in the process of collecting its own debts, uses any name other than its own that would indicate that a third person is collecting or attempting to collect such debts.  12 CFR 1006.2(i)(1).

💬 For purposes of the prohibition on taking or threatening to take nonjudicial action to effect dispossession or disablement of property, the term debt collector also includes any person who uses any instrumentality of interstate commerce or mail in any business the principal purpose of which is the enforcement of security interests.  12 CFR 1006.2(i)(1).  See Section 9.4 for a discussion of this prohibition.

💬 A person who collects defaulted debt that the person has purchased is not a debt collector if that person does not have a business the principal purpose of which is debt collection and if that person does not collect or attempt to collect debts owed or due (or asserted to be owed or due) to another person.  Comment 1006.2(i)-1.

Additionally, if a state has applied for and been granted an exemption for a class of debt collection practices (as discussed in Section 3.1.2), then those practices in that state may be exempt from the relevant FDCPA and Rule provisions.

**NCS-215**

CONFIDENTIAL

### 3.1.1  Exclusions

A person is excluded from coverage under the Debt Collection Rule if the person is one or more of the following:

1.  An officer or employee of a creditor while the officer or employee is collecting debts for the creditor in the creditor's name.

2.  A person while acting as a debt collector for another person if:

> a.  The person acting as a debt collector does so only for persons with whom the person acting as a debt collector is related by common ownership or affiliated by corporate control; and

> b.  The principal business of the person acting as a debt collector is not the collection of debts.

3.  An officer or employee of the United States or any state to the extent that collecting or attempting to collect any debt is in the performance of the officer's or employee's official duties.

4.  A person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt.

5.  A nonprofit organization that, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in liquidating their debts by receiving payment from such consumers and distributing such amounts to creditors.

6.  A person collecting or attempting to collect any debt owed or due, or asserted to be owed or due to another, to the extent such debt collection activity:

> a. Is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement;

> b. Concerns a debt that such person originated;

> c. Concerns a debt that was not in default at the time such person obtained it; or

> d. Concerns a debt that such person obtained as a secured party in a commercial credit transaction involving the creditor.

> 💬 "Creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed. The term creditor does not, however, include any person to the extent that such person receives an assignment or transfer of a debt in default solely to facilitate collection of the debt for another. 12 CFR 1006.2(g).

**NCS-216**

CONFIDENTIAL

7.  A private entity, to the extent such private entity is operating a bad check enforcement program that complies with section 818 of the FDCPA.

8.  A motor vehicle dealer excluded from coverage by section 1029(a) of the Dodd-Frank Act, 12 U.S.C. 5519(a).  However, any such motor vehicle dealers who are FDCPA debt collectors still need to comply with the FDCPA.

12 CFR 1006.1(c), 1006.2(i)(2), and 1006.2(k).

## 3.1.2   State exemption

The FDCPA describes how a state may apply for an exemption from certain FDCPA requirements for debt collection practices occurring within that state.  One state, Maine, applied for and received an exemption in 1995.[4]  The Debt Collection Rule made only minor changes to the procedures that a state would use to apply for an exemption.  *See* 12 CFR Part 1006, Appendix A.

# 3.2   Debt

Generally, the Debt Collection Rule regulates a debt collector's communications regarding a debt, attempts to communicate about a debt, and other conduct with regard to a debt.  The Rule defines "debt" as any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services that are the subject of the transaction are primarily for personal, family, or household purposes.  An obligation can be a debt regardless of whether or not it has been reduced to a judgment.  12 CFR 1006.2(h).

As defined in the Rule, a debt only includes an obligation or alleged obligation of a consumer.  *See* 12 CFR 1006.2(e).  A consumer includes any natural person, living or deceased, who incurred or allegedly incurred the debt.  The Rule only applies to debt incurred or allegedly incurred by a natural person.  The Rule does not apply to the collection of an obligation or alleged obligation of a company or similar business entity.  Comment 1006.2(h)-1.

Additionally, because a debt must arise from a transaction that is primarily for personal, family, or household purposes, the Rule does not apply to the collection of a debt that was incurred primarily for a business purpose.  *See* 12 CFR 1006.2(h).

---

[4] *See* 60 Fed. Reg. 66972 (Dec. 27, 1995).

**NCS-217**

CONFIDENTIAL

# 3.3    Communications, attempts to communicate, and limited-content messages

Many of the Debt Collection Rule's prohibitions and requirements, including those discussed in Sections 4, 5 and 6 of this guide, apply to communications or attempts to communicate. Section 3.3 of this guide discusses the definitions of communications and attempts to communicate. It also discusses limited-content messages, which are not communications pursuant to the Rule.

## 3.3.1    Communications

The Debt Collection Rule defines "communicate" or "communication" to mean the conveying of information regarding a debt directly or indirectly to any person through any medium. 12 CFR 1006.2(d). A communication can occur through any medium, including any oral, written, electronic, or other medium. For example, a communication may occur in person or by telephone, audio recording, paper document, mail, email message, text message, social media, or other electronic media. Comment 1006.2(d)-1.

Additionally, a communication can involve conveying information regarding a consumer's debt to any person (i.e., any natural person, corporation, company, association, firm, partnership, society, or joint stock company), not just a consumer.

Marketing or advertising that does not contain information about a specific debt or debts is not a communication under the Debt Collection Rule, even if a debt collector transmits the marketing or advertising message to a consumer. Comment 1006.2(d)-2.

Limited-content messages, which are discussed in Section 3.3.3, are not communications for purposes of the Debt Collection Rule.

## 3.3.2    Attempts to communicate

An "attempt to communicate" is any act to initiate a communication or other contact about a debt with any person through any medium, including by soliciting a response from such person. 12 CFR 1006.2(b). An act to initiate a communication or other contact about a debt is an attempt to communicate regardless of whether the attempt, if successful, would be a communication that conveys information regarding a debt directly or indirectly to any person. Comment 1006.2(b)-1.

CONFIDENTIAL

An attempt to communicate is not limited to an act to initiate a "communication," as that term is defined in the Debt Collection Rule.  It includes an act to initiate a contact that does not satisfy the definition of communication.  In other words, it includes an attempt to contact a person regardless of whether the debt collector intends to convey information about a debt as long as the contact is about a debt.

An attempt to communicate can be made through any medium, including in person or by telephone, audio recording, paper document, mail, email, text message, social media, or other electronic media.

An attempt to communicate includes leaving a limited-content message.  12 CFR 1006.2(b).

**Examples:**  ABC, Inc. places a telephone call to a consumer about a debt.  No one answers the telephone, and the caller does not leave a message.  Even though ABC, Inc. did not engage in a communication, it has attempted to communicate with the consumer.

ABC, Inc. places a telephone call to a consumer about a debt.  No one answers the telephone, and the caller leaves a voicemail message that does not convey information about a debt.  Even though ABC, Inc. did not engage in a communication, it has attempted to communicate with the consumer.

ABC, Inc. places a telephone call to a person to acquire location information about a consumer.  No one answers the telephone, and the caller does not leave a message.  Even though ABC, Inc. did not engage in a communication, it has attempted to communicate with the person.

ABC, Inc. places a telephone call to a consumer about a debt.  No one answers the telephone, and the caller leaves a voicemail message that does convey information about a debt.  ABC, Inc. has engaged in a communication and has attempted to communicate with the consumer.

**NCS-219**

CONFIDENTIAL

### 3.3.3   Limited-content messages

The Debt Collection Rule adds the term "limited-content message" and clarifies that a limited-content message is an attempt to communicate but is not a communication for purposes of the Rule. Thus, a limited-content message is subject to the requirements and prohibitions that apply to attempts to communicate. However, a limited-content message is not subject to the requirements and prohibitions that apply only to communications. For example, a limited-content message is not an initial or subsequent communication requiring the disclosures discussed in Section 11.

▢ The definition of limited-content message is not an attempt to define the exclusive means by which a debt collector can leave a message that does not convey information about a debt. Thus, it is possible that a message for a consumer other than a limited-content message will not convey information about a debt, and therefore will not be a communication under the Debt Collection Rule. Such a message (similar to a limited-content message) would be an attempt to communicate pursuant to the Rule.

### Definition

A "limited-content message" is a voicemail message for a consumer that includes all of the content that the Debt Collection Rule requires to be included in a limited-content message, that may include any of the content that the Rule permits to be included in a limited-content message, and that includes no other content. 12 CFR 1006.2(j). A voicemail message that includes any content other than the content required and permitted pursuant to the Rule is not a limited-content message and might be a communication depending on its content.

▢ If state law requires additional or different information to be included in voicemail messages, a debt collector may not be able to take advantage of the ability to leave limited-content messages.

If a call drops and results in a partial message that does not include all of the required content, that message is not a limited-content message. However, such a message is not necessarily a communication under the Debt Collection Rule.

### Content required or permitted in a limited-content message

The Debt Collection Rule requires that a limited-content message include all of the following:

**NCS-220**

CONFIDENTIAL

- A business name for the debt collector that does not indicate that the caller is in the business of collecting debts. Because the Debt Collection Rule notes that a consumer could use the business name included in the message to conduct research regarding the caller, a message does not fail to be a limited-content message merely because a person who hears the message researches the debt collector's business name, and in doing so, determines that the caller is in the business of debt collection. In addition, leaving a limited-content message does not violate the Debt Collection Rule's requirement to meaningfully disclose the caller's identity with respect to that voicemail message. Comment 1006.2(j)-3.

  ▢ A message does not fail to be a limited-content message merely because the business name used is not the debt collector's full legal name or a registered DBA. However, debt collectors must ensure that any business name used complies with other provisions of the FDCPA and the Debt Collection Rule, as well as with any other applicable laws.

  ▢ If a debt collector properly uses a business name on an envelope (as discussed in Section 9.5), the debt collector could use the same business name in a limited-content message.

- A request that the consumer reply to the message.

- The name or names[5] of one or more natural persons whom the consumer can contact to reply to the debt collector.

- A telephone number that the consumer can use to reply to the debt collector.

12 CFR 1006.2(j)(1).

In addition to the content described above, the Debt Collection Rule permits a limited-content message to include:

1. A salutation.

2. The date and time of the message.

3. Suggested dates and times for the consumer to reply to the message.

---

[5] As discussed in Section 8.4, an employee of a debt collector may use an assumed name provided that the employee uses the assumed name consistently and that the debt collector can readily identify any employee using an assumed name.

**NCS-221**

CONFIDENTIAL

4.  A statement that, if the consumer replies, the consumer may speak to any of the company's representatives or associates.  However, a message that includes a more detailed description of the representative or associate group is not a limited-content message.  For example, a reference to an agent with the "credit card receivables group" is not a limited-content message because it includes more than a statement that the consumer's reply may be answered by a representative or associate.  Comment 1006.2(j)(2)-1.

12 CFR 1006.2(j)(2).

## Messages that are not limited-content messages

A message other than a voicemail message, such as a text message sent to a mobile phone, is not a limited-content message, even if it meets the content requirements for a limited-content message.  12 CFR 1006.2(j).

A message knowingly left for anyone other than the consumer obligated or allegedly obligated to pay the debt is not a limited-content message.  For example, a voicemail message left after calling a telephone number that the debt collector knows belongs to the consumer's friend is not a limited-content message, even if the message includes no more than the required and permitted (i.e., optional) content.  Comment 1006.2(j)-2.

**Examples:**  ABC, Inc. places a telephone call to a consumer.  The consumer does not answer, and the caller leaves a voicemail message stating: "This is Robin Smith calling from ABC, Inc.  Please contact me or Jim Johnson at 1-800-555-1212."  The caller left a limited-content message that includes only the required content.  The message is not a communication but is an attempt to communicate.  Alternatively, the caller could have left a voicemail message that included required and permitted content, such as: "Hi, this is Robin Smith calling from ABC, Inc.  It is 4:15 p.m. on Wednesday, September 1.  Please contact me or any of our representatives at 1-800-555-1212 until 6:00 p.m. Eastern time, or any weekday from 8:00 a.m. to 6:00 p.m. Eastern time."  This limited-content message is not a communication but is an attempt to communicate.

Ficus Debt Collection Services places a telephone call to a consumer.  The consumer does not answer, and the caller leaves a voicemail message stating: "This is Robin Smith calling from Ficus Debt Collection Services.  Please contact me or Jim Johnson at 1-800-555-1212."  Because the message includes a business name that indicates that the caller is in the business of collecting debt, the message is not a limited-content message.

CONFIDENTIAL

Ficus Debt Collection Services places a telephone call to a consumer. The consumer does not answer, and the caller leaves a voicemail message stating: "This is Robin Smith calling from Ficus. I'm calling for Amy Jones regarding the overdue payment on your student loan. Please contact me or Jim Johnson at 1-800-555-1212." Because the caller stated that the call was regarding the overdue payment on the consumer's student loan, which is not required or permitted content, the message is not a limited-content message.

ABC, Inc. is attempting to acquire location information about a consumer obligated on a debt and calls a telephone number that ABC, Inc. knows does not belong to that consumer. No one answers the telephone, and the caller leaves a voicemail message with only the required content for a limited-content message. Because the caller is knowingly leaving a message for someone other than the consumer who is obligated on the debt, the message is not a limited-content message regardless of the content of the message.

**NCS-223**

CONFIDENTIAL

# 4. Prohibitions on certain communications and attempts to communicate with a consumer

The Debt Collection Rule prohibits certain communications and attempts to communicate with a consumer in connection with the collection of a debt. For example, it generally prohibits communications with a consumer at inconvenient times or places, after a consumer has refused to pay, or after a consumer has requested a debt collector to cease communications. Additionally, it generally prohibits a debt collector from communicating or attempting to communicate with a consumer at the consumer's workplace if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communications. Similarly, it generally prohibits communications with a consumer if the debt collector knows the consumer is represented by an attorney. 12 CFR 1006.6(b) and (c).

For purposes of these prohibitions, which are discussed in this Section 4, a "consumer" includes not only the natural person who is obligated or allegedly obligated to pay a debt but also that natural person's: (1) spouse; (2) parent (if the natural person is a minor); (3) legal guardian; and (4) confirmed successor in interest.[6] If the natural person who is obligated or allegedly obligated to pay the debt is deceased, the term consumer also includes the executor or administrator[7] of the natural person's estate as well as the natural person's surviving spouse, surviving parents (if the natural person was a minor), and confirmed successor in interest. 12 CFR 1006.6(a)(1)-(5); comments 1006.6(a)(1)-1, (a)(2)-1, and (a)(4)-1.

---

[6] The term "confirmed successor interest" has the same meaning as it does in Regulation X, 12 CFR 1024.31, or Regulation Z, 12 CFR 1026.2(a)(27)(ii). A successor in interest can include, for example, a person who acquires an interest upon the death of a borrower, in a divorce proceeding, or through a transfer from a spouse or parent.

[7] The terms "executor" or "administrator" include the personal representative of the consumer's estate. A "personal representative" is any person who is authorized to act on behalf of the deceased consumer's estate. Persons with such authority may include personal representatives under the informal probate and summary administration procedures of many states, persons appointed as universal successors, persons who sign declarations or affidavits to effectuate the transfer of estate assets, and other persons who dispose of the deceased consumer's financial assets or other assets of monetary value extrajudicially. Comment 1006.6(a)(4)-1.

**NCS-224**

CONFIDENTIAL

# 4.1    Unusual or inconvenient times or places

Unless one or more of the exceptions discussed in Section 4.1.1 or Section 4.4 apply, a debt collector must not communicate or attempt to communicate with a consumer in connection with the collection of any debt:

1. *At any unusual time or at a time that the debt collector knows or should know is inconvenient to the consumer.* In the absence of the debt collector's knowledge of circumstances to the contrary, an inconvenient time for communicating with a consumer is before 8:00 a.m. and after 9:00 p.m. local time at the consumer's location. If a debt collector has conflicting or ambiguous information regarding a consumer's location, the debt collector complies if the debt collector communicates or attempts to communicate with the consumer at a time that would be convenient in all of the locations at which the debt collector's information indicates the consumer might be located. Comment 1006.6(b)(1)(i)-2. A debt collector is not required to determine where the consumer actually is located when communicating or attempting to communicate with the consumer. For purposes of determining the time of an electronic communication, an electronic communication or electronic attempt to communicate occurs at the time that the debt collector sends it, not, for example, at the time that the consumer receives or views it. Comment 1006.6(b)(1)(i)-1.

2. *At any unusual place or at a place that the debt collector knows or should know is inconvenient to the consumer.* Some communication media, such as mailing addresses and landline telephone numbers, are associated with a particular place, such as the consumer's home or workplace. A debt collector must not communicate or attempt to communicate with a consumer through a communication medium associated with an unusual place or a place that the debt collector knows or should know is inconvenient. For example, a consumer may designate the consumer's home as inconvenient, and the debt collector must not communicate or attempt to communicate with the consumer through any communication medium associated with the consumer's home, such as the consumer's home landline telephone number. Other communication media, such as email addresses and mobile telephone numbers, are not associated with a place. The prohibition on communicating or attempting to communicate at unusual or inconvenient places does not prohibit a debt collector from communicating or attempting to communicate with a consumer through media not associated with a place unless the debt collector knows that the consumer is at an unusual place, or knows that the consumer is at a place that the debt collector knows or should know is inconvenient to the consumer. Comment 1006.6(b)(1)(ii)-1.

CONFIDENTIAL

12 CFR 1006.6(b)(1).

**Examples:** Ficus Debt Collection Services has notes indicating that a consumer has a mobile telephone number with an area code associated with the Eastern time zone and a residential address in the Pacific time zone. Ficus Debt Collection Services has conflicting or ambiguous information regarding the consumer's location. Absent knowledge to the contrary, the convenient times for Ficus Debt Collection Services to communicate with the consumer are after 11:00 a.m. Eastern time (8:00 a.m. Pacific time) and before 9:00 p.m. Eastern time (6:00 p.m. Pacific time).

Ficus Debt Collection Services has notes indicating that a consumer has a mobile telephone number with an area code associated with the Eastern time zone and a landline telephone number with an area code associated with the Mountain time zone. Ficus Debt Collection Services has conflicting or ambiguous information regarding the consumer's location. Absent knowledge to the contrary, the convenient times for Ficus Debt Collection Services to communicate with the consumer are after 10:00 a.m. Eastern time (8:00 a.m. Mountain time) and before 9:00 p.m. Eastern time (7:00 p.m. Mountain time).

A consumer tells Ficus Debt Collection Services not to contact the consumer at the consumer's home. The consumer has a landline telephone number that is associated with the consumer's home. The consumer also has a mobile telephone number. Ficus Debt Collection Services knows or should know that a call to the home landline telephone number is a communication or attempt to communicate at an inconvenient place. Thus, a call to the home landline telephone number violates the Debt Collection Rule. In contrast, unless Ficus Debt Collection Services knows that the consumer is at home at the time that it calls the consumer's mobile telephone number, such a call does not violate the Rule's prohibition on communicating or attempting to communicate with a consumer at an inconvenient place. This is true even if the consumer receives the call to the mobile telephone number while at home.

A debt collector knows or should know that a time or place is inconvenient to a consumer if the consumer describes the time or place using the word "inconvenient." In addition, depending on the facts and circumstances, it is possible that a debt collector knows or should know that a time or place is inconvenient even if the consumer does not describe a time or place using the word "inconvenient." For example, a consumer might indicate that he or she should not be disturbed or cannot talk to the debt collector at certain times or places. Comment 1006.6(b)(1)-1.

**NCS-226**

CONFIDENTIAL

However, the Debt Collection Rule does not require a debt collector to construe a consumer's statement that the consumer is "busy" or "cannot talk right now" (without anything further) to mean that the consumer is generally designating a time or place as inconvenient for future communications. Such a statement would indicate that the time or place is inconvenient for the current communication or attempt to communicate.

A debt collector may ask follow-up questions to clarify statements by the consumer in order to determine if a future communication or attempt to communicate would be at a time or place that is inconvenient to a consumer. For example, if a consumer asks a debt collector not to contact the consumer "at home," the debt collector may ask whether the consumer intends to prohibit the debt collector from communicating through all media associated with the consumer's home, including mail. Comment 1006.6(b)(1)-1.iii.

> **Examples:** Ficus Debt Collection Services has a file that includes a note that a consumer cannot be disturbed on Tuesdays and Thursdays. Ficus Debt Collection Services knows or should know that Tuesdays and Thursdays are inconvenient times to contact the consumer.
>
> Ficus Debt Collection Services calls a consumer. The consumer answers the call but states "I am busy" or "I cannot talk now." Ficus Debt Collection Services asks the consumer when a convenient time would be to talk. The consumer responds, "on weekdays, except from 3:00 p.m. to 5:00 p.m." Ficus Debt Collection Services asks the consumer whether there would be a convenient time on weekends. The consumer responds "no." Ficus Debt Collection Services knows or should know that the time period between 3:00 p.m. and 5:00 p.m. on weekdays and all times on weekends are inconvenient to the consumer.

## 4.1.1   Exception specific to the prohibition on communicating or attempting to communicate at inconvenient times or places

There is a limited exception that applies solely to the prohibition on communications and attempts to communicate at inconvenient times or places. If a consumer initiates a communication with a debt collector at a time or from a place that the consumer previously designated as inconvenient, the debt collector does not violate the prohibition on communicating at inconvenient times or places if the debt collector responds once at that time or place through the same medium of communication used by the consumer. After responding one time to the consumer-initiated communication, the Rule prohibits the debt collector from

**NCS-227**

CONFIDENTIAL

communicating or attempting to communicate with the consumer at that time or place until the consumer conveys that the time or place is no longer inconvenient, or another exception applies. 12 CFR 1006.6(b)(1); comment 1006.6(b)(1)-2. If a debt collector's system generates an automated reply in response to a consumer-initiated communication at a time or from a place that the consumer previously designated as inconvenient, this system-generated reply would constitute a response using the same medium of communication. Although this one automated reply would not violate the prohibition on communications at inconvenient times or places, the debt collector could not communicate or attempt to communicate again with the consumer at that time or place until the consumer conveys that the time or place is no longer inconvenient, or another exception applies. For information on additional exceptions to the prohibition on communicating or attempting to communicate at unusual or inconvenient times or places, see Section 4.4.

> **Example:** A consumer tells Ficus Debt Collection Services that communicating on Sundays is inconvenient. On the following Sunday, the consumer sends an email message to Ficus Debt Collection Services but does not indicate that Sundays are no longer inconvenient. Ficus Debt Collection Services receives the email at 3:00 pm and responds by sending a single email message to the consumer at 3:45 pm on Sunday. Ficus Debt Collection Services has not violated the prohibition on communicating at inconvenient times because the limited exception permits the debt collector to respond to the consumer's email message once by email message on Sunday. Additionally, if the consumer responds on Sunday to the email message that Ficus Debt Collection Services sent at 3:45 pm, the prohibition on communicating at inconvenient times does not prohibit Ficus Debt Collection Services from responding by email once on Sunday to the consumer's second email message.

# 4.2  Consumer represented by an attorney

Generally, a debt collector must not communicate or attempt to communicate with a consumer in connection with the collection of a debt if the debt collector: (1) knows an attorney is representing the consumer with respect to the debt; and (2) knows or can readily ascertain the attorney's name and address. 12 CFR 1006.6(b)(2).

CONFIDENTIAL

However, a debt collector may communicate or attempt to communicate about a debt with a consumer represented by an attorney if one or more of the following applies:

🗩 The prohibition on communicating or attempting to communicate with a consumer who is represented by an attorney is debt specific. A debt collector is not required to assume that an attorney who represents a consumer with regard to one debt also represents the consumer regarding other debts.

- The attorney fails to respond within a reasonable period of time to a communication from the debt collector. A reasonable period of time generally depends on the facts and circumstances surrounding a debt collector's communication to the attorney.

- The attorney consents to the debt collector's direct communication with the consumer.

- One or more of the exceptions discussed in Section 4.4 applies.

12 CFR 1006.6(b)(2).

# 4.3    At a consumer's place of employment

Generally, a debt collector must not communicate or attempt to communicate with a consumer in connection with the collection of a debt at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communications. 12 CFR 1006.6(b)(3). However, a debt collector may communicate or attempt to communicate with a consumer at the consumer's place of employment if one or more of the exceptions discussed in Section 4.4 applies.

🗩 The Debt Collection Rule has a separate prohibition regarding sending emails to employer-provided email addresses. A debt collector must also comply with that prohibition, which is discussed in Section 9.6.

🗩 A debt collector who does not know or have reason to know that a consumer's employer prohibits the consumer from receiving communications should carefully manage any communications or attempts to communicate at the consumer's workplace in order to avoid violations of the prohibition on third-party communications. This prohibition is discussed in Section 6.

If a debt collector knows or should know that a consumer's employer prohibits the consumer from receiving communications or attempts to communicate at the consumer's workplace, the debt collector may not communicate or attempt to communicate in connection with the collection of a debt using any communication media

CONFIDENTIAL

associated with the consumer's workplace. This includes sending mail to the employer's address, calling a landline associated with the workplace, or calling or texting an employer-provided mobile telephone. However, a debt collector is not prohibited from using communication media not associated with the workplace, such as a consumer's personal mobile telephone or personal email address, unless the debt collector knows that the consumer is at work at the time of the communication.

The Debt Collection Rule does not specify actions or responses that a consumer must use to invoke the prohibition on communicating or attempting to communicate with a consumer at the consumer's

> 💬 The Debt Collection Rule does not require a debt collector to track which employers prohibit communications at the workplace.

workplace. A debt collector may know or have reason to know that an employer prohibits communications or attempts to communicate based on the facts and circumstances. For example, a debt collector knows or has reason to know that a consumer's employer prohibits the consumer from receiving such communication if the consumer tells the debt collector that the consumer cannot take personal calls at work. The debt collector may ask follow-up questions regarding the employer's prohibition or limitations on communications in order to clarify statements by the consumer. Comment 1006.6(b)(3)-1. For example, a debt collector may ask a consumer to identify times when the consumer is at the place of employment.

# 4.4    Exceptions

The prohibitions discussed in Sections 4.1 through 4.3 do not apply when a debt collector communicates or attempts to communicate with a consumer in connection with the collection of any debt if either or both of the following apply:

- ▪ The debt collector received the consumer's direct prior consent during a communication that does not violate the prohibitions discussed in Sections 4.1 through 4.3. In other words, the debt collector may not seek the consumer's direct prior consent in a communication that violates the prohibition on communicating at unusual or inconvenient times or places, the prohibition on communicating with a consumer represented by an attorney, or the prohibition on communicating with a consumer at the consumer's workplace. For example, a debt collector ordinarily could

> 💬 If the debt collector learns during a communication that the debt collector is communicating with the consumer at an inconvenient time or place, the debt collector is prohibited from asking the consumer to consent to the continuation of that inconvenient communication. However, the debt collector may ask the consumer about other times or places that would be convenient for future communications. Comment 1006.6(b)(4)(i)-1.

CONFIDENTIAL

not (1) call a consumer at midnight and obtain direct prior consent, or (2) call a consumer it knows to be represented by an attorney and obtain direct prior consent. Additionally, the consumer must provide consent directly to the debt collector. A debt collector has not obtained the consumer's direct prior consent if the consumer provided the consent to a third party, such as a creditor or a prior debt collector. Comment 1006.6(b)(4)(i)-2. Furthermore, direct prior consent must be given in advance of the communication or attempt to communicate to which the consent is meant to apply. Direct prior consent does not apply to the communication in which it is given.

- ▪ The debt collector has the express permission of a court of competent jurisdiction.

12 CFR 1006.6(b)(4).

# 4.5    After a refusal to pay or a cease communication notice

Generally, a debt collector must not communicate or attempt to communicate with a consumer with respect to a debt if the consumer notifies the debt collector in writing that the consumer refuses to pay the debt or that the consumer wants the debt collector to cease further communication with the consumer. 12 CFR 1006.6(c)(1).

However, the prohibition on communications and attempts to communicate after a debt collector's receipt of a written refusal to pay or request to cease communication does not apply when a debt collector communicates or attempts to communicate with a consumer with respect to the debt:

- ▪ To advise the consumer that the debt collector's further efforts are being terminated.

💬 The Bureau has interpreted the written early intervention notice required by the Mortgage Servicing Rule, 12 CFR 1024.39(d)(3), to fall within two exceptions to the prohibition on further communications and attempts to communicate. *See* 12 CFR 1024.39(d)(3), its commentary, and the Bureau's 2016 FDCPA Interpretive Rule (81 Fed. Reg. 71977 (Oct. 19, 2016)). Comment 1006.6(c)(2)-1. Thus, a debt collector does not violate the prohibition if it sends a written early intervention notice as required by the Mortgage Servicing Rule, even if the consumer has refused to pay or requested that the debt collector cease communications.

- ▪ To notify the consumer that the debt collector or creditor *may invoke* specified remedies that the debt collector or creditor ordinarily invokes.

CONFIDENTIAL

▪ Where applicable, to notify the consumer that the debt collector or creditor *intends to invoke* a specified remedy.

12 CFR 1006.6(c)(2).

For purposes of this prohibition, "in writing" includes a consumer's refusal to pay or cease communication request provided through a medium of electronic communication through which the debt collector accepts electronic communications from consumers.  Comments 1006.6(c)(1)-1 and -2.

The consumer's refusal to pay or cease communication request is effective upon the debt collector's receipt of that information.  Comment 1006.6(c)(1)-1.  The Debt Collection Rule does not specify the period of time afforded a debt collector to update its systems to reflect a cease communication request.  However, depending upon the circumstances, a debt collector may have a bona fide error defense to civil liability if, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error, a debt collector communicates or attempts to communicate with a consumer after receiving, but before processing, a cease communication request.  For example, if a debt collector who schedules an email message to be sent to a consumer subsequently receives a cease communication request by email but sends the previously scheduled email message to the consumer before the request can be processed (notwithstanding the maintenance of procedures to avoid such an error), the debt collector may be entitled to a bona fide error defense to civil liability.

**Example:**  On August 3, a consumer mails a written notification to Ficus Debt Collection Services.  The written notification indicates that the consumer refuses to pay a debt.  On August 4, Ficus Debt Collection Services sends the consumer an email message.  On August 6, Ficus Debt Collection Services receives the consumer's written notification.  The email message that Ficus Debt Collection Services sent on August 4 does not violate the prohibition on communicating or attempting to communicate further with the consumer with respect to the debt because the consumer's notification is complete upon Ficus Debt Collection Services' receipt of that information on August 6.

CONFIDENTIAL

# 5. Opt-out notice for electronic communications or attempts to communicate with a consumer

The Debt Collection Rule requires a debt collector to include a clear and conspicuous opt-out notice in electronic communications and electronic attempts to communicate with a consumer in connection with the collection of a debt. The opt-out notice requirement applies if the electronic communication or attempt to communicate is sent by email, by text message, or by any other electronic medium that uses a specific electronic address. 12 CFR 1006.6(e).

For purposes of the opt-out notice requirement, the broader definition of consumer applies. Thus, the opt-out notice must be included in electronic communications and electronic attempts to communicate sent to the natural person who is obligated or allegedly obligated to pay a debt as well as to electronic communications and electronic attempts to communicate sent to that natural person's spouse, parent (if the natural person is a minor), legal guardian, and confirmed successor in interest. [8] If the natural person who is obligated or allegedly obligated to pay the debt is deceased, the term consumer also includes the executor or administrator[9] of the natural person's estate as well as the natural person's surviving spouse, surviving parents (if the natural person was a minor), and confirmed successor in interest. 12 CFR 1006.6(a)(1)-(5); comments 1006.6(a)(1)-1, (a)(2)-1, and (a)(4)-1.

---

[8] The term "confirmed successor interest" has the same meaning as it does in Regulation X, 12 CFR 1024.31, or Regulation Z, 12 CFR 1026.2(a)(27)(ii). A successor in interest can include a person, for example, who acquires an interest upon the death of a borrower, in a divorce proceeding, or through a transfer from a spouse or parent.

[9] The terms "executor" or "administrator" include the personal representative of the consumer's estate. A "personal representative" is any person who is authorized to act on behalf of the deceased consumer's estate. Persons with such authority may include personal representatives under the informal probate and summary administration procedures of many states, persons appointed as universal successors, persons who sign declarations or affidavits to effectuate the transfer of estate assets, and other persons who dispose of the deceased consumer's financial assets or other assets of monetary value extrajudicially. Comment 1006.6(a)(4)-1

**NCS-233**

CONFIDENTIAL

## 5.1    Clear and conspicuous notice

The opt-out notice must be readily understandable. Although no minimum type size is required, the location and type size also must be readily noticeable and legible to consumers. *See* comments 1006.6(d)(4)(ii)(C)-1 and 1006.6(e)-1.

## 5.2    Reasonable and simple method to opt out

The opt-out notice must describe a reasonable and simple method by which the consumer can opt out of further electronic communications or attempts to communicate by the debt collector to the specific email address, telephone number for text messages, or other electronic-medium address to which the electronic communication or electronic attempt to communicate is sent. 12 CFR 1006.6(e).

> 💬 A debt collector who receives a request to "stop," "unsubscribe," "end," "quit," or "cancel" is considered to have received an opt-out request even if the specific term the consumer used does not conform precisely to the debt collector's opt-out instructions.

Reasonable and simple methods for opting out include providing an electronic means to opt out, such as a hyperlink, or allowing the consumer to opt out by replying to the communication with the word "stop." However, requiring a consumer who receives the opt-out notice electronically to opt out by postal mail, telephone, or visiting a website without providing a link does not satisfy the requirement to provide a reasonable and simple method for opting out. Comments 1006.6(d)(4)(ii)(C)(*4*)-1 and 1006.6(e)-1.

**Examples:** Ficus Debt Collection Services sends a text message to a consumer's mobile telephone number. The text message includes the following instruction: "Reply STOP to stop texts to this telephone number." Assuming that it is readily noticeable and legible to consumers, this instruction constitutes a clear and conspicuous statement describing a reasonable and simple method to opt out of receiving further text messages from the debt collector to that telephone number.

Ficus Debt Collection Services sends a consumer an email that includes a hyperlink labeled: "Click here to opt out of further emails to this email address." Assuming that it is readily noticeable and legible to consumers, this instruction constitutes a clear and

**NCS-234**

CONFIDENTIAL

conspicuous statement describing a reasonable and simple method to opt out of receiving further emails from the debt collector to that email address.

Ficus Debt Collection Services sends the consumer an email that includes instructions that say: "You may opt out of receiving further email communications from Ficus Debt Collection Services to this email address by replying with an email message that has the word 'stop' in the subject line." Assuming that it is readily noticeable and legible to consumers, this instruction constitutes a clear and conspicuous statement describing a reasonable and simple method to opt out of receiving further emails from the debt collector to that email address.

# 5.3   Payment of fees to opt out

The consumer must not be required to pay any fee to the debt collector in order to opt out. Additionally, the debt collector cannot require the consumer to provide any information other than opt-out preferences and the email address, telephone number, or other electronic-medium address subject to the opt out. 12 CFR 1006.6(e); comment 1006.6(e)-1.

Although the Debt Collection Rule does not prohibit the use of an opt-out method that requires a consumer to pay a fee to a third party, the requirement to pay such fees may affect whether the opt-out method is reasonable and simple under the Rule. The Rule does not require a debt collector to inform a consumer that text messaging rates or fees may apply.

# 5.4   Ceasing communications or attempts to communicate after receipt of an opt-out request

If a consumer has opted out of receiving electronic communications at a specific email address, telephone number (for text messages), or other electronic-medium address, the Debt Collection Rule generally prohibits a debt collector from continuing to send electronic communications to that particular email address, telephone number, or other electronic-medium address. This prohibition is discussed in Section 7.2.

The Debt Collection Rule does not specify a period of time afforded a debt collector to process an opt-out request. However, depending on the circumstances, a debt collector who

CONFIDENTIAL

unintentionally communicates with a consumer electronically after receiving a consumer's request to opt out but before processing the request may have a bona fide error defense to civil liability under FDCPA section 813(c).  For example, if a debt collector who schedules an email to be sent to a consumer later receives an opt-out request from the consumer but sends the previously scheduled email to the consumer before the request can be processed (notwithstanding the maintenance of procedures to avoid such an error), the debt collector may have a bona fide error defense to civil liability under FDCPA section 813(c) if it maintains and follows procedures reasonably adapted to avoid the error.

**NCS-236**

CONFIDENTIAL

# 6.   Prohibition on communications with third parties

Unless one or more of the exceptions discussed in Section 6.1 applies, a debt collector must not communicate in connection with the collection of any debt with any person other than: (i) the consumer; (ii) the consumer's attorney; (iii) a consumer reporting agency (if otherwise permitted by law); (iv) the creditor; [10] (v) the creditor's attorney; or (vi) the debt collector's attorney.  12 CFR 1006.6(d)(1).

For purposes of this prohibition, the term "consumer" includes not only the natural person who is obligated or allegedly obligated to pay a debt but also that natural person's: (1) spouse; (2) parent (if the natural person is a minor); (3) legal guardian; and (4) confirmed successor in interest. [11]  If the natural person who is obligated or allegedly obligated to pay the debt is deceased, the term consumer also includes the executor or administrator [12] of the natural person's estate as well as the natural person's surviving spouse, surviving parents (if the natural person was a minor), and confirmed successor in interest.  12 CFR 1006.6(a)(1)-(5); comments 1006.6(a)(1)-1, (a)(2)-1, and (a)(4)-1.

> **Example:**  ABC, Inc. calls a mobile telephone number that it believes belongs to John Doe.  John Doe is the natural person who ABC, Inc. alleges is obligated to pay a debt.  Jane Doe, who is John's spouse, answers the mobile phone.  ABC, Inc. does not allege that Jane is obligated on the debt.  Jane informs ABC, Inc. that John is not available.

---

[10]   "Creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed.  The term creditor does not, however, include any person to the extent that such person receives an assignment or transfer of a debt in default solely to facilitate collection of the debt for another.  12 CFR 1006.2(g).

[11] The term "confirmed successor interest" has the same meaning as it does in Regulation X, 12 CFR 1024.31, or Regulation Z, 12 CFR 1026.2(a)(27)(ii).  A successor in interest can include a person who, for example, acquires an interest upon the death of a borrower, in a divorce proceeding, or through a transfer from a spouse or parent.

[12] The terms "executor" or "administrator" include the personal representative of the consumer's estate.  A "personal representative" is any person who is authorized to act on behalf of the deceased consumer's estate.  Persons with such authority may include personal representatives under the informal probate and summary administration procedures of many states, persons appointed as universal successors, persons who sign declarations or affidavits to effectuate the transfer of estate assets, and other persons who dispose of the deceased consumer's financial assets or other assets of monetary value extrajudicially.  Comment 1006.6(a)(4)-1.

CONFIDENTIAL

> ABC, Inc. can discuss the debt with Jane without violating the prohibition on third-party communications because Jane is John's spouse.

Limited-content messages and certain other attempts to communicate are not communications and are not subject to the prohibition, even if a third party overhears them. Thus, a debt collector does not violate the prohibition on communications with third parties if the debt collector leaves a limited-content message or other attempt to communicate that is not a communication, and a third party overhears the message. However, if the message is a communication, then it is subject to the prohibition on third-party communications.

The Debt Collection Rule identifies procedures designed to avoid unintentional violations due to third-party access to email messages and texts that are communications pursuant to the Rule. If a debt collector adopts and follows procedures, as outlined in the Rule, the debt collector may have a bona fide error defense from civil liability for unintentional violations of the prohibition against third-party communications for these two forms of electronic communications. The bona fide error defense and related procedures are discussed in Section 6.2.

# 6.1    Exceptions

## 6.1.1    General discussion

The prohibition on third-party communications does not apply when a debt collector communicates with a person:

- With the prior consent of the consumer given directly to the debt collector. A debt collector has not obtained the consumer's direct prior consent if the consumer provided the consent to a third party, such as a creditor or a prior debt collector. *See* comment 1006.6(b)(4)(i)-2. Furthermore, direct prior consent must be given in advance of the communication to which it applies. Direct prior consent does not apply to the communication in which it is given.

- With the express permission of a court of competent jurisdiction.

- As reasonably necessary to effectuate a post-judgment judicial remedy.

- For the purpose of acquiring location information, as provided in 12 CFR 1006.10. Section 6.1.2 discusses communications for the purpose of acquiring location information.

CONFIDENTIAL

12 CFR 1006.6(d)(2)

## 6.1.2  Acquisition of location information

A debt collector is permitted to communicate with a person other than the consumer in order to acquire "location information" if the debt collector meets certain requirements. This section discusses the acquisition of location information exception to the prohibition on communicating with third parties.

For this purpose, the term "location information" means: (1) the place of abode of the consumer obligated or allegedly obligated on the debt and a telephone number at such place; and (2) the place of employment of the consumer obligated or allegedly obligated on the debt. 12 CFR 1006.10(a)(1) and (2). If the consumer obligated or allegedly obligated to pay a debt is deceased, "location information" also includes the place of abode, the telephone number at such place, and the place of employment for the executor or administrator of that consumer's estate. Comment 1006.10(a)-1.

A debt collector communicating with a person other than the consumer obligated or allegedly obligated on the debt for the purpose of acquiring location information must identify himself or herself individually by name[13] and state that he or she is confirming or correcting the consumer's location information. The Rule prohibits the debt collector from identifying his or her employer, unless the person the debt collector is contacting expressly requests that information. Additionally, a debt collector communicating for the purpose of acquiring location information must not do any of the following:

- State that the consumer owes any debt. If the consumer obligated or allegedly obligated to pay the debt is deceased, and the debt collector is attempting to locate the person who is authorized to act on behalf of the deceased consumer's estate, the debt collector may state that the debt collector is seeking to identify and locate the person who is handling the financial affairs of the deceased consumer.

- Communicate by postcard.

- Use any language or symbol on any envelope or in the contents of any communication by mail indicating that the debt collector is in the debt collection business or that the communication relates to the collection of a debt.

---

[13] As discussed in Section 8.4, an employee of a debt collector may use an assumed name provided that the employee uses the assumed name consistently and that the debt collector can readily identify any employee using an assumed name.

CONFIDENTIAL

A debt collector's ability to rely on the exception for acquiring location information is further limited if the debt collector knows the consumer is represented by an attorney with regard to the debt and knows or can readily ascertain that attorney's name and address. In such a case, the debt collector cannot communicate with any person

> 🖉 A debt collector must comply with other provisions of the Debt Collection Rule, such as the prohibition on harassing, oppressive, or abusive conduct discussed in Section 7, when acquiring location information.

other than that attorney, unless the attorney fails to respond to the debt collector's communication within a reasonable period of time. 12 CFR 1006.10(b)(5).

Additionally, the Debt Collection Rule limits the number of times that a debt collector may communicate with a person to acquire location information. A debt collector communicating with a person for the purpose of acquiring location information must not communicate more than once with such person unless: (1) the person requests that debt collector contact the person more than one time; or (2) the debt collector reasonably believes that the earlier response of such person was erroneous or incomplete and that such person now has correct or complete location information. 12 CFR 1006.10(c).

## 6.2    Reasonable procedures for email and text message communications

The Debt Collection Rule identifies procedures debt collectors can adopt and follow to obtain a bona fide error defense from civil liability for unintentional violations of the prohibition against third-party communications.[14] If a debt collector establishes procedures that meet the criteria in the Rule and sends an email message or text message in accordance with those procedures, the debt collector has a bona fide error defense against civil liability for unintended violations of the prohibition on third-party communications with regard to that email or text message. However, the debt collector does not have a bona fide error defense regarding other violations of the FDCPA, the Rule, or other applicable law.

---

[14] Any safe harbor provided by the Debt Collection Rule is a safe harbor only for purposes of compliance with the FDCPA and Regulation F and is not a safe harbor with regard to state laws, unless states choose to incorporate the federal safe harbor standards into their state legal frameworks.

**NCS-240**

CONFIDENTIAL

The Debt Collection Rule has three separate procedures related to email messages. These procedures are discussed in Sections 6.2.1, 6.2.2, and 6.2.3. Depending on its practices, a debt collector could decide to adopt and maintain any or all of these email procedures. The Rule also has procedures related to text messages. These procedures are discussed in Section 6.2.4. However, a debt collector is not required to adopt or follow the procedures identified in the Debt Collection Rule or to rely on the bona fide error defense for any particular email or text message.

The Debt Collection Rule does not identify procedures for communications sent by any medium other than email message[15] or text message. Moreover, it does not identify the only procedures that may be reasonably adapted to avoid a violation of the prohibition on third-party communications. Thus, a debt collector would not necessarily violate the prohibition on third-party communications by communicating with a consumer electronically other than by email or text message, or by sending an email or text message without using the procedures identified in the Rule. Moreover, depending on the facts, a debt collector might be able to show by a preponderance of the evidence that any communication with a third party was unintentional and that the debt collector employed procedures reasonably adapted to avoid the unintentional error.

> 💬 A debt collector who follows the procedures described in this Section 6.2 when sending an email or text message does not violate the prohibition on using unfair or unconscionable means to collect or attempt to collect any debt (discussed in Section 9) if the email or text message reveals the debt collector's name or other information indicating that the communication relates to the collection of a debt.

## 6.2.1   Email procedures based on communication between the consumer and the debt collector

As noted above, the Debt Collection Rule describes three separate procedures that a debt collector can adopt and follow in order to obtain a bona fide error defense when sending an email message. This section discusses procedures that are based on the debt collector's prior communications with the consumer.

---

[15] Although the Debt Collection Rule does not define the term "email," the preamble notes that the Bureau declined to include direct messaging technology in mobile applications or on social media within the scope of the reasonable procedures for email communications.

CONFIDENTIAL

A debt collector's procedures are reasonably adapted to avoid a bona fide error when sending an email message if those procedures include steps to confirm and document one or more of the following:

1. *Consumer use.* The debt collector is sending the email message to an email address that the consumer has used to communicate with the debt collector about the debt, and the consumer has not since opted out of communications to that email address. If the consumer used the email address to communicate with the debt collector about a different debt, this consumer use prong is not satisfied.

2. *Direct prior consent.* The debt collector has received direct prior consent from the consumer to use the email address to communicate with the consumer about the debt, and the consumer has not withdrawn that consent. A debt collector has not obtained the consumer's direct prior consent if the consumer provided the consent to a third party, such as a creditor or a prior debt collector. Furthermore, direct prior consent must be given in advance of the communication or attempt to communicate to which it applies. A consumer may provide

> ▭ If a debt collector is adopting or maintaining procedures as discussed in this Section 6.2.1, the debt collector may want to consider adding a clear and conspicuous notice to any website, portal or other source it uses to collect email addresses. The notice would let a consumer know that, if the consumer provides an email address, the debt collector may treat the consumer as having consented to the debt collector's use of that email address to communicate with the consumer.

consent directly to a debt collector through any medium of communication, such as in writing, electronically, or orally. Comment 1006.6(d)(4)(i)(B)-1. If a consumer provides an email address to a debt collector (including on the debt collector's website or online portal), the debt collector may treat the consumer as having consented directly to the debt collector's use of the email address to communicate with the consumer for purposes of the bona fide error defense if the debt collector discloses clearly and conspicuously that the debt collector may use the email address to communicate with the consumer about the debt. Comment 1006.6(d)(4)(i)(B)-2.

12 CFR 1006.6(d)(4)(i).

In addition to the steps detailed above, the debt collector's procedures also must include steps to reasonably confirm and document that the debt collector did not communicate with the consumer by sending an email message to an email address that the debt collector knows has led to a violation of the prohibition on third-party communications. 12 CFR 1006.6(d)(3)(ii). A debt collector knows that sending an email to an email address has led to a third party receiving the communication if any person has informed the debt collector of that fact. Comment 1006.6(d)(3)(ii)-1. To this end, a debt collector must accept and track complaints regarding third-party receipt of email messages.

**NCS-242**

CONFIDENTIAL

## 6.2.2   Email procedures based on communication by the creditor

This section discusses the second of the Debt Collection Rule's three procedures that a debt collector can adopt and follow in order to obtain a bona fide error defense when sending an email message. The procedures discussed in this section can be used to obtain a bona fide error defense when sending an email message to an email address that a creditor obtained from a consumer. These procedures are sometimes referred to as "notice and opt-out" procedures.

A debt collector's procedures are reasonably adapted to avoid a bona fide error when sending an email message to an email address if the procedures include steps to confirm and document all of the following:

1. *The creditor obtained the email address from the consumer*. This prong is not satisfied if the creditor received the email address from another debt collector or other third party, such as a skip tracing service. The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed. The term creditor does not include any person to the extent that such person receives an assignment or transfer of a debt in default solely to facilitate collection of the debt for another. 12 CFR 1006.2(g).

2. *The creditor used the email address to communicate with the consumer about the account underlying the debt, and the consumer did not ask the creditor to stop using it*. Communications about the account include, for example, required disclosures, bills, invoices, periodic statements, payment reminders, and payment confirmations. Communications about the account do not include, for example, marketing or advertising materials unrelated to the consumer's account. Comment 1006.6(d)(4)(ii)(B)-1.

3. *Before the debt collector used the email address to communicate with the consumer about the debt, the creditor sent the consumer a written or electronic notice to an address the creditor obtained from the consumer and used to communicate with the consumer about the account*. The creditor's notice to the consumer must clearly and conspicuously disclose all of the following:

🗍 Clear and conspicuous means readily understandable. In the case of written and electronic disclosures, the location and type size also must be readily noticeable and legible to consumers, although no minimum type size is mandated. Comment 1006.6(d)(4)(ii)(C)-1.

a. That the debt has been or will be transferred to the debt collector. To satisfy this requirement, the notice must identify the name of the specific debt collector to which the debt has been or will be transferred. Comment 1006.6(d)(4)(ii)(C)(*1*)-1.

**NCS-243**

CONFIDENTIAL

b. The email address and the fact that the debt collector might use the email address to communicate with the consumer about the debt.

c. If others have access to the email address, that it is possible they may see the emails.

d. Instructions for a reasonable and simple method by which the consumer could opt out of such communications. Reasonable and simple methods for opting out when the notice is provided by mail include providing a reply form and a pre-addressed envelope together with the opt-out notice. Requiring the consumer to call or write to obtain a form for opting out, rather than including the form with the opt-out notice, does not satisfy the requirement to provide a reasonable and simple method for opting out. Reasonable and simple methods for opting out when the notice is provided electronically include providing an electronic means to opt out, such as a hyperlink, or allowing the consumer to opt out by replying to the communication with the word "stop." However, requiring a consumer who receives the opt-out notice electronically to opt out by postal mail, telephone, or visiting a website without providing a link does not satisfy the requirement to provide a reasonable and simple method for opting out. Comment 1006.6(d)(4)(ii)(C)(*4*)-1.

e. The date by which the debt collector or the creditor must receive the consumer's request to opt out, which must be at least 35 days after the date the notice is sent. The notice may instruct the consumer to respond to the debt collector or to the creditor but not to both. Comment 1006.6(d)(4)(ii)(C)(*5*)-1.

The creditor may provide the notice in a larger communication that conveys other information, as long as the notice is clear and conspicuous. Comment 1006.6(d)(4)(ii)(C)-3.

When a creditor sends the notice in writing, the creditor may use, but is not required to use, the following language:

> "We are transferring your account to [debt collector's name], and we are providing [debt collector's name] with the following email address for you: [email address]. [Debt collector's name] may use this email address to communicate with you about the debt. If others have access to this email address, then it is possible they may see the emails. If you would like to opt out of communications by [debt collector's name] to [email address], please fill out the enclosed form and return it in the enclosed envelope so that we receive it by [date]."

When a creditor sends the notice electronically, the creditor may use, but is not required to use, the following language:

CONFIDENTIAL

> "We are transferring your account to [debt collector's name], and we are providing [debt collector's name] with the following email address for you: [email address]. [Debt collector's name] may use this email address to communicate with you about the debt. If others have access to this email address, then it is possible they may see the emails. If you would like to opt out of communications by [debt collector's name] to [email address], please click here by [date]."

4. *The opt-out period clearly and conspicuously disclosed in the creditor's notice to the consumer has expired, and the consumer has not opted out.*

5. *The email address has a domain name that is available for use by the general public and the debt collector does not know that the email address is an employer-provided email address.* This requirement is not satisfied if the debt collector knows that the address is provided by the consumer's employer. A debt collector knows that an email address is provided by the consumer's employer if any person has informed the debt collector that the address is employer provided. However, the Debt Collection Rule does not require a debt collector to conduct a manual review of consumer accounts to determine whether an email address might be employer provided. Comment 1006.6(d)(4)(ii)(E)-2. The domain name of an email address is available for use by the general public when members of the general public are permitted to use the same domain name, whether for free or through a paid subscription. Such a name does not include one that is reserved for use by specific registrants, such as a domain name branded for use by a particular commercial entity (e.g., john.doe@springsidemortgage.com) or reserved for particular types of institutions (e.g., john.doe@agency.gov, john.doe@university.edu, or john.doe@nonprofit.org). Comment 1006.6(d)(4)(ii)(E)-1.

🗩 If a consumer requests that the debt collector not communicate using email or the email address identified in the opt-out notice after the expiration of the notice period, other provisions of the Debt Collection Rule prohibit the debt collector from communicating or attempting to communicate with the consumer using email or the specific email address identified in the notice. See Sections 5 and 7.2 for more information.

12 CFR 1006.6(d)(4)(ii).

In addition to the steps detailed above, the debt collector's procedures also must include steps to reasonably confirm and document that the debt collector did not communicate with the consumer by sending an email message to an email address that the debt collector knows has led to a violation of the prohibition on third-party communications. 12 CFR 1006.6(d)(3)(ii). A debt collector knows that sending an email to an email address has led to a third party receiving the communication if any person has informed the debt collector of that fact. Comment

**NCS-245**

CONFIDENTIAL

1006.6(d)(3)(ii)-1. To this end, a debt collector must accept and track complaints regarding third-party receipt of email messages.

## 6.2.3   Email procedures based on communication by a prior debt collector

This section discusses the third of the Debt Collection Rule's three procedures that a debt collector can adopt and follow in order to obtain a bona fide error defense when sending an email message. If a prior debt collector obtained an email address from a consumer in accordance with the procedures discussed in Section 6.2.1 or discussed in Section 6.2.2 and the immediately prior debt collector used that email address to communicate with the consumer about the debt, a subsequent debt collector may be able to establish a bona fide error defense with regard to the email address. This section discusses the procedures that a debt collector would need to adopt and follow to have a bona fide error defense in those circumstances.

A debt collector's procedures are reasonably adapted to avoid a bona fide error when sending an email message to an email address if the procedures include steps to confirm and document all of the following:

> 1. A prior debt collector obtained the email address in accordance with the procedures discussed in Section 6.2.1 or discussed in Section 6.2.2. The prior debt collector must have adopted such procedures prior to obtaining the email address and followed such procedures when obtaining the email address.

> 2. The immediately prior debt collector used the email address to communicate with the consumer about the debt. The immediately prior debt collector is the debt collector immediately preceding the current debt collector. For example, if ABC, Inc. returns a debt to the creditor and the creditor places the debt with Ficus Debt Collection Services, ABC, Inc. is the immediately prior debt collector for this purpose. Comment 1006.6(d)(4)(iii)-1.

> 3. The consumer did not opt out of such communications (i.e., email communications with the immediately prior debt collecting using the specific email address).

12 CFR 1006.6(d)(4)(iii); comment 1006.6(d)(4)(iii)-1.

In addition to the steps detailed above, the debt collector's procedures also must include steps to reasonably confirm and document that the debt collector did not communicate with the consumer by sending an email message to an email address that the debt collector knows has led to a violation of the prohibition on third-party communications. 12 CFR 1006.6(d)(3)(ii). A debt collector knows that sending an email to an email address has led to a third party receiving the communication if any person has informed the debt collector of that fact. Comment

CONFIDENTIAL

1006.6(d)(3)(ii)-1. To this end, a debt collector must accept and track complaints regarding third-party receipt of email messages.

**Examples:** After obtaining a consumer's email address in accordance with the procedures identified in the Debt Collection Rule and discussed in Section 6.2.1 or Section 6.2.2, ABC, Inc. communicates with the consumer about the debt using that email address.  The consumer does not opt out of email communications at that email address.  ABC, Inc. returns the debt to the creditor, who places it with Ficus Debt Collection Services.  Ficus Debt Collection Services has adopted and followed reasonable procedures to ensure that it does not communicate with the consumer by sending an email to an email address that it knows has led to a violation of the prohibition on third-party communications.  Ficus Debt Collection Services communicates with the consumer about the debt using the email address obtained by ABC, Inc.  Ficus Debt Collection Services may have a bona fide error defense to civil liability for any unintentional third-party disclosure that occurs regarding that communication.

After obtaining a consumer's email address in accordance with the procedures identified in the Debt Collection Rule and discussed in Section 6.2.1 or Section 6.2.2, ABC, Inc. communicates with the consumer about the debt using that email address.  The consumer does not opt out of communications using that email address.  ABC, Inc. returns the debt to the creditor, who places it with XYZ Financial.  XYZ Financial communicates with the consumer about the debt using the email address obtained by ABC, Inc., and the consumer does not opt out of communications using that email address.  XYZ Financial returns the debt to the creditor, who places it with Ficus Debt Collection Services.  Ficus Debt Collection Services has adopted and followed reasonable procedures to ensure that it does not communicate with the consumer by sending an email to an email address that it knows has led to a violation of the prohibition on third-party communications.  Ficus Debt Collection Services communicates with the consumer about the debt using the email address obtained by ABC, Inc. and used by XYZ Financial.  Ficus Debt Collection Services may have a bona fide error defense to civil liability for any unintentional third-party disclosure that occurs regarding that communication.

After obtaining a consumer's email address in accordance with the procedures identified in the Debt Collection Rule and discussed in Section 6.2.1 or Section 6.2.2, ABC, Inc. communicates with the consumer about the debt using that email address.  The consumer does not opt out of communications using that email address.  ABC, Inc. returns the debt to the creditor, who places it with XYZ Financial.  XYZ Financial

CONFIDENTIAL

does not communicate with the consumer by email. XYZ Financial returns the debt to the creditor, who places it with Ficus Debt Collection Services. Ficus Debt Collection Services communicates with the consumer about the debt using the email address obtained by ABC, Inc. The Debt Collection Rule does not provide Ficus Debt Collection Services with a bona fide error defense to civil liability for any unintentional third-party disclosure that occurs regarding that communication because the immediately prior debt collector (i.e., XYZ Financial) did not use the email address to communicate with the consumer about the debt.

## 6.2.4   Procedures for text messages

The Debt Collection Rule describes two sets of procedures that a debt collector can adopt and follow to obtain a bona fide error defense when sending a text message. A debt collector could adopt either or both of the procedures depending on whether the consumer has communicated with the debt collector by text message or whether the consumer has directly consented to the debt collector sending communications by text message.

Regardless of which set of procedures the debt collector adopts, procedures for text messages must include steps to reasonably confirm and document that the debt collector did not communicate with the consumer by sending a text message to a telephone number that the debt collector knows has led to a violation of the prohibition on third-party communications. 12 CFR 1006.6(d)(3)(ii). A debt collector knows that sending a text message to a telephone number has led to a third party receiving the communication if any person has informed the debt collector of that fact. Comment 1006.6(d)(3)(ii)-1. To this end, a debt collector must accept and track complaints regarding third-party receipt of text messages.

A debt collector's procedures are reasonably adapted to avoid a bona fide error when sending a text message to a telephone number if the procedures include the steps discussed above (i.e., steps to reasonably confirm and document that the debt collector did not send the text message to telephone number that the debt collector knows has led to a violation) and steps to confirm and document all of the following:

**NCS-248**

CONFIDENTIAL

1. The consumer used the telephone number to communicate with the debt collector about the debt by text message. This prong is not satisfied if the consumer used the telephone number to communicate with the debt collector about the debt only by telephone call. Comment 1006.6(d)(5)(i)-1.

2. The consumer has not since opted out of text message communications to that telephone number.

3. Within the past 60 days, either (a) the consumer sent a text message to the debt collector from that telephone number, or (b) the debt collector confirmed that the telephone number has not been reassigned from the consumer to another user since the date of the consumer's most recent text message to the debt collector from that telephone number. The debt collector must confirm that the telephone number has not been re-assigned using a complete and accurate database.

💬 For purposes of the procedures described in this Section 6.2.4, the database that the FCC established in *In re Advanced Methods to Target & Eliminate Unlawful Robocalls* (33 FCC Rcd. 12024 (Dec. 12, 2018)) will qualify as a complete and accurate database when it is released. Additionally, any commercially available database that is substantially similar in terms of completeness and accuracy to the FCC's database will qualify as a complete and accurate database for purposes of the procedures.

12 CFR 1006.6(d)(5)(i).

Alternatively, a debt collector's procedures are reasonably adapted to avoid a bona fide error when sending a text message to a telephone number if the procedures include steps to reasonably confirm and document that the debt collector did not send the text message to a telephone number that the debt collector knows has led to a violation and steps to confirm and document all of the following:

1. The debt collector received prior consent directly from the consumer to use the telephone number to communicate with the consumer about the debt by text message.

2. The consumer has not since withdrawn that consent.

3. Within the past 60 days either (a) the debt collector obtained or renewed the consumer's consent to use the telephone number to communicate by text message, or (b) the debt collector confirmed that the telephone number has not been reassigned from the consumer to another user since the date of consumer's most recent consent to use that telephone number to communicate about the debt by text message. The debt collector must confirm that the number has not been re-assigned using a complete and accurate database.

12 CFR 1006.6(d)(5)(ii).

CONFIDENTIAL

# 7.  Prohibitions on harassing, oppressive, or abusive conduct

A debt collector must not engage in conduct in connection with the collection of a debt if the natural consequence of that conduct is to harass, oppress, or abuse any person.[16]  12 CFR 1006.14(a).  The conduct covered can occur regardless of the communication media the debt collector uses in connection with the collection of a debt, including but not limited to in-person interactions, telephone calls, audio recordings, paper documents, mail, email messages, text messages, social media, or other electronic media.

In addition to this general prohibition, the Debt Collection Rule sets out specific conduct that is prohibited because the natural consequence of that conduct is to harass, oppress, or abuse a person.  For example, the Rule specifically prohibits a debt collector from placing telephone calls or engaging any person in telephone conversations repeatedly or continuously with the intent to annoy, abuse, or harass any person.  Similarly, the Rule prohibits a debt collector from communicating or attempting to communicate with a person through a medium of communication if that person has requested that the debt collector not use that communication medium.  The general prohibition applies to this and other specific prohibited conduct described in this Section 7, as well as any other conduct in connection with the collection of a debt.

Whether a debt collector's conduct violates the general prohibition against harassing, oppressive, or abusive conduct may depend on the cumulative effect of the debt collector's conduct through any communication media that the debt collector uses.  Depending on the facts and circumstances, conduct that on its own would not violate the general prohibition or any specific prohibition in the Debt Collection Rule, nonetheless may violate the general prohibition when such conduct is evaluated cumulatively with other conduct.  12 CFR 1006.14(a); comments 1006.14(a)-1 and -2.

---

[16] A person includes not only a consumer but any natural person, corporation, company, association, firm, partnership, society, or joint stock company.

CONFIDENTIAL

**Examples:** In connection with the collection of a debt, Ficus Debt Collection Services sends a consumer numerous, unsolicited text messages each day for several consecutive days. The consumer does not respond. Ficus Debt Collection Services does not communicate or attempt to communicate with the consumer using any other communication medium. Even if Ficus Debt Collection Services' conduct does not violate any specific prohibition in the Debt Collection Rule, it is likely that the natural consequence of Ficus Debt Collection Services' text messages is to harass, oppress, or abuse the person receiving the text messages. When such natural consequence occurs, the Ficus Debt Collection Services is in violation of the prohibition against harassing, oppressive, or abusive conduct.

In connection with the collection of a debt, Ficus Debt Collection Services places seven unanswered telephone calls within seven consecutive days to a consumer. During this same period, Ficus Debt Collection Services also sends the consumer unsolicited emails about the debt. The frequency of Ficus Debt Collection Services' telephone calls during the seven-day-period does not exceed the telephone call frequencies described in the Debt Collection Rule, so Ficus Debt Collection Services is entitled to the presumption of compliance discussed in Section 7.1.1. However, even if no evidence is offered to rebut the presumption of compliance for the number of telephone calls and even if the emails themselves do not violate a specific provision of the Rule, it is likely, based on the cumulative effect of the debt collector's telephone calls and emails that the natural consequence of such cumulative conduct is harassment. When such natural consequence occurs, Ficus Debt Collection Services is in violation of the prohibition against harassing, oppressive, or abusive conduct.

CONFIDENTIAL

# 7.1   Repeated or continuous telephone calls or telephone conversations

In connection with the collection of a debt, a debt collector must not place telephone calls or engage any person in telephone conversations repeatedly or continuously with the intent to annoy, abuse, or harass any person at the called number.  12 CFR 1006.14(b)(1).

💬 "Placing a telephone call" includes conveying a ringless voicemail (i.e., audio messages that allow debt collectors to bypass a person's opportunity to answer the telephone by connecting directly to the person's voicemail) but does not include sending an electronic message (e.g., a text or an email message) that may be received on a mobile telephone. Comment 1006.14(b)-1.

The Debt Collection Rule describes how a debt collector may obtain a presumption of compliance as well as how a debt collector may be presumed to have violated this prohibition.  When determining whether a presumption applies, a debt collector is permitted to exclude certain calls.  The Rule also sets forth factors that can be used to rebut the presumptions.

A debt collector who complies with the prohibition against repeatedly or continuously placing telephone calls or engaging any person in telephone conversations complies with the general prohibition against engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person solely with respect to the frequency of its telephone calls.  The debt collector nevertheless could violate the general prohibition if the natural consequence of another aspect of the

💬 The Debt Collection Rule does not preempt a state law that affords greater protection to consumers by imposing a call frequency limit.  Thus, the Rule does not affirmatively permit debt collectors to comply with the presumption regarding call frequency in the Rule instead of an applicable state-law frequency limit that affords greater protection to consumers.

debt collector's telephone calls, unrelated to frequency, is to harass, oppress, or abuse any person in connection with the collection of a debt.  Comment 1006.14(b)(1)-1.

The presumptions are discussed in Section 7.1.1, and excluded calls are discussed in Section 7.1.2.  The factors to rebut the presumption of compliance are discussed in Section 7.1.3, and the factors to rebut the presumption of violation are discussed in Section 7.1.4.

## 7.1.1   Rebuttable presumptions related to telephone call frequency

A debt collector has a presumption of compliance with the prohibition against causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously

**NCS-252**

CONFIDENTIAL

with intent to annoy, abuse, or harass any person at the called number if a debt collector does not do either of the following:

    1.  Place a telephone call to a particular person in connection with the collection of a debt more than seven times within seven consecutive calendar days.

    2. Place a telephone call to a particular person in connection with the collection of a debt within a period of seven consecutive calendar days after having had a telephone conversation with the person in connection with the collection of such debt.

12 CFR 1006.14(b)(2)(i).

For the presumption of compliance to apply, the debt collector must not exceed either prong of the standard.

Conversely, a debt collector is presumed to violate the prohibition related to telephone call frequency if the debt collector places a telephone call to a particular person in connection with the collection of a particular debt either:

    1. More than seven times within seven consecutive calendar days; or

    2. Within seven consecutive calendar days after having had a telephone conversation with the person in connection with the collection of such debt.

12 CFR 1006.14(b)(2)(ii).

The presumption of violation applies if the debt collector exceeds one or both prongs of the standard.

For purposes of these presumptions, the date of the telephone conversation with the person in connection with the collection of a particular debt is the first day of the seven-consecutive-day period.  Additionally, "particular debt" means each of a consumer's debts in collection.  However, in the case of student loan debts, the term "particular debt" means all student loan debts that a consumer owes or allegedly owes that were serviced under a single account number at the time the debts were obtained by a debt collector.  12 CFR 1006.14(b)(4).  If student loans (such as student loans originated by different lenders or student loans originated under private and federal loan programs) are not serviced under the same account number at the time the debts are obtained by a debt collector, a debt collector is not required to treat those student loan debts as a single debt.

CONFIDENTIAL

When determining which presumption applies, certain telephone calls do not count. The types of telephone calls that do not count (i.e., that are excluded) are discussed in Section 7.1.2. *See* 12 CFR 1006.14(b)(3).

If a debt collector places a telephone call (other than an excluded call) and initiates a conversation or leaves a voicemail about one or more particular debts, the debt collector counts the telephone call as a telephone call in connection with the collection of each particular debt for which the debt collector initiates a conversation or leaves a voicemail. For example, if a debt collector is collecting two credit card debts, Debt A and Debt B, and leaves a voicemail about both debts, the debt collector counts the voicemail as a call in connection with Debt A and in connection with Debt B. Conversely, if the debt collector leaves a voicemail message about Debt A only, the debt collection counts the voicemail as a call in connection with Debt A only.

> If, within a period of seven consecutive days, a debt collector attempts to communicate with a particular person by placing telephone calls to a particular telephone number, and the debt collector then learns that the telephone number is not that person's number, the telephone calls that the debt collector made to that number are not considered to have been telephone calls placed to that person during that seven-day period for purposes of presumptions related to telephone call frequency. Comment 1006.14(b)(2)(i)-3.

If a debt collector places a telephone call to a person but neither initiates a conversation about a particular debt nor leaves a voicemail that refers to a particular debt or if the debt collector's telephone call is unanswered, the debt collector counts the telephone call as a telephone call in connection with the collection of at least one particular debt, unless an exclusion discussed in Section 7.1.2 applies. A debt collector may count an unanswered telephone call as one telephone call placed toward any one particular debt, even if the debt collector intended to discuss more than one particular debt had the telephone call resulted in a telephone conversation. Comment 1006.14(b)(4)-1.i.

If a debt collector and a person discuss a particular debt during a telephone conversation, the debt collector has engaged in a telephone conversation in connection with the collection of that particular debt, regardless of which party initiated the discussion about the particular debt. Comment 1006.14(b)(4)-1.ii. For example, if the debt collector initiates the call with the consumer about Debt A, but the consumer asks about Debt B, the call counts as a conversation for both Debt A and Debt B, even though the debt collector only initiated conversation about Debt A. However, with respect to the call frequency related to how many calls a debt collector places within seven days, this counts only as a call for Debt A because the debt collector placed the call only with respect to Debt A. The consumer then initiated the discussion about Debt B.

**NCS-254**

CONFIDENTIAL

**Examples:**  On April 1, ABC, Inc. first attempts to communicate with a consumer in connection with the collection of a credit card debt.  On that date, ABC, Inc. places a telephone call and leaves a limited-content message.  Between April 2 and April 5, ABC, Inc. places six more telephone calls to the consumer about the debt, all of which go unanswered.  If ABC, Inc. does not place any additional telephone calls about the debt until April 8, it is presumed to comply with the prohibition related to telephone call frequency.  However, if ABC, Inc. does place an additional call about the debt before April 8 and none of the calls fits within one or more exclusions discussed in Section 7.1.2, ABC, Inc. is presumed to violate the prohibition related to telephone call frequency because it has placed more than seven telephone calls within seven consecutive days.

On August 13, a consumer places a call to ABC, Inc. and speaks with a representative of ABC, Inc. regarding a particular debt.  If ABC, Inc. does not place a telephone call to the consumer in connection with the collection of that debt prior to August 20, it is presumed to comply with the prohibition related to telephone call frequency.  However, if ABC, Inc. does place a telephone call to the consumer in connection with the collection of that debt before August 20 and the call does not fit within one or more exclusions discussed in Section 7.1.2, ABC, Inc. is presumed to violate the prohibition related to telephone call frequency because it will have placed a telephone call within seven consecutive days of having a telephone conversation about a particular debt.

On October 6, ABC, Inc. places its first call to a particular third party for the purpose of obtaining location information about the consumer.  The call is not answered.  Between October 6 and October 12, the debt collector places six more unanswered telephone calls to that third party for the purpose of obtaining location information about the consumer.  The debt collector is presumed to comply with the prohibition related to telephone call frequency.  However, if ABC, Inc. places an additional telephone call to the third party in connection with the collection of that debt before October 13 and none of the calls fits within one or more exclusions discussed in Section 7.1.2, ABC, Inc. is presumed to violate the prohibition related to telephone call frequency because it will have placed more than seven telephone calls within seven consecutive days.

On May 1, ABC, Inc. begins attempting to collect a medical debt, a credit card debt, and a residential mortgage debt from the same consumer.  On May 1, ABC, Inc. places a telephone call to the consumer, intending to discuss all three debts, but the consumer does not answer.  The caller leaves a voicemail message that does not specifically refer to any particular debt.  ABC, Inc. may count the voicemail as one

**NCS-255**

CONFIDENTIAL

telephone call placed toward any one of the particular debts, even though it intended to discuss all of the debts if the telephone call had resulted in a telephone conversation. For purposes of the telephone call frequency limits, assume ABC, Inc. counts the telephone call as having been placed with respect to the credit card debt. In order to have a presumption of compliance, between May 1 and May 8, ABC, Inc. can place no more than an additional six telephone calls regarding the credit card debt, seven telephone calls regarding the medical debt, and seven telephone calls regarding the residential mortgage debt. Further, if during that period, ABC, Inc. speaks with the consumer about any particular debt, it cannot place any additional calls regarding that debt for a period of seven consecutive days from the date that of the conversation to meet the requirements of the second prong.

ABC, Inc. is attempting to collect three student loan debts from the same consumer. The three student loans were serviced under the same account number at the time that ABC, Inc. obtained them. On May 1, ABC, Inc. places a telephone call to the consumer, intending to discuss all three debts, but the consumer does not answer. Between May 1 and May 8, ABC, Inc. can place no more than an additional six telephone calls regarding the student loan debts in order to obtain a presumption of compliance. All three student loan debts are treated as a single debt for purposes of the presumptions related to call frequency because the loans were serviced under the same account number when a debt collector obtained them.

ABC, Inc. is attempting to collect a medical debt and a credit card debt from the same consumer. On May 1, ABC, Inc. calls and engages in a telephone conversation with the consumer. ABC, Inc. and the consumer discuss the medical debt, but do not discuss the credit card debt. Assume the telephone call is not one of the excluded calls listed in Section 7.1.2. ABC, Inc. has placed a telephone call to the consumer and has engaged in a telephone conversation with the consumer in connection with the medical debt. However, ABC, Inc. has not placed a telephone call to or engaged in a telephone conversation with the consumer in connection with the collection of the credit card debt. In order to obtain a presumption of compliance, ABC, Inc. cannot call the consumer to initiate a conversation about the medical debt for seven consecutive days from May 1 but may call the consumer during that period about the credit card debt.

Additional examples can be found in the commentary for 12 CFR 1006.14(b).

CONFIDENTIAL

## 7.1.2   Certain telephone calls excluded from the telephone call frequencies

A telephone call placed to a person does not count toward the telephone call frequencies for the presumptions described in Section 7.1.1 if the telephone call is:

- *Placed with the person's prior consent given directly to the debt collector and within a period no longer than seven consecutive days after receiving the direct prior consent.* If a person gives direct prior consent for additional telephone calls about a particular debt to a debt collector, any telephone calls that the debt collector thereafter places to the person about that particular debt do not count toward the telephone call frequencies for a period of up to seven consecutive days. The date the debt collector receives direct prior consent counts as the first day of the seven-consecutive-day period. A person's direct prior consent may expire before the end of the seven-consecutive-day period. A person's direct prior consent expires when any of the following occur: (1) the person consents to additional telephone calls for a shorter time period and such time period has ended; (2) the person revokes such direct prior consent; or (3) the debt collector has a telephone conversation with the person regarding the particular debt. Comment 1006.14(b)(3)(i)-2.

- *Not connected to the dialed number.* A debt collector's telephone call does not connect to the dialed number if, for example, the debt collector receives a busy signal or an indication that the dialed number is not in service. A debt collector's telephone call does connect to the dialed number (and does not fit within this exclusion) if, for example, the call is answered and subsequently dropped, the call causes a telephone to ring at the dialed number but no one answers the call, or the call does not cause a telephone to ring but is connected to a voicemail or other recorded message, even if the debt collector is unable to leave a voicemail. Comment 1006.14(b)(3)(ii)-1. If a telephone call is connected to the dialed number (even if the debt collector hears only silence), the telephone call does not meet this exclusion. If a debt collector is unsure whether the telephone call connected to the dialed number, the debt collector should treat the telephone call as connected to the dialed number and count the telephone call toward the call frequencies.

- *Placed to a consumer's attorney, the creditor, the creditor's attorney, the debt collector's attorney, or a consumer reporting agency (if otherwise permitted by law).* Telephone calls placed to these parties do not count toward the call frequencies.

12 CFR 1006.14(b)(3).

CONFIDENTIAL

**Examples:** On Friday, April 3, Ficus Debt Collection Services places an initial telephone call to a consumer to discuss a credit card debt. During the telephone conversation, the consumer tells the caller from Ficus Debt Collection Services to "call back on Monday." Ficus Debt Collection Services calls the consumer on Monday, April 6 to discuss the credit card debt. Ficus Debt Collection Services has not exceeded the telephone call frequencies because Ficus Debt Collection Services placed the telephone call to the consumer on Monday pursuant to the consumer's direct prior consent. However, Ficus Debt Collection Services may be presumed to have violated the prohibition related to call frequencies if it places any additional telephone calls to the consumer in connection with the collection of the credit card debt before April 6, unless another exclusion applies.

Between Monday, June 1 and Wednesday, June 3, Ficus Debt Collection Services places three unanswered telephone calls to a consumer in connection with the collection of a medical debt. On Wednesday, June 3, Ficus Debt Collection Services sends the consumer an email message in connection with the collection of the medical debt. The consumer responds by email on Thursday, June 4, requesting additional information about available repayment options related to the debt and writes, "You can call me at 123-456-7891 to discuss the repayment options." After receipt of the email, Ficus Debt Collection Services places eight unanswered telephone calls to the consumer between Monday, June 8, and Wednesday, June 10. Ficus Debt Collection Services has not exceeded the telephone call frequencies because the consumer provided direct prior consent. The eight telephone calls placed during the seven-consecutive-day period that began with Ficus Debt Collection Services' receipt of the consumer's direct prior consent on Thursday, June 4 are excluded from the telephone call frequencies. However, any telephone calls that Ficus Debt Collection Services places after the end of the seven-day-period (i.e., on or after Thursday, June 11) would count toward the telephone call frequencies, unless the consumer again gives direct prior consent to Ficus Debt Collection Services.

## 7.1.3   Factors to rebut a presumption of compliance related to telephone call frequency

If a debt collector does not place telephone calls in excess of the call frequencies discussed in Section 7.1.1, the debt collector has a presumption of compliance related to telephone call frequency. However, the presumption of compliance is rebuttable. To rebut the presumption of compliance, it must be proven that a debt collector nevertheless caused a telephone to ring or

**NCS-258**

CONFIDENTIAL

engaged a person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass a person at the called number.  For purposes of determining whether a presumption of compliance has been rebutted, it is assumed that a debt collector intends the natural consequences of its actions.

Factors that may rebut the presumption of compliance include but are not limited to:

- *The frequency and pattern of telephone calls the debt collector places to a person, including the intervals between the telephone calls*.  The considerations relevant to this factor include whether the debt collector places telephone calls to a person in rapid succession (e.g., two unanswered telephone calls to the same telephone number within five minutes) or in a highly concentrated manner (e.g., seven telephone calls to the same telephone number within one day).  Comment 1006.14(b)(2)(i)-2.  It may also be relevant if the debt collector concentrates telephone calls on days that may be less convenient for the consumer (such as Sundays or holidays).  Application of this factor is not limited to rapid succession or highly concentrated calling, however, and is dependent on all of the relevant facts and circumstances that may indicate an intent on the part of the debt collector to harass, annoy, or abuse the consumer.

- *The frequency and pattern of any voicemails that the debt collector leaves for a person, including the intervals between the voicemails*.  The considerations relevant to this factor include whether the debt collector left voicemails for a person in rapid succession (e.g., two voicemails within five minutes left at the same telephone number) or in a highly concentrated manner (e.g., seven voicemails left at the same telephone number within one day).

- *The content of a person's prior communications with the debt collector*.  Among the considerations relevant to this factor are whether the person previously informed the debt collector, for example, that the person did not wish to be contacted about the particular debt, that the person was refusing to pay the debt, or that the person did not owe the particular debt.  This factor also includes a consumer's cease communication notification described in Section 4.5 and a consumer's request that the debt collector not use telephone calls to communicate or attempt to communicate with the consumer as discussed in Section 7.2.  The amount of time elapsed since any prior communication with the person may also be relevant to this factor.

- *The debt collector's conduct in prior communications and attempts to communicate with the person*.  Among the considerations relevant to this factor are whether the debt collector used obscene, profane, or otherwise abusive language in any prior communications or attempts to communicate, used or threatened to use violence or other criminal means to harm the person, or called at an inconvenient time or place.  The

CONFIDENTIAL

amount of time elapsed since any prior communication with the person may also be relevant to this factor.

Comment 1006.14(b)(2)(i)-2.

These and other factors may be considered either individually or in combination with one another. The factors may be viewed in light of any other relevant facts and circumstances. Therefore, the factors may apply to a varying degree. Comment 1006.14(b)(2)(i)-2.

## 7.1.4   Factors to rebut a presumption of a violation related to telephone call frequency

If a debt collector places telephone calls in excess of either of the call frequencies discussed in Section 7.1.1, the debt collector is presumed to violate the prohibition related to telephone call frequency. However, the presumption that the debt collector has violated the prohibition is rebuttable. To rebut the presumption of a violation, it must be proven that a debt collector nevertheless did not cause a telephone to ring or engage any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number. For purposes of determining whether a presumption of a violation has been rebutted, it is assumed that a debt collector intends the natural consequences of its actions.

Factors that may rebut the presumption of a violation include but are not limited to:

- *Whether a debt collector placed a telephone call to comply with or as required by applicable law.* For example, a telephone call to inform the consumer of available loss mitigation options in compliance with the Bureau's mortgage servicing rules under Regulation X, 12 CFR 1024.39(a), may be an example of a call placed to comply with applicable law.

- *Whether a telephone call was directly related to active litigation involving the collection of a particular debt.* The direct relationship between the additional telephone call and the active debt collection litigation is a factor that may rebut the presumption of a violation. A telephone call to complete a court-ordered communication or as part of negotiations to settle active debt collection litigation involving the collection of a particular debt may be examples of calls directly related to active litigation involving the collection of a particular debt. However, the debt collector must comply with the prohibition on communicating or attempting to communicate with a consumer represented by an attorney with regard to the specific debt. This prohibition is discussed in Section 4.2.

CONFIDENTIAL

▪ *Whether a debt collector placed a telephone call in response to a consumer's request for additional information when the exclusion for telephone calls made with the consumer's direct prior consent does not apply.* The fact that the debt collector placed the additional call in response to the consumer's request is a factor that may rebut the presumption of a violation. For example, a consumer may tell the debt collector that the consumer would like more information about a debt but end the call before the debt collector can confirm whether the consumer's general statement about seeking more information constitutes the consumer's consent for the debt collector to place additional calls within the next seven days to provide the requested information. A telephone call to provide the requested information may be an example of a call placed in response to a consumer's request for additional information when the exclusion for calls made with the consumer's direct prior content does not apply.

▪ *Whether a debt collector placed a telephone call to convey information to the consumer that would provide the consumer with an opportunity to avoid a demonstrably negative effect relating to the collection of the particular debt, where the negative effect was not in the debt collector's control, and where time was of the essence.* Evidence must show that the information would provide the consumer with an opportunity to avoid a demonstrably negative effect relating to the collection of the particular debt.

Comment 1006.14(b)(2)(ii)-2.

These and other factors may be considered either individually or in combination with one another. The factors may be viewed in light of any other relevant facts and circumstances. Therefore, they may apply to a varying degree. Comment 1006.14(b)(2)(ii)-2.

Examples regarding these factors can be found in the commentary to 12 CFR 1006.14(b)(2)(ii).

# 7.2    Prohibited communication media

In connection with the collection of any debt, a debt collector must not communicate or attempt to communicate with a person[17] through a medium of communication[18] if that person has requested that the debt collector not use that medium to communicate with the person. 12 CFR 1006.14(h)(1). For example, if a person tells a debt collector to "stop calling," the person has

---

[17] A person includes not only a consumer but any natural person, corporation, company, association, firm, partnership, society, or joint stock company.

[18] A medium of communication includes oral, written, and media, such as telephone, audio recording, paper document, mail, email, text message, social media, and other electronic media.

CONFIDENTIAL

requested that the debt collector not use telephone calls to communicate with that person. Thereafter, the debt collector is prohibited from communicating or attempting to communicate with the person through telephone calls. Similarly, if a person tells a debt collector to "stop emailing me," the person has requested that the debt collector not use email messages to communicate with that person. Comment 1006.14(h)(1)-3.i. The debt collector may ask follow-up questions regarding preferred communication media to clarify a person's statements. Comment 1006.14(h)(1)-1.

Within a medium of communication, a person may request that a debt collector not use a specific address or telephone number. For example, if a person has two mobile telephone numbers, the person may request that the debt collector not use one or both mobile telephone numbers. Comment 1006.14(h)(1)-2. Similarly, if a consumer opts out of receiving emails at a particular email address or text messages at a particular telephone number (as discussed in Section 5), the consumer has requested that the debt collector not use that email address or telephone number to electronically communicate with the consumer. Comment 1006.14(h)(1)-3.ii. A debt collector may send an electronic confirmation of the person's request to opt out, provided that the electronic confirmation contains no information other than a statement confirming the person's request and the debt collector's intent to honor the person's request. 12 CFR 1006.14(h)(2)(i). Any other communications or attempts to communicate sent to that particular email address or telephone number after the consumer opts out violate 12 CFR 1006.14(h)(1), unless an exception applies.

Notwithstanding this prohibition, a debt collector may communicate or attempt to communicate with a person through a medium of communication that the person has requested the debt collector not use if otherwise required by applicable law. 12 CFR 1006.14(h)(2)(iii). For example, a debt collector who is subject to the periodic statement requirement for residential mortgage loans under Regulation Z, 12 CFR 1026.41, may be permitted to mail periodic statements to a person who tells the debt collector to stop mailing letters to the person if the person has not consented to receive statements electronically in accordance with 12 CFR 1026.41(c). Although the person has requested that the debt collector not use mail to communicate with the person, the debt collector may mail the person periodic statements because the periodic statements are required by applicable law. Comment 1006.14(h)(2)-1.

Additionally, if a person initiates contact with a debt collector using a medium of communication that the person previously asked the debt collector not to use, the debt collector is permitted to respond once through the same medium of communication used by the person even though the person previously asked the debt collector not to use that medium. For example, a person may ask a debt collector not to text the person's mobile phone. If the person initiates contact with a debt collector by texting from the person's mobile phone number, the

debt collector may thereafter contact the person one time by texting that mobile phone number. 12 CFR 1006.14(h)(2)(ii).

The Debt Collection Rule does not specify the period of time afforded to a debt collector to update its systems to reflect a person's request not to communicate or attempt to communicate using a particular medium of communication. However, depending upon the circumstances, FDCPA section 813(c)'s bona fide error defense to civil liability may apply where, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error, a debt collector communicates or attempts to communicate with a person through a medium of communication after the person has requested that the debt collector not use that medium but before the debt collector has implemented the person's request.

# 7.3    Other prohibited harassing, oppressive, or abusive conduct

## 7.3.1    Violence or other criminal means

In connection with the collection of a debt, a debt collector must not use or threaten to use violence or other criminal means to harm the physical person, reputation, or property of any person. 12 CFR 1006.14(c).

## 7.3.2    Obscene or profane language

In connection with the collection of a debt, a debt collector must not use obscene or profane language, or language the natural consequence of which is to abuse the hearer or reader. 12 CFR 1006.14(d).

## 7.3.3    Debtor's list

In connection with the collection of a debt, a debt collector must not publish a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to a person who is permitted to obtain a consumer report under sections 603(f) or 604(a)(3) of the Fair Credit Reporting Act (15 U.S.C. 1681a(f) or 1681b(a)(3)). 12 CFR 1006.14(e).

## 7.3.4    Coercive advertisements

In connection with the collection of a debt, a debt collector must not advertise for sale any debt to coerce payment of the debt. 12 CFR 1006.14(f).

**NCS-263**

CONFIDENTIAL

### 7.3.5    Meaningful disclosure of identity

In connection with the collection of a debt, a debt collector must not place telephone calls
without meaningfully disclosing the caller's identity, except when the debt collector is acquiring
location information. 12 CFR 1006.14(g). For more information on the acquisition of location
information, see Section 6.1.2. A debt collector who leaves only a limited-content message for a
consumer does not violate the requirement to meaningfully disclose the caller's identity with
respect to that voicemail message.

**NCS-264**

CONFIDENTIAL

# 8.   False, deceptive, or misleading representations or means

A debt collector must not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  This general prohibition covers the specific conduct described in this Section 8, the requirements to include certain disclosures in initial and subsequent communications as described in Section 11, as well as any other conduct by the debt collector in connection with the collection of a debt.  12 CFR 1006.18(a).

## 8.1   False, deceptive, or misleading representations

A debt collector must not falsely represent or imply that:

1.  The debt collector is vouched for, bonded by, or affiliated with the United States or any state, including through the use of any badge, uniform, or facsimile thereof.

2.  The debt collector operates or is employed by a consumer reporting agency, as defined by section 603(f) of the Fair Credit Reporting Act (15 U.S.C. 1681a(f)).

3.  Any individual is an attorney or that any communication is from an attorney.

4.  The consumer committed any crime or other conduct in order to disgrace the consumer.

5.  A sale, referral, or other transfer of any interest in a debt causes or will cause the consumer to lose any claim or defense to payment of the debt or become subject to any practice prohibited by the Debt Collection Rule.

6.  Accounts have been turned over to innocent purchasers for value.

7.  Documents are legal process (e.g., documents are part of a lawsuit or other legal proceeding, including but not limited to a formal pleading, subpoena, or writ).

8.  Documents are not legal process forms or do not require action by the consumer.

12 CFR 1006.18(b)(1).

CONFIDENTIAL

Additionally, a debt collector must not falsely represent (1) the character, amount, or legal status of any debt; or (2) any services rendered, or compensation that may be lawfully received, by any debt collector for the collection of a debt. 12 CFR 1006.18(b)(2).

A debt collector must not represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action. 12 CFR 1006.18(b)(3).

## 8.2    False, deceptive, or misleading collection means

A debt collector must not:

1. Threaten to take any action that cannot legally be taken or that is not intended to be taken.

2. Communicate or threaten to communicate to any person credit information that the debt collector knows or should know is false, including the failure to communicate that a disputed debt is disputed.

3. Use or distribute any written communication that simulates or that the debt collector falsely represents to be a document authorized, issued, or approved by any court, official, or agency of the United States or any state, or that creates a false impression about its source, authorization, or approval.

4. Use any business, company, or organization name other than the true name of the debt collector's business, company, or organization. A debt collector does not violate this provision if the debt collector uses a business name that does not indicate that the debt collector is the business of collecting debts when leaving a limited-content message. As noted in Section 3.3.3, a limited-content message must include a business name that does not indicate that the debt collector is in the debt collection business. Additionally, as discussed in Section 8.4, a debt collector's employee may use an assumed name if certain criteria are satisfied.

12 CFR 1006.18(c).

CONFIDENTIAL

# 8.3  False representations or deceptive means and disclosure of identity in certain social media requests

A debt collector must not use any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.  12 CFR 1006.18(d).

The Debt Collection Rule clarifies that, in the context of social media, a debt collector makes a false representation or implication if the debt collector does not disclose its identity as a debt collector in certain social media requests.  For example, if a debt collector sends a private message, in connection with the collection of a debt, requesting to be added as one of the consumer's contacts on a social media platform marketed for social or professional networking purposes, the debt collector must disclose its identity as a debt collector in the request.  Comment 1006.18(d)-1.i.  Similarly, if a debt collector privately communicates with a friend or coworker of a consumer on a social media platform, for the purpose of acquiring location information about the consumer, the debt collector must identify himself or herself individually by name[19] (but cannot identify the name of his or her employer unless the consumer's friend or coworker expressly requests that information).  Comment 1006.18(d)-1.ii.  The debt collector also must comply with all other applicable provisions of the Debt Collection Rule, including the prohibition on communicating with third parties (discussed in Section 6) and the applicable requirements regarding the acquisition of location information (discussed in Section 6.1.2).

# 8.4  Assumed names

The prohibition regarding false, deceptive, or misleading representations or means does not prohibit a debt collector's employee from using an assumed name when communicating or attempting to communicate with a person, provided that the employee uses the assumed name consistently and that the debt collector can readily identify any employee using an assumed name.  12 CFR 1006.18(f).

A debt collector may use any method of managing assumed names that enables it to determine the true identity of any employee using an assumed name.  For example, a debt collector may require an employee to use the same assumed name when communicating or attempting to

---

[19] As discussed in Section 8.4, an employee of a debt collector may use an assumed name provided that the employee uses the assumed name consistently and that the debt collector can readily identify any employee using an assumed name.

CONFIDENTIAL

communicate with any person and prohibit any other employee from using the same assumed name.  Comment 1006.18(f)-1.

**NCS-268**

CONFIDENTIAL

# 9.    Unfair or unconscionable means

A debt collector must not use unfair or unconscionable means to collect or attempt to collect any debt.  This prohibition applies to the specific conduct described in this Section 9, as well as any other conduct by the debt collector in connection with the collection of a debt.  12 CFR 1006.22(a).

## 9.1    Collection of unauthorized amounts

A debt collector must not collect any amount unless such amount is expressly authorized by the agreement creating the debt or is otherwise permitted by law.  For this purpose, the term "any amount" includes any interest, fee, charge, or expense incidental to the principal obligation.  12 CFR 1006.22(b).

## 9.2    Postdated payment instruments

A debt collector must not do any of the following:

- Accept from any person a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument.  The debt collector must provide the notice in writing not more than ten days and not less than three days (excluding legal public holidays identified in 5 U.S.C. 6103(a), Saturdays, and Sundays) prior to such deposit.

- Solicit any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

- Deposit or threaten to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

12 CFR 1006.22(c).

CONFIDENTIAL

# 9.3    Charges resulting from concealment of purpose

A debt collector must not cause charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees. 12 CFR 1006.22(d).

# 9.4    Nonjudicial action regarding property

A debt collector must not take or threaten to take any nonjudicial action to effect dispossession or disablement of property if:

- There is no present right to possession of the property claimed as collateral through an enforceable security interest;

- There is no present intention to take possession of the property; or

- The property is exempt by law from such dispossession or disablement.

12 CFR 1006.22(e).

# 9.5    Post cards and content on envelopes

A debt collector must not communicate with a consumer regarding a debt by postcard. 12 CFR 1006.22(f)(1).

Additionally, a debt collector must not use any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by mail. However, a debt collector may use the debt collector's business name on an envelope if such name does not indicate that the debt collector is in the debt collection business. 12 CFR 1006.22(f)(2). The phrase "language or symbol" does not include language and symbols that facilitate communications by mail, such as: the debtor's name and address; postage; language such as "forwarding and address correction requested"; and the United States Postal Service's Intelligent Mail barcode. Comment 1006.22(f)(2)-1.

**NCS-270**

CONFIDENTIAL

# 9.6    Email address provided by the consumer's employer

Generally, a debt collector is prohibited from communicating or attempting to communicate with a consumer by sending an email to an email address that the debt collector knows is provided to the consumer by the consumer's employer. 12 CFR 1006.22(f)(3).

This prohibition does not apply if one or more of the following is satisfied:

- *The consumer provided direct prior consent to the debt collector to use the email address.* For this exception to apply, the consumer must give his or her consent directly to the debt collector. Consent provided to the creditor or a prior debt collector does not satisfy the exception. Additionally, the exception only applies if the debt collector obtained the consumer's consent to use the email address before sending the email, and the consumer has not withdrawn that consent. 12 CFR 1006.22(f)(3); comments 1006.6(d)(4)(i)-1 and 1006.22(f)(3)-1.

- *The consumer has used the email address to communicate with the debt collector about the debt.* Pursuant to this exception, a debt collector who receives an email directly from a consumer from an email address provided by the consumer's employer may communicate or attempt to communicate with the consumer at that email address, even if the consumer has not provided direct prior consent to the debt collector. For example, a consumer might use an employer-provided email address to send a debt collector an email message that requests information about a debt but does not explicitly give direct prior consent to the debt collector's use of that email address. In these circumstances, the prohibition on communicating or attempting to communicate with the consumer at an employer-provided email address does not apply. This exception only applies if the consumer has not since opted out of communications to that email. 12 CFR 1006.22(f)(3); comment 1006.22(f)(3)-1.

> 🗩 A debt collector does not know that a consumer's email address is employer provided merely because the domain name for that email address is the same as the domain name for an email address that a different consumer has told the debt collector is employer provided.

> 🗩 A debt collector also must comply with the prohibition discussed in Section 4.3.

> 🗩 The consumer could at any time opt out of receiving emails at the employer-provided email address or otherwise request not to receive emails at that address (as discussed in Section 7.2). If the consumer does so, the debt collector could no longer communicate or attempt to communicate with the consumer at the employer-provided email address.

CONFIDENTIAL

- *The debt collector obtained the email address from a prior debt collector pursuant to the procedures described in 12 CFR 1006.6(d)(4)(iii).*  These procedures are discussed in Section 6.2.3.  This exception only applies to email addresses obtained from prior debt collectors and does not apply to email addresses obtained from the creditor, as discussed in Section 6.2.2.  12 CFR 1006.22(f)(3); comment 1006.22(f)(3)-1.

## 9.7   Social media messages viewable by the public or the consumer's contacts

A debt collector must not communicate or attempt to communicate with a person in connection with the collection of a debt using a social media platform if the communication or attempt to communicate is viewable by the general public or the person's social media contacts.  12 CFR 1006.22(f)(4).

For example, if a consumer's "wall" posts are viewable by the general public or the consumer's social media contacts, such as "friends," "followers," or "connections," the debt collector could not communicate or attempt to communicate in connection with the collection of a debt using that aspect of the social media platform.

If a social media platform enables a debt collector to send a private message to a person and that message is not viewable by the general public or the person's contacts, this provision of the Debt Collection Rule does not prohibit a debt collector from communicating or attempting to communicate with a consumer in connection with the collection of a debt by sending such a private message.  However, other provisions of the Rule (i.e., 12 CFR 1006.6(b) or 1006.14(h)) may prohibit the debt collector from sending such a private message if, for example, the person has requested that the debt collector not use that medium to communicate.  In addition, a debt collector would violate 12 CFR 1006.6(d) by sending such a private message that includes information about the debt to the wrong person.  Comment 1006.22(f)(4)-1.  See also Section 8.3 regarding disclosure of identity in social media requests.

> As discussed in Section 5, debt collectors are required to include a reasonable and simple method by which the consumer can opt out of receiving further private social media messages.  Consumers also have the option to opt out of all social media communications, or communications through a particular platform.

CONFIDENTIAL

# 10. Other requirements and prohibited practices related to debts

## 10.1 Prohibition on the sale, transfer for consideration, or placement for collection of paid, settled, or discharged debts

Generally, a debt collector must not sell, transfer for consideration,[20] or place for collection a debt if the debt collector knows or should know that the debt has been paid, that the debt has been settled, or that the debt has been discharged in bankruptcy. 12 CFR 1006.30(b)(1). A debt collector does not transfer a debt for consideration when the debt collector sends information about the debt, as opposed to the debt itself, to another party. For example, a debt collector does not transfer a debt for consideration when the debt collector sends a file with data about the debt to another person for analytics, "scrubbing," or archival. A debt collector also does not transfer a debt for consideration when the debt collector reports to a credit reporting agency information that a debt has been paid or settled or discharged in bankruptcy. Comment 1006.30(b)(1)-1.

💬 A debt collector knows or should know that a debt has been paid or settled if, for example, its account management system indicates that the debt has been paid or settled.

💬 Depending on the circumstances, a debt collector may have a bona fide error defense regarding the transfer of a debt discharged in bankruptcy if a debt collector utilized a commercial database to reasonably assess whether the debt had been discharged in bankruptcy prior to its transfer.

---

[20] A debt collector transfers a debt for consideration if the debt collector receives or expects to receive compensation for the transfer.

CONFIDENTIAL

Notwithstanding this general prohibition on transferring debt, a debt collector may transfer for consideration a debt if the debt collector does any of the following:

💬 Section 615(f)(1) of the Fair Credit Reporting Act (15 U.S.C. 1681m(f)(1)) states that no person shall sell, transfer for consideration, or place for collection a debt if such person has been notified under section 605B of that Act (15 U.S.C. 1681c-2) that the debt has resulted from identity theft. Nothing in the Debt Collection Rule alters a debt collector's obligation to comply with the prohibition set forth in section 615(f)(1) of the Fair Credit Reporting Act. *See* comment 1006.30(b)(1)-2.

- Transfers the debt to the debt's owner. However, unless another exception applies, the debt collector may not transfer the debt or the right to collect the debt to another entity on behalf of the debt owner. Comment 1006.30(b)(2)(i)(A)-1.

- Transfers the debt to a previous owner of the debt, if the transfer is authorized under the terms of the original contract between the debt collector and the previous owner.

- Transfers the debt as a result of a merger, acquisition, purchase and assumption transaction, or a transfer of substantially all of the debt collector's assets.

12 CFR 1006.30(b)(2)(i).

Additionally, a debt collector may sell, transfer for consideration, or place for collection a debt that has been discharged in bankruptcy if the debt is secured by an enforceable lien and the debt collector notifies the transferee that the consumer's personal liability for the debt was discharged in bankruptcy. 12 CFR 1006.30(b)(2)(ii).

The Debt Collection Rule's prohibition on transferring debt does not prohibit the securitization of a debt or the pledging of a portfolio of debt as collateral in connection with a borrowing. 12 CFR 1006.30(b)(2)(iii).

# 10.2  Application of payment to multiple debts

If a consumer makes a single payment to a debt collector with respect to multiple debts that the debt collector is collecting from the consumer, the debt collector must apply the payment in accordance with the consumer's instructions (if any). Additionally, the debt collector must not apply the payment to any debt that the consumer has disputed. 12 CFR 1006.30(c).

CONFIDENTIAL

## 10.3   Legal actions by debt collectors

A debt collector who brings a legal action against a consumer to enforce an interest in real property securing the consumer's debt (such as a judicial foreclosure action) must bring the action only in a judicial district or similar legal entity in which such real property is located.  12 CFR 1006.30(d)(1).

A debt collector who brings a legal action against a consumer other than to enforce an interest in real property securing the consumer's debt must bring such action only in the judicial district or similar legal entity in which the consumer signed the contract sued upon or in which the consumer resides at the commencement of the action.  12 CFR 1006.30(d)(2).

Nothing in the Debt Collection Rule authorizes debt collectors to bring legal actions.  12 CFR 1006.30(d)(3).

## 10.4   Prohibition on furnishing certain deceptive forms

A debt collector must not design, compile, or furnish any form that the debt collector knows would be used to cause a consumer falsely to believe that a person other than the consumer's creditor is participating in collecting or attempting to collect a debt that the consumer allegedly owes to the creditor.  12 CFR 1006.30(e).

> The prohibition on furnishing deceptive forms in FDCPA section 812 applies to any person, not just to debt collectors.  However, the Debt Collection Rule applies only to debt collectors.

## 10.5   Prohibition on certain actions related to time-barred debt

A debt collector must not bring or threaten to bring legal action against a consumer to collect a time-barred debt.  12 CFR 1006.26(b).  A time-barred debt is a debt where the applicable statute of limitations (i.e., the period allowed by applicable law for bringing a specific legal action against the consumer to collect the debt) has expired.  12 CFR 1006.26(a).

The prohibition does not apply to proofs of claim filed in bankruptcy proceedings. 12 CFR 1006.26(b).

CONFIDENTIAL

# 10.6  Restrictions on reporting information to a consumer reporting agency

A debt collector must not furnish any information about a consumer's debt to a consumer reporting agency until the debt collector has completed one of the actions below to notify the consumer about the debt:

1. Speak with the consumer in person about the debt;

2. Speak with the consumer by telephone about the debt;

3. Mail the consumer a letter about the debt and wait a reasonable period of time to receive a notice of undeliverability; or

4. Send the consumer a message about the debt by electronic communication and wait a reasonable period of time to receive a notice of undeliverability.

12 CFR 1006.30(a).

Thus, the Debt Collection Rule prohibits a practice sometimes called "passive collection" (i.e., the practice of a debt collector reporting information about a debt to a consumer reporting agency without separately contacting the consumer about the debt).

The four methods identified above that the debt collector may use to provide information about the debt before reporting the debt to consumer reporting agencies include oral, written, and electronic options.  Each option must convey information about the debt to the consumer.

💬 "Consumer reporting agency" is defined in section 603(f) of the Fair Credit Reporting Act (15 U.S.C. 1681a(f)).  It includes nationwide credit reporting agencies, such as Experian, Transunion, or Equifax, but also includes other smaller organizations such as check and bank screening or medical reporting companies.  12 CFR 1006.30(a)(1).

💬 Note the restrictions on reporting information to a consumer reporting agency discussed in this section do not apply to information furnished about a debt to consumer reporting agencies that compile and maintain information on check writing history.  12 CFR 1006.30(a)(2).

💬 A debt collector who has provided a consumer with a validation notice about a debt pursuant to the Debt Collection Rule has conveyed information to the consumer about the debt.  Comment 1006.30(a)(1)-1.

If the debt collector provides information about the debt orally, the debt collector may begin furnishing information about the debt to consumer reporting agencies after speaking to the consumer by telephone or in person.  However, if the debt collector chooses to notify the consumer about the debt by either mailing a letter or sending a message electronically, the debt collector cannot immediately begin to furnish information to the consumer reporting agencies.

**NCS-276**

CONFIDENTIAL

Instead, for these options the debt collector must first wait a reasonable period of time while the debt collector monitors for any notices of undeliverability. A period of 14 calendar days after the letter or electronic message was sent is considered a reasonable period of time. Comment 1006.30(a)(1)-2.

To monitor for undeliverability, the debt collector must permit receipt of notices of undeliverability from mail or electronic communication providers. 12 CFR 1006.30(a)(1)(ii).

If a debt collector receives a notice of undeliverability during the reasonable period of time, then the debt collector must not furnish information about the debt to a consumer reporting agency until it resends the information about the debt to the consumer using one of the methods identified above. However, if the debt collector *does not* receive a notice that the letter or electronic message was undeliverable during that reasonable period of time, the debt collector may furnish information about the debt to a consumer reporting agency, even if the debt collector later receives a notice of undeliverability. Comment 1006.30(a)(1)-3.

**Examples:** On April 1, ABC, Inc. mails a validation notice by United States Postal Service first class mail to a consumer. ABC, Inc. ensures it has permitted receipt of notice of undeliverability. Between April 1 and April 14, ABC, Inc. monitors for notices of undeliverability, and as of April 14, ABC, Inc. has not received a notice of undeliverability. ABC, Inc. will not violate this restriction if it reports information about the consumer's debt to consumer reporting agencies on April 15. ABC, Inc. may continue furnishing information about the consumer's debt after that date, even if it later receives a notice of undeliverability.

On April 17, Ficus Debt Collection Services mails a validation notice by United States Postal Service first class mail to a consumer. Ficus Debt Collection Services ensures it permits receipt of notice of undeliverability. On April 18, the United States Postal Service returns the validation notice to Ficus Debt Collection Services as undeliverable. Ficus Debt Collection Services cannot report the consumer's debt to any consumer reporting agencies unless Ficus Debt Collection Services again takes one of the four actions to notify the consumer about the debt. On April 19, Ficus Debt Collection Services mails the validation notice by United States Postal Service first class mail, again ensuring it permits receipt of notice of undeliverability, to a second address on file for the consumer. Between April 19 and May 2, Ficus Debt Collection Services monitors for notices of undeliverability. As of May 2, Ficus Debt Collection Services has not received a notice of undeliverability. Ficus Debt Collection Services will not violate this restriction if it reports information about the consumer's debt to

CONFIDENTIAL

> consumer reporting agencies on May 3, even if it later receives a notice of undeliverability for the second address.
>
> Additional examples can be found in the commentary for 12 CFR 1006.30(a)(1).

When using one of the four options to notify the consumer about a debt before furnishing information to the consumer reporting agencies, a debt collector must also comply with all other applicable requirements and prohibitions in the Debt Collection Rule. For example, debt collectors must comply with rules regarding communications and attempts to communicate at unusual or inconvenient times or places, as applicable, discussed in Section 4.1. Debt collectors who try to speak with a consumer by telephone must also, for example, comply with the prohibition on repeated or continuous telephone calls and telephone conversations, discussed in Section 7.1.

**NCS-278**

# 11. Disclosures in initial or subsequent communications

## 11.1  Initial communications

A debt collector must disclose in its initial communication with a consumer that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose.  If the debt collector's initial communication with the consumer is oral, the debt collector must make the disclosure again in its initial written communication with the consumer.  12 CFR 1006.18(e)(1).  However, this disclosure is not required to be included in a formal pleading made in connection with a legal action.  12 CFR 1006.18(e)(3).  With the exception of formal pleadings, a debt collector must make the disclosure in the debt collector's initial communication with a consumer, regardless of the medium of communication and regardless of whether the debt collector or the consumer initiated the communication.

As discussed above, the disclosure is required in the initial *communication*.  Thus, a debt collector is not required to include the disclosure in an attempt to communicate that is not a communication.  However, if a debt collector includes content that directly or indirectly conveys any information regarding the debt, the debt collector's contact with the consumer is a communication, and the debt collector must include the disclosure if the communication is an initial communication.  Comment 1006.18(e)(1)-1.  Additionally, if a debt collector includes the disclosure in a message what would otherwise be a limited-content message, the message is no longer a limited-content message because the disclosure is not required or permitted content for limited-content messages.  See Section 3.3.3 for more information on limited-content messages.

> **Example:** ABC, Inc. has not previously communicated with a consumer.  ABC, Inc. places a telephone call to the consumer, who does not answer.  ABC, Inc. leaves a limited-content message for the consumer.  After listening to the debt collector's message, the consumer calls ABC, Inc. and discusses the debt with a representative of ABC, Inc.  Because the consumer-initiated call is the initial communication between ABC, Inc. and the consumer, ABC, Inc. must disclose to the consumer during that telephone call that it is attempting to collect a debt and that any information obtained

**NCS-279**

CONFIDENTIAL

will be used for that purpose. Additionally, following the telephone call, ABC, Inc. must include the disclosure in its initial written communication with the consumer. ABC, Inc. is not required or permitted to provide this disclosure in the limited-content message.

A debt collector must make the disclosure in the same language or languages that the debt collector used for the rest of the communication in which the disclosure is included. Any translation of the disclosures must be complete and accurate. 12 CFR 1006.18(e)(4).

**Example:** ABC, Inc.'s initial communication with the consumer takes place in Spanish. ABC, Inc. must disclose in Spanish that it is a debt collector attempting to collect a debt and that any information obtained will be used for that purpose.

# 11.2 Subsequent communications

In each subsequent communication after the initial communication, the debt collector must disclose that the communication is from a debt collector. 12 CFR 1006.18(e)(2). This disclosure is not required in a formal pleading made in connection with a legal action. 12 CFR 1006.18(e)(3). A debt collector must make the disclosure in the same language or languages that it used for the rest of the communication in which the disclosure is conveyed. Any translation of the disclosure must be complete and accurate. 12 CFR 1006.18(e)(4).

**Example:** After its initial communication with a consumer, ABC, Inc. has a communication with the consumer that takes place partly in English and partly in Spanish. During this communication, ABC, Inc. must disclose that the communication is from a debt collector in both English and Spanish. This is true even if ABC, Inc.'s initial communication with the consumer took place in Spanish, and ABC, Inc. provided the initial communication disclosure required by 12 CFR 1006.18(e)(1) in Spanish.

**NCS-280**

CONFIDENTIAL

# 12. Validation information, disputes, and requests for verification and original-creditor information

A debt collector must provide validation information about a debt to a consumer either in the debt collector's initial communication with the consumer, or shortly thereafter. The validation information that the debt collector is required to provide to the consumer is discussed in Section 12.1, and the methods that a debt collector can use to provide the validation information and timing requirements for delivery are discussed in Section 12.2.

> 💬 Debt collectors and others commonly refer to the validation requirements in FDCPA section 809(a) as a "validation notice" or a "g notice." The Rule's validation information requirements are in large part based on that section of the FDCPA.

Once a debt collector provides validation information about a debt to a consumer, this triggers the validation period. During this period, the debt collector must not engage in certain collection activities regarding that debt to allow the consumer the opportunity to dispute the debt or to request information about the original creditor. The validation period and the related restrictions during the validation period are discussed in Section 12.3. During the validation period, the debt collector may not overshadow a consumer's rights to dispute the debt or to request original-creditor information, as discussed in Section 12.4.

> 💬 The Rule provides a model form for the validation notice that may be used for written and electronic delivery of these validation information requirements. See Appendix A of this guide for an annotated version of the model form.

If the consumer does dispute the debt or request original-creditor information during the validation period, a debt collector must cease collection of the debt, or any disputed portion, until the debt collector responds. Requests for original-creditor information are discussed in Section 12.5, and responses to disputes are discussed in Sections 12.6 and 12.7. After the validation period has ended, and the debt collector responds to any disputes or requests for original-creditor information, as discussed below, a debt collector may then proceed with collection activity as allowed by the Rule and other applicable law.

**NCS-281**

CONFIDENTIAL

# 12.1  Validation information

Generally, the validation information consists of information about the debt, information about the consumer's protections and rights during collection of the debt, and information to facilitate their ability to exercise those rights.

A debt collector must provide the validation information to the consumer in a "clear and conspicuous" manner.  12 CFR 1006.34(d)(1).  The information must be readily understandable. If the validation information is provided in writing or electronically (i.e., in a validation notice), the location of the information in the written or electronic communication and the type size used for the validation information also must be readily noticeable and legible to consumers, although no minimum type size is required.  12 CFR 1006.34(b)(1).

The validation information that a debt collector must provide, i.e., the required content, is discussed in Section 12.1.1.  When providing the validation information, the Debt Collection Rule permits a debt collector to provide additional information, as long as the required content remains clear and conspicuous.

A debt collector can obtain a safe harbor for certain provisions of the Rule related to the validation information, including the content requirements, if it properly uses the model validation notice from Appendix B of the Rule.  While a debt collector is permitted to add additional information, the Rule limits the additional optional content that a debt collector can include and still obtain safe harbor.  The optional content that the debt collector may include and still obtain a safe harbor is discussed in Section 12.1.2.  That safe harbor and the model form are discussed in Section 12.1.3.  Additionally, Appendix A of this guide provides a copy of the model validation notice from the Rule, annotated with the relevant regulatory citations for the required content and for the optional content included in the model validation notice.

## 12.1.1  Required content

When providing the validation information to a consumer a debt collector must include the following information: (1) a debt collector communication disclosure; (2) certain information about the debt; (3) an itemization of certain information related to the debt; (4) information about consumer protections; and (5) consumer response information to facilitate the consumer's ability to exercise their rights with respect to the debt collection.  Each of these is discussed in more detail immediately below.

### Debt collector communication disclosure

 A debt collector must include either the initial or subsequent communication disclosure discussed in Section 11.  12 CFR 1006.34(c)(1).

**NCS-282**

CONFIDENTIAL

If a debt collector is providing the validation notice in its initial communication, the debt collector must use the initial communication disclosure. However, if the debt collector is providing the notice within five calendar days of the initial communication, the debt collector may provide either the initial or subsequent disclosure, even though the debt collector has already communicated with the consumer. Thus, a debt collector may use the model form, which includes the initial communication disclosure, even if the debt collector includes the validation notice in a subsequent communication. Comment 1006.34(c)(1)-1.

## Debt Information

- *Name of the debt collector and mailing address at which the debt collector accepts disputes and requests for original-creditor information.* 12 CFR 1006.34(c)(2)(i). A debt collector must disclose its name and the mailing address at which the debt collector accepts disputes and requests for original-creditor information. A debt collector may disclose a vendor's mailing address, if that is an address at which the debt collector accepts disputes and requests for original-creditor information. Comment 1006.34(c)(2)(i)-2. A debt collector may disclose the trade name or "doing business as" (d/b/a) name instead of the legal name for the debt collector. Comment 1006.34(c)(2)(i)-1.

**NCS-283**

CONFIDENTIAL

- *Consumer's name and mailing address.* 12 CFR 1006.34(c)(2)(ii). A debt collector must disclose the consumer's name and mailing address. The name used in the validation notice must be the version that the debt collector reasonably determines is the most complete and accurate, based on the debt collector's knowledge at the time. Omitting any known information that creates a false, misleading, or confusing impression about the consumer's identity is not a compliant name disclosure. For example, if the creditor provides the debt collector with the consumer's first name, middle name, last name, and name suffix, then the debt collector has knowledge of all of this information. The debt collector could reasonably determine that the most complete and accurate version of the consumer's name includes all of this information, such that it must disclose all of this in the validation information. If the debt collector omits any of this known information and the omission creates a false, misleading, or confusing impression about the consumer's identity, the debt collector has not satisfied the requirement to provide the consumer's name. Comment 1006.34(c)(2)(ii)-1.

  > With respect to the validation information required by the Rule, the consumer's name is the name of the natural person, living or deceased, obligated or allegedly obligated on the debt. 12 CFR 1006.34(c)(2)(ii); Comment 1006.34(c)(2)(ii)-1. Note, however, that this is not necessarily the same person to whom the debt collector must provide the validation information. If the debt collector knows or should know that the consumer is deceased, and if the debt collector has not previously provided the validation information to the deceased consumer, a person who is authorized to act on behalf of the deceased consumer's estate operates as the consumer for purposes of who is provided the validation information. In such circumstances, a debt collector must provide the validation information to an individual that the debt collector identifies by name who is authorized to act on behalf of the deceased consumer's estate. Comment 1006.34(a)(1)-1. For more information on provision of the validation information, see Section 12.2, below.

- *Name of the creditor to whom the debt is currently owed.* 12 CFR 1006.34(c)(2)(v). A debt collector must disclose the name of the creditor to whom the debt is currently owed. For example, for a credit card debt that was originated by ABC Credit Card, Inc., where XYZ Credit Card Company was the creditor when the last payment was applied to the debt and Ficus Bank currently owns the debt, the debt collector must disclose Ficus Bank as the name of the creditor to whom the debt is currently owed. A debt collector may disclose the trade name or "doing business as" (d/b/a) name instead of the legal name for the creditor to whom the debt is currently owed. Comment 1006.34(c)(2)(v)-1.

**NCS-284**

CONFIDENTIAL

- *Name of the creditor as of the itemization date.* 12 CFR 1006.34(c)(2)(iii). If the debt collector is collecting a debt related to a consumer financial product or service (e.g., credit card debt, mortgage-related debt), the debt collector must disclose the name of

  > ▭ To determine the itemization date for the "name of the creditor as of the itemization date" disclosure, see the itemization date discussion, below.

the creditor as of the itemization date (see below regarding "itemization date"). For example, for a credit card debt that was originated by ABC Credit Card, Inc., where XYZ Credit Card Company was the creditor when the last payment was applied to the debt and Ficus Bank currently owns the debt, if the debt collector uses the last payment date as the itemization date, the debt collector must disclose XYZ Credit Card Company as the name of the creditor as of the itemization date. A debt collector may disclose the trade name or "doing business as" (d/b/a) name instead of the legal name for the creditor as of the itemization date. Comment 1006.34(c)(2)(iii)-1.

- *Account number.* 12 CFR 1006.34(c)(2)(iv). A debt collector must disclose the account number (full or truncated), if any, associated with the debt on the itemization date. If a debt collector

  > ▭ To determine the itemization date for the "account number" disclosure, see the itemization date discussion, below.

uses a truncated account number, the account number must remain recognizable. For example, a debt collector may truncate a credit card account number so that only the last four digits are provided. Comment 1006.34(c)(2)(iv)-1.

- *Current amount of the debt.* 12 CFR 1006.34(c)(2)(ix). A debt collector must disclose the amount of the debt as of when the validation information is provided. For residential mortgage debt subject to the periodic statement requirements in the Bureau's Mortgage Servicing Rule under Regulation Z, a debt collector may provide the current amount of the debt by providing the consumer the total balance of the outstanding mortgage, including principal, interest, fees, and other charges. Comment 1006.34(c)(2)(ix)-1; Regulation

  > ▭ For the current amount of debt disclosure, a debt collector who combines multiple debts on a single validation notice may provide a single cumulative figure that is a single sum of the current amount of all the debts. Comment 1006.34(c)(2)(ix)-2. More information about disclosing multiple debts in a single validation communication can be found in Section 12.1.5.

Z, 12 CFR 1026.41. If the debt is a residential mortgage debt subject to the periodic statement requirements in the Bureau's Mortgage Servicing Rule at the time the debt collector provides a validation notice, the debt collector may provide the most recent periodic statement in lieu of the itemization-related information. If the debt collector

**NCS-285**

CONFIDENTIAL

includes the periodic statement with the validation notice, the debt collector must reference the periodic statement where the itemization information would have been located on the validation notice. 12 CFR 1006.34(c)(5); Comment 1006.34(c)(5)-1. See also, Regulation Z, 12 CFR 1026.41.

## Itemization-related information

A debt collector must include a breakdown of the debt, which includes the following items:

- *Itemization date.* 12 CFR 1006.34(b)(3). A debt collector must disclose the date that it will use when disclosing the itemization-related information. The "itemization date" reflects an event in the debt's history that provides a reference point that consumers may recognize. Debt collectors may determine the itemization date, which will be used to identify other itemization-related items (as well as the name of the creditor as of the itemization date and the account number disclosures, discussed above in the debt information section), by selecting one of five reference dates:

  1. The last statement date. The last statement date is the date of the last periodic statement or written account statement, or invoice provided to the consumer by a creditor. The last statement may have been provided by a creditor or a third party acting on the creditor's behalf, including a creditor's service provider. However, a statement or invoice provided by a debt collector is not a last statement, unless the debt collector is also a creditor. 12 CFR 1006.34(b)(3)(i); Comment 1006.34(b)(3)(i)-1.

  2. The charge-off date. The charge-off date is the date the debt was charged off. 12 CFR 1006.34(b)(3)(ii).

  3. The last payment date. The last payment date is the last date a payment was applied to the debt. It can be the date a third-party payment was applied to the debt, such as a payment from an auto repossession agent or an insurance company, if that payment was the last payment on the account. 12 CFR 1006.34(b)(3)(iii); Comment 1006.34(b)(3)(iii)-1.

  4. The transaction date. The transaction date is the date of the transaction that gave rise to the debt. It is the date that the good or service that gave rise to the debt was provided or made available to the consumer. For example, the transaction date for a debt arising from a medical procedure may be the date the medical procedure was performed, and the transaction date for a consumer's gym membership may be the date the membership contract was executed. In some cases, a debt may have more than one transaction date. If a debt has more than one transaction date, a debt collector may use any of the transaction dates as the transaction date for purposes of

**NCS-286**

CONFIDENTIAL

the itemization date.  For example, if a consumer enters into a contract on one date and the creditor performs the contracted service on another date, either date may be the transaction date.  However, the debt collector must use the selected transaction date consistently.  12 CFR 1006.34(b)(3)(iv); Comment 1006.34(b)(3)(iv)-1.

5. The judgment date.  The judgment date is the date of a final court judgment that determines the amount of the debt owed by the consumer.  12 CFR 1006.34(b)(3)(v).

12 CFR 1006.34(c)(2)(vi); 12 CFR 1006.34(b)(3).

For any of the five itemization reference date options above, once a debt collector uses one of these dates in any communication with a consumer for a debt, the debt collector must use that date consistently in validation information communications about that debt to that consumer.  For example, the debt collector may not use the last statement date for some items and the charge-off date for other items disclosed in the validation information.  In that scenario, the debt collector must exclusively use either the last statement date or the charge-off date for all itemization-related validation information for that debt.  Comment 1006.34(b)(3)-1.  However, a subsequent debt collector need not use the same itemization date as prior debt collectors.  Comment 1006.34(b)(3)-2.

**NCS-287**

CONFIDENTIAL

- *The amount of the debt as of the itemization date.* 12 CFR 1006.34(c)(2)(vii). A debt collector must disclose the amount of the debt as of the itemization date. This amount includes any fees, interest, or other charges owed as of that itemization date. Comment 1006.34(c)(2)(vii)-1.

- *An itemization of the current amount of the debt.* 12 CFR 1006.34(c)(2)(viii). A debt collector must disclose an itemization of the current amount of the debt (i.e., the amount of the debt as of when the validation information is provided). That itemization must reflect the amount of the debt incurred since the itemization date that is attributable to 1) interest charged, 2) fees incurred, 3) payments made, and 4) credits. A debt collector must include fields in the notice for all four of these items when providing the validation information, even if no additional amounts have accrued since the itemization date. For each of the four

  💬 The debt collector may disclose the itemization of the current amount of the debt on a separate page. The page must be provided in the same communication with the validation notice, and the debt collector must include a reference to that page where the itemization would have appeared. 12 CFR 1006.34(c)(2)(viii); Comment 1006.34(c)(2)(viii)-3.

  💬 A debt collector who combines multiple debts on a single validation notice may either disclose a single, cumulative itemization on the validation notice for all debts combined or a separate itemization of each debt on a separate page or pages provided in the same communication as the validation notice, with the necessary reference to the separate page(s). Comment 1006.34(c)(2)(viii)-4. More information about disclosing multiple debts in a single validation communication can be found in Section 12.1.5.

items, a debt collector must not leave the amount disclosure blank, but instead, must indicate that no amounts have been incurred since the itemization date. For example, if a consumer has not made any payments since the itemization date, a debt collector providing that consumer a written notice must still include a field for payments made in the itemization, but may indicate that the value of payments made since the itemization date is "0" or "none," or may state that no payments have been assessed or applied to the debt. Comment 1006.34(c)(2)(viii)-1.

If a debt collector is required by other applicable law to provide an itemization of the current amount of the debt with the validation information, the debt collector may disclose the itemization required by that other applicable law in lieu of the itemization of the current amount of the debt as of the itemization date required by the Rule. The debt collector may do so provided that the itemization required by other applicable law is substantially similar to the itemization that appears on the model form in Appendix B of the Rule. Comment 1006.34(c)(2)(viii)-2.

**NCS-288**

CONFIDENTIAL

## Information about consumer protections

A debt collector must also include information that assists the consumer in understanding their rights and protections during the debt collection process. This information includes:

- *Validation period end date.* 12 CFR 1006.34(c)(3)(i)-(iii). The date that the debt collector will consider the end date of the validation period during which a consumer may verify the debt.

- *Statements about debt disputes and original-creditor information.* 12 CFR 1006.34(c)(3)(i)-(iii). The statements must describe the consumer's right to dispute the debt and request original-creditor information, and rights that apply if the consumer completes those actions.

  - A statement that, if the consumer notifies the debt collector in writing on or before the end of the validation period that the debt, or any portion of the debt, is disputed, the debt collector must cease collection of the debt, or the disputed portion of the debt, until the debt collector sends the consumer either verification of the debt or a copy of a judgment. 12 CFR 1006.34(c)(3)(i).

  - A statement that, if the consumer submits a request in writing, on or before the end of the validation period, for the name and address of the original creditor, the debt collector must cease collection of the debt until the debt collector sends the consumer the name and address of the original creditor, if different from the current creditor. 12 CFR 1006.34(c)(3)(ii).

  - A statement that, unless the consumer contacts the debt collector to dispute the validity of the debt, or any portion of the debt, on or before the end of the validation period, the debt collector will assume that the debt is valid. 12 CFR 1006.34(c)(3)(iii).

- *Statement for consumer financial product or service debt.* 12 CFR 1006.34(c)(3)(iv). If the debt collector is collecting debt related to a consumer financial product or service as defined in the Rule, a statement that informs the consumer that additional information regarding consumer protections in debt collection is available on the Bureau's website at www.cfpb.gov/debt-collection.

- *Electronic notice statement.* 12 CFR 1006.34(c)(3)(v). If the debt collector sends the validation notice electronically, a statement explaining how a consumer can dispute the debt or request original-creditor information electronically. For additional information on the electronic provisions of the validation notice, see Section 12.4.

**NCS-289**

CONFIDENTIAL

## Consumer-response information

Segregated from the required information described above, and any optional information included from the list in Section 12.1.2, the validation information must include certain statements and prompts that allow the consumer to respond.  12 CFR 1006.34(c)(4).  The validation notice must include headings immediately above the response prompts that state, "How do you want to respond?" and "Check all that apply:" See the model form included in this Section 12.1.3 for an example of how to include these statements and prompts in a validation notice.

The statements and prompts must include the following options, using this or substantially similar phrasing, for the consumer:

- ▪ "I want to dispute the debt because I think:

  - ▢ This is not my debt.

  - ▢ The amount is wrong.

  - ▢ Other (please describe on reverse or attach additional information)."; and

- ▪ "I want you to send me the name and address of the original creditor."

12 CFR 1006.34(c)(4)(i); 12 CFR 1006.34(c)(4)(ii).

The consumer response section must also include 1) the debt collector's mailing address where the debt collector accepts the disputes and requests for original-creditor information, and 2) the consumer's mailing address.  The addresses must be the same as those disclosed in the debt information section of the validation notice, discussed above.  12 CFR 1006.34(c)(4)(iii).

The model form provides the consumer response information as a section that may be detached from the notice and sent back to the debt collector.  The model form also formats the consumer response section prompts as checkboxes and includes the instructions "Check all that apply." Comment 1006.34(c)(4)-1.

## 12.1.2  Optional content for safe harbor

In addition to the required content discussed above, a debt collector may generally include additional content so long as it does not violate the other provisions of the Rule.  However, if a debt collector wishes to retain the model form safe harbor for the validation notice (discussed in Section 12.1.3), only select content may be included.

The optional content permitted for the safe harbor includes:

CONFIDENTIAL

- *Telephone contact information.*  12 CFR 1006.34(d)(3)(i).  The required contact information includes the debt collector's address, but it does not include a telephone number.  The specified optional content allows the debt collector to also include its telephone number where the consumer may contact the debt collector.  As part of this telephone contact information, the debt collector may also include, for example, the times that the debt collector accepts consumer telephone calls.  Comment 1006.34(d)(3)(i)-1.

- *Reference code.*  12 CFR 1006.34(d)(3)(ii).  A debt collector may include a reference code or number the debt collector uses to identify the consumer or the particular debt.  For example, if the debt collector assigns the consumer an account number or an identification code, the debt collector may include that information.

- *Payment disclosures.*  12 CFR 1006.34(d)(3)(iii).  A debt collector may include either or both of the following statements:

  - "Contact us about your payment options," or a substantially similar statement.

  - "I enclosed this amount: _____", or a substantially similar statement, with payment instructions after the statement, and a prompt.  This statement, if included, must be placed below the required consumer response prompts discussed in Section 12.1.1.

- *Disclosures under other applicable law.*  12 CFR 1006.34(d)(3)(iv)(A).  In general, a debt collector may include with the validation information any disclosures specifically required by other applicable law.  A debt collector may also include any disclosures that, if provided, provide safe harbors under other applicable law.  Generally, this information is disclosed on the reverse side of the validation notice.  These disclosures must be positioned so that they do not appear directly on the reverse of the consumer response section.  This ensures the consumer's ability to retain the disclosures isn't inhibited by the consumer's response to the validation notice.  The debt collector must also include a statement on the front side of the validation notice referencing the disclosures

  - Other applicable law disclosures may include specific disclosures required by federal, state, or municipal statutes or regulations, and specific disclosures required by judicial or administrative decisions or orders, including administrative consent orders.  Comment 1006.34(d)(3)(iv)(A)-1.

  - If a debt collector provides the validation notice electronically in the body of an email, and includes other applicable law disclosures, the debt collector may place the disclosures below the required content of the validation notice, rather than on the reverse side.  The statement referencing the disclosures could say "Notice: See below for important information."  Comments 1006.34(d)(3)(iv)(A)-1 and -2.

**NCS-291**

CONFIDENTIAL

on the back. For example, on the front of the notice, the debt collector could include, "Notice: See reverse side for important information." Comment 1006.34(d)(3)(iv)(A)-2.

However, if a debt collector is collecting time-barred debt, it may place a time-barred debt disclosure that is specifically required by, or that provides a safe harbor under, applicable law on the front of the validation notice below the "current amount of the debt" disclosure. 12 CFR 1006.34(d)(3)(iv)(B). A debt collector is only allowed this option if the other applicable law specifies the content of the disclosure. Time-barred debt disclosures required by other applicable law may include disclosures about revival of debt collectors' right to bring a legal action to enforce the debt.

- *Certain electronic communication information.* 12 CFR 1006.34(d)(3)(v)(B). A debt collector may include the debt collector's website or email address to assist the consumer in communicating with the debt collector electronically. Additionally, if a debt collector does not provide the validation notice electronically, the debt collector can include a statement explaining how a consumer can dispute the debt or request original-creditor information electronically.

- *Spanish-language translation request statements*. 12 CFR 1006.34(d)(3)(vi). A debt collector may include one or both of the following statements, or substantially similar phrases, which provide information about how the consumer may obtain a Spanish-language translation of the validation notice.

  - "Póngase en contacto con nosotros para solicitar una copia de este formulario en español" (which means "Contact us to request a copy of this form in Spanish").

  - "Quiero este formulario en español" (which means "I want this form in Spanish").

  If providing the first statement, a debt collector may also include supplemental information in Spanish to further detail how the consumer can request a Spanish-language copy of the validation notice. For example, a debt collector may include a statement in Spanish that a consumer can request a Spanish-language validation notice by telephone or email, if the debt collector accepts consumer requests through those communication media. Comment 1006.34(d)(3)(vi)-1.

- *The merchant brand, affinity brand, or facility name.* 12 CFR 1006.34(d)(3)(vii). A debt collector may include the merchant brand, affinity brand or facility name associated with the debt, if applicable. A merchant brand includes, for example, the store that co-branded the debt instrument

  ⊙ Although the Rule permits debt collectors to disclose the facility name associated with a medical debt as part of the optional content provisions for the validation information, debt collectors may be prohibited from doing so by other applicable laws, such as healthcare privacy rules or regulations.

CONFIDENTIAL

(e.g., the credit card) with the original creditor. An affinity brand includes, for example, a brand associated with the debt. A facility name includes, for example, the name of the facility where the debt was incurred.

**Examples:** ABC, Inc. is collecting a consumer's credit card debt. When it was originated, the credit card debt was issued by Ficus Bank and was co-branded with XYZ Store. ABC, Inc. must disclose Ficus Bank as the original creditor in the required validation information, but it may optionally include "XYZ Store" as the merchant brand and still maintain the safe harbor for use of the model validation notice.

ABC, Inc. is collecting a consumer's credit card debt. When it was originated, the credit card debt was issued by Ficus Bank, but the credit card included the logo for the College of Columbia. ABC, Inc. must disclose Ficus Bank as the original creditor in the required validation information, but it may optionally include "College of Columbia" as the affinity brand and still maintain the safe harbor for use of the model validation notice.

Ficus Debt Collection Services is collecting a consumer's medical debt originated by ABC Medical Credit, Inc. The debt relates to a treatment received at ABC Hospital. Ficus Debt Collection Services must disclose ABC Medical Credit, Inc. as the original creditor in the required validation information, but it may optionally include "ABC Hospital" as the facility name and still maintain the safe harbor for use of the model validation notice.

Comments 1006.34(d)(3)(vii)-1, -2, and -3.

- *Consumer financial product or service disclosures.* 12 CFR 1006.34(d)(3)(viii). If a debt collector is not collecting a debt related to a consumer financial product or service, the debt collector may still include the disclosures that are required only for consumer financial product or service debts. These include the name of the creditor that owned the debt as of the itemization date or the statement that informs the consumer that additional information regarding consumer protections in debt collection is available on the Bureau's website at www.cfpb.gov/debt-collection.

A debt collector may include any or all of the optional disclosures without losing the safe harbor, discussed below. However, if a debt collector adds any or all of the optional content that are not shown on the model validation notice (the model validation notice contains only certain optional

**NCS-293**

CONFIDENTIAL

disclosures), those disclosures may not be more prominent than any of the required validation information.  12 CFR 1006.34(d)(2)(i)(B).

## 12.1.3 Model form safe harbor

A debt collector who uses the model validation notice in Appendix B of the Rule complies with, and receives a safe harbor for compliance with, the content and format requirements discussed in Section 12.1.1.  12 CFR 1006.34(d)(2)(i).  A debt collector who uses the model form also complies with, and receives a safe harbor for compliance with, the requirement that the validation information be clear and conspicuous.  12 CFR 1006.34(d)(2)(i).

A debt collector may make certain changes to the model form and retain the safe harbor.  A debt collector may add any of the optional disclosures specifically identified in the Rule not already included in the model form in Appendix B of the Rule and retain the safe harbor.  12 CFR 1006.34(d)(2)(i)(A).  A debt collector may also omit any of the optional disclosures that appear on the model form in Appendix B of the Rule and retain the safe harbor.  12 CFR 1006.34(d)(2)(i)(B).  Additionally, a debt collector may relocate the "itemization of the current amount of the debt" disclosure to a separate page.  However, the safe harbor will not apply to the disclosures that appear on the separate page.  12 CFR 1006.34(d)(2)(ii).

In addition to the three specified changes above, a debt collector may also make other changes to the model form (or to any of the specified changes above) and retain the safe harbor, provided that the resulting form remains substantially similar in substance, clarity, and meaningful sequence to the model form.  12 CFR 1006.34(d)(2)(iii); Comment 1006.34(d)(2)(iii)-1.  For example, these permissible changes include:

- Modifications to remove language that could suggest liability for the debt if such language is not applicable.  For example, if a debt collector sends a validation notice to a successor in interest for the consumer obligated on the debt, and that person is not liable for the debt, the debt collector may use the name of the deceased consumer instead of "you" to prevent confusion that the successor in interest addressee is the liable party;

- Relocating the consumer-response information, discussed above in Section 12.1.1, to facilitate mailing;

- Adding barcodes or QR codes, as long as the inclusion of such items does not overshadow a consumer's rights during the validation period;

- Adding the date that the form is generated; and

- Embedding hyperlinks, if delivering the form electronically.

CONFIDENTIAL

Comment 1006.34(d)(2)(iii)-1.

Not all changes result in a form that is substantially similar in substance, clarity, and meaningful sequence to the model form. Comment 1006.34(d)(2)(iii)-1. For example, if a debt collector changes the font size to make certain information smaller, this could substantially change the clarity of the notice and the debt collector might not receive the safe harbor provided by using the model form.

In addition to receiving a safe harbor for compliance with the content and format requirements for the validation information, a debt collector who uses the model form consistent with the Rule as discussed in this Section also does not violate the prohibition on overshadowing a consumer's rights to dispute the debt or request original-creditor information during the validation period, as discussed in Section 12.4, with respect to that provision of the validation information. 12 CFR 1006.38(b)(2).

A debt collector *does not* obtain safe harbor for the validation notice delivery method and timing requirements discussed in Section 12.2 by using the model form.

A copy of the model form is included below. Additionally, Appendix A of this guide provides a copy of the model form annotated with the relevant regulatory citations identifying which language in the model form represents the required content and which represents the optional content included in the model form.

**NCS-295**

CONFIDENTIAL

**FIGURE 1:** APPENDIX B MODEL VALIDATION NOTICE

North South Group
P.O. Box 123456
Pasadena, CA 91111-2222
(800) 123-4567 from 8am to 8pm EST, Monday to Saturday
www.example.com

To:    Person A
2323 Park Street
Apartment 342
Bethesda, MD 20815

Reference: 584-345

**North South Group is a debt collector.** We are trying to collect a debt that you owe to Bank of
Rockville. We will use any information you give us to help collect the debt.

### Our information shows:

You had a Main Street Department Store credit card from Bank
of Rockville with account number 123-456-789.

| | | |
|---|---|---|
| As of January 2, 2017, you owed: | | $ 2,234.56 |
| Between January 2, 2017 and today: | | |
| You were charged this amount in interest: | + $ | 75.00 |
| You were charged this amount in fees: | + $ | 25.00 |
| You paid or were credited this amount toward the debt: | − $ | 50.00 |
| Total amount of the debt now: | | $ 2,284.56 |

**Notice:** See reverse side for important information.

### How can you dispute the debt?

- **Call or write to us by August 28, 2020, to dispute all or part
  of the debt.** If you do not, we will assume that our information
  is correct.

- **If you write to us by August 28, 2020,** we must stop
  collection on any amount you dispute until we send you
  information that shows you owe the debt. You may use
  the form below or write to us without the form. You may
  also include supporting documents. We accept disputes
  electronically at www.example.com/dispute.

### What else can you do?

- **Write to ask for the name and address of the original
  creditor,** if different from the current creditor. If you write
  by August 28, 2020, we must stop collection until we send you
  that information. You may use the form below or write to us
  without the form. We accept such requests electronically
  at www.example.com/request.

- **Go to www.cfpb.gov/debt-collection to learn more about
  your rights under federal law.** For instance, you have the
  right to stop or limit how we contact you.

- **Contact us about your payment options.**

- Póngase en contacto con nosotros para solicitar una copia de
  este formulario en español.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Mail this form to:
North South Group
P.O. Box 123456
Pasadena, CA 91111-2222

Person A
2323 Park Street
Apartment 342
Bethesda, MD 20815

### How do you want to respond?

*Check all that apply:*

☐ **I want to dispute the debt because I think:**

  ☐ This is not my debt.
  ☐ The amount is wrong.
  ☐ Other (please describe on reverse or
    attach additional information).

☐ **I want you to send me the name and
  address of the original creditor.**

☐ **I enclosed this amount:**   $ _____

Make your check payable to *North South
Group.* Include the reference number 584-345.

☐ **Quiero este formulario en español.**

**NCS-296**

CONFIDENTIAL

### 12.1.4 Translation into other languages

A debt collector has the option to send a consumer a validation notice completely and accurately translated into any language. 12 CFR 1006.34(e).

If a debt collector chooses to offer a translated validation notice, the debt collector has two options. The debt collector may provide the translated notice in the same communication as the English-language notice. Alternatively, the debt collector may provide the translated notice separately if it previously provided the consumer an English-language notice. 12 CFR 1006.34(e).

While providing a translated notice is generally optional for a debt collector, a debt collector must provide a validation notice completely and accurately translated into Spanish if the debt collector included either or both of the Spanish language translation statements discussed in Section 12.1.2, above (regarding a consumer's ability to request a Spanish-language translation of a validation notice) and then received a request from the consumer for a Spanish-language validation notice. 12 CFR 1006.34(d)(3)(vi) and 1006.34(e)(2).

### 12.1.5 Disclosing multiple debts

A debt collector collecting multiple debts for a single consumer may combine and disclose those multiple debts on a single validation notice. A debt collector who combines multiple debts onto a single validation notice complies with the requirement to provide an "itemization of the current amount of the debt" disclosure reflecting interest, fees, payments, and credits since the itemization date by disclosing either 1) a single, cumulative itemization on the validation notice or 2) a separate itemization of each debt on a separate page or pages provided in the same communication as the validation notice. 12 CFR 1006.34(c)(2)(viii); Comment 1006.34(c)(2)(viii)-4. Relatedly, a debt collector complies with the requirement to disclose the "current amount of the debt" by disclosing on the validation notice a single, cumulative figure that is the sum of the current amount of all the debts. 12 CFR 1006.34(c)(2)(ix); Comment 1006.34(c)(2)(ix)-2.

A debt collector who is collecting multiple debts for a single consumer is not required to disclose those multiple debts on a single validation notice.

CONFIDENTIAL

## 12.2  Delivery method and timing requirements

A debt collector may provide the validation information in a validation notice in writing or electronically.

If a debt collector provides the validation information in writing or electronically, the debt collector may provide the information either

- in the initial communication, or

- within five calendar days after the initial communication is provided to the consumer.

12 CFR 1006.34(a)(1).

Generally, for purposes of providing the validation information, "initial communication" means the first time the debt collector conveys information to the consumer about the debt, directly or indirectly, and is the same as the initial communication discussed in Section 11 of this guide.

However, for purposes of providing the validation information, the initial communication does not include formal civil action pleadings (including proof of claims filed in accordance with the United States Bankruptcy Code).  Additionally, for these purposes, an initial communication does not include any form or notice that is not related to the collection of debt and that is expressly required by the Internal Revenue Code, Title V of the Gramm-Leach-Bliley Act, or any federal or state law or regulation mandating notice of a security breach or privacy risk.  12 CFR 1006.34(b)(2).

▢ The Rule also allows the debt collector the option to provide the validation information orally during the initial communication.  12 CFR 1006.34(a)(1).  However, the Rule notes that it might be difficult for a debt collector to convey all of the required information orally and in a way that meets the requirements of the regulation.  As a result, this summary only focuses on the requirements as they apply to validation notices sent by written and electronic delivery methods.

▢ If the debt collector knows or should know that the consumer is deceased, and if the debt collector has not previously provided the validation information to the deceased consumer, a person who is authorized to act on behalf of the deceased consumer's estate operates as the consumer for purposes of who is provided the validation information. In such circumstances, a debt collector must provide the validation information to an individual that the debt collector identifies by name who is authorized to act on behalf of the deceased consumer's estate.  Comment 1006.34(a)(1)-1.

A debt collector does not count these forms or notices as an initial communication when determining when the debt collector is required to provide validation information.  While not the communications that trigger the debt collector's obligation to provide the validation information, these notices and forms, as well as formal pleadings, can be communications that

**NCS-298**

CONFIDENTIAL

trigger the requirement to provide an initial communication disclosure as discussed in Section 11.1, and can be communications that trigger other requirements or prohibitions pursuant to the Debt Collection Rule.

If the consumer has fully paid the debt before the validation information is required to be provided (i.e., prior to the end of the five calendar days after the initial communication), the debt collector is not required to provide the validation information. 12 CFR 1006.34(a)(2).

**Examples:** On April 1, Ficus Debt Collection Services receives a consumer's credit card debt from the creditor. Ficus Debt Collection Services sends the consumer a validation notice by mail on April 10. The mailed validation notice is Ficus Debt Collection Services' first communication with the consumer. Because the mailed validation notice on April 10 is Ficus Debt Collection Services' first communication with the consumer, Ficus Debt Collection Services has complied with the validation information timing requirements.

On April 1, ABC, Inc. calls a consumer at the telephone number on file and speaks with the consumer about their debt. This is ABC, Inc.'s first communication with the consumer. On April 4, ABC, Inc. mails the consumer a validation notice. Because ABC, Inc. mailed the validation notice within five calendar days of the initial communication with the consumer, ABC, Inc. complied with the validation information timing requirements.

On June 1, Ficus Debt Collection Services provides a consumer with the validation notice by mail to the consumer's mailing address on file. It is Ficus Debt Collection Services' first communication with the consumer. On July 1, Ficus Debt Collection Services sells the debt to XYZ Financial. On August 1, XYZ Financial sends the consumer a validation notice. This is the first communication XYZ Financial has with the consumer. Both Ficus Debt Collection Services and XYZ Financial have complied with the validation information timing requirements because they provided the validation notice in their initial communications with the consumer.

On July 1, ABC, Inc. receives the consumer's debt for collection. On July 5, ABC, Inc.'s records are subject to a data security breach. The criminals obtain the consumer's records during the breach. Between July 1 and July 5, ABC, Inc. does not communicate with the consumer. On July 7, as required by state law, ABC, Inc. sends a notice of the data breach to all of the consumers for accounts included in the data security breach, including this consumer. This is the first communication ABC, Inc. has with the consumer. On August 1, ABC, Inc. mails the consumer a validation notice.

CONFIDENTIAL

ABC, Inc., has complied with the validation information timing requirements because although the data security breach notice was the first communication with the consumer, it is excepted from being the "initial communication" for purposes of the validation information. For purposes of the validation information requirements, the August 1 validation notice is the initial communication with the consumer.

On August 1, Ficus Debt Collection Services receives the consumer's debt from the creditor for collection. On August 2, Ficus Debt Collection Services calls the consumer and discusses the debt with the consumer. This phone call is the initial communication with the consumer. On August 3, the consumer submits payment for the debt to the creditor, paying the debt in full. On August 5, the creditor informs Ficus Debt Collection Services that it received payment in full. Ficus Debt Collection Services does not need to send the validation information to the consumer because the consumer has paid the debt in full prior to five days after the initial communication.

## 12.2.1 Electronic delivery

A debt collector may, subject to the other electronic communication provisions in the Rule, provide the validation information electronically. If the debt collector chooses to do so, additional validation information requirements apply. The Rule includes additional optional information that is also permitted.

When providing the validation information in written or electronic formats, the Rule requires that debt collectors send the notice in a manner that is reasonably expected to provide actual notice, and in a form that the consumer may keep and access later. 12 CFR 1006.42(a)(1).

If a debt collector chooses to provide the validation information electronically, the debt collector must include a statement explaining how the consumer may dispute the debt or request original-creditor information electronically. 12 CFR 1006.34(c)(3)(v). The respective statements may include any response method through which the debt collector accepts electronic communications, such as a link to a portal or an email address where the consumer can dispute the debt or request information. If a debt collector accepts electronic communications from consumers through multiple electronic media, the debt collector is only required to disclose one electronic communication channel, although it may include multiple or all electronic communication channels through which it accepts disputes about the debt and requests for original-creditor information. Comment 1006.34(c)(3)(v)-1. Compliant statements include "We accept disputes electronically at," using that phrase or a substantially similar phrase, followed by an email address or website portal that a consumer can use to dispute the

CONFIDENTIAL

debt and "We accept original-creditor information requests electronically," using that phrase or a substantially similar phrase, followed by an email address or website portal that a consumer can use to request original-creditor information. Comment 1006.34(c)(3)(v)-1.

In addition to this required content for electronic provision, the Rule also provides additional optional content and format modifications related to electronic provision of the validation information. As with the optional content discussed in Section 12.1.2, these electronic-provision-related optional content and format modifications, if made, allow a debt collector to retain the safe harbor discussed in Section 12.1.3. When providing the validation information electronically, the debt collector may:

- Include information about the debt collector's email and website. 12 CFR 1006.34(d)(3)(v)(A)

- Embedded hyperlinks in the notice that connect a consumer to the debt collector's website or the Bureau's debt collection website, or that allow a consumer to respond to the dispute or request original-creditor information prompts in the consumer response section of the notice. 12 CFR 1006.34(d)(4)(ii)

- Include fillable fields for the consumer response prompts discussed in Section 12.1.1 and Section 12.1.2. If a debt collector chooses to make the consumer response prompts fillable fields, the debt collector may include, for example, unmarked check boxes a consumer can electronically fill or free-form text fields. 12 CFR 1006.34(d)(4)(i).

- If the debt collector is providing the validation notice in the body of an email and does not have a "reverse side" to include these optional disclosures, include any of the optional disclosures allowed under the safe harbor (discussed in Section 12.1.2) below the validation notice (i.e., after the end of the consumer response section). Comment 1006.34(d)(3)(iv)(A)-1.

When providing the validation information electronically, the debt collector may need to comply with the Electronic Signatures in Global and National Commerce Act (E-SIGN Act) (15 U.S.C. 7001(c)), depending on whether the validation information is provided in the initial or subsequent communication. If a debt collector provides the validation notice electronically in the initial communication, the debt collector need not comply with the E-SIGN Act requirements. If a debt collector provides the validation notice electronically in a subsequent communication, it must comply with the E-SIGN Act requirements. 12 CFR 1006.42(b).

**Examples:** On April 1, ABC, Inc. receives a consumer's credit card debt for collection. ABC, Inc. has not yet complied with the E-SIGN Act requirements. On

**NCS-301**

CONFIDENTIAL

April 5, ABC, Inc. emails a validation notice to the consumer. This is the first communication ABC, Inc. has with the consumer. Because the validation notice is in the initial communication, ABC, Inc. need not comply with the E-SIGN Act requirements, and it may email the consumer the validation information without first complying with the E-SIGN Act requirements.

On May 1, Ficus Debt Collection Services receives a consumer's small dollar loan for collection. Ficus Debt Collection Services has not yet complied with E-SIGN Act requirements. On May 5, Ficus Debt Collection Services receives a telephone call from the consumer to discuss the debt. On May 7, Ficus Debt Collection Services emails a validation notice to the consumer. Ficus Debt Collection Services has not complied with the validation information requirements for providing the notice electronically when it sent the validation notice electronically on May 7. Because Ficus Debt Collection Services' initial communication was the telephone call on May 5, the validation notice email on May 7 is a subsequent communication, and Ficus Debt Collection Services needs to comply with the E-SIGN Act requirements if providing the validation information electronically in a subsequent communication.

More information about the E-SIGN Act requirements are discussed in Section 13.

# 12.3  Validation period

Once the consumer receives, or is assumed to receive, the validation information from the debt collector, the 30-day validation period begins. 12 CFR 1006.34(b)(5). During this period, the consumer may dispute the debt or request original-creditor-information, as discussed below in Sections 12.5 and 12.6. Additionally, the debt collector is restricted from engaging in certain activities, as discussed below.

## 12.3.1 Validation period restrictions

During the validation period, a debt collector must not engage in collection activities, including communications or attempts to communicate, that overshadow or are inconsistent with the disclosure of the consumer's rights to dispute the debt or request original-creditor information. 12 CFR 1006.38(b)(1). More information about determining the validation period is discussed in Section 12.3.2.

CONFIDENTIAL

Further, if the consumer completes the requirements to dispute the debt or request original-creditor information (in writing or electronically, as allowed) on or before the end of the validation period, the debt collector must cease collection of the debt, or the disputed portion, upon receipt of the dispute or request until the debt collector provides the information needed to verify the debt or provides the original-creditor information. The requirement to cease collection of the debt is triggered by the consumer's proper submission of a dispute or request on or before the end date of the validation period, not the date of receipt by the debt collector. This means that the debt collector may receive a dispute or request after the end of the validation period and is still required to cease collections until the debt collector responds, so long as the consumer submitted that dispute or request on or before the end date of the validation period. 12 CFR 1006.38(c) and 12 CFR 1006.38(d)(2). For more information about responses to debt disputes or requests for original-creditor information, see Sections 12.5 and 12.6.

## 12.3.2 Validation period end date

The end of the validation period is calculated as 30 calendar days from the date the consumer receives, or is assumed to have received, the validation information. 12 CFR 1006.34(b)(5).

For written or electronic validation notices, a consumer is assumed to have received the validation notice five days after the date the debt collector sent it. 12 CFR 1006.34(b)(5). A debt collector may use the date on which the consumer is assumed to receive the validation notice to calculate the end date of the validation period. A debt collector may still rely on the assumed receipt date even if a debt collector later learns the consumer received the validation notice on a different date, whether earlier or later. Comment 1006.34(b)(5)-1.

> 💬 For purposes of the validation period, "days" generally means business days. "Days" does not include federal holidays, Saturdays, or Sundays.

However, if a debt collector is notified that the validation notice was not received and sends a subsequent validation notice, a debt collector cannot rely on the original assumed date. Instead, the debt collector must update the date of receipt and calculate the validation period based on the subsequent validation notice timing. Comment 1006.34(b)(5)-2.

**NCS-303**

CONFIDENTIAL

**Examples:** On Monday April 1, Ficus Debt Collection Services mails a consumer a validation notice to collect a credit card debt. The consumer is assumed to have received the validation notice on Monday April 8, five days after the notice was mailed (excluding weekends and holidays). In the validation notice, Ficus Debt Collection Services disclosed the end of the validation period as Wednesday May 8 (30 calendar days after the assumed date of receipt). Ficus Debt Collection Services does not contact, or attempt to contact, the consumer until Thursday May 9. Ficus Debt Collection Services has complied with the validation period requirements, including proper disclosure of the validation period end date in the validation information and the prohibition on overshadowing the consumer's rights during the validation period.

On Tuesday June 1, ABC, Inc. emails a consumer a validation notice to collect a small dollar loan debt. The consumer is assumed to have received the validation notice on Tuesday June 8, five days after the notice was emailed (excluding weekends and holidays). In the validation notice, ABC, Inc. disclosed the end of the validation period as Wednesday July 9 (30 calendar days after the assumed date of receipt). On Monday June 7, ABC, Inc. receives a read receipt of the validation information email. ABC, Inc. does not contact, or attempt to contact, the consumer until Thursday July 10. ABC, Inc. has complied with the validation period requirements, including proper disclosure of the validation period end date in the validation information and the prohibition on overshadowing the consumer's rights during the validation period. Even though ABC, Inc. received a read receipt for the validation information email before the assumed receipt date, ABC, Inc. complied by relying on the assumed receipt date for purposes of calculating the end of the validation period.

On Wednesday July 1, Ficus Debt Collection Services mails a consumer a validation notice to collect a mortgage debt. The consumer is assumed to have received the validation notice on Wednesday July 9, five days after the noticed was mailed (excluding weekends and holidays). The notice discloses Saturday August 8 (30 calendar days after the assumed date of receipt) as the end of the validation period. On Friday July 17, the notice is returned to Ficus Debt Collection Services as undeliverable. After obtaining accurate location information, Ficus Debt Collection Services mails the consumer a new validation notice on Monday July 20. The consumer is assumed to have received the new validation notice on Monday July 27, five days after the new notice was mailed (excluding weekends and holidays). Ficus Debt Collection Services may not perform any collection activity that would overshadow the consumer's rights to dispute the debt or request original-creditor information during the validation period, which ends on Thursday August 27, 30

**NCS-304**

CONFIDENTIAL

calendar days after the assumed date of receipt. If Ficus Debt Collection Services engages in conduct that overshadows on Monday August 10, Ficus Debt Collection Services violates the overshadow prohibition because 30 calendar days has not elapsed from the date the consumer was assumed to have received the new validation notice on Monday July 27.

## 12.4   Overshadowing of rights to dispute or request original-creditor information

During the validation period (discussed in Section 12.3), a debt collector must not engage in any collection activities or communications that overshadow or are inconsistent with the disclosure of the consumer's rights to dispute the debt and to request the name and address of the original creditor. 12 CFR 1006.38(b)(1).

Use of the model validation notice in Appendix B of the Rule in the manner provided for in the Rule provides a safe harbor from violation of the overshadowing prohibition for communications of the validation information. 12 CFR 1006.38(b)(2). Use of the model validation notice is discussed in Section 12.1.3.

💬 If the debt collector knows or should know that the consumer is deceased, and if the consumer has not previously disputed the debt or requested original-creditor information, a person who is authorized to act on behalf of the deceased consumer's estate operates as the consumer for purposes of who receives rights to dispute the debt or request original-creditor information. Comment 1006.38-3.

## 12.5   Requests for original-creditor information

If a consumer sends a request in writing for the name and address of the original creditor within the validation period, a debt collector must cease collection of the debt. The debt collector must cease collection upon receipt of the written request and may not resume collection of the debt until the debt collector does one of the following:

**NCS-305**

CONFIDENTIAL

- The debt collector sends the name and address of the original creditor to the consumer in writing or electronically. 12 CFR 1006.38(c)(1).

- The debt collector reasonably determines that the original creditor is the same as the current creditor, notifies the consumer of that fact in writing or electronically, and refers the consumer to the validation information previously provided. 12 CFR 1006.38(c)(2).

> ▭ If the debt collector knows or should know that the consumer is deceased, and if the consumer has not previously requested the name and address of the original creditor, a person who is authorized to act on behalf of the deceased consumer's estate operates as the consumer for purposes of who receives the right to request original-creditor information. Comment 1006.38-3.

If the debt collector provides the information electronically, it must do so in accordance with Section 101(c) of the E-SIGN Act. 12 CFR 1006.42(b).

A consumer has requested the name and address of the original creditor in writing if, for example, the consumer:

- Mails the written request to the debt collector.

- Returns the consumer-response form from the validation information discussed in Section 12.1.1 above to the debt collector indicating a request for original-creditor information.

- Provides the request to the debt collector using a medium of electronic communication through which the debt collector accepts electronic communications from consumers, such as an email address or a website portal.

- Delivers the written request in person or by courier to the debt collector.

Comment 1006.38-1.

# 12.6  Responses to disputes

If a debt collector receives a dispute in writing from a consumer within the validation period, a debt collector must cease collection of the debt or any disputed portion of the debt. Generally, the debt collector must cease collection upon receipt of the written dispute and may not resume collection until it sends a copy of verification of the debt or a copy of a judgment to the consumer. If the debt collector wants to resume collection of the debt, the debt collector must respond (i.e., provide a copy of the judgment or other verification) in writing or electronically.

CONFIDENTIAL

12 CFR 1006.38(d)(2)(i).  If the debt collector responds electronically, it must do so in accordance with the E-SIGN Act, 15 U.S.C. 7001(c).  12 CFR 1006.42(b).

A consumer has disputed the debt in writing if, for example, the consumer:

- ▪ Mails the written dispute to the debt collector.

- ▪ Provides the dispute to the debt collector using a medium of electronic communication through which a debt collector accepts electronic communications from consumers, such as an email address or a website portal.

- ▪ Delivers the written dispute in person or by courier to the debt collector.

Comment 1006.38-1.

The failure of a consumer to dispute the validity of a debt does not constitute a legal admission of liability by the consumer.  12 CFR 1006.38(d)(1).

> 🗩 If the debt collector knows or should know that the consumer is deceased, and if the consumer has not previously disputed the debt, a person who is authorized to act on behalf of the deceased consumer's estate operates as the consumer for purposes of who receives rights to dispute the debt. Comment 1006.38-3.

# 12.7  Responses to duplicative disputes

The Debt Collection Rule includes an alternative process for responding to duplicative disputes. A duplicative dispute is a dispute submitted by the consumer in writing within the validation period:

1.  That is substantially the same as another written dispute that the consumer previously submitted within the validation period;

2.  To which the debt collector already responded as required by the Rule; and

3.  That does not include new and material information to support the dispute.

12 CFR 1006.38(a)(1).

A later dispute can be substantially the same as an earlier dispute even if the later dispute does not repeat verbatim the language of the earlier dispute.  Comment 1006.38(a)(1)-1.  Information is new if the consumer did not provide the information when submitting an earlier dispute. Information is material if it is reasonably likely to change the verification the debt collector provided or would have provided in response to the earlier dispute.  Comment 1006.38(a)(1)-2.

CONFIDENTIAL

> **Example:** ABC, Inc. is collecting a debt from a consumer and sends the consumer a validation notice. In response, the consumer submits a written dispute within the validation period asserting that the consumer does not owe the debt. The consumer does not include any information in support of the dispute. ABC, Inc. mails the consumer a copy of verification of the debt. The consumer then sends a canceled check showing the consumer paid the debt. Because the check is new and material information, the dispute is not duplicative. ABC, Inc. must cease collection until it responds to the dispute as discussed under section 12.6 above.

As an alternative to sending verification of the debt or a copy of the judgment to the consumer, a debt collector that reasonably determines that a dispute is a duplicative dispute may resume collection after sending the consumer a notice in writing or electronically. The notice must:

1. *Inform the consumer that the dispute is duplicative.*

2. *Provide a brief statement of the reasons for the debt collector's determination that the dispute is duplicative.* A debt collector complies with the requirement to provide a brief statement of the reasons for its determination if the notice states that the dispute is substantially the same as an earlier dispute submitted by the consumer and the consumer has not included any new and material information in support of the earlier dispute.

3. *Refer the consumer to the debt collector's response to the earlier dispute.* A debt collector complies with the requirement to refer the consumer to the debt collector's response to the earlier dispute if the notice states that the debt collector responded to the earlier dispute and provides the date of that response. Comment 1006.38(d)(2)(ii)-1.

12 CFR 1006.38(d)(2).

If the debt collector wants to resume collection of the debt, the debt collector must respond in writing or electronically. A debt collector may respond electronically to a dispute that it determines to be duplicative without obtaining the relevant consumer's E-SIGN consent. 12 CFR 1006.38(d)(2)(ii).

NCS-308

CONFIDENTIAL

# 13. Sending required disclosures

With certain exceptions noted below, if the FDCPA or the Debt Collection Rule requires a debt collector to provide a written or electronic disclosure, the debt collector must provide the disclosure: (1) in a manner that is reasonably expected to provide actual notice; and (2) in a form that the consumer may keep and access later. 12 CFR 1006.42(a)(1). These requirements generally do not apply to the notice of a reasonable and simple method to opt out as discussed in Section 5, the initial communication disclosure discussed in Section 11.1, or the subsequent communication disclosure discussed in Section 11.2. However, these requirements do apply if these disclosures are included in a written or electronic validation notice, either included in the initial communication or sent after the debt collector's initial communication with the consumer. These requirements also apply if these disclosures are included in a written or electronic response to a dispute or request for information about the original creditor. 12 CFR 1006.42(a)(2).

Generally, a debt collector satisfies these requirements if the debt collector mails a printed copy of a disclosure to the consumer's last known address. However, mailing a printed copy to the last known address does not satisfy the requirement if the debt collector, at the time of mailing, knows or should know that the consumer does not currently reside at, or receive mail at, that location. Comment 1006.42(a)(1)-3. Additionally, a debt collector who sends a required disclosure in writing or electronically and who receives a notice that the disclosure was not delivered has not sent the disclosure in a manner that is reasonably expected to provide actual notice. Comment 1006.42(a)(1)-2.

If a consumer has opted out of debt collection communications by email to a particular email address or by text to a particular telephone number, a debt collector cannot use that email address or telephone number to send required disclosures. Comment 1006.42(a)(1)-4.

In determining whether a debt collector has provided the disclosure in a manner that is reasonably expected to provide actual notice, relevant factors include whether the debt collector:

- Identified the purpose of the communication by including, in the subject line of an electronic communication transmitting the disclosure, the name of the creditor to whom the debt currently is owed or allegedly is owed and one additional piece of information identifying the debt. The additional piece of information might be a truncated account number, the name of the original creditor, the name of any store brand associated with the debt, the date of sale of a product or service giving rise to the debt, the physical

**NCS-309**

CONFIDENTIAL

address of service, or the billing or mailing address on the account.  The additional piece of information may not be the amount of the debt.

- Permitted receipt of notifications of undeliverability from communications providers, monitored for any such notifications, and treated any such notifications as precluding a reasonable expectation of actual notice for that delivery attempt.

- Identified itself as the sender of the communication by including a business name that the consumer will be likely to recognize, such as the name included in a creditor's notice sent to satisfy the reasonable procedures for a bona fide error defense discussed in Section 6.2.2 or the name that the debt collector used in a prior limited-content message left for the consumer or in an email message sent to the consumer.

Comment 1006.42(a)(1)-1.

If a debt collector sends certain disclosures electronically, the debt collector must send the disclosures in accordance with the E-SIGN Act.  As discussed in Section 12.1, a debt collector must send a validation notice to a consumer within five days of the debt collector's initial communication with the consumer, unless the debt collector included the information in its initial communication with the consumer or the consumer paid the debt.  As discussed in Section 12.2.1, if the debt collector includes the validation notice in it is initial communication, the debt collector can send the validation notice electronically without regard to the E-SIGN Act.  However, if the debt collector electronically sends the validation notice to a consumer after the debt collector's initial communication with the consumer (i.e., does not include the validation notice in its initial communication with the consumer), the debt collector must send the validation notice in accordance with the E-SIGN Act, 15 U.S.C. 7001(c).  Additionally, if the debt collector electronically discloses information in response to a request for information about the original creditor or for verification of the debt, the debt collector must do so in accordance with the E-SIGN Act, 15 U.S.C. 7001(c).  12 CFR 1006.42(b).

**NCS-310**

CONFIDENTIAL

# 14. Record retention

Generally, a debt collector must retain records that are evidence of compliance or noncompliance with the FDCPA and the Debt Collection Rule starting on the date that the debt collector begins collection activity on a debt until three years after the debt collector's last collection activity on the debt. 12 CFR 1006.100(a). However, there is a special rule for retaining telephone call recordings.

Nothing in the Debt Collection Rule prohibits a debt collector from retaining records that are evidence of compliance or noncompliance with the FDCPA and the Rule for more than three years after the applicable date. Comment 1006.100-1

If a debt collector records a telephone call made in connection with the collection of a debt, the debt collector must retain the recording for three years after the date of the telephone call. 12 CFR 1006.100(b). The Debt Collection Rule does not require a debt collector to record telephone calls, and this special record retention rule only applies if the debt collector chooses to record telephone calls. *See* comment 1006.100(b)-1.

## 14.1  Scope of records to be retained

A debt collector must retain records that evidence that the debt collector performed the actions and made the disclosures required by the FDCPA or the Debt Collection Rule, as well as records that evidence that the debt collector refrained from conduct prohibited by the FDCPA or Rule. If a record is of a type that could evidence compliance or noncompliance depending on the conduct of the debt collector that is revealed within the record, then the record is one that is evidence of compliance or noncompliance and the debt collector must retain it. Such records include, but are not limited to, records that evidence that the debt collector's communications and attempts to communicate in connection with the collection of a debt complied (or did not comply) with the FDCPA and Rule. For example, a debt collector must retain telephone call logs as evidence of compliance or noncompliance with the prohibition against harassing telephone calls. Comment 1006.100(a)-1.

> 💬 A debt collector must have (or have access to) records reasonably substantiating its claim that a consumer owes a debt in order to avoid engaging in deceptive or unfair collection practices in violation of the Debt Collection Rule when it attempts to collect the debt. Thus, records reasonably substantiating a debt collector's claim that a consumer owes a debt are records that are evidence of compliance or non-compliance.

CONFIDENTIAL

The Debt Collection Rule does not require a debt collector to create additional records for the sole purpose of evidencing compliance with the Rule. For example, the Rule does not require a debt collector to create call logs showing that it has not attempted to communicate with any consumers at times that the consumers designated as inconvenient. However, if the debt collector creates call logs (such as for business purposes or to comply with other applicable laws or requirements), the call logs are evidence of compliance or noncompliance with the Rule, and the collector must retain them. Comment 1006.100(a)-2.

# 14.2  Retention period

Generally, a debt collector must retain records starting on the date that the debt collector begins collection activity on a debt and keep them for at least three years after the debt collector's last collection activity on the debt. 12 CFR 1006.100(a).

An event such as the debt collector transferring the debt for consideration to another party would start the running of the debt collector's three-year record retention clock with respect to the debt, provided that the transfer of the debt represents the debt collector's last collection activity on the debt. In contrast, the debt's discharge in bankruptcy, or the consumer's curing of default on the debt, would not represent the time at which the three-year record retention clock starts to run if the debt collector continues collection activity on the debt after that time, such as might occur when the debt is secured and an enforceable lien on the collateral that secured the debt survives the bankruptcy discharge (and collection activity pursuant to the lien continues after the discharge). Comment 1006.100(a)-4.

💬 Although the Debt Collection Rule does not require debt collectors to retain any records beyond three years after the debt collector's last collection activity on the debt, restarting debt collection activity at any time would mean that the last collection activity on the debt had not yet occurred.

💬 A debt collector may keep records for a period that is longer than the retention period required pursuant to the Debt Collection Rule. Additionally, other applicable laws may require the debt collector to retain records for a longer period.

As noted above, there is a special rule that applies if a debt collector records a telephone call made in connection with the collection of a debt. In that case, the debt collector must retain the recording for not less than three years after the date of the telephone call. 12 CFR 1006.100(b).

**NCS-312**

CONFIDENTIAL

# 14.3  Form of records

The Debt Collection Rule does not require a debt collector to retain actual paper copies of documents.  Records may be retained by any method that reproduces the records accurately (including computer programs) and that ensures that the debt collector can easily access the records (including a contractual right to access records possessed by another entity).  Comment 1006.100(a)-3.

**NCS-313**

CONFIDENTIAL

# APPENDIX A:

# Annotated model validation notice with regulatory citations

The following provides a copy of the model validation notice from Appendix B of the Rule. The model validation notice is annotated with regulatory citations to assist debt collectors in identifying which language in the model form relates to the required content provisions in the Rule and which relates to optional content provisions. The model validation notice does not include all optional content a debt collector may include or permissible changes a debt collector may make while retaining the safe harbor for compliance with the validation information content and format requirements. Comment 1006.34(d)(2)(iii)-1.

Information in the version below that is greyed out or not in a green box is not specified in the regulatory text.

For more information on the validation notice, including the required and optional content, see Section 12 of this guide.

**NCS-314**

CONFIDENTIAL

**FIGURE 2:** ANNOTATED MODEL VALIDATION NOTICE WITH REGULATORY CITATIONS



**NCS-315**

*Consolidated Code Sheet*

**CONFIDENTIAL**

*Effective June 2019*

| DISPUTE CODES | |
|---|---|
| **CODE** | **DESCRIPTION** |
| 001 | Not his/hers.  Provide or confirm complete ID. |
| 002 | Belongs to another individual with same/similar name.  Provide or confirm complete ID. |
| 006 | Not aware of collection.  Provide or confirm complete ID and verify Account Information. |
| 008** | Late due to change of address - never received statement.  Verify Account History, Account Status, and Payment Rating. |
| 010 | Settlement or partial payment accepted.  Verify Special Comment Code. |
| 012 | Claims paid the original creditor before collection status/paid before charge-off.  Verify Account Status, Payment Rating, Current Balance, Amount Past Due and Account History. |
| 014** | Claims paid before collection status |
| 015 | Credit Limit or Highest Credit/Original Loan Amount incorrect.  Verify Credit Limit or Highest Credit/Original Loan Amount. |
| 019 | Included in the bankruptcy of another person.  Verify Consumer Information Indicator. |
| 023 | Claims account closed.  Verify Compliance Condition Code, Special Comment Code and Date Closed. |
| 024 | Claims account closed by consumer.  Verify Compliance Condition Code and Date Closed. |
| 031 | Contract cancelled or rescinded.  Verify all Account Information. |
| 037 | Account included in bankruptcy.  Verify Consumer Information Indicator. |
| 038 | Claims active military duty.  Verify all Account Information. |
| 039 | Insurance claim delayed.  Verify Account Status, Payment Rating, Amount Past Due, Current Balance and Account History. |
| 040 | Account involved in litigation.  Provide or confirm complete ID and verify all account information. |
| 041 | Claims Victim of Natural or Declared Disaster.  Verify all Account Information. |
| 100 | Claims account deferred.  Verify Specialized Payment Indicator and Deferred Payment Start Date. |
| 101 | Not liable for account (e.g., ex-spouse, business).  If liable, provide or confirm complete ID. |
| 102 | Account reaffirmed or not included in bankruptcy.  Verify Consumer Information Indicator and Account Status. |
| 103 | Claims true identity fraud/account fraudulently opened.  Provide or confirm complete ID. |
| 104 | Claims account take-over, fraudulent charges made on account.  Verify Special Comment Code. |
| 105** | Disputes Date of Last Payment/Date Opened/Date of First Delinquency/Date Closed.  Verify all dates. |
| 106 | Disputes present/previous Account Status/Payment Rating/Account History.  Verify Account Status, Payment Rating and Account History. |
| 107** | Disputes Special Comment/Compliance Condition Code/Narrative Remarks.  Verify Special Comment, Compliance Condition Code, and Narrative Remarks. |
| 108 | Disputes Portfolio Type, Account Type or Terms Duration/Terms Frequency.  Verify Portfolio Type, Account Type, Terms Duration, and Terms Frequency. |
| 109** | Disputes Current Balance, Original Loan Amount, Scheduled Monthly Payment Amount, Actual Payment Amount, Amount Past Due, or Original Charge-off Amount.  Verify Original Loan Amount, Scheduled Monthly Payment Amount, Actual Payment Amount, Amount Past Due, Current Balance, and Original Charge-off amount. |
| 110 | Claims company will change.  Verify all account information. |
| 111 | Claims company will delete.  Verify all account information. |
| 112 | Consumer states inaccurate information.  Provide or confirm complete ID and verify all Account Information. |
| 114 | Disputes Date Opened, Date of Last Payment and/or Date Closed.  Verify Date Opened, Date of Last Payment and/or Date Closed. |
| 115 | Disputes Date of First Delinquency.  Verify Date of First Delinquency. |
| 116 | Disputes Compliance Condition.  Verify Compliance Condition Code. |
| 117 | Disputes Special Comment Code and/or Narrative Remarks.  Verify Special Comment Code and/or Narrative Remarks. |
| 118 | Disputes Current Balance and/or Amount Past Due.  Verify Current Balance or Amount Past Due. |
| 119 | Disputes Original Charge-off Amount, Actual Payment Amount or Scheduled Monthly Payment Amount.  Verify Original Charge-off Amount, Actual Payment Amount or Scheduled Monthly Payment Amount. |
| 120 | Consumer disputes deceased ECOA.  Provide or confirm complete ID and verify ECOA Code. |
| 704 | **MRC USE ONLY** <br> ATTN: Fraud Dept: Item blocked per valid copy of police report received confirming consumer is a victim of fraud |
| ** | **Obsolete Code** |

| CONSUMER INFORMATION INDICATORS | |
|---|---|
| **CODE** | **DESCRIPTION** |
| 1A | Personal Receivership |
| 2A | Lease Assumption |
| A | Petition for Chapter 7 Bankruptcy |
| B | Petition for Chapter 11 Bankruptcy |
| C | Petition for Chapter 12 Bankruptcy |
| D | Petition for Chapter 13 Bankruptcy |
| E | Discharged through Bankruptcy Chapter 7 |
| F | Discharged through Bankruptcy Chapter 11 |
| G | Discharged through Bankruptcy Chapter 12 |
| H | Discharged/Completed through Bankruptcy Chapter 13 |
| I | Chapter 7 Bankruptcy Dismissed |
| J | Chapter 11 Bankruptcy Dismissed |
| K | Chapter 12 Bankruptcy Dismissed |
| L | Chapter 13 Bankruptcy Dismissed |
| M | Chapter 7 Bankruptcy Withdrawn |
| N | Chapter 11 Bankruptcy Withdrawn |
| O | Chapter 12 Bankruptcy Withdrawn |
| P | Chapter 13 Bankruptcy Withdrawn |
| Q | Removes previously reported Bankruptcy Indicator (A through P and Z) or Personal Receivership Indicator (1A) |
| R | Chapter 7 Reaffirmation of Debt |
| S | Removes previously reported Reaffirmation of Debt, Reaffirmation of Debt Rescinded and Lease Assumption Indicators (R, V, 2A, and Obsolete values W, X, Y) |
| T | Credit Grantor Cannot Locate Consumer |
| U | Consumer Now Located (Removes previously reported T Indicator) |
| V | Chapter 7 Reaffirmation of Debt Rescinded |
| W** | Chapter 11 Reaffirmation of Debt Rescinded |
| X** | Chapter 12 Reaffirmation of Debt Rescinded |
| Y** | Chapter 13 Reaffirmation of Debt Rescinded |
| Z | Bankruptcy - Undesignated Chapter |
| ** | **Obsolete Code:  Provide response per Metro 2.** |

| ECOA CODES | |
|---|---|
| **CODE** | **DESCRIPTION** |
| 0** | Undesignated (accounts open before 06/77) |
| 1 | Individual |
| 2 | Joint contractual liability |
| 3 | Authorized user |
| 4** | Joint |
| 5 | Co-maker or Guarantor |
| 6** | On behalf of |
| 7 | Maker |
| T | Terminated |
| W | Business/Commercial |
| X | Deceased |
| Z* | Delete Consumer |
| * | **Valid only on Associated Consumer Information screen in the ACDV or AUD in e-OSCAR** |
| ** | **Obsolete Code:  Provide response per Metro 2.** |

**NCS-316**

**CONFIDENTIAL**

*Consolidated Code Sheet*                                                                                                          *Effective June 2019*

| ACCOUNT STATUS CODES | |
|---|---|
| **CODE** | **DESCRIPTION** |
| 03** | Credit card lost or stolen |
| 04** | Closed inactive account |
| 05* | Account transferred |
| 10** | Account renewed or refinanced |
| 11 | Current account |
| 13* | Paid or closed account/zero balance |
| 61 | Account paid in full, was a voluntary surrender |
| 62 | Account paid in full, was a collection account. |
| 63 | Account paid in full, was a repossession |
| 64 | Account paid in full, was a charge-off |
| 65* | Account paid in full.  A foreclosure was started. |
| 66** | Credit grantor paid by co. who originally sold the merchandise |
| 67** | Bankruptcy Ch 7, 11 or 12 |
| 68** | Paid in full for less than the full balance |
| 69** | Bankruptcy Ch 13 |
| 71 | Account 30-59 days past the due date. |
| 78 | Account 60-89 days past the due date. |
| 80 | Account 90-119 days past the due date. |
| 82 | Account 120-149 days past the due date. |
| 83 | Account 150-179 days past the due date. |
| 84 | Account 180 days or more past the due date. |
| 85** | Cannot locate consumer/now located |
| 86** | Now paying/was a charge-off |
| 87** | Foreclosure proceeding started |
| 88* | Claim filed with government for insured portion of balance on a defaulted loan |
| 89* | Deed received in lieu of foreclosure on a defaulted mortgage; there may be a balance due |
| 91** | Early termination of lease/sales contract by default |
| 92** | Claim filed for insurance portion of balance |
| 93 | Account assigned to internal or external collections |
| 94* | Foreclosure completed; there may be a balance due |
| 95* | Voluntary surrender; there may be a balance due |
| 96 | Merchandise was repossessed; there may be a balance due |
| 97 | Unpaid balance reported as a loss (charge off) |
| 98** | Credit grantor cannot locate consumer |
| UR** | Unrated/unknown |
| * | **PAYMENT RATING REQUIRED** |
| ** | **Obsolete Code:  Provide response per Metro 2.** |

| MANNER OF PAYMENT CODES | |
|---|---|
| **CODE** | **DESCRIPTION** |
| (blank) | UNRATED |
| # | In bankruptcy/other party |
| $ | Assigned to US Department of Education |
| 00 | Too New |
| 01 | As agreed, not more than 1 payment past due |
| 02 | Pays 30-59 days, not more than 2 payments past due |
| 03 | Pays 60-89 days, not more than 3 payments past due |
| 04 | Pays 90-119 days, not more than 4 payments past due |
| 05 | Pays over 120 days, 5 or more payments past due |
| 06 | Collection Account |
| 07 | Making regular payments or paid under wage earner plan or similar arrangement |
| 08 | Repossession |
| 8A | Voluntary repossession |
| 8P | Repossession, making payments |
| 8R | Repossession redeemed |
| 09 | Charged-off to bad debt |
| 9P | Making payments on an account rated 09 or 9B |
| A | Account is inactive |
| B | Lost or stolen card |
| C | Contact Member for status |
| D | Refinanced or Renewed |
| E | Consumer deceased |
| F | In financial counseling |
| G | Foreclosure process started |
| H | In WEP or other party |
| J | Adjustment pending |
| M | Included in Chapter 13 |
| S | Dispute-resolution pending |
| U | Need account # to check |
| Z | Account included in bankruptcy |
| CD | Collection status unpaid |
| CF | Collection status in financial counselling |
| CJ | Collection status adjustment pending |
| CM | Collection Status - Wage Earner |
| CN | Collection status new listing |
| CP | Collection status paid |
| CQ | Collection status unsettled |
| CS | Collection status disputed - Resolution pending |
| CT | Collection status payment |
| CU | Collection status unknown |
| CX | Collection status checked |
| CZ | Collection status in bankruptcy or other party |

| PAYMENT RATING CODES | |
|---|---|
| **Required for Account Status Codes 05, 13, 65, 88, 89, 94, 95** | |
| **CODE** | **DESCRIPTION** |
| 0 | Current account (0–29 days past the due date) |
| 1 | 30 - 59 days past the due date |
| 2 | 60 - 89 days past the due date |
| 3 | 90 - 119 days past the due date |
| 4 | 120 - 149 days past the due date |
| 5 | 150 - 179 days past the due date |
| 6 | 180 or more days past the due date |
| G | Collection |
| L | Charge-off |

| CREDITOR CLASSIFICATIONS | |
|---|---|
| **CODE** | **DESCRIPTION** |
| 01 | Retail |
| 02 | Medical/Health Care |
| 03 | Oil Company |
| 04 | Government |
| 05 | Personal Services |
| 06 | Insurance |
| 07 | Educational |
| 08 | Banking |
| 09 | Rental/Leasing |
| 10 | Utilities |
| 11 | Cable/Cellular |
| 12 | Financial |
| 13 | Credit Union |
| 14 | Automotive |
| 15 | Check Guarantee |

**NCS-317**

*Confidential Proprietary Information of Equifax, Experian, Innovis, TransUnion and/or OLDE*

*Consolidated Code Sheet*    **CONFIDENTIAL**    *Effective June 2019*

## SPECIAL COMMENT CODES

| CODE | DESCRIPTION |
|------|-------------|
| * | Removes any previously reported Special Comment Code |
| B | Account payments managed by financial counseling program |
| C | Paid by Co-maker or Guarantor |
| H | Loan assumed by another party. Requires ECOA Code T (Terminated) |
| I | Election of remedy |
| M | Account closed at credit grantor's request |
| O | Account transferred to another company/servicer |
| S | Special handling. Contact credit grantor for additional information |
| V | Adjustment pending |
| AB | Debt being paid through insurance |
| AC | Paying under a partial payment agreement |
| AG** | Simple interest loan |
| AH | Purchased by another company. |
| AI | Recalled to active military duty. |
| AJ** | Payroll deduction |
| AL | Student loan assigned to government |
| AM | Account payments assured by wage garnishment |
| AN | Account acquired by FDIC/NCUA. |
| AO | Voluntarily surrendered - then redeemed or reinstated |
| AP | Credit Line suspended |
| AS | Account closed due to refinance |
| AT | Account closed due to transfer |
| AU | Account paid in full for less than the full balance |
| AV | First payment never received. Comment: May indicate fraudulent activity. |
| AW | Affected by natural or declared disaster. |
| AX | Account paid from collateral |
| AZ | Redeemed or reinstated repossession |
| BA | Transferred to Recovery.  Requires Account Status Code 71 - 97. |
| BB | Full termination/status pending.  Requires Account Type 3A or 13. |
| BC | Full termination/obligation satisfied.  Requires Account Type 3A (Auto Lease) or 13 (Lease), Account Status Code 13 and Current Balance = 0. |
| BD | Full termination/balance owing. Requires Account Type 3A or 13. |
| BE | Early termination/status pending. Requires Account Type 3A or 13. |
| BF | Early termination/obligation satisfied.  Requires Account Type 3A or 13, Account Status Code 13 and Current Balance = 0. |
| BG | Early termination/balance owing. Requires Account Type 3A or 13. |
| BH | Early termination/insurance loss. Requires Account Type 3A or 13. |
| BI | Involuntary repossession. Requires Account Type 3A or 13. |
| BJ | Involuntary repossession/obligation satisfied. Requires Account Type 3A or 13. |
| BK | Involuntary repossession/balance owing. Requires Account Type 3A or 13. |
| BL | Credit card lost or stolen |
| BN | Paid by company which originally sold the merchandise |
| BO | Foreclosure proceedings started |
| BP | Paid through insurance |
| BS | Prepaid lease. Requires Account Type 3A or 13. Consumer paid lease in advance.  No monthly payments are due. |
| BT | Principal deferred/Interest payment only |
| CH | Guaranteed/Insured |
| CI | Account closed due to inactivity |
| CJ | Credit line no longer available - in repayment phase |
| CK | Credit Line reduced due to collateral depreciation |
| CL | Credit Line suspended due to collateral depreciation |
| CM | Collateral released by creditor / Balance owing |
| CN | Loan modified under a federal government plan |
| CO | Loan modified |
| CP | Account in forbearance |
| CS | Used by Child Support Agencies only when reporting delinquent or collection accounts. (No actual comment displays.) |
| DM* | Acquired from another lender |
| MR* | Substitute/replacement account |
| * | **ACD V Request Codes only.** |
| ** | **Obsolete Code:  Provide response per Metro 2.** |

## COMPLIANCE CONDITION CODES

| CODE | DESCRIPTION |
|------|-------------|
| XA | Account closed at consumer's request |
| XB | Account information disputed by consumer under the Fair Credit Reporting Act |
| XC | Completed investigation of FCRA dispute - consumer disagrees |
| XD | Account closed at consumer's request and in dispute under FCRA |
| XE | Account closed at consumer's request and dispute investigation completed, consumer disagrees.  (To be used for FCRA or FCBA disputes) |
| XF | Account in dispute under Fair Credit Billing Act |
| XG | FCBA Dispute resolved - consumer disagrees |
| XH | Account previously in dispute - investigation completed, reported by data furnisher (To be used for FCRA or FCBA disputes) |
| XJ | Account closed at consumer's request and in dispute under FCBA |
| XR | Removes the most recently reported Compliance Condition Code |

## PORTFOLIO TYPES

| CODE | DESCRIPTION |
|------|-------------|
| C | Line of credit |
| I | Installment |
| M | Mortgage |
| O | Open account  (30 or 90 days) |
| R | Revolving (open-end account) |

## 84-MONTH PAYMENT/ACCOUNT HISTORY

| CODE | DESCRIPTION |
|------|-------------|
| 0 | 0 payments past due (current account) |
| 1 | 30 - 59 days past due date |
| 2 | 60 - 89 days past due date |
| 3 | 90 - 119 days past due date |
| 4 | 120 - 149 days past due date |
| 5 | 150 - 179 days past due date |
| 6 | 180 or more days past due date |
| B | No payment history available prior to this time - either because the account was not open or because the payment history cannot be furnished.  A "B" may not be embedded within other values. |
| D | No payment history available this month.  A "D" may be embedded in the payment pattern. |
| E | Zero balance and current account |
| G | Collection |
| H | Foreclosure Completed |
| J | Voluntary Surrender |
| K | Repossession |
| L | Charge-off |

## PORTFOLIO INDICATORS

| CODE | DESCRIPTION |
|------|-------------|
| 1 | Purchased From Name |
| 2 | Sold To Name |
| 9 | Remove Previously Reported Purchased From or Sold To Name |

# NCS-318

*Confidential Proprietary Information of Equifax, Experian, Innovis, TransUnion and/or OLDE*



*Consolidated Code Sheet*  **CONFIDENTIAL**  *Effective June 2019*

| CODE | DESCRIPTION |
|---|---|
| | **ACCOUNT TYPES** |
| 00 | Auto |
| 01 | Unsecured |
| 02 | Secured |
| 03 | Partially Secured |
| 04 | Home Improvement |
| 05 | Federal Housing Administration (FHA) Home Improvement |
| 06 | Installment Sales Contract |
| 07 | Charge Account |
| 08 | Real estate - specific type unknown (Terms Duration in years) |
| 0A | Time Share Loan (A purchased time share) |
| 0C | Debt Buyer |
| 0F | Construction Loan |
| 0G | Flexible Spending Credit Card |
| 10 | Business Loan |
| 11 | Recreational Merchandise |
| 12 | Education |
| 13 | Lease |
| 15 | Line of Credit |
| 17 | Manufactured Housing |
| 18 | Credit Card |
| 19 | Federal Housing Administration (FHA) Real Estate Mortgage (Terms Duration in years) |
| 1A** | Lender Placed Insurance |
| 1C** | Household Goods |
| 20 | Note Loan |
| 22** | Secured by Household Goods |
| 23** | Secured by Household Goods and Other Collateral |
| 25 | Veteran's Administration (VA) Real Estate Mortgage (Terms Duration in years) |
| 26 | Conventional Real Estate Mortgage - including Purchase Money First (Terms Duration in years) |
| 27** | Real estate mortgage |
| 29 | Rental Agreement |
| 2A | Secured Credit Card |
| 2C | U.S. Department of Agriculture (USDA) Real Estate Mortgage Loan (Terms Duration in years) |
| 30** | Summary of Accounts with the Same Status |
| 31** | Unknown |
| 34** | Debt Counseling Service |
| 37 | Combined Credit Plan |
| 3A | Auto Lease |
| 43 | Debit Card |
| ** | **Obsolete Code:  Provide response per Metro 2.** |

| CODE | DESCRIPTION |
|---|---|
| | **ACCOUNT TYPES** |
| 47 | Credit Line Secured |
| 48 | Collection Agency/Attorney |
| 4D | Telecommunications/Cellular |
| 50 | Family Support |
| 5A | Real Estate - Junior Liens and Non-Purchase Money First (Terms Duration in years) |
| 5B | Second Mortgage (Terms Duration in years) |
| 65 | Government Unsecured Guaranteed Loan |
| 66 | Government Secured Guaranteed Loan |
| 67 | Government Unsecured Direct Loan |
| 68 | Government Secured Direct Loan |
| 69 | Government Grant |
| 6A | Commercial Installment Loan |
| 6B | Commercial Mortgage Loan (Terms Duration in years) |
| 6D | Home Equity |
| 70 | Government Overpayment |
| 71 | Government Fine |
| 72 | Government Fee for Services |
| 73 | Government Employee Advance |
| 74 | Government Miscellaneous Debt |
| 75 | Government Benefit |
| 77 | Returned Check |
| 78** | Installment Loan |
| 7A | Commercial Line of Credit |
| 7B | Agricultural |
| 85** | Bi-Monthly Mortgage Payments |
| 87** | Semi-Monthly Mortgage Payments |
| 89 | Home Equity Line of Credit |
| 8A | Business Credit Card |
| 8B | Deposit Account with Overdraft Protection |
| 90 | Medical Debt |
| 91 | Debt Consolidation |
| 92 | Utility Company |
| 93 | Child Support |
| 94** | Spouse Support |
| 95 | Attorney Fees |
| 9A | Secured Home Improvement |
| 9B | Business Line Personally Guaranteed |
| ** | **Obsolete Code:  Provide response per Metro 2.** |

| CODE | DESCRIPTION |
|---|---|
| | **e-OSCAR ACDV RESPONSE CODES** |
| 1 | Account information accurate as of date reported |
| 3 | Delete account |
| 4 | Misrouted ACDV, please reroute |
| 6 | Incomplete (Batch ONLY) |
| 7 | Delete due to Fraud |
| 21 | Updated disputed account information only. |
| 22 | Updated disputed account information. Additional account inforamtion was also updated. |
| 23 | Disputed information accurate. Updated account information unrelated to dispute. |
| 24 | Consumer's dispute not specific. Consumer information verified. Account information updated. |

**NCS-319**